# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EDDIE BAUER HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-12099 (__)<br><br>Joint Administration Pending |

## DEBTORS' MOTION FOR AN ORDER
## APPROVING CROSS-BORDER INSOLVENCY PROTOCOL

Eddie Bauer Holdings, Inc. ("**EB Holdings**"), and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby bring this motion (the "**Motion**") for entry of an order approving the Cross-Border Protocol (defined below). In support of this Motion, the Debtors rely on the Declaration of Marvin Edward Toland of Eddie Bauer Holdings, Inc., in Support of Chapter 11 Petitions and First Day Motions (the "**First Day Declaration**"). In further support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Eddie Bauer Holdings, Inc., a Delaware corporation (2352); Eddie Bauer, Inc., a Delaware corporation (9737); Eddie Bauer Fulfillment Services, Inc., a Delaware corporation (0882); Eddie Bauer Diversified Sales, LLC, a Delaware limited liability company (1567); Eddie Bauer Services, LLC, an Ohio limited liability company (disregarded), Eddie Bauer International Development, LLC, a Delaware limited liability company (1571); Eddie Bauer Information Technology, LLC, a Delaware limited liability company (disregarded); Financial Services Acceptance Corporation, a Delaware corporation (7532); and Spiegel Acceptance Corporation, a Delaware corporation (7253). The mailing address for Eddie Bauer Holdings, Inc. is 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004. On or about the Petition Date, Eddie Bauer of Canada, Inc. and Eddie Bauer Customer Services, Inc., affiliates of the Debtors, commenced a proceeding before the Superior Court of Justice, Commercial List, for the Judicial District of Ontario, for a plan of compromise or arrangement under the Companies' Creditors Arrangement Act.

2. The statutory bases for the relief requested herein are Bankruptcy Code sections 105 and 362.

## BACKGROUND

3. On June 17, 2009 (the "**Petition Date**"), Eddie Bauer Holdings, Inc. and each of its Debtor affiliates filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Debtors intend to continue in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. The Debtors have requested that these Chapter 11 Cases be consolidated for procedural purposes. As of the date hereof, no trustee, examiner or statutory committee has been appointed in these Chapter 11 Cases.

4. Subsequent to the commencement of these Chapter 11 Cases, the Debtors' two Canadian affiliates – Eddie Bauer of Canada, Inc. and Eddie Bauer Customer Services, Inc. (the "**Canadian Debtor Affiliates**") – will seek recognition of the Debtors' Chapter 11 Cases in a Canadian Court as "foreign proceedings" pursuant to Section 18.6 of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended. In addition to staying proceedings against the Canadian Debtor Affiliates in Canada, such recognition by the Canadian Court will allow certain orders of this Court to be in full force and effect in the same manner and in all respects as if they had been made by the Canadian Court. Due to the integrated management of the Canadian Debtor Affiliates with the Debtors' U.S. operations, as well as the role that the Canadian Debtor Affiliates play in the Debtors' overall prepetition debt structure, these Chapter 11 Cases will function as the main proceedings with respect to the Canadian Debtor Affiliates.

DB02:8312085.2

068417.1001

5. As further detailed in the First Day Declaration, the Debtors and the Canadian Debtor Affiliates[2] are a publicly traded general merchandise and specialty retailer that offers men's and women's outerwear, apparel, accessories and gear for an active outdoor lifestyle through catalogs, e-commerce sites and over 370 retail and outlet stores. The Debtors have 556 full-time, part-time, and temporary employees in their corporate headquarters, and 7,144 full-time, part-time, and temporary retail and distribution employees. The Canadian Affiliates have over 950 full-time, part-time, and temporary employees working in management, retail and customer service.

