**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER HOLDINGS, INC., *et al.*,[1] | Case No. _____ |
| Debtors. | [Joint Administration Pending] |

## ORDER APPROVING CROSS-BORDER INSOLVENCY PROTOCOL

Upon consideration of the Motion[2] of the above-captioned Debtors for entry of an order approving that certain cross-border insolvency protocol attached hereto as Exhibit A (the "**Cross-Border Protocol**"); upon consideration of the First Day Declaration; and the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and (c) notice of the Motion was due and proper under the circumstances and no other or further notice need be given; and a hearing having been held to consider the relief requested in the Motion and upon the record of the hearing and all of the proceedings had before the Court; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors; and after due deliberation, and good and sufficient cause appearing therefore, it is hereby

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Eddie Bauer Holdings, Inc., a Delaware corporation (2352); Eddie Bauer, Inc., a Delaware corporation (9737); Eddie Bauer Fulfillment Services, Inc., a Delaware corporation (0882); Eddie Bauer Diversified Sales, LLC, a Delaware limited liability company (1567); Eddie Bauer Services, LLC, an Ohio limited liability company (disregarded), Eddie Bauer International Development, LLC, a Delaware limited liability company (1571); Eddie Bauer Information Technology, LLC, a Delaware limited liability company (disregarded); Financial Services Acceptance Corporation, a Delaware corporation (7532); and Spiegel Acceptance Corporation, a Delaware corporation (7253). The mailing address for Eddie Bauer Holdings, Inc. is 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004. On or about the Petition Date, Eddie Bauer of Canada, Inc. and Eddie Bauer Customer Services, Inc., affiliates of the Debtors, commenced a proceeding before the Superior Court of Justice, Commercial List, for the Judicial District of Ontario, for a plan of compromise or arrangement under the Companies' Creditors Arrangement Act.

[2] Capitalized terms used but not defined herein have the meanings assigned to such terms in the Motion.

ORDERED, ADJUDGED, AND DECREED that:

1.     The Motion is granted.

2.     The Cross-Border Protocol, attached hereto as <u>Exhibit 1</u>, is hereby approved.

3.     The Debtors are hereby authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of this Order.

4.     This Court shall retain jurisdiction to hear and determine all matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Order.

Dated:_____, 2009
      Wilmington, Delaware

_____
United States Bankruptcy Judge

DB02:8312085.2                                            068417.1001

# EXHIBIT 1 TO PROPOSED FORM OF ORDER

## Cross-Border Protocol

# CROSS-BORDER INSOLVENCY PROTOCOL

This cross-border insolvency protocol ("**Protocol**") shall govern the conduct of all parties in interest in the Insolvency Proceedings (as defined below). The Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases (the "**Guidelines**") attached as Schedule "A" hereto, shall be incorporated by reference and form part of this Protocol. Where there is any discrepancy between this Protocol and the Guidelines, this Protocol shall prevail.

## A. Background

1. Eddie Bauer Canada, Inc. and Eddie Bauer Customer Services Inc. (collectively, the "**Canadian Debtors**") have applied for protection from their creditors in Canada pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (the "**CCAA**") (the cases commenced under the CCAA by the Canadian Debtors, the "**Canadian Proceedings**") in the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**"). The Canadian Court has issued an "initial order" (the "**CCAA Initial Order**") pursuant to which it, *inter alia*, granted the application of the Canadian Debtors for protection under the CCAA, imposed a stay of all proceedings against the Canadian Debtors and their property in Canada, created certain liens, appointed RSM Richter Inc. as the monitor (the "**Monitor**") in the Canadian Proceedings, and set forth certain other limitations and procedures for all parties in interest in the Canadian Proceedings. The Honourable Justice Morawetz presides over the Canadian Proceedings.

2.      Eddie Bauer Holdings, Inc. ("**EBHI**") and Eddie Bauer, Inc., the parent company of the Canadian Debtors, and certain of their subsidiaries and affiliates[1] (collectively, the "**U.S. Debtors**") have commenced reorganization cases (collectively, the "**U.S. Proceedings**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware ("**U.S. Court**"), and such cases have been consolidated for procedural purposes only under Case No. ⊛. The Honourable Judge ⊛ presides over the U.S. Proceedings.  The Debtors continue to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  None of the U.S. Debtors or Canadian Debtors are applicants in both the U.S. Proceedings and the Canadian Proceedings.

