IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EDDIE BAUER HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-12099 (___)<br><br>Joint Administration Pending |

**MOTION OF THE DEBTORS FOR ENTRY OF AN INTERIM AND FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105(A) AND 366 (I) PROHIBITING UTILITY PROVIDERS FROM DISCONTINUING, ALTERING OR REFUSING UTILITY SERVICES, (II) DEEMING UTILITY PROVIDERS ADEQUATELY ASSURED OF FUTURE PERFORMANCE AND (III) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") file this motion (the "**Motion**") for entry of an interim order (the "**Interim Order**") and final order (the "**Final Order**"): (i) prohibiting Utility Providers (as defined herein) from altering, refusing or discontinuing service to, or discriminating against, the Debtors, (ii) deeming the Utility Providers adequately assured of future performance and (iii) establishing procedures for

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Eddie Bauer Holdings, Inc., a Delaware corporation (2352); Eddie Bauer, Inc., a Delaware corporation (9737); Eddie Bauer Fulfillment Services, Inc., a Delaware corporation (0882); Eddie Bauer Diversified Sales, LLC, a Delaware limited liability company (1567); Eddie Bauer Services, LLC, an Ohio limited liability company (disregarded), Eddie Bauer International Development, LLC, a Delaware limited liability company (1571); Eddie Bauer Information Technology, LLC, a Delaware limited liability company (disregarded); Financial Services Acceptance Corporation, a Delaware corporation (7532); and Spiegel Acceptance Corporation, a Delaware corporation (7253). The mailing address for Eddie Bauer Holdings, Inc. is 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004. On or about the Petition Date, Eddie Bauer of Canada, Inc. and Eddie Bauer Customer Services, Inc., affiliates of the Debtors, commenced a proceeding before the Superior Court of Justice, Commercial List, for the Judicial District of Ontario, for a plan of compromise or arrangement under the Companies' Creditors Arrangement Act.

determining adequate assurance of payment.[2] In support of this Motion, the Debtors respectfully state as follows:[3]

## JURISDICTION

1. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are Sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "**Bankruptcy Code**").

## BACKGROUND

3. On June 17, 2009 (the "**Petition Date**"), Eddie Bauer Holdings, Inc. and each of its Debtor affiliates filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Debtors intend to continue in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. The Debtors have requested that these Chapter 11 Cases be consolidated for procedural purposes. As of the date hereof, no trustee, examiner or statutory committee has been appointed in these Chapter 11 Cases.

4. Subsequent to the commencement of these Chapter 11 Cases, the Debtors' two Canadian affiliates – Eddie Bauer of Canada, Inc. and Eddie Bauer Customer Services, Inc. (the

---

[2] A copy of the Interim Order is attached hereto as Exhibit A, and a copy of the Final Order is attached hereto as Exhibit B.

[3] The facts and circumstances supporting this Motion are set forth in the Declaration of Marvin Edward Toland of Eddie Bauer Holdings, Inc., in Support of First Day Motions (the "**First Day Declaration**") filed contemporaneously herewith.

"**Canadian Debtor Affiliates**") – will seek recognition of the Debtors' Chapter 11 Cases in a Canadian Court as "foreign proceedings" pursuant to Section 18.6 of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended. In addition to staying proceedings against the Canadian Debtor Affiliates in Canada, such recognition by the Canadian Court will allow certain orders of this Court to be in full force and effect in the same manner and in all respects as if they had been made by the Canadian Court. Due to the integrated management of the Canadian Debtor Affiliates with the Debtors' U.S. operations, as well as the role that the Canadian Debtor Affiliates play in the Debtors' overall prepetition debt structure, these Chapter 11 Cases will function as the main proceedings with respect to the Canadian Debtor Affiliates.

5. As further detailed in the First Day Declaration, the Debtors and the Canadian Debtor Affiliates[4] are a publicly traded general merchandise and specialty retailer that offers men's and women's outerwear, apparel, accessories and gear for an active outdoor lifestyle through catalogs, e-commerce sites and over 370 retail and outlet stores. The Debtors have 556 full-time, part-time, and temporary employees in their corporate headquarters, and 7,144 full-time, part-time, and temporary retail and distribution employees. The Canadian Affiliates have over 950 full-time, part-time, and temporary employees working in management, retail and customer service.

