# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER HOLDINGS, INC., *et al.*,[1] | Case No. 09-12099 (____) |
| | Joint Administration Pending |
| Debtor. | |

## MOTION OF DEBTORS FOR THE ENTRY OF A BRIDGE ORDER WITH RESPECT TO CUSTOMER SERVICE POLICIES, PROGRAMS AND PRACTICES

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), hereby respectfully move this Court (the "**Motion**") for entry of a bridge order (the "**Bridge Order**"), in substantially the form attached hereto as Exhibit A, addressing certain customer service policies, programs and practices on an interim basis pending this Court's disposition of the first day motions and applications filed by the Debtors contemporaneously herewith (collectively, the "**First Day Motions**"), in order to avoid immediate and irreparable harm to the Debtors' businesses and operations. In support of this Motion, the Debtors respectfully state:[2]

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Eddie Bauer Holdings, Inc., a Delaware corporation (2352); Eddie Bauer, Inc., a Delaware corporation (9737); Eddie Bauer Fulfillment Services, Inc., a Delaware corporation (0882); Eddie Bauer Diversified Sales, LLC, a Delaware limited liability company (1567); Eddie Bauer Services, LLC, an Ohio limited liability company (disregarded), Eddie Bauer International Development, LLC, a Delaware limited liability company (1571); Eddie Bauer Information Technology, LLC, a Delaware limited liability company (disregarded); Financial Services Acceptance Corporation, a Delaware corporation (7532); and Spiegel Acceptance Corporation, a Delaware corporation (7253). The mailing address for Eddie Bauer Holdings, Inc. is 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004. On or about the Petition Date, Eddie Bauer of Canada, Inc. and Eddie Bauer Customer Services, Inc., affiliates of the Debtors, commenced a proceeding before the Superior Court of Justice, Commercial List, for the Judicial District of Ontario, for a plan of compromise or arrangement under the Companies' Creditors Arrangement Act.

[2] The facts and circumstances supporting this Motion are set forth in the Declaration of Marvin Edward Toland of Eddie Bauer Holdings, Inc., in Support of First Day Motions (the "**First Day Declaration**") filed contemporaneously herewith.

## JURISDICTION

1.   This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.   The statutory bases for the relief requested herein are Sections 105 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "**Bankruptcy Code**").

## BACKGROUND

3.   On June 17, 2009 (the "**Petition Date**"), Eddie Bauer Holdings, Inc. and each of its Debtor affiliates filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Debtors intend to continue in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. The Debtors have requested that these Chapter 11 Cases be consolidated for procedural purposes. As of the date hereof, no trustee, examiner or statutory committee has been appointed in these Chapter 11 Cases.

4.   Subsequent to the commencement of these Chapter 11 Cases, the Debtors' two Canadian affiliates – Eddie Bauer of Canada, Inc. and Eddie Bauer Customer Services, Inc. (the "**Canadian Debtor Affiliates**") – will seek recognition of the Debtors' Chapter 11 Cases in a Canadian Court as "foreign proceedings" pursuant to Section 18.6 of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended. In addition to staying proceedings against the Canadian Debtor Affiliates in Canada, such recognition by the Canadian Court will allow certain orders of this Court to be in full force and effect in the same manner and in all respects as if they had been made by the Canadian Court. Due to the integrated management of the

2

DB02:8312262.1                                                                                                    068417.1001

Canadian Debtor Affiliates with the Debtors' U.S. operations, as well as the role that the Canadian Debtor Affiliates play in the Debtors' overall prepetition debt structure, these Chapter 11 Cases will function as the main proceedings with respect to the Canadian Debtor Affiliates.

5. As further detailed in the First Day Declaration, the Debtors and the Canadian Debtor Affiliates[3] are a publicly traded general merchandise and specialty retailer that offers men's and women's outerwear, apparel, accessories and gear for an active outdoor lifestyle through catalogs, e-commerce sites and over 370 retail and outlet stores. The Debtors have 556 full-time, part-time, and temporary employees in their corporate headquarters, and 7,144 full-time, part-time, and temporary retail and distribution employees. The Canadian Affiliates have over 950 full-time, part-time, and temporary employees working in management, retail and customer service.

