## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER HOLDINGS, INC., *et al.*,[1] | Case No. 09-12099 (MFW) |
| Debtors. | Joint Administration Pending |

### DEBTORS' APPLICATION PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE FOR AN ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY PETER J. SOLOMON COMPANY AS INVESTMENT BANKER AND FINANCIAL ADVISOR FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this Application (the "**Application**")[2] for entry of an order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), substantially in the form annexed hereto as Exhibit A, for authorization to employ and retain Peter J. Solomon Company ("**PJS**") as investment

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Eddie Bauer Holdings, Inc., a Delaware corporation (2352); Eddie Bauer, Inc., a Delaware corporation (9737); Eddie Bauer Fulfillment Services, Inc., a Delaware corporation (0882); Eddie Bauer Diversified Sales, LLC, a Delaware limited liability company (1567); Eddie Bauer Services, LLC, an Ohio limited liability company (disregarded); Eddie Bauer International Development, LLC, a Delaware limited liability company (1571); Eddie Bauer Information Technology, LLC, a Delaware limited liability company (disregarded); Financial Services Acceptance Corporation, a Delaware corporation (7532); and Spiegel Acceptance Corporation, a Delaware corporation (7253). The mailing address for Eddie Bauer Holdings, Inc. is 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004. On or about the Petition Date, Eddie Bauer of Canada, Inc. and Eddie Bauer Customer Services, Inc., affiliates of the Debtors, commenced a proceeding before the Superior Court of Justice, Commercial List, for the Judicial District of Ontario, for a plan of compromise or arrangement under the Companies' Creditors Arrangement Act.

[2]    Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Engagement letter (defined below).

banker and financial advisor for the Debtors *nunc pro tunc* to the date hereof (the "**Petition Date**"). In support thereof, the Debtors respectfully represent:[3]

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. sections 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. section 157(b). Venue is proper pursuant to 28 U.S.C. sections 1408 and 1409.

2.      The statutory bases for the relief sought herein are sections 327(a), 328(a) and 1107 of title 11 of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule 2014-1.

**BACKGROUND**

3.      On the Petition Date, each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee of unsecured creditors has been appointed in the Debtors' cases.

4.      On the date hereof, certain of the Debtors' Canadian affiliates (collectively, the "**Canadian Debtors**")[4] will file an application with the Superior Court of Justice, Commercial List, for the Judicial District of Ontario (the "**Canadian Court**") under the Companies' Creditors Arrangement Act (Canada) (the "**CCAA**"), seeking relief from their creditors (collectively, the

---

[3]    The facts and circumstances supporting this Motion are set forth in the Declaration of Marvin Edward Toland of Eddie Bauer Holdings, Inc., in Support of First Day Motions (the "**First Day Declaration**") filed contemporaneously herewith.

[4]    The Canadian Debtors include the following entities: Eddie Bauer of Canada, Inc. and Eddie Bauer Customer Services, Inc.

2

"**Canadian Proceedings**"). The Canadian Debtors will continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

5.  Simultaneous with the filing of this Motion, the Debtors have sought an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules that would provide for the joint administration of these cases and for consolidation for procedural purposes only.

6.  A description of the Debtors' corporate structure and businesses and the events leading up to the chapter 11 cases are set forth in the First Day Declaration.

**RELIEF REQUESTED**

7.  By this Application, the Debtors request, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1, entry of an order authorizing them to employ and retain PJS as investment banker and financial advisor for the Debtors, *nunc pro tunc* to the Petition Date, on the terms set forth herein and in that certain the engagement letter between Eddie Bauer Holdings, Inc. and PJS, dated as of June 9, 2009 (the "**Engagement Letter**"), annexed hereto as <u>Exhibit B</u>.[5]  In support of the Application, the Debtors submit the declaration of Bradley I. Dietz (the "**Dietz Declaration**"), annexed hereto as <u>Exhibit C</u>.

**A.  PJS's Qualifications**

8.  PJS is a leading independent investment banking firm headquartered in New York City.  PJS provides owners, chief executives, and senior management of public and private companies with strategic and financial advice that generally results in a financial transaction. PJS has successfully completed more than 350 strategic and financial advisory assignments.

---

[5]    In the event of any inconsistencies between the description of PJS's engagement with the Debtors in this Application and the terms of the Engagement Letter, the Engagement Letter shall control.