### THE PROPOSED 363 SALE

6. Due to (i) Debtors' and Debtors' lenders inability to agree upon the terms of a consensual restructuring, (ii) the Debtors' need to reduce debt load and interest expenses, and (iii) the Debtors' mounting concerns regarding the potential deterioration of their businesses – and accompanying degradation in value – stemming from rumors in the marketplace about the Debtors' liquidity and viability, the Debtors have determined that the value of their estates would be best maximized and preserved through a sale process (the "**Sale**"). Therefore, the Debtors have negotiated a going-concern Sale of their businesses and assets (the "**Assets**") to Rainier Holdings LLC as the stalking horse bidder (the "**Stalking Horse Bidder**") pursuant to an asset purchase agreement and commenced these Chapter 11 Cases to implement the Sale pursuant to Section 363 of the Bankruptcy Code, subject to a competitive Sale process and the solicitation of higher and/or otherwise better offers. The Debtors believe that unless the Sale is expeditiously consummated, whether to the proposed Stalking Horse Bidder or to a purchaser submitting a

---

[2] The Debtors also have a non-debtor affiliate located in Hong Kong named Pacific NW Sourcing Co. This affiliate was created in 2008 to act as a purchasing agent in Asia. However, it is not currently fully operational, has no assets and has few, nominal liabilities.

higher or otherwise better offer, there will be significant value deterioration. Consequently, the Debtors have determined that it is in the best interest of their estates, creditors and other parties-in-interest to move forward with the Sale process.

7. The events leading up to the Petition Date and the Sale and the facts and circumstances supporting the relief requested herein are more fully set forth in the First Day Declaration.

8. On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

9. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or official committee of unsecured creditors has been appointed in the Debtors' cases.

10. Simultaneous with the filing of this Motion, the Debtors have sought an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") that would provide for the joint administration of these cases and for consolidation for procedural purposes only.

A. **Debtors' Corporate Structure and Business**

11. A description of the Debtors' corporate structure and businesses and the events leading up to the chapter 11 cases are set forth in the First Day Declaration.[3]

B. **Canadian Proceedings**

12. On the date hereof, certain of the Debtors' Canadian affiliates (collectively, the "**Canadian Debtors**")[4] will file an application with the Superior Court of Justice, Commercial

---

[3] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

[4] The Canadian Debtors include the following entities: Eddie Bauer of Canada, Inc. and Eddie Bauer Customer Services, Inc.

4

List, for the Judicial District of Ontario (the "**Canadian Court**") under the Companies' Creditors Arrangement Act (Canada) (the "**CCAA**"), seeking relief from their creditors (collectively, the "**Canadian Proceedings**"). The Canadian Debtors will continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

### RELIEF REQUESTED

13. In order to facilitate the administration of the Canadian Proceedings and the Chapter 11 Cases (collectively, the Chapter 11 Cases and the Canadian Proceedings are referred to herein as the "**Insolvency Proceedings**"), the Debtors request that the Court enter an order, in substantially the form attached to this Motion as Exhibit A (the "**Proposed Form of Order**"), approving the proposed Cross-Border Protocol, in substantially the form attached to the Proposed Form of Order as Exhibit 1. The Canadian Debtors are simultaneously seeking approval of the proposed Cross-Border Protocol by the Canadian Court.

14. In light of the transnational nature of the Debtors' business and the fact that all management decisions regarding the Canadian Debtors are made by the Debtors' officers and directors in the United States (the "**Management Team**"), the Debtors submit that it is necessary to implement a cross-border protocol between this Court and the Canadian Court (collectively, the "**Courts**") to address certain issues that are anticipated to arise in coordinating the Insolvency Proceedings.

15. Specifically, a cross-border protocol is needed to ensure that: (i) the Insolvency Proceedings are coordinated to avoid inconsistent, conflicting or duplicative rulings by the Courts; (ii) all parties in interest are provided sufficient notice of key issues in both Insolvency Proceedings; (iii) the substantive rights of all parties in interest are protected; and (iv) the jurisdictional integrity of the Courts is preserved. The Cross-Border Protocol is designed to achieve these objectives by implementing a framework of general principles and timing

considerations to address the basic administrative and procedural issues arising out of the cross-border nature of the Insolvency Proceedings. Such coordination is essential and should, among other things, maximize the efficiency of the Insolvency Proceedings, reduce the costs associated therewith, and avoid duplication of effort and the possibility of conflicting rulings by the Courts.