3.      For convenience, (a) the U.S. Debtors and the Canadian Debtors shall collectively be referred to herein as the "**Debtors**", (b) the U.S. Proceedings and the Canadian Proceedings shall collectively be referred to herein as the "**Insolvency Proceedings**", (c) the U.S. Court and the Canadian Court shall collectively be referred to herein as the "**Courts**", (d) the official committee of unsecured creditors appointed in the U.S. Proceedings shall be referred to herein as the "**Committee**", (e) any estate representative appointed in the U.S. Proceedings, including the Committee and any examiner or trustee appointed pursuant to section 1104 of the Bankruptcy Code shall collectively be referred to herein as the "**U.S. Representatives**", (f) the Monitor and its respective officers, directors, employees, counsel and agents, wherever located shall be collectively referred to herein as the "**Monitor Parties**", (g) the Monitor Parties and any other estate representatives appointed in the Canadian Proceedings shall collectively be referred to

---

[1] Namely, Eddie Bauer Services, LLC; Eddie Bauer International Development, LLC; Eddie Bauer Information Technology, LLC; Financial Services Acceptance Corporation and Spiegel Acceptance Corporation.

herein as the "**Canadian Representatives**", and (h) the U.S. Representatives and the Canadian Representatives shall collectively be referred to herein as the "**Representatives**".

## B. <u>Purpose and Goals</u>

4.      While the Insolvency Proceedings are pending in the United States and Canada, the implementation of basic administrative procedures is necessary to coordinate certain activities therein, to effectuate an orderly and efficient administration of the Insolvency Proceedings, and to best maintain the Courts' respective independent jurisdiction and to give effect to the doctrine of comity.  The Debtors have drafted this Protocol to promote the following mutually desirable goals and objectives in the Insolvency Proceedings:

(a)      harmonize and coordinate activities between the Courts in the Insolvency Proceedings;

(b)      promote and facilitate the fair, open, orderly, and efficient administration of the Insolvency Proceedings to, among other things, maximize the efficiency of same, reduce the costs associated therewith, and avoid the duplication of efforts, for the benefit of all of the Debtors' creditors, their estates, and other interested parties, wherever located;

(c)      honor the respective independence and integrity of the Courts and all other courts and tribunals of the United States and Canada;

(d)      promote international cooperation and respect for comity among the Courts, the Debtors, the Representatives, and all creditors and other interested parties in the Insolvency Proceedings; and

(e)      implement a framework of general principles to address certain issues arising out of the cross-border nature of the Insolvency Proceedings.

## C.   Comity and Independence of the Courts

5.     The approval and implementation of this Protocol shall not divest or diminish the U.S. Court's and the Canadian Court's respective independent jurisdiction over the subject matter of the U.S. Proceedings and the Canadian Proceedings, respectively.   By approving and implementing this Protocol, neither the U.S. Court, the Canadian Court, the Debtors, the Representatives, nor any creditor of the Debtors or other interested party in the Insolvency Proceedings, shall be deemed to have approved or engaged in any infringement on the sovereignty of either the United States or Canada.

6.     The U.S. Court shall have sole and exclusive jurisdiction and power over all aspects of the U.S. Proceedings.  The Canadian Court shall have sole and exclusive jurisdiction and power over all aspects of the Canadian Proceedings.  In accordance with the principles of comity and judicial independence, nothing contained herein shall be construed to:

(a)    increase, decrease, or otherwise modify the independence, sovereignty, or jurisdiction of the U.S. Court, the Canadian Court, or any other court or tribunal in the United States or Canada, including, but not limited to, the ability of any such court or tribunal to provide appropriate relief under applicable law on an *ex parte* or "limited notice" basis;

(b)    require the U.S. Court to take any action that is inconsistent with its obligations under the laws of the United States;

(c)    require the Canadian Court to take any action that is inconsistent with its obligations under the laws of Canada;

(d)    require the Debtors or the Representatives to take any action or refrain from taking any action that would result in a breach of any duty imposed on such parties by any applicable law;

(e)     authorize any action that requires the specific approval of one or both of the Courts under the Bankruptcy Code or the CCAA after appropriate notice and hearing (except to the extent that such action is specifically described in this Protocol); or

(f)     preclude the Debtors, the Representatives, the Office of the United States Trustee (the "**U.S. Trustee**"), any creditor, or any other party-in-interest from asserting such party's substantive rights under the applicable laws of the United States, Canada or any other jurisdiction including, without limitation, the rights of interested parties or affected persons to appeal from the decisions taken by one or both of the Courts.