## THE PROPOSED 363 SALE

6. Due to (i) Debtors' and Debtors' lenders inability to agree upon the terms of a consensual restructuring, (ii) the Debtors' need to reduce debt load and interest expenses, and (iii) the Debtors' mounting concerns regarding the potential deterioration of their businesses –

---

[4] The Debtors also have a non-debtor affiliate located in Hong Kong named Pacific NW Sourcing Co. This affiliate was created in 2008 to act as a purchasing agent in Asia. However, it is not currently fully operational, has no assets and has few, nominal liabilities.

and accompanying degradation in value – stemming from rumors in the marketplace about the Debtors' liquidity and viability, the Debtors have determined that the value of their estates would be best maximized and preserved through a sale process (the "**Sale**"). Therefore, the Debtors have negotiated a going-concern Sale of their businesses and assets (the "**Assets**") to Rainier Holdings LLC as the stalking horse bidder (the "**Stalking Horse Bidder**") pursuant to an asset purchase agreement and commenced these Chapter 11 Cases to implement the Sale pursuant to Section 363 of the Bankruptcy Code, subject to a competitive Sale process and the solicitation of higher and/or otherwise better offers. The Debtors believe that unless the Sale is expeditiously consummated, whether to the proposed Stalking Horse Bidder or to a purchaser submitting a higher or otherwise better offer, there will be significant value deterioration. Consequently, the Debtors have determined that it is in the best interest of their estates, creditors and other parties-in-interest to move forward with the Sale process.

7. The events leading up to the Petition Date and the Sale and the facts and circumstances supporting the relief requested herein are more fully set forth in the First Day Declaration.

## THE UTILITY PROVIDERS

8. In the operation of their facilities, the Debtors incur utility expenses for, among other things, water, sewer service, electricity, natural gas, propane, telephone and internet service (collectively, the "**Utility Services**") in the ordinary course of business. These Utility Services are provided by approximately 400 providers (collectively, the "**Utility Providers**"), including

those listed on Exhibit 1 (the "**Utility Service List**")[5] annexed to Exhibit A hereto. Due to the burdensome task of paying many different providers on more than 1,100 accounts, the Debtors outsource the servicing and payment of a large majority of their accounts with the Utility Providers through a Solutions Agreement with Prenova, Inc. ("**Prenova**") which provides cost savings arrangements to the Debtors. The Debtors also make certain other payments to Utility Providers outside the Prenova Agreement. On average, the Debtors spend approximately $482,000 each month on Utility Services that they pay through Prenova, and approximately $742,000 on other utilities, including telecom, paid directly by the Debtors. The Debtors have historically paid the Utility Providers promptly and in full. As of the Petition Date, the Debtors estimate they owe $654,000[6] in past due amounts to certain Utility Providers. In light of this, the Debtors believe that the proposed Adequate Assurance Deposit (as defined below) is more than sufficient to provide the Utility Providers with adequate assurance of payment.

9. Uninterrupted Utility Services are essential to the Debtors' ongoing business operations and, therefore, to the success of the Sale. Should the Utility Providers refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted. In particular, such discontinuation would irreparably disrupt the Debtors' ability to operate their facilities, which would negatively affect customers, cash flow and, ultimately, value and creditor recoveries. Simply put, without Utility Services, the Debtors' operations will shut down. It is, therefore, critical that Utility Services continue uninterrupted.

---

[5] Although the Debtors believe that Exhibit 1 encompasses all entities that could qualify as Utility Providers, the Debtors reserve the right, without further order of the Court, to supplement the list if any Utility Provider has been omitted. Additionally, the listing of an entity on Exhibit 1 is not an admission that any particular entity is a utility within the meaning of Section 366 of the Bankruptcy Code, and the Debtors reserve the right to contest any such characterization in the future.

[6] This amount is based on half an average month's utility bill for the Debtors.

## RELIEF REQUESTED

10. Section 366(a) of the Bankruptcy Code prevents utility companies from discontinuing, altering or refusing service to a debtor during the first twenty (20) days of a bankruptcy case. However, thirty (30) days from the petition date, a utility company may discontinue its services, pursuant to Section 366(c)(2) of the Bankruptcy Code, if a debtor has not furnished adequate assurance of payment.