### THE PROPOSED 363 SALE

6. Due to (i) Debtors' and Debtors' lenders inability to agree upon the terms of a consensual restructuring, (ii) the Debtors' need to reduce debt load and interest expenses, and (iii) the Debtors' mounting concerns regarding the potential deterioration of their businesses – and accompanying degradation in value – stemming from rumors in the marketplace about the Debtors' liquidity and viability, the Debtors have determined that the value of their estates would be best maximized and preserved through a sale process (the "**Sale**"). Therefore, the Debtors have negotiated a going-concern Sale of their businesses and assets (the "**Assets**") to Rainier Holdings LLC as the stalking horse bidder (the "**Stalking Horse Bidder**") pursuant to an asset purchase agreement and commenced these Chapter 11 Cases to implement the Sale pursuant to

---

[3] The Debtors also have a non-debtor affiliate located in Hong Kong named Pacific NW Sourcing Co. This affiliate was created in 2008 to act as a purchasing agent in Asia. However, it is not currently fully operational, has no assets and has few, nominal liabilities.

Section 363 of the Bankruptcy Code, subject to a competitive Sale process and the solicitation of higher and/or otherwise better offers. The Debtors believe that unless the Sale is expeditiously consummated, whether to the proposed Stalking Horse Bidder or to a purchaser submitting a higher or otherwise better offer, there will be significant value deterioration. Consequently, the Debtors have determined that it is in the best interest of their estates, creditors and other parties-in-interest to move forward with the Sale process.

7. The events leading up to the Petition Date and the Sale and the facts and circumstances supporting the relief requested herein are more fully set forth in the First Day Declaration.

### RELIEF REQUESTED

8. By this Motion, the Debtors are seeking the entry of a Bridge Order granting, on an interim basis pending this Court's disposition of the First Day Motions, certain of the relief requested in the Debtors' motion to honor certain customer service policies, programs and practices and certain prepetition obligations related to the Customer Programs (the "**Customer Programs Motion**").[4]

### BASIS FOR RELIEF

9. The Debtors respectfully request that this Court enter the Bridge Order granting, on an interim basis pending this Court's disposition of the First Day Motions, certain of the relief requested in the Customer Programs Motion,[5] including the authorization to honor customer refunds, the guarantee, Gift Cards, Ford Gift Cards, Award Certificates, Merchandise

---

[4] See "Motion of the Debtors For Entry Of an Order Authorizing The Debtors To (A) Honor Certain Prepetition Obligations To Customers; (B) Maintain Certain Customer Service Policies, Programs and Practices In the Ordinary Course of Business; and (C) Pay Certain Fees Associated With Credit Card Transactions And Gift Card Programs," filed contemporaneously herewith.

[5] Terms not otherwise defined herein have the meaning ascribed to such terms in the Customer Programs Motion.

4
DB02:8312262.1                                                                                          068417.1001

Certificates, Promotional Codes, Complimentary Certificates, the Rewards Program, the Registered Card Programs and Stored Value Cards in accordance with the Debtors' stated policies and prepetition practices. The relief requested by the Bridge Order is only that relief which the Debtors deem absolutely essential to their operations, and without which, even for a short period of time, the Debtors fear their operations could be significantly disrupted. The Debtors' operations continue on a day-to-day basis. As described more fully in the Customer Programs Motion, in the ordinary course of their business operations, the Debtors engage in certain marketing, sales and promotional practices to develop and sustain relationships with their customers and to build a positive reputation for their products in the marketplace. The Customer Programs are the result of these efforts. The goals of the Customer Programs are to build and maintain customer loyalty, incentivize future customer purchases, meet competitive pressures and ensure customer satisfaction, thereby retaining current customers, attracting new customers and ultimately enhancing revenue and profitability. Because the First Day Hearing might not be held on the Petition Date, there may be a "gap" period of a few days between the Petition Date and the First Day Hearing. If the Debtors are not immediately allowed to honor their Customer Programs pursuant to the Bridge Order, the Debtors risk the highly detrimental impact on customer confidence, marketplace perception and ultimately, their balance sheet that likely would result if any Customer Programs are not honored and fulfilled.

10. Bridge orders similar to that requested herein have been entered in other large chapter 11 cases. See In re Delphi Corp., Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Oct. 8, 2005) (granting, until first day hearing, numerous bridge orders for, among other things, relief related to wages, cash management, customer programs, foreign and other critical vendors, investment guidelines, and cash collateral); In re Delta Airlines, Inc., Case No. 05-17923 (PCB)

(Bankr. S.D.N.Y. Sept. 14, 2005) (granting, until first day hearing, numerous bridge orders for, among other things, relief related to wages, cash management, customer programs, foreign and other critical vendors, investment guidelines, and cash collateral); In re US Airways Group, Inc., Case No. 04-13819 (SSM) (Bankr. E.D. Va. Sept. 12, 2004) (granting, until first day hearing, numerous bridge orders for, inter alia, relief related to wages, cash management, customer programs, foreign and other critical vendors, and investment guidelines); and In re US Airways Group, Inc., Case No. 02-83984 (SSM) (Bankr. E.D. Va. Aug. 11, 2002) (granting, until first day hearing, numerous bridge orders for, inter alia, relief related to wages, cash management, customer programs, foreign vendors, and essential trade vendors).