9.     The Debtors have selected PJS as their investment banker and financial advisor based upon, among other things: (a) the Debtors' need to retain an investment banking and financial advisory firm to provide advice with respect to the Debtors' restructuring activities, and (b) the extensive experience and excellent reputation of PJS's professionals in providing financial advisory and investment banking services in complex chapter 11 cases.

10.     On December 1, 2008, the Debtors first engaged PJS to, provide general investment banking and financial advisory services in connection with the Debtors' attempts to (a) raise new capital; (b) complete an amendment transaction with its secured term loan lenders or other restructuring; or (c) complete a sale transaction.

11.     In providing prepetition services to the Debtors in connection with these matters, PJS's professionals worked closely with the Debtors' management and other professionals and became well-acquainted with the Debtors' operations, debt structure, creditors, businesses, and operations and related matters.  Accordingly, PJS has developed significant relevant experience and expertise regarding the Debtors that will assist PJS in providing effective and efficient services in the Debtors' cases.

12.     In addition to PJS's understanding of the Debtors' financial history, business operations, and the industry in which the Debtors operate, PJS and its professionals have extensive experience in the reorganization and restructuring of troubled companies both in and out of court.  PJS's employees have advised debtors, creditors, equity constituencies, and government agencies in many complex financial reorganizations.

13.     The professionals of PJS have been employed as financial advisors and as investment bankers in a number of troubled company situations, including the chapter 11 cases of Armstrong World Industries, Owens Corning Corporation, M. Fabrikant & Sons, Inc.,

4

Tweeter, Inc., Twinlab Corporation, Syratech, Inc., Kasper A.S.L., The Warnaco Group, Inc., Barney's, Mirant Corporation, and Portola Packaging, Inc., among others.

14.     With its experienced senior professionals, PJS fulfills a critical role that complements the services offered by the Debtors' other restructuring professionals. The Debtors believe they require the services of a capable and experienced investment banking and financial advisory firm such as PJS because, among other reasons, PJS's resources and capabilities, together with its prepetition experience advising the Debtors, are crucial to the Debtors' success in the Debtors' cases.

**B.     Scope of Services**

15.     Subject to the direction of the Debtors and further order of this Court, by PJS on behalf of the Debtors and as set forth in the Engagement Letter, PJS will:[6]

(a)     familiarize itself to the extent reasonably necessary to perform the services to be provided hereunder with the business, operations, properties, financial condition and prospects of the Debtors and, to the extent relevant, any prospective Buyer, it being understood that PJS shall, in the course of such familiarization, rely entirely upon publicly available information and such other information as may be supplied by the Debtors or such Buyer, without assuming any responsibility for independent investigation or verification thereof;

(b)     advise and assist the Debtors in evaluating its liquidity and financing needs;

(c)     advise and assist the Debtors in evaluating its recapitalization alternatives, including pursuing a Restructuring/Amendment Transaction, pursuing a Financing Transaction, and pursuing a possible Sale Transaction;

(d)     advise and assist the Debtors in considering the desirability of effecting a Transaction, and, if the Debtors believe any such Transaction to be desirable, in developing a general strategy for accomplishing such Transaction, including its form and structure;

---

[6]     To the extent the summary of the scope of services that PJS will provide differs from the terms set forth in the Engagement Letter, the terms set forth in the Engagement Letter shall control.

DB02:8313469.1                                                    068417.1001

(e) advise and assist the Debtors in identifying potential financing sources or Buyers, as the case may be, and will, on behalf of the Debtors, contact such potential financing sources or Buyers, as the case may be, as the Debtors may designate in advance;

(f) advise and assist the Debtors in the course of its negotiations of any Transaction with any potential financing source or Buyer, including, without limitation, in connection with any amendment to, or restructuring of, the Debtors' Existing Debt;

(g) advise and assist management of the Debtors in making presentations to the Debtors' Board of Directors concerning any proposed Transaction;

(h) advise and assist the Debtors in evaluating and obtaining DIP financing and exit financing; in assessing the valuation of the Debtors and its assets, including valuations proposed by any interested party and providing expert testimony relating to valuation, efforts undertaken to identify potential purchasers of assets or securities or consider other financial alternatives and as to the other services contemplated hereby if required; and in developing, analyzing, structuring and negotiating the terms and conditions of any potential plans of reorganization;