16. The Cross-Border Protocol provides that it shall not divest or diminish the independent jurisdiction of this Court over the Chapter 11 Cases or of the Canadian Court over the Canadian Proceedings. In particular, nothing in the Cross-Border Protocol shall be construed to, among other things, (a) require this Court to take any action inconsistent with the laws of the United States, (b) require the Canadian Court to take any action inconsistent with the laws of Canada, (c) require the Debtors or any estate professionals to take any action, or refrain from taking any action, that would result in a breach of duty imposed on them by applicable law, (d) authorize any action that otherwise requires the specific approval of this Court, except to the extent such action is specifically provided for in the Cross-Border Protocol as approved by this Court, or (e) preclude the Debtors or any party in interest from asserting such party's substantive rights under the applicable laws of the United States, Canada, or any other jurisdiction.

## APPLICABLE AUTHORITY

17. The relief requested herein is authorized under the Court's general equitable powers, which are codified in section 105(a) of the Bankruptcy Code. Under section 105(a), the court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The purpose of section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy, ¶ 105.01, at 105-6 (15th ed. rev.). The Cross-Border Protocol provides a necessary and appropriate means for communication between the two Courts and it provides a framework for coordination of the Insolvency

Proceedings. Such communication and coordination will prove beneficial to the administration of both the Chapter 11 Cases and the Canadian Proceedings.

18. A number of courts, in this District and elsewhere, have authorized similar protocols for managing cross-border insolvency proceedings. See, e.g., In re Smurfit-Stone Container Corporation, Case No. 09-10235 (BLS) (Bankr. D. Del March 12, 2009); In re Nortel Networks Inc., Case No. 09-10138 (KG) (Bankr. D. Del. Jan. 14, 2009); In re Progressive Molded Prods., Case No. 08-11253 (KJC) (Bankr. D. Del. 2008 July 14, 1008); In re Quebecor World (USA) Inc., Case No. 08-10152 (Bankr. S.D.N.Y. Apr. 8, 2008); In re Pope & Talbot, Inc., Case No. 07-11738 (CSS) (Bankr. D. Del. 2007 Dec. 14, 2007). Accordingly, the Debtors submit that there is ample authority and precedent for granting the relief requested herein.

### NOTICE

19. No trustee, examiner or creditors' committee has been appointed in the Chapter 11 Cases. The Debtors have provided notice of this Motion to: (a) the United States Trustee for the District of Delaware; (b) counsel to administrative agent under the prepetition term loan facility; (c) counsel to the steering committee for the prepetition term lenders; (d) counsel to agent under the prepetition revolving credit facility; (e) counsel for the indenture trustee for the $75 million 5.25% convertible senior notes due 2014; and (f) the creditors listed on the Debtors' consolidated list of 30 largest unsecured creditors, as filed with the chapter 11 petitions. In light of the nature of the relief requested, the Debtors submit that no further notice is required or needed under the circumstances.

20. A copy of the Motion is available on the Court's website: www.deb.uscourts.gov. Additional copies of the Motion are available on the website of the Debtors' proposed claims, noticing, soliciting and balloting agent, Kurtzman Carson Consultants, at www.kccllc.net/eddiebauer or can be requested by calling (866) 967-1781.

## NO PRIOR REQUEST

21. The Debtors have not previously sought the relief requested herein from this or any other Court in the United States.

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially the form attached hereto as Exhibit A, (i) approving the Cross-Border Protocol and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: June 17, 2009
Wilmington, Delaware

Respectfully Submitted,

*/s/ Michael R. Nestor*

Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

David S. Heller
Josef S. Athanas
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

-and-

Heather L. Fowler
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, California 90071-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
PROPOSED ATTORNEYS FOR DEBTORS AND
DEBTORS-IN-POSSESSION

8

DB02:8312085.2                                                                                                              068417.1001