7.     The Debtors, the Representatives, and their respective employees, members, agents, and professionals shall respect and comply with the independent, non-delegable duties imposed upon them by the Bankruptcy Code, the CCAA, and other applicable laws.

8.     Notwithstanding the foregoing, subject to the provisions of the U.S. Bankruptcy Code, the officers and directors of the U.S. Debtors shall have the primary responsibility for developing, confirming and implementing any plan of reorganization or any plan of liquidation and the overall restructuring strategy or sale strategy for all of the Debtors.

## D.     <u>Cooperation</u>

9.     To assist in the efficient and orderly administration of the Insolvency Proceedings, and in recognition of the fact that any of the Debtors may be creditors of any of the other Debtors' estates, the Debtors shall, where appropriate, (i) cooperate with each other in connection with any actions they may take in the U.S. Court and the Canadian Court and (ii) take any other appropriate steps to coordinate the administration of the Insolvency Proceedings for the benefit of the Debtors' respective estates and stakeholders.

10.     To harmonize and coordinate the administration of the Insolvency Proceedings, the U.S. Court and the Canadian Court each may coordinate activities and consider whether it is appropriate to defer to the judgment of the other Court. In addition:

    (a)    the U.S. Court and the Canadian Court may communicate with one another, with or without counsel present, with respect to any procedural or substantive matter relating to the Insolvency Proceedings;

    (b)    if the issue of the proper jurisdiction or Court to determine an issue is raised by any interested party in either the Canadian Proceedings or the U.S. Proceedings with respect to a motion or application that has been filed in either Court, the Court before which such motion or application was initially filed may contact the other Court to determine an appropriate process by which to determine the issue of jurisdiction. Such process shall be subject to submissions by the Debtors, the U.S. Trustee, the Representatives, and any interested party prior to any determination on the issue of jurisdiction being made by either Court;

    (c)    the Courts may, but are not obligated to, coordinate activities in the Insolvency Proceedings such that the subject matter of any particular action, suit, request, application, contested matter, or other proceeding can be determined in a single Court; and

    (d)    the Courts may, but are not required to, conduct joint hearings (each, a "**Joint Hearing**") with respect to any cross-border matter in which both Courts consider such a Joint Hearing to be necessary or advisable and, in particular, to facilitate or coordinate proper and efficient conduct of the Insolvency Proceedings. With respect to any such Joint Hearing, unless otherwise ordered by both Courts, the following procedures will be followed:

        (i)    a telephone or video link shall be established so that each Court will be able to simultaneously hear the proceedings in the other Court;

(ii)     submissions, motions, or applications (collectively, the "**Pleadings**") by any party that are or become the subject of a Joint Hearing shall be initially filed only with the Court in which such party is appearing and seeking relief. Promptly after the scheduling of any Joint Hearing, the party submitting such Pleading to one Court shall file courtesy copies with the other Court. In any event, Pleadings seeking relief from both Courts shall be filed with both Courts;

(iii)    any party intending to rely on written evidentiary materials (collectively, the "**Evidentiary Materials**") in support of a submission to either Court in connection with any Joint Hearing shall submit such Evidentiary Materials in identical form to each Court. To the fullest extent possible, the Evidentiary Materials filed in each Court shall be consistent with the procedural and evidentiary rules and requirements of each Court;

(iv)    if a party has not previously appeared in or attorned to the jurisdiction of either Court, it shall be entitled to submit Pleadings or Evidentiary Materials in connection with the Joint Hearings without, by the act of such filing alone, being deemed to have attorned to the jurisdiction of such Court, so long as such party does not request any affirmative relief from such Court;

(v)     the Judge of the U.S. Court and Justice of the Canadian Court who will hear the Joint Hearing may communicate with each other in advance of such Joint Hearing, with or without counsel being present, to: (1) establish guidelines for the orderly submission of Pleadings, Evidentiary Materials and any other papers, and for the rendering of decisions; and (2) address any related procedural, administrative or preliminary matters; and

(vi)    the Judge of the U.S. Court and Justice of the Canadian Court who will hear the Joint Hearing may communicate with each other after such Joint Hearing, with or without counsel being present, for the purposes of: (1) determining whether consistent rulings can be made by both Courts; (2)

coordinating the terms of the Courts' respective rulings; and (3) addressing any related procedural or administrative matters.