11. Therefore, the Debtors seek entry of an Interim Order, in substantially the form attached hereto as <u>Exhibit A</u>, and the entry of a Final Order, in substantially the form attached hereto as <u>Exhibit B</u>, (i) prohibiting Utility Providers from altering, refusing, or discontinuing service to, or discriminating against, the Debtors, including the making of demands for security deposits or accelerated payment terms, on account of prepetition invoices or on account of any perceived inadequacy of the Debtors' proposed adequate assurance or the commencement of these Chapter 11 Cases, (ii) deeming the Utility Providers adequately assured of future performance within the meaning of Section 366 of the Bankruptcy Code, based, inter alia, on the Debtors' establishment of a segregated account containing $654,000, an amount approximately equal to the cost of half a month of Utility Services, which may be adjusted by the Debtors to account for the termination of Utility Services by the Debtors on account of any closed business locations and (iii) establishing procedures for determining additional adequate assurance of future payment and authorizing the Debtors to provide adequate assurance of future payment to the Debtors' Utility Providers.

## BASIS FOR RELIEF

12. Congress enacted Section 366 of the Bankruptcy Code to protect debtors from utility service cutoffs upon a bankruptcy filing while, at the same time, providing utility

6

DB02:8312167.1                                                                                                                         068417.1001

companies or providers with adequate assurance that the debtors will pay for postpetition services. See H.R. REP. NO. 95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306. Accordingly, Section 366 protects debtors by enjoining utilities from altering, refusing or discontinuing services solely on account of unpaid prepetition amounts or commencement of a bankruptcy case for a period of thirty (30) days after the bankruptcy filing. Section 366 protects utilities by permitting them to alter, refuse or discontinue service after thirty (30) days if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility.

13. Section 366(c) of the Bankruptcy Code, which was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, significantly modified the existing statutory framework. It has two primary purposes. First, it permits a utility to alter, refuse or discontinue utility service if a debtor has not provided satisfactory adequate assurance within thirty (30) days of its bankruptcy filing, subject to the Court's ability to modify the amount of adequate assurance. Second, it restricts the factors that a court can consider when determining whether an adequate assurance payment is, in fact, adequate. Specifically, courts may no longer consider (i) the absence of a security deposit before the debtor's petition date, (ii) the debtor's history of timely payments or (iii) the availability of an administrative expense priority, in determining the amount of a deposit. Notwithstanding these changes, it does not appear that Congress intended to — or did — abrogate this Court's right to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must simply be "adequate."

14. While Section 366(c) of the Bankruptcy Code does limit the factors a court can consider when determining whether a debtor has provided adequate assurance of payment, it does not limit the Court's ability to determine the amount of payment necessary, if any, to

DB02:8312167.1　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　068417.1001

provide such adequate assurance. Instead, Section 366(c) of the Bankruptcy Code gives courts the same discretion in determining the amount of payment necessary for adequate assurance as they previously had under Section 366(b) of the Bankruptcy Code. Compare 11 U.S.C. § 366(b) (2004) (pre-BAPCPA) ("On request of a party-in-interest and after notice and a hearing, the Court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance") with 11 U.S.C. § 366(c)(3)(A) (2005) (post-BAPCPA) ("On request of a party-in-interest and after notice and a hearing, the Court may order modification of the amount of an assurance payment under paragraph (2)"); see also Richard Levin & Alesia Ramley-Marinelli, *The Creeping Repeal of Chapter 11: The Significant Business Provisions of the Bankruptcy Abuse Protection and Consumer Protection Act of 2005*, 79 Am. Bankr. L.J. 603, 608-09 (2005) (stating that courts would likely continue to determine the amount and form of adequate protection after the implementation of the BAPCPA). Further, it is well established that Section 366(b) of the Bankruptcy Code permits a court to find that no adequate assurance payment at all is necessary to provide a utility with adequate assurance of payment. See Virginia Elec. & Power Co. v. Caldor, Inc., 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'"); In re Penn Jersey Corp., 72 B.R. 981, 986 (Bankr. E.D. Pa. 1987) (utility company's request for additional security denied because debtor had never been delinquent prior to bankruptcy). This may be particularly true in cases where the debtor has made prepetition deposits or prepayments for services that utilities will ultimately render post-petition. 11 U.S.C. § 366(c)(1)(A)(v) (recognizing a prepayment for post-