11. The Debtors recognize that this Motion seeks extraordinary relief, but submit that the circumstances before this Court merit such relief. In light of the potential delay in obtaining a hearing date, the Debtors are faced with the very real possibility of not being able to honor prepetition obligations made to their customers. Honoring the Customer Programs is essential to maintaining Debtors' operations and preserving the value of Debtors' estates. The mere perception that the Debtors would not honor such obligations may cause customers to lose confidence in Debtors' operations. An inability to honor Customer Programs such as refunds, returns, and gift cards could lead some customers to permanently cease purchasing Debtors' goods. Such a loss in customer goodwill would have a severe, detrimental and possibly permanent effect on the value of Debtors' estates. The proposed Bridge Order is limited in scope in that it only authorizes the Debtors to honor their Customer Programs in the ordinary course of business until the Court can consider the First Day Motions. Thus, the Debtors believe that the circumstances merit approval of the order submitted herewith.

12. The Debtors have consulted with counsel to the agent for the Debtors' prepetition secured lenders and the Office of the United States Trustee for the District of Delaware, each of whom does not object to the Debtors' continuing to honor their Customer Programs. Accordingly, the Debtors filed this Motion seeking limited emergency relief to honor prepetition Customer Programs.

13. Pursuant to Bankruptcy Rule 6003, the Court may authorize payment of a prepetition claim within 20 days after the Petition Date if such relief is necessary to avoid immediate and irreparable harm. The relief requested in this Motion is absolutely critical and should be authorized. The Debtors' customers and consumer confidence are vital to the continued operation and the preservation of the going concern value of the Debtor's businesses.

## NOTICE

14. No Trustee, examiner or creditors' committee has been appointed in the chapter 11 cases. The Debtors have provided notice of this Motion to: (a) the United States Trustee for the District of Delaware; (b) counsel to administrative agent under the prepetition term loan facility; (c) counsel to the steering committee for the prepetition term lenders; (d) counsel to agent under the prepetition revolving credit facility; (e) counsel for the indenture trustee for the $74 million 5.25% convertible senior notes due 2014 and (f) the creditors listed on the Debtors' consolidated list of 30 largest unsecured creditors, as filed with the chapter 11 petitions. In light of the nature of the relief requested, the Debtors submit that no further notice is required or needed under the circumstances.

15. A copy of the Motion is available on the Court's website: www.deb.uscourts.gov. Additional copies of the Motion are available on the website of the Debtors' proposed claims, noticing, soliciting and balloting agent, Kurtzman Carson Consultants, at www.kccllc.net/eddiebauer or can be requested by calling (866) 967-1781.

## NO PRIOR REQUEST

16. No prior Motion for the relief requested herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that this Court (a) enter the Bridge Order substantially in the form attached hereto as <u>Exhibit A</u>; and (b) grant such other and further relief as this Court deems appropriate.

Dated: June 17, 2009  
Wilmington, Delaware

Respectfully Submitted,

*/s/ KHC*

Michael R. Nestor (No. 3526)  
Kara Hammond Coyle (No. 4410)  
YOUNG CONAWAY STARGATT & TAYLOR, LLP  
1000 West Street, 17th Floor  
Wilmington, Delaware 19801  
Telephone: (302) 571-6600  
Facsimile: (302) 571-1253

-and-

David S. Heller  
Josef S. Athanas  
LATHAM & WATKINS LLP  
Sears Tower, Suite 5800  
233 South Wacker Drive  
Chicago, IL 60606  
Telephone: (312) 876-7700  
Facsimile: (312) 993-9767

-and-

Heather L. Fowler  
LATHAM & WATKINS LLP  
355 South Grand Avenue  
Los Angeles, California 90071-1560  
Telephone: (213) 485-1234  
Facsimile: (213) 891-8763

PROPOSED ATTORNEYS FOR DEBTORS AND  
DEBTORS-IN-POSSESSION