(i) advise and assist the Debtors in the execution of and closing under definitive agreements relating to a Transaction;

(j) In connection with a Sale Transaction (other than as part of a Chapter 11 Proceeding) and if requested by the Debtors' Board of Directors, render, in accordance with customary practices, an opinion (the "**Opinion**") as to the fairness to the Debtors, from a financial point of view, of the consideration to be paid in such Sale Transaction, with the understanding that in rendering the Opinion, PJS will rely, on information furnished to it by the Debtors or other relevant parties or publicly available, and that the Opinion shall be in such form as PJS shall reasonably determine in accordance with customary practices and may be qualified in such manner as PJS believes appropriate; and

(k) render such other financial advisory and investment banking services as may from time to time be agreed upon by PJS and the Debtors, in writing.

## C.      PJS's Disinterestedness

16.     PJS has informed the Debtors that, except as may be set forth in the Dietz Declaration, to the best of Mr. Dietz's knowledge, PJS (a) has no connection with the Debtors,

their creditors, or other parties in interest in the Debtors' cases; (b) does not hold any interest adverse to the Debtors' estates; and (c) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

17.     If any new material facts or relationships are discovered or arise, PJS will provide the Court with a supplemental declaration.

18.     PJS has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with the Debtors' cases, other than as permitted pursuant to section 504 of the Bankruptcy Code. Prior to the Petition Date, the Debtors deposited a $250,000 retainer deposit into a segregated escrow account for the benefit of PJS.

**D.      Terms of Retention[7]**

**1.      PJS'S COMPENSATION STRUCTURE**

PJS proposes to render its services on the following basis:

- A monthly fee (the "**Monthly Fee**") of $200,000 per month payable on July 1, 2009 and on each monthly anniversary of such date. The Monthly Fee is payable in advance and payable for a minimum of three months (for the months of June, July, and August).[8]

- In the event of a **Restructuring/Amendment Transaction**, the Debtors will pay PJS a $2,250,000 transaction fee, less 50% of any amount paid as part of a Financing Transaction and not previously credited (the "**Restructuring/Amendment Transaction Fee**").

- In the event of a **Financing Transaction**, the Debtors will pay PJS a financing fee equal to (a) 1% of the gross proceeds for senior debt, plus (b) 3% of the gross proceeds for subordinated debt (the "**Financing Transaction Fee**").

- In the event of a **Sale Transaction**, the Debtors will pay PJS a $2,250,000 transaction fee, less 50% of any fees paid in the event of a Financing Transaction and not

---

[7]     To the extent the summary of the compensation that PJS will receive differs from the terms set forth in the Engagement Letter, the terms set forth in the Engagement Letter shall control.

[8]     Pursuant to the Engagement Letter, the initial monthly fee, payable on June 9, 2009, was $200,000.

previously credited, and <u>less</u> any amount paid in connection with the rendering of an Opinion by PJS in connection with the Sale Transaction (the "**Sale Transaction Fee**").

- As compensation for services rendered with respect to an **Opinion**, the Debtors will pay PJS a fee equal to $500,000 on the date upon which PJS renders the opinion.

- Whether or not any Transaction is proposed or consummated, the Debtors will reimburse PJS for its reasonable out-of-pocket **Expenses**; provided that in no event, without the prior approval of the Debtors, shall expenses incurred after June 9, 2009 exceed $75,000 in the aggregate.

19.     Notwithstanding anything to the contrary in the Engagement Letter, if the Debtors consummate both a Restructuring/Amendment Transaction and a Sale Transaction, PJS shall be paid either a Restructuring/Amendment Transaction Fee or a Sale Transaction Fee but not both (the fee payable being the fee that is earned first). Notwithstanding anything to the contrary herein, in no event shall the Debtors be obligated to pay PJS fees greater than $3,750,000 in the aggregate in the event of a Restructuring, Sale, or Financing Transaction.

20.     The Debtors believe that the compensation structure to be provided to PJS, all as specifically described above, in the Dietz Declaration, and the Engagement Letter, constitutes fair and reasonable terms and conditions for the retention by the Debtors of PJS as its investment banker and financial advisor in accordance with section 328(a) of the Bankruptcy Code. The Monthly Fee is consistent with fee structures utilized by investment banks which do not bill clients on an hourly basis.

21.     PJS will seek interim and final allowance of compensation and reimbursement of expenses pursuant to applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, guidelines established by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), orders of the Court, and any procedures fixed by order of the Court.