11.     Notwithstanding the terms of paragraphs 9 and 10 above, this Protocol recognizes that the U.S. Court and Canadian Court are independent courts.  Accordingly, although the Courts will seek to cooperate and coordinate with each other in good faith to the greatest extent possible, either of the Courts may at any time exercise its independent jurisdiction and authority with respect to: (i) the matters presented to and properly before such Court and (ii) the conduct of the parties appearing in such matters.

12.     If one Court has jurisdiction over a matter the determination of which requires the application of the law of the jurisdiction of the other Court, such Court may, without limitation, hear expert evidence on such law or seek the written advice of the other Court, which written advice will be made available to all parties in interest.

**E.      Recognition of Stays of Proceedings**

13.     The Canadian Court hereby recognizes the validity of the stay of proceedings and actions against the U.S. Debtors and their property under section 362 of the Bankruptcy Code (the "**U.S. Stay**").  In implementing the terms of this paragraph, the Canadian Court may consult with the U.S. Court regarding: (i) the interpretation and application of the U.S. Stay and any orders of the U.S. Court modifying or granting relief from the U.S. Stay; and (ii) the enforcement of the U.S. Stay in Canada.

14.     The U.S. Court hereby recognizes the validity of the stay of proceedings and actions against the Canadian Debtors and their property under the CCAA and the Initial Order (the "**Canadian Stay**").  In implementing the terms of this paragraph, the U.S. Court may consult

with the Canadian Court regarding: (i) the interpretation and applicability of the Canadian Stay and any orders of the Canadian Court modifying or granting relief from the Canadian Stay; and (ii) the enforcement of the Canadian Stay in the United States.

15.     Nothing contained herein shall affect or limit the Debtors' or other parties' rights to assert the applicability or non-applicability of the U.S. Stay or the Canadian Stay to any particular proceeding, property, asset, activity or other matter, wherever pending or located.

**F.     The Right to Appear and Be Heard**

16.     The Debtors, their creditors, the Representatives, and other interested parties in the Insolvency Proceedings, including, without limitation, the U.S. Trustee, any other committee that may be appointed by the U.S. Trustee, and the professionals and advisors for each of the foregoing, shall have the right and standing: (i) to appear and to be heard in either the U.S. Court or Canadian Court in the U.S. Proceedings or Canadian Proceedings, respectively, to the same extent as creditors and other interested parties domiciled in the forum country, subject to any local rules or regulations generally applicable to all parties appearing in the forum; and (ii) to file notices of appearance or other papers with the clerk of the U.S. Court or the Canadian Court in respect of the U.S. Proceedings or Canadian Proceedings, respectively; provided, however, that any appearance or filing may subject a creditor or interested party to the jurisdiction of the Court in which the appearance or filing occurs; provided further, that an appearance by the Committee in the Canadian Proceedings shall not form a basis for personal jurisdiction in Canada over the members of the Committee.  Notwithstanding the foregoing, and in accordance with the policies set forth above, including, *inter alia*, paragraph 10 above: (i) the Canadian Court shall have jurisdiction over the U.S. Representatives solely with respect to the particular matters as to which the U.S. Representatives appear before the Canadian Court; and (ii) the U.S. Court shall have

jurisdiction over the Canadian Representatives solely with respect to the particular matters as to which the Canadian Representatives appear before the U.S. Court.

## G.    Retention and Compensation of Representatives and Professionals

17.    The Canadian Representatives shall be subject to the sole and exclusive jurisdiction of the Canadian Court with respect to all matters including:  (i) such Canadian Representatives' tenure in office; (ii) the retention and compensation of such Canadian Representatives; (iii) such Canadian Representatives' liability, if any, to any person or entity, including the Canadian Debtors and any third parties, in connection with the Insolvency Proceedings; and (iv) the hearing and determination of any other matters relating to the Canadian Representatives arising in the Canadian Proceedings under the CCAA or other applicable Canadian law.  The Canadian Representatives, their Canadian and U.S. counsel and any other professionals retained therefor shall not be required to seek approval of their retention, compensation or reimbursement of out-of-pocket expenses in the U.S. Court.  Additionally, the Canadian Representatives, their counsel and such other Canadian professionals: (a) shall be compensated for their services solely in accordance with the CCAA, the CCAA Initial Order and other applicable laws of Canada or orders of the Canadian Court; and (b) shall not be required to seek approval of their compensation in the U.S. Court.