petition services as adequate assurance). Accordingly, courts continue to have discretion to determine the amount of adequate assurance payments and, where appropriate, to determine that no such payment is necessary. See In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Dec. 20, 2005) (approving adequate protection equal to the amount necessary for two weeks of utility service); In re Refco, Inc., Case No. 05-60006 (RDD) (Bankr. S.D.N.Y. Nov. 9, 2005) (approving adequate protection equal to the amount necessary for two weeks of utility service).

15. Additionally, Section 366(c) of the Bankruptcy Code, like Section 366(b), simply requires that a utility's assurance of payment be "adequate." Courts have long recognized that adequate assurance of performance does not require an absolute guarantee of a debtor's ability to pay. See In re Adelphia Bus. Solutions, Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002); In re Caldor, 199 B.R. 1, 3 (S.D.N.Y. 1996) (Section 366(b) of the Bankruptcy Code "does not require an 'absolute guarantee of payment'"), aff'd by Virginia Elec. & Power Co. v. Caldor, Inc., 117 F.3d 646 (2nd Cir. 1997). See also In re Steinebach, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . all § 366(b) requires is that a utility receive only such assurance of payment as is necessary to protect its interests given the facts of the debtor's financial circumstances"); In re Santa Clara Circuits W., Inc., 27 B.R. 680, 685 (Bankr. D. Utah 1982); In re George C. Frye Co., 7 B.R. 856, 858 (Bankr. D. Me. 1980). Courts have also recognized that in determining the amount of adequate assurance, bankruptcy courts should focus "on the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." In re Caldor, 117 F.2d at 665 (emphasis in original); see also In re Penn. Cent. Transp. Co., 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy

court's ruling that no utility deposits were necessary where such deposits would likely "jeopardize the continuing operating of the [debtor] merely to give further security to suppliers who are already reasonably protected"). Accordingly, demands by a utility for a guarantee of payment when they already have adequate assurance of payment in light of the debtor's specific circumstances should be refused.

### PROPOSED ADEQUATE ASSURANCE

16. To provide adequate assurance of payment to the Utility Providers, the Debtors propose to deposit a sum equal to $654,000, which is approximately the cost of half a month of the Debtors' Utility Services, calculated as a historical average (the "**Adequate Assurance Deposit**"), into an interest-bearing, newly created segregated account within twenty (20) days of the Petition Date.

17. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business (collectively, the "**Proposed Adequate Assurance**"), constitutes sufficient adequate assurance to the Utility Providers. If any Utility Provider believes additional assurance is required, they may request such assurance pursuant to the procedures described below.

### PROPOSED ADEQUATE ASSURANCE PROCEDURES

18. If a Utility Provider is not satisfied with the adequate assurance and believes additional assurance is required, it may request such assurance in accordance with the following procedures (the "**Adequate Assurance Procedures**"):

    a. A Utility Provider desiring additional assurances of payment in the form of deposits, security or otherwise must serve a written request (an "**Additional Assurance Request**") upon the Debtors at the following addresses: (i) Eddie Bauer, Inc., 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004, Attn: Freya Brier; (ii) co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor,

Wilmington, Delaware 19801, Attn: Michael R. Nestor and (iii) co-counsel to the Debtors, Latham & Watkins LLP, Sears Tower, Suite 5800, 233 South Wacker Drive, Chicago, IL 60606, Attn: David Heller, Latham & Watkins LLP, 355 South Grand Avenue, Los Angeles, CA 90071-1560, Attn: Heather Fowler (together, the "**Service Parties**"). The Additional Assurance Request must be sent to <u>all Service Parties</u> to be deemed valid.