22.     The Debtors are submitting, concurrently on the date hereof, a separate application for the retention of Alvarez & Marsal North America, LLC ("**A&M**"), as restructuring advisor to the Debtors.  The Debtors will work with PJS and A&M to avoid duplication of their work to the extent applicable.

### E.     Indemnification

23.     The Debtors have agreed to indemnify and to make certain contributions to PJS in accordance with the indemnification provisions set forth in the Engagement Letter and attachments thereto (collectively, the "**Indemnification Provisions**").  The Indemnification Provisions are customary for financial advisors and investment bankers such as PJS for proceedings both out of court and in chapter 11.  The Indemnification Provisions were fully negotiated between the Debtors and PJS at arms-length, and the Debtors respectfully submit that the Indemnification Provisions, viewed in conjunction with the other terms of PJS's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and their creditors.

### BASIS FOR RELIEF REQUESTED

### A.     Section 328 of the Bankruptcy Code Permits the  Employment and Retention of PJS on Terms Substantially Similar to those in the Engagement Letter

24.     The Debtors seek approval of the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. section 328(a).  Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals

for the Fifth Circuit recognized in <u>Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)</u>:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present section 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present section 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

25. Furthermore, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, certain modifications were made to section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, *including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.*

*See* 11 U.S.C. section 328(a) (emphasis added). Section 328(a) of the Bankruptcy Code, as amended, now makes clear that debtors may retain, subject to bankruptcy court approval, a professional on a fee basis such as the fee structure proposed by the Debtors herein.

26. It is not the general practice of PJS professionals to keep detailed time records (i.e., in increments of one-tenth of an hour (six minutes)) similar to those customarily kept by attorneys who are compensated through the Bankruptcy Court, as PJS is not billing the Debtors on an hourly basis. The Debtors, therefore, request that PJS be permitted to file time records in one-half (.5) hour increments. PJS will provide a general narrative describing its general tasks

DB02:8313469.1

068417.1001

and activities performed on behalf of the Debtors, the identity of the professionals performing such tasks and activities and the aggregate hours expended by each professional. Accordingly, to the extent necessary based on the foregoing, the Debtors are seeking on behalf of PJS, modification and waiver pursuant to Local Rule 2016-2(g) of the requirements of Local Rule 2016-2(d).

27. PJS intends to file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court.

28. The Debtors believe that the fee structure reflects appropriately the nature and scope of services to be provided by PJS, PJS's substantial experience with respect to investment banking and financial advisory services, and the fee structures typically utilized by PJS and other leading investment banks and financial advisors that do not bill their clients on an hourly basis. Moreover, the fee structure reflects a balance between a fixed, monthly fee, and a contingency amount which are tied to the consummation and closing of the transactions and services contemplated by the Debtors and PJS in the Engagement Letter.

29. The hours worked, the results achieved and the ultimate benefit to the Debtors of the work performed by PJS in connection with this engagement may vary and the Debtors have taken this into account in setting the above fees.

30. The Debtors also acknowledge and agree that the fee structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort has been and will continue to be required of PJS and its professionals, and in light of the fact that such commitment may foreclose other opportunities for PJS and that the actual time and

commitment required of PJS and its professionals to perform the required services may vary substantially from week to week or month to month.

31.     Similar fixed and contingency fee arrangements in other large chapter 11 cases have been routinely approved and implemented by courts in this district.[9]  See, e.g., In re Tropicana Entmt, LLC, No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008) (order authorizing retention of Lazard Freres & Co. LLC. on similar terms); In re Leiner Health Prods., Inc., No. 08-10446 (KJC) (Bankr. D. Del. April 8, 2008) (order authorizing retention of Houlihan Lokey Howard & Zukin Capital, Inc. on similar terms); In re FLYi, Inc., No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); In re Foamex Int'l, Inc., No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); In re Oakwood Homes Corp., No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller Buckfire & Co., LLC on similar terms); In re Kaiser Aluminum Corp., No. 02-10429 (JKF) (Bankr. D. Del. Mar. 19, 2002) (authorizing retention of Lazard Freres & Co. LLC and subjecting compensation to same standard of review); In re Trans World Airlines, Inc., No. 01-0056 (PJW) (Bankr. D. Del. Jan. 26, 2001) (authorizing retention of Rothschild, Inc., as financial advisors for debtors, under sections 327(a) and 328(a) of the Bankruptcy Code); In re Covad Comm. Group, Inc., No. 01-10167 (BF) (Bankr. D. Del. Nov. 21, 2001) (authorizing retention of Lazard Freres & Co. LLC with compensation subject to standard of review set forth in section 328(a)); In re Harnischfeger Indus., No. 99-02171 (PJW)

---

[9]     The Debtors have not annexed copies of the unreported orders cited herein because of their size.  Copies of these orders, however, are available upon request of the Debtors' counsel, including at the hearing to consider the Application.