18.    The Monitor Parties shall be entitled to the same protections and immunities in the United States as those granted to them under the CCAA and the CCAA Initial Order.  In particular, except as otherwise provided in any subsequent order entered in the Canadian Proceedings, the Monitor Parties shall incur no liability or obligations as a result of the CCAA Initial Order, the appointment of the Monitor, the carrying out of its duties or the provisions of

the CCAA and the CCAA Initial Order by the Monitor Parties, except any such liability arising from actions of the Monitor Party constituting gross negligence or wilful misconduct.

19.     Any U.S. Representatives shall be subject to the sole and exclusive jurisdiction of the U.S. Court with respect to all matters, including: (i) such U.S. Representative's appointment and tenure in office; (ii) the compensation and reimbursement of out-of-pocket costs of such U.S. Representative: (iii) such U.S. Representative's liability, if any, to any person or entity, including the Debtors and any third parties, in connection with the Insolvency Proceedings; and (iv) the hearing and determination of any other matters relating to the U.S. Representatives arising in the U.S. Proceedings under the Bankruptcy Code or other applicable laws of the United States. The U.S. Representatives, their counsel and any other professionals retained therefor shall not be required to seek approval of their retention in the Canadian Court. Additionally, the U.S. Representatives, their counsel and such other professionals: (i) shall be compensated for their services solely in accordance with the Bankruptcy Code and other applicable laws of the United States or orders of the U.S. Court; and (ii) shall not be required to seek approval of their compensation in the Canadian Court.

20.     Any Canadian professionals, including, without limitation, the Canadian counsel retained by the Debtors (collectively, the "**Canadian Professionals**"), shall be subject to the sole and exclusive jurisdiction of the Canadian Court. Accordingly, the Canadian Professionals: (i) shall be subject to the procedures and standards for the retention, compensation and reimbursement of out-of-pocket costs of professionals that are applicable in the Canadian Court under the CCAA, the CCAA Initial Order and any other applicable Canadian law or orders of the Canadian Court; and (ii) shall not be required to seek approval of their retention, compensation, or reimbursement of out-of-pocket costs in the U.S. Court.

21.     Any U.S. professionals, including, without limitation, counsel and financial advisors retained by the Debtors in the United States (collectively, the "**U.S. Professionals**") shall be subject to the sole and exclusive jurisdiction of the U.S. Court.   Accordingly, the U.S. Professionals:   (i) shall be subject to the procedures and standards for retention and compensation applicable in the U.S. Court under the Bankruptcy Code and any other applicable laws of the United States or orders of the U.S. Court; and (ii) shall not be required to seek approval of their retention or compensation in the Canadian Court.

## H.     Notice Procedures

22.     Notice of any motion, application or other Pleading or paper filed in one or both of the Insolvency Proceedings involving or relating to matters addressed by this Protocol and notice of any related hearings or other proceedings shall be given by appropriate means (including, where circumstances warrant, by courier, facsimile, e-mail or other electronic forms of communication) to the following:   (i) all creditors and other interested parties, including the Committee, in accordance with the practice of the jurisdiction where the papers are filed or the proceedings are to occur; and (ii) to the extent not otherwise entitled to receive notice under clause (i) of this paragraph 22, counsel to the Debtors, the U.S. Trustee, the Monitor, Bank of America, N.A. and such other parties as may be designated by either of the Courts from time to time. Notice in accordance with this paragraph shall be given by the party otherwise responsible for effecting notice in the jurisdiction where the underlying papers are filed or the proceedings are to occur. In addition to the foregoing, upon request, the U.S. Debtors or the Canadian Debtors shall provide the U.S. Court or the Canadian Court, as the case may be, with copies of all or any orders, decisions, opinions or similar papers issued by the other Court in the Insolvency Proceedings.   When any cross-border issues or matters addressed by this Protocol are to be

addressed before a Court, notice shall be provided in the manner and to the parties referred to herein.

## I.  **Effectiveness; Modification**

23.    This Protocol shall become effective only upon its approval by both the U.S. Court and the Canadian Court.

24.    This Protocol may not be supplemented, modified, terminated or replaced in any manner except upon the approval of both the U.S. Court and the Canadian Court after notice and a hearing.  Notice of any legal proceedings to supplement, modify, terminate or replace this Protocol shall be given in accordance with paragraph 22 above.