b. Any Additional Assurance Request must: (i) be made in writing; (ii) set forth the location(s) for which Utility Services are provided and the account number(s) for such location(s); (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits, and the outstanding balance for each account and (iv) include a proposal for what would constitute adequate assurance from the Debtors, as well as set forth why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

c. Upon the Debtors' and other Service Parties' receipt of any Additional Assurance Request at the addresses set forth above, the Debtors shall promptly following the Petition Date (the "**Resolution Period**") negotiate with the Utility Provider to endeavor to resolve that Utility Provider's Additional Assurance Request. During the Resolution Period, Utility Providers may not discontinue, alter or refuse service to, or discriminate against, the Debtors on account of any unpaid prepetition charges or the commencement of these Chapter 11 Cases.

d. The Debtors may, in their discretion, resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court, and may, in connection with any such agreement, in their discretion, provide a Utility Provider with additional adequate assurance of future payment including, but not limited to, cash deposits, prepayments and/or other forms of security, without further order of this Court, if the Debtors believe such additional assurance is reasonable.

e. If the Debtors determine that the Additional Assurance Request is not reasonable and are not able to promptly reach an alternative resolution with the Utility Provider, the Debtors will request a hearing before this Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "**Determination Hearing**") pursuant to Section 366(c)(3) of the Bankruptcy Code.

f. Pending resolution of any such Determination Hearing, such particular Utility Provider shall be restrained from discontinuing, altering or refusing service to, or discriminating against, the Debtors on account of unpaid charges for prepetition services or the commencement of these Chapter 11 Cases.

11

g.  Unless and until a future order of the Court is entered requiring further assistance of payment, based on the establishment of the Proposed Adequate Assurance, a Utility Provider shall be deemed to have adequate assurance of payment.

19. The proposed procedures are necessary for the Debtors to carry out a Sale effort. If the Court does not approve the Adequate Assurance Procedures, the Debtors could be forced to address numerous requests by their Utility Providers in a disorganized manner at a critical point in their Chapter 11 Cases. Moreover, the Debtors could be blindsided by a Utility Provider unilaterally deciding, after much delay, that it is not adequately protected and discontinuing service or making an exorbitant demand for payment to continue service. As set forth above, discontinuation of service, particularly electricity, would essentially halt the Debtors' operations, putting the Debtors' going concern Sale efforts in extreme jeopardy. The proposed procedures set forth a fair process that will enable all parties to negotiate their respective positions and, where necessary, seek Court intervention without jeopardizing the Debtors' Sale efforts.[7]

### THE UTILITY PROVIDERS WILL NOT BE PREJUDICED BY THE REQUESTED RELIEF

20. On a monthly basis Prenova, on behalf of the Debtors, receives hundreds of individual invoices for Utility Services from the Debtors' Utility Providers, with whom the Debtors have multiple utility accounts, and the Debtors receive many other invoices directly. To the best of the Debtors' knowledge, there are no material defaults or arrearages with respect to undisputed Utility Service invoices, other than payment interruptions that may be caused by the commencement of these Chapter 11 Cases.

---

[7] The proposed procedures allow the Debtors to negotiate or seek a hearing after the 30-day deadline set forth in Section 366(c) of the Bankruptcy Code where a Utility Provider does not submit its demand within 16 days of the filing. For example, where a Utility Provider files its request on the twentieth day, the Debtors will have 14 days – or until the thirty-fourth day after the filing – to negotiate with that Utility Provider or to seek a court determination. The Debtors believe that this process is fair and necessary to avoid the unfortunate possibility that all of the Debtors' Utility Providers make last minute demands, leaving the Debtors without the ability to address those demands before services may be cut off. If Utility Providers wish to have their matter determined within 30 days of the bankruptcy filing, they need only file their request within 16 days thereof — something they are undoubtedly capable of doing in light of the amendments to Section 366 of the Bankruptcy Code.