DB02:8313469.1

068417.1001

(Bankr. D. Del. Feb. 8, 2000) (authorizing retention of The Blackstone Group L.P. as investment bankers to debtors).

32.     Likewise, similar indemnification arrangements have been approved and implemented in other large chapter 11 cases by courts in this district. See, e.g., In re Tropicana Entmt, LLC, No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008); In re Leiner Health Prods., Inc., No. 08-10446 (KJC) (Bankr. D. Del. April 4, 2008); In re New Century TRS Holdings, Inc., No. 07-10416 (KJC) (Bankr. D. Del. Apr. 26, 2007); In re FLY, Inc., No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006); In re Foamex Intl, Inc., No. 05-12685 (NW) (Bankr. D. Del. Oct. 17, 2005); In re Oakwood Homes Corp., No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003); In re United Artists Theatre Co., No. 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000).

33.     In light of the foregoing, and given the numerous issues that PJS may be required to address in the performance of its services hereunder, PJS's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for PJS's services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

### B.     The Retention of PJS is Critical to the Debtors' Success

34.     Denying the relief requested herein would deprive the Debtors of the assistance of a highly qualified investment banker and financial advisor such as PJS and disadvantage the Debtors and all parties in interest. The Debtors would be forced to engage a new investment banker and financial advisor lacking the same understanding of the Debtors' businesses and restructuring initiatives. Forcing the Debtors to engage a new investment banker and financial advisor also would require additional time and resources. Accordingly, the Debtors respectfully

submit that the services provided by PJS are critical to the success of the Debtors' cases and request that the Court approve the Engagement Letter and Indemnification Provisions.

**NOTICE**

35.     No trustee, examiner or creditors' committee has been appointed in the Chapter 11 Cases. The Debtors have provided notice of this Motion to: (a) the United States Trustee for the District of Delaware; (b) counsel to administrative agent under the prepetition term loan facility; (c) counsel to the steering committee for the prepetition term lenders; (d) counsel to agent under the prepetition revolving credit facility; (e) counsel for the indenture trustee for the $75 million 5.25% convertible senior notes due 2014 and (f) the creditors listed on the Debtors' consolidated list of 30 largest unsecured creditors, as filed with the chapter 11 petitions. In light of the nature of the relief requested, the Debtors submit that no further notice is required or needed under the circumstances.

36.     A copy of the Motion is available on the Court's website: www.deb.uscourts.gov. Additional copies of the Motion are available on the website of the Debtors' proposed claims, noticing, soliciting and balloting agent, Kurtzman Carson Consultants, at www.kccllc.net/eddiebauer or can be requested by calling (866) 967-1781.

**NO PRIOR REQUEST**

37.     No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

DB02:8313469.1

068417.1001

Dated: June 17, 2009
New York, New York

Respectfully Submitted,

EDDIE BAUER HOLDINGS, INC.

Name: Marvin Edward Toland
Its: Chief Financial Officer of Eddie Bauer Holdings, Inc.

On behalf of the other Debtors listed on Schedule 1 hereto:

Name:
Its: Authorized Signatory

## SCHEDULE I

Eddie Bauer Holdings, Inc., a Delaware corporation
Eddie Bauer, Inc., a Delaware corporation
Eddie Bauer Fulfillment Services, Inc., a Delaware corporation
Eddie Bauer Diversified Sales, LLC, a Delaware limited liability company
Eddie Bauer Services, LLC, an Ohio limited liability company
Eddie Bauer International Development, LLC, a Delaware limited liability company
Eddie Bauer Information Technology, LLC, a Delaware limited liability company
Financial Services Acceptance Corporation, a Delaware corporation
Spiegel Acceptance Corporation, a Delaware corporation

DB02:8313469.1

068417.1001