## J.  **Procedures for Resolving Disputes under this Protocol**

25.    Disputes relating to the terms, intent or application of this Protocol may be addressed by interested parties to either the U.S. Court, the Canadian Court or both Courts upon notice in accordance with paragraph 22 above.  In rendering a determination in any such dispute, the Court to which the issue is addressed:  (i) shall consult with the other Court; and (ii) may, in its sole and exclusive discretion, either:  (a) render a binding decision after such consultation; (b) defer to the determination of the other Court by transferring the matter, in whole or in part, to such other Court; or (c) seek a Joint Hearing of both Courts in accordance with paragraph 10 above.  Notwithstanding the foregoing, in making a determination under this paragraph, each Court shall give due consideration to the independence, comity and inherent jurisdiction of the other Court established under existing law.

26.     In implementing the terms of this Protocol, the U.S. Court and the Canadian Court may, in their sole, respective discretion, provide advice or guidance to each other with respect to legal issues in accordance with the following procedures:

(a)     the U.S. Court or the Canadian Court, as applicable, may determine that such advice or guidance is appropriate under the circumstances;

(b)     the Court issuing such advice or guidance shall provide it to the other Court in writing;

(c)     copies of such written advice or guidance shall be served by the applicable Court in accordance with paragraph 22 above;

(d)     the Courts may jointly decide to invite the Debtors, the Committee, the Representatives, the U.S. Trustee and any other interested party to make submissions to the appropriate Court in response to or in connection with any written advice or guidance received from the other Court; and

(e)     the provisions of this paragraph 26 shall not be construed to restrict the ability of either Court to confer with the other Court as provided in paragraph 10 above whenever it deems it appropriate to do so.

## K.     <u>Preservation of Rights</u>

27.     Except as specifically provided herein, neither the terms of this Protocol nor any actions taken under this Protocol shall: (i) prejudice or affect the powers, rights, claims and defenses of the Debtors and their respective estates, the Representatives, the U.S. Trustee or any of the Debtors' creditors under applicable law, including the Bankruptcy Code, the CCAA and the orders of the Courts; or (ii) preclude or prejudice the rights of any person to assert or pursue such person's substantive rights against any other person under the applicable laws of Canada or the United States.

# SCHEDULE "A"

**(Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases)**

## [ATTACHED]

# Guidelines
## Applicable to Court-to-Court Communications
### in Cross-Border Cases

*Introduction:*

One of the most essential elements of cooperation in cross-border cases is communication among the administrating authorities of the countries involved. Because of the importance of the courts in insolvency and reorganization proceedings, it is even more essential that the supervising courts be able to coordinate their activities to assure the maximum available benefit for the stakeholders of financially troubled enterprises.

These Guidelines are intended to enhance coordination and harmonization of insolvency proceedings that involve more than one country through communications among the jurisdictions involved. Communications by judges directly with judges or administrators in a foreign country, however, raise issues of credibility and proper procedures. The context alone is likely to create concern in litigants unless the process is transparent and clearly fair. Thus, communication among courts in cross-border cases is both more important and more sensitive than in domestic cases. These Guidelines encourage such communications while channeling them through transparent procedures. The Guidelines are meant to permit rapid cooperation in a developing insolvency case while ensuring due process to all concerned.

A Court intending to employ the Guidelines — in whole or part, with or without modifications — should adopt them formally before applying them. A Court may wish to make its adoption of the Guidelines contingent upon, or temporary until, their adoption by other courts concerned in the matter. The adopting

Court may want to make adoption or continuance conditional upon adoption of the Guidelines by the other Court in a substantially similar form, to ensure that judges, counsel, and parties are not subject to different standards of conduct.

The Guidelines should be adopted following such notice to the parties and counsel as would be given under local procedures with regard to any important procedural decision under similar circumstances. If communication with other courts is urgently needed, the local procedures, including notice requirements, that are used in urgent or emergency situations should be employed, including, if appropriate, an initial period of effectiveness, followed by further consideration of the Guidelines at a later time. Questions about the parties entitled to such notice (for example, all parties or representative parties or representative counsel) and the nature of the court's consideration of any objections (for example, with or without a hearing) are governed by the Rules of Procedure in each jurisdiction and are not addressed in the Guidelines.

The Guidelines are not meant to be static, but are meant to be adapted and modified to fit the circumstances of individual cases and to change and evolve as the international insolvency community gains experience from working with them. They are to apply only in a manner that is consistent with local procedures and local ethical requirements. They do not address the details of notice and procedure that depend upon the law and practice in each jurisdiction. However, the Guidelines represent approaches that are likely to be highly useful in achieving efficient and just resolutions of cross-border insolvency issues. Their use, with such modifications and under such circumstances as may be appropriate in a particular case, is therefore recommended.

## Guideline 1

Except in circumstances of urgency, prior to a communication with another Court, the Court should be satisfied that such a communication is consistent with all applicable Rules of Procedure in its country. Where a Court intends to apply these Guidelines (in whole or in part and with or without modifications), the Guidelines to be employed should, wherever possible, be formally adopted before they are applied. Coordination of Guidelines between courts is desirable and officials of both courts may communicate in accordance with Guideline 8(d) with regard to the application and implementation of the Guidelines.

## Guideline 2

A Court may communicate with another Court in connection with matters relating to proceedings before it for the purposes of coordinating and harmonizing proceedings before it with those in the other jurisdiction.

## Guideline 3

A Court may communicate with an Insolvency Administrator in another jurisdiction or an authorized Representative of the Court in that jurisdiction in connection with the coordination and harmonization of the proceedings before it with the proceedings in the other jurisdiction.

## Guideline 4

A Court may permit a duly authorized Insolvency Administrator to communicate with a foreign Court directly, subject to the approval of the foreign Court, or through an Insolvency Administrator in the other jurisdiction or through an autho-

rized Representative of the foreign Court on such terms as the Court considers appropriate.

### Guideline 5

A Court may receive communications from a foreign Court or from an authorized Representative of the foreign Court or from a foreign Insolvency Administrator and should respond directly if the communication is from a foreign Court (subject to Guideline 7 in the case of two-way communications) and may respond directly or through an authorized Representative of the Court or through a duly authorized Insolvency Administrator if the communication is from a foreign Insolvency Administrator, subject to local rules concerning ex parte communications.

### Guideline 6

Communications from a Court to another Court may take place by or through the Court:

(a) Sending or transmitting copies of formal orders, judgments, opinions, reasons for decision, endorsements, transcripts of proceedings, or other documents directly to the other Court and providing advance notice to counsel for affected parties in such manner as the Court considers appropriate;

(b) Directing counsel or a foreign or domestic Insolvency Administrator to transmit or deliver copies of documents, pleadings, affidavits, factums, briefs, or other documents that are filed or to be filed with the Court to the other Court in such fashion as may be appropriate and providing advance notice to counsel for affect-

ed parties in such manner as the Court considers appropriate;

(c) Participating in two-way communications with the other Court by telephone or video conference call or other electronic means, in which case Guideline 7 should apply.

### Guideline 7

In the event of communications between the Courts in accordance with Guidelines 2 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by either of the two Courts:

(a) Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b) The communication between the Courts should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of both Courts, should be treated as an official transcript of the communication;

(c) Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of either Court, and of any official transcript prepared from a recording should be filed as part of the record in the proceedings and made available to counsel for all parties in both

Courts subject to such Directions as to confidentiality as the Courts may consider appropriate; and

(d) The time and place for communications between the Courts should be to the satisfaction of both Courts. Personnel other than Judges in each Court may communicate fully with each other to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by either of the Courts.

### Guideline 8

In the event of communications between the Court and an authorized Representative of the foreign Court or a foreign Insolvency Administrator in accordance with Guidelines 3 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by the Court:

(a) Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b) The communication should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of the Court, can be treated as an official transcript of the communication;

(c) Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of the Court, and of any official tran-

script prepared from a recording should be filed as part of the record in the proceedings and made available to the other Court and to counsel for all parties in both Courts subject to such Directions as to confidentiality as the Court may consider appropriate; and

(d) The time and place for the communication should be to the satisfaction of the Court. Personnel of the Court other than Judges may communicate fully with the authorized Representative of the foreign Court or the foreign Insolvency Administrator to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by the Court.

### Guideline 9

A Court may conduct a joint hearing with another Court. In connection with any such joint hearing, the following should apply, unless otherwise ordered or unless otherwise provided in any previously approved Protocol applicable to such joint hearing:

(a) Each Court should be able to simultaneously hear the proceedings in the other Court.

(b) Evidentiary or written materials filed or to be filed in one Court should, in accordance with the Directions of that Court, be transmitted to the other Court or made available electronically in a publicly accessible system in advance of the hearing. Transmittal of such material to the other Court or its public availability in an electronic system should not subject the party filing the material in one Court to the jurisdiction of the other Court.

(c)   Submissions or applications by the representative of any party should be made only to the Court in which the representative making the submissions is appearing unless the representative is specifically given permission by the other Court to make submissions to it.

(d)   Subject to Guideline 7(b), the Court should be entitled to communicate with the other Court in advance of a joint hearing, with or without counsel being present, to establish Guidelines for the orderly making of submissions and rendering of decisions by the Courts, and to coordinate and resolve any procedural, administrative, or preliminary matters relating to the joint hearing.

(e)   Subject to Guideline 7(b), the Court, subsequent to the joint hearing, should be entitled to communicate with the other Court, with or without counsel present, for the purpose of determining whether coordinated orders could be made by both Courts and to coordinate and resolve any procedural or nonsubstantive matters relating to the joint hearing.

### Guideline 10

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, recognize and accept as authentic the provisions of statutes, statutory or administrative regulations, and rules of court of general application applicable to the proceedings in the other jurisdiction without the need for further proof or exemplification thereof.

## Guideline 11

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, accept that Orders made in the proceedings in the other jurisdiction were duly and properly made or entered on or about their respective dates and accept that such Orders require no further proof or exemplification for purposes of the proceedings before it, subject to all such proper reservations as in the opinion of the Court are appropriate regarding proceedings by way of appeal or review that are actually pending in respect of any such Orders.

## Guideline 12

The Court may coordinate proceedings before it with proceedings in another jurisdiction by establishing a Service List that may include parties that are entitled to receive notice of proceedings before the Court in the other jurisdiction ("Non-Resident Parties"). All notices, applications, motions, and other materials served for purposes of the proceedings before the Court may be ordered to also be provided to or served on the Non-Resident Parties by making such materials available electronically in a publicly accessible system or by facsimile transmission, certified or registered mail or delivery by courier, or in such other manner as may be directed by the Court in accordance with the procedures applicable in the Court.

## Guideline 13

The Court may issue an Order or issue Directions permitting the foreign Insolvency Administrator or a representative of creditors in the proceedings in the other jurisdiction or an authorized

Representative of the Court in the other jurisdiction to appear and be heard by the Court without thereby becoming subject to the jurisdiction of the Court.

## Guideline 14

The Court may direct that any stay of proceedings affecting the parties before it shall, subject to further order of the Court, not apply to applications or motions brought by such parties before the other Court or that relief be granted to permit such parties to bring such applications or motions before the other Court on such terms and conditions as it considers appropriate. Court-to-Court communications in accordance with Guidelines 6 and 7 hereof may take place if an application or motion brought before the Court affects or might affect issues or proceedings in the Court in the other jurisdiction.

## Guideline 15

A Court may communicate with a Court in another jurisdiction or with an authorized Representative of such Court in the manner prescribed by these Guidelines for purposes of coordinating and harmonizing proceedings before it with proceedings in the other jurisdiction regardless of the form of the proceedings before it or before the other Court wherever there is commonality among the issues and/or the parties in the proceedings. The Court should, absent compelling reasons to the contrary, so communicate with the Court in the other jurisdiction where the interests of justice so require.

## Guideline 16

Directions issued by the Court under these Guidelines are subject to such amendments, modifications, and extensions as

may be considered appropriate by the Court for the purposes described above and to reflect the changes and developments from time to time in the proceedings before it and before the other Court. Any Directions may be supplemented, modified, and restated from time to time and such modifications, amendments, and restatements should become effective upon being accepted by both Courts. If either Court intends to supplement, change, or abrogate Directions issued under these Guidelines in the absence of joint approval by both Courts, the Court should give the other Courts involved reasonable notice of its intention to do so.

### Guideline 17

Arrangements contemplated under these Guidelines do not constitute a compromise or waiver by the Court of any powers, responsibilities, or authority and do not constitute a substantive determination of any matter in controversy before the Court or before the other Court nor a waiver by any of the parties of any of their substantive rights and claims or a diminution of the effect of any of the Orders made by the Court or the other Court.