21. The Debtors' proposed method of furnishing adequate assurance of payment for postpetition Utility Service is not prejudicial to the rights of any Utility Provider, and is in the best interest of the Debtors' estates. This Court has granted similar relief to that requested herein following the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. See, e.g., In re Sharper Image Corp., No. 08-10322 (KG) (Bankr. D. Del. Mar. 12, 2008) (deeming utilities adequately assured where the debtors provided a letter of credit/deposit equal to two (2) weeks of utility services, calculated as a historical average over the twelve (12) month prepetition period); In re Am. Home Mortgage Holdings, Inc., No. 07-11047 (CSS) (Bankr. D. Del. Sept. 4, 2007) (deeming utilities adequately assured where the debtors established segregated account containing an amount equal to 50% of the debtors' estimated monthly cost of utility service); In re Global Home Products LLC, No. 06-10340 (KG) (Bankr. D. Del. May 4, 2006) (same); In re New Century TRS Holdings, Inc., No. 07-10416 (KJC) (Bankr. D. Del. Apr. 24, 2007) (deeming utilities adequately assured where debtor provided two weeks deposit for utilities); In re Pliant, No. 06-10001 (MFW) (Bankr. D. Del. Jan. 5, 2006) (deeming utilities adequately assured where debtor provided a deposit in an amount equal to the average cost to the debtors of two weeks of service over the twelve (12) months preceding the petition date).

22. Conversely, if the Utility Providers are permitted to refuse or discontinue service, even if for a brief period, the Debtors' business operations would be severely disrupted. In particular, such discontinuation would irreparably disrupt the Debtors' ability to operate their facilities, negatively affecting customers, cash flow and, ultimately, value and creditor recoveries. Simply put, without Utility Services, the Debtors operations will shut down. It is, therefore, critical that Utility Services continue uninterrupted.

23. Based on the foregoing, the Debtors believe that the Motion should be granted.

## SUBSEQUENT MODIFICATIONS OF UTILITY SERVICE LIST

24. The Debtors have made an extensive and good faith effort to identify their Utility Providers and include them on the Utility Service List. Nonetheless, it is possible that the Debtors have not yet identified or included certain Utility Providers on the Utility Service List. To the extent that the Debtors identify additional Utility Providers (the "**Additional Utility Providers**"), the Debtors will file amendments to the Utility Service List, and shall serve a copy of the Interim Order on such Additional Utility Providers. The Debtors request that the Interim Order be binding on all Utility Providers, including the Additional Utility Providers, regardless of when such Utility Provider was added to the Utility Service List; provided that, with respect to any Additional Utility Provider, the twenty (20) day period described in paragraph 16 of the above procedures shall commence as of the date that the Debtors serve the Interim Order on such Additional Utility Provider as opposed to entry of the Interim Order. Any Additional Assurance Request by such Additional Utility Provider must otherwise comply with the requirements set forth in the Motion and Interim Order or shall be deemed an invalid Additional Assurance Request.

## NOTICE

25. No trustee, examiner or creditors' committee has been appointed in the Chapter 11 Cases. The Debtors have provided notice of this Motion to: (a) the United States Trustee for the District of Delaware; (b) counsel to administrative agent under the prepetition term loan facility; (c) counsel to the steering committee for the prepetition term lenders; (d) counsel to agent under the prepetition revolving credit facility; (e) counsel for the indenture trustee for the $75 million 5.25% convertible senior notes due 2014 and (f) the creditors listed on the Debtors' consolidated list of 30 largest unsecured creditors, as filed with the chapter 11 petitions. In light

of the nature of the relief requested, the Debtors submit that no further notice is required or needed under the circumstances.

26. A copy of the Motion is available on the Court's website: www.deb.uscourts.gov. Additional copies of the Motion are available on the website of the Debtors' proposed claims, noticing, soliciting and balloting agent, Kurtzman Carson Consultants, at www.kccllc.net/eddiebauer or can be requested by calling (866) 967-1781.

## NO PRIOR REQUEST

27. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request the entry of the Interim Order, substantially in the form attached hereto as Exhibit A, and Final Order, substantially in the form attached hereto as Exhibit B, (a) determining that Utility Providers have been provided with adequate assurance of payment within the meaning of Section 366 of the Bankruptcy Code, (b) approving the Debtors' Proposed Adequate Assurance and the Adequate Assurance Procedures, (c) prohibiting Utility Providers from discontinuing, altering, or refusing service to, or discriminating against, the Debtors, (d) determining that the Debtors are not required to provide any additional adequate assurance, beyond what is proposed by this Motion and (e) granting such other and further relief as the Court deems appropriate.

Dated: June 17, 2009
Wilmington, Delaware

Respectfully Submitted,

/s/ Michael R. Nestor

Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

and

David S. Heller
Josef S. Athanas
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

-and-

Heather L. Fowler
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, California 90071-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

PROPOSED ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESSION