IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>EDDIE BAUER HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-12099 (MFW)<br>(Jointly Administered)<br><br>Hearing Date: June 29, 2009 at 11:30 a.m. ET<br>Objection Deadline: June 26, 2009 at 12:00 p.m. ET<br>Related to Docket No. 24 |

## LIMITED OBJECTION OF STEAMTOWN MALL PARTNERS, L.P. AND THE PRIME RETAIL LANDLORDS TO MOTION PURSUANT TO 11 U.S.C. SECTIONS 105(A), 363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 6006 FOR (I) ENTRY OF AN ORDER (A) ESTABLISHING BIDDING AND AUCTION PROCEDURES RELATED TO THE SALE OF ALL OF THE DEBTORS' ASSETS; (B) APPROVING BID PROTECTION FOR THE SALE OF THE DEBTORS' ASSETS; (C) SCHEDULING AN AUCTION AND SALE HEARING FOR THE SALE OF THE DEBTORS' ASSETS; (D) ESTABLISHING CERTAIN NOTICE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND LEASES TO BE ASSIGNED; AND (E) GRANTING CERTAIN RELATED RELIEF; AND (II) ENTRY OF AN ORDER (A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) ESTABLISHING REJECTION PROCEDURES AND GUIDELINES FOR CONDUCTING STORE CLOSING SALES; AND (D) EXTENDING THE DEADLINE TO ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY PURSUANT TO 11 U.S.C. SECTION 365(D)(4)

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Eddie Bauer Holdings, Inc., a Delaware corporation (2352); Eddie Bauer, Inc., a Delaware corporation (9737); Eddie Bauer Fulfillment Services, Inc., a Delaware corporation (0882); Eddie Bauer Diversified Sales, LLC, a Delaware limited liability company (1567); Eddie Bauer Services, LLC, an Ohio limited liability company (disregarded); Eddie Bauer International Development, LLC, a Delaware limited liability company (1571); Eddie Bauer Information Technology, LLC, a Delaware limited liability company (disregarded); Financial Services Acceptance Corporation, a Delaware corporation (7532); and Spiegel Acceptance Corporation, a Delaware corporation (7253). The mailing address of for Eddie Bauer Holdings, Inc. is 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004. On or about the Petition Date, Eddie Bauer of Canada, Inc. and Eddie Bauer Customer Services, Inc., affiliates of the Debtors, commenced a proceeding before the Superior Court of Justice, Commercial List, for the Judicial District of Ontario, for a plan of compromise or arrangement under the Companies' Creditors Arrangement Act.

Steamtown Mall Partners, L.P.; Birch Run Outlets II, LLC; Gulf Coast Factory Shops Limited Partnership; Gaffney Outlets LLC; Grove City Factory Shops Limited Partnership; Outlet Village of Hagerstown Limited Partnership; Second Horizon Group Limited Partnership; Huntley Factory Shops Limited Partnership; The Prime Outlets at Lebanon Limited Partnership; Lee Outlets LLC; Williamsburg Outlets, L.L.C.; Minot Dakota Mall, LLC; Orlando Outlet Owner, LLC; Prime Outlets at Pleasant Prairie, LLC and Ohio Factory Shops Limited Partnership (the "Objecting Landlords"), by and through their counsel, Menter, Rudin & Trivelpiece, P.C. and Ballard Spahr Andrews & Ingersoll, LLP, hereby respectfully submit this Limited Objection to the procedural relief requested by the above-referenced motion (the "Sale Motion") and state as follows:

## BACKGROUND

1. On June 17, 2009 (the "Petition Date"), the above-referenced debtors (the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. Upon information and belief, the Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Objecting Landlords are parties to leases of nonresidential real property with the certain of the Debtors (the "Leases") for premises as follows:

| LANDLORD | SHOPPING CENTER | LOCATION |
|---|---|---|
| Steamtown Mall Partners, L.P. | The Mall at Steamtown | Scranton, PA |
| Birch Run Outlets II, LLC | Prime Outlets at Birch Run | Birch Run, MI |
| Gulf Coast Factory Shops Limited Partnership | Prime Outlets at Ellenton | Ellenton, FL |
| Gaffney Outlets LLC | Prime Outlets at Gaffney | Gaffney, SC |
| Grove City Factory Shops Limited Partnership | Prime Outlets at Grove City | Springfield, PA |
| Outlet Village of Hagerstown Limited Partnership | Maryland Factory Shops | Hagerstown, MD |

| The Prime Outlets at Lebanon Limited Partnership | The Prime Outlets at Lebanon | Lebanon, TN |
|---|---|---|
| Lee Outlets LLC | Prime Outlets at Lee | Lee, MA |
| Williamsburg Outlets L.L.C. | Prime Outlets at Williamsburg | Williamsburg, VA |
| Minot Dakota Mall, LLC | Dakota Square Mall | Minot, ND |
| Orlando Outlet Owner, LLC | Prime Outlets at Orlando | Orlando, FL |
| Prime Outlets at Pleasant Prairie, LLC | Prime Outlets at Pleasant Prairie | Pleasant Prairie, WI |
| Ohio Factory Shops Limited Partnership | Prime Outlets at Jeffersonville | West Lancaster, OH |

(collectively the "Premises").

4. The Premises are located within "shopping centers" as that term is used in Bankruptcy Code Section 365(b)(3). *See In re Joshua Slocum, Ltd.* 922 F.2d 1081, 1086-87 (3d Cir. 1990).

5. On June 17, 2009, the Debtors filed the Sale Motion. The Sale Motion seeks, among other things, (A) an Order establishing bidding and auction procedures (the "Bidding Procedures") in connection with the sale of substantially all of the Debtors' assets (the "Assets") free and clear of liens, claims and encumbrances; (B) approving bid protections for Rainier Holdings LLC ("Rainier") in accordance with a certain asset purchase agreement dated June 18, 2009 (the "APA") for the purchase of the Assets; (C) scheduling an auction (the "Auction") and setting a date for the sale hearing (the "Sale Hearing"); and (D) establishing procedures for noticing and determining cure amounts for executory contracts and leases to be assigned (the "Assumption and Assignment Procedures").

6. At the Sale Hearing, the date of which is to be determined by the Bidding Procedures Order, the Debtors request the Court enter an order (the "Sale Order") (A) approving and authorizing the sale, free and clear of all interests, except as set forth in the APA; (B) authorizing the assumption and assignment of certain executory contracts and unexpired leases; (C) establishing rejection procedures (the "Rejection Procedures") and establishing guidelines for conducting store closing sales (the GOB Sale Guidelines"); and (D) extending the deadline to assume or reject unexpired leases of nonresidential real property pursuant to 11 U.S.C. §

365(d)(4).

## **LIMITED OBJECTION**

*Lack of Adequate Assurance of Future Performance:*

7. The Sale Motion seeks authorization for the Debtors to enter into the APA with Rainier or one or more of its unknown subsidiaries. The Sale Motion does not contain information with respect to Rainier's or its unknown subsidiaries' financial condition or ability to perform under the Leases. The information provided regarding Rainier is insufficient and does not constitute adequate protection of future performance. The Debtors only provide information with respect to CCMP Capital Advisors, LLC ("CCMP") which is not the proposed assignee of the Leases.

8. The Objecting Landlords have been provided no information regarding Rainier's, or one of more of its unknown subsidiaries, financial condition and no other adequate assurance information as required by the Bankruptcy Code. Rainier has not indicated that it and CCMP will be providing payment guarantees with respect to the Leases. The purchaser should be required to provide current unaudited and audited financial statements, tax returns for the last three years, a pro forma balance sheet as of closing, proof of any financing commitments, bank statements, pro forma cash flow projections for two years, information regarding retail operating experience, intended nameplate for the stores and intended use of the stores which must be in compliance with the Leases. All such information should be provided to the Objecting Landlords by email to their counsel within two business days of the entry of an Order establishing the Bidding Procedures. Only in this manner may the Court and the Objecting Landlords be able to sufficiently assess whether adequate assurance of future performance has been provided prior to deadline to objection to assumption and assignment.

9. If Rainier is not the successful bidder at the Auction, the above-referenced adequate assurance information should be provided to the Objecting Landlords' counsel by email within twenty-four (24) hours of the conclusion of the Auction.

10. Objections to any proposed assumption and assignment of the Leases should be due at least fourteen (14) days after the adequate assurance information is received by the Objecting Landlords.

11. As described above, the Debtors' proposed potential assignment of the Leases on these terms is insufficient under Section 365(b)(1)(C), 365(b)(3)(C) and (f)(2).

12. Bankruptcy Code Section 365(b)(1) provides as follows:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;...;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1) (West 2009).

13. Bankruptcy Code Section 365(f)(2) provides as follows:

> (f)(2) The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

>       (B)     adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2) (West 2009).

14.     Bankruptcy Code Section 365(b)(3) defines adequate assurance of future performance as follows:

>       (3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance –...
>
>       (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
>       (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3) (West 2009).

15.     Section 365 of the Bankruptcy Code controls the assumption and assignment of non-residential property leases, and requires, *inter alia*, that the Debtors provide adequate assurance that the proposed assignee has the ability to perform under such lease as a condition to assume and assign a lease. 11 U.S.C. §§ 365(b) (1) (C) & (f) (2). The Debtors bear the ultimate burden of persuasion as to issues under 11 U.S.C. § 365. *See In re Rachels Industries, Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985).

16.     Adequate assurance of future performance is determined by the existing factual conditions, and the Court may look to many factors in determining what is necessary to provide adequate assurance of future performance under Section 365(b), including sufficient economic

backing, economic conditions, certificates, credit reports, escrow deposits or other similar forms of security or guarantee. *In re Lafayette Radio Electronics Corp.,* 9 B.R. 993, 998 (Bankr. E.D.N.Y. 1981); *In re Belize Airways,* 5 B.R. 152 (Bankr. S.D. Fla. 1980). Courts also look to the operating experience of the proposed assignee. *In re Bygaph, Inc.,* 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986).

17. Section 365 provides, *inter alia*, that a trustee may not assume and assign a lease unless there is adequate assurance that the proposed assignee can perform under such lease. 11 U.S.C. Section 365(b) (1) (C); *see also* 11 U.S.C. Section 365(f)(2). Where the lease involved is a shopping center lease, the Bankruptcy Code requires more than the basic adequate assurance of future performance of the lease under Section 365(b)(1)(C). *In re Arden and Howe Associates, Ltd.,* 152 B.R. 971, 976 (Bankr. E.D. Cal. 1993). As such, the Debtors must satisfy the heightened adequate assurance requirements by providing the information required by Section 365(b)(3).

***Proposed Lease Assumption and Assignment and Rejection Procedures:***

18. The Debtors' proposed procedure for assuming and assigning the Leases to the buyer after closing may deny the Objecting Landlords adequate assurance of future performance and payment of the cure amounts due under those leases. The Debtors propose to file a written notice of assumption and assignment of a lease and serve the landlord with that notice by overnight delivery. No later than ten (10) days after service of the notice, the Debtors seek to file a proposed order authorizing the assumption and assignment of that lease which will approve the assumption and assignment and state that the successful bidder has provided adequate assurance of future performance under the lease. This proposed assumption and assignment may occur up to two hundred and ten (210) days after the Petition date which will be

approximately six (6) months after the Sale Hearing. The financial condition and operating history of the buyer could change during that time and adequate assurance of future performance must exist as of assumption and assignment of the Leases. Moreover the APA simply states that the Debtors must move to assign leases upon the buyer's delivery of a notice to assume and assign a lease. *See* APA, Section 2.5(b), Pg. 23. It does not require the procedure proposed by the Debtors. The Debtors should therefore file and serve adequate assurance information with its post-closing notice of assumption and assignment and proposed assumption/assignment order and the Objecting Landlords should have at least fourteen (14) days to object with a hearing to be held thereafter in the event of any objection.

19. The Objecting Landlords require sufficient time to review such information, conduct expedited discovery if appropriate and object to any proposed assumption and assignment of the Leases. Any proposed assignees should be required to submit to expedited discovery if requested by the Objecting Landlords.

20. The Debtors' proposed assumption/assignment and Rejection Procedures could entail its seeking to assume and assign or reject leases after the maximum 210 day time period to assume and assign or reject (without prior written consent of the Objecting Landlords). Under the APA, the buyer can provide the Debtors with notice of a date up to 10 business days after 210 days after the Petition Date on which a lease is to be assumed and assigned. In addition, the Sale Motion states that after the designation deadline (the 210 day period) (the "Designation Deadline") it can seek to reject leases the buyer does not want in accordance with its proposed Rejection Procedures. It must be made clear that absent prior written consent of the Objecting Landlords, no lease can be assumed or rejected after 210 days subsequent to the Petition Date.

21. The Designation Deadline provided in the APA violates the terms of the Bankruptcy Code. Section 365(d)(4) of the Bankruptcy Code provides:

> (4) (A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—
>
> (i) the date that is 120 days after the date of the order for relief; or
>
> (ii) the date of the entry of an order confirming a plan.
>
> (B) (i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.
>
> (ii) If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

11 U.S.C. §365(d)(4) (West 2009).

22. The Debtors have 120 days to assume or reject the Leases and this time period expires on October 15, 2009. The Court may only extend the 120 day period *following the motion* of the Debtors. Even if the Court were to consider the Sale Motion the proper vehicle for a request to extend the time to assume or reject leases, the Debtors have not established "cause" for a 90 day extension of the time to assume or reject.

23. In determining how much time a debtor should have to assume or reject leases, the nature of the interests at stake should be analyzed, the balance of the harm to the litigants should be weighed, and the safeguards afforded the litigants should be assessed. *See Theatre Holding Corp. v. Mauro*, 17 B.R. 430 (S.D.N.Y. 1982), *aff'd*, 681 F.2d 102 (2d Cir. 1982).

24. The Debtors impermissibly seek, through approval of the APA, an extension of the time to assume or reject the Leases.

25. The proposed Rejection Procedures are deficient because the Debtors propose that leases be rejected effective on the later of: (a) ten (10) days after the filed rejection notice is served on the landlord or (b) the date it vacates the premises, "evidenced by actions such as turning over the keys or "key codes" to the affected landlord." *See* Sale Motion, Pg. 18. Rejection must be unequivocal and the Objecting Landlords are entitled to complete control over the Premises as of the effective date of rejection. Thus, rejection should not be effective until the later of: (i) ten (10) days after the filed rejection notice is served on the landlord and (ii) the date the keys or key codes are in fact turned over to the landlords. Additionally, if a party other than the Objecting Landlords objects to a rejection, the effective date of rejection should be the date fixed by the Court rather than the later of ten (10) days after notice and key delivery.

***Accrued But Unbilled Charges:***

26. The purchaser under the APA is not assuming any liabilities arising prior to closing under leases to be assumed and assigned. *See* APA Section 2.3, Pg. 20. The proposed form of Assignment and Assumption Agreement attached to the APA is consistent with this. Hence the buyer will apparently not be assuming liability for charges under an assumed lease arising, accruing or relating to a period prior to closing, but which have not yet come due under the Leases. Thus, there is no adequate assurance of future performance of accrued charges which have not come due under Leases being assumed and assigned.

27. The Debtors must ensure that all accrued, but unbilled charges, including year-end adjustments and reconciliations, if any, are paid in accordance with the terms of the Leases irrespective of whether those charges accrued before or after any assignment of the Leases. Any

proposed assignee must assume all such obligations upon any assignment of the Leases. This result is mandated by the requirement that the Debtors cure all arrears and that the Debtors provide adequate assurance of future performance under the terms of the Leases. *See* 11 U.S.C. §§ 365(b)(1)(A) and 365(f)(2). Section 365(b)(3) of the Bankruptcy Code specifically provides that, for purposes of Section 365(f), adequate assurance of future performance with regard to a lease of real property in a shopping center includes adequate assurance "of the source of rent and other consideration due under the lease." 11 U.S.C. § 365(b)(3)(A) (West 2009).

***Proposed Terms of Store Closing Sales:***

28. The proposed store closing sales are objectionable procedurally and substantively. First, no notice whatsoever is to be provided to the Objecting Landlords of any proposed store closing sales at specific stores. Second there is no notice of the terms of any proposed store closing sales and who is to conduct them: the buyer or a liquidator which the buyer hires. Third, the proposed GOB Sale Guidelines are objectionable.

29. The Objecting Landlords should receive at least fourteen (14) days notice of any store closing sales and all terms of any proposed sales including any agreement with a liquidator and the opportunity to object within the fourteen day notice period to the store closing sales on any grounds. The successful bidder should not be authorized to conduct store closing sales whenever it wants and on whatever terms it wants (in addition to the guidelines) between now and January 2010. Any proposed agreement with an inventory liquidator may be objectionable and there may be other reasons to object to such sales at a later date (e.g.- any failure to pay post-petition rent).

30. The Sale Motion contains proposed GOB Sale Guidelines. In the first Ames Department Stores case, this Court stated that "Section 363(e) reserves for bankruptcy courts the

discretion to condition the time, place and manner of store closing sales thereby providing adequate safeguards to protect shopping center landlords and their other tenants, by allowing the trustee to fulfill its fiduciary obligations." *In re Ames Department Stores, Inc.*, 136 B.R. 357 (Bankr. S.D.N.Y. 1992). The Objecting Landlords could be seriously damaged by the proposed store closing sales. Store closing or going out of business sales are detrimental, not only to the shopping center, but also to other tenants of the shopping center in question. Shopping centers are designed and planned for the retail sale of merchandise by numerous tenants operating in harmony with one another. The Objecting Landlords have designed well-thought out shopping centers with diverse tenant mixes. When one tenant deviates from customary operations by selling merchandise at liquidation or drastically reduced prices, all tenants suffer.

31. The Objecting Landlords oppose the GOB Sale Guidelines with respect to the store closing sales:

- There should be a prohibition on any solicitation of customers (whether in writing or not) outside of the Premises;

- There should be no more than one sign in any front window of the stores and the signs may not take up more than 50% of the window space;

- Any signs placed in a store's front window must be set back at least one foot;

- Only one interior banner no larger than 3' x 6' may be hung. The interior banner may only be hung in the rear third of the store;

- Total additional in-store signage must be limited to four 24" x 36" signs per 1,000 square feet of store floor area;

- No exterior banners may be used;

- The Debtors and any agent must be required to repair any damage caused by the placement of any signage;

- The Guidelines should specify that no interior or exterior balloons are permitted;

- There should be no sign walkers, sandwich boards or street signage. No sign walkers should be used on mall property, immediately adjacent streets, or ring roads;

- It should be made clear that no signs or advertisements can use the terms "bankruptcy," "bankruptcy liquidation", "lost our lease," "going out of business" or use similar themes;

- There should be no auctions;

- Furniture, fixture and equipment ("FF&E") must be removed through exits designated by the Objecting Landlords before or after regular hours of the shopping centers;

- The entity conducting the store closing sales must abide by all applicable shopping center guidelines regardless of whether the center is an enclosed center or non-enclosed center; and

- There should be be no augmentation of the Debtors' inventory.

32. Any order approving the GOB Sale Guidelines should provide that any side agreement reached with the Objecting Landlords shall control notwithstanding the provisions of the order.

### *Real Property Leases Transitional Services Agreement:*

33. The Real Property Leases Transitional Services Agreement is deficient because it only obligates the purchaser to maintain public liability insurance and insurance policies covering injuries to persons or property in connection with the purchaser's operating at such store in such amounts as it deems commercially reasonable **or** as otherwise required by the Leases. It must be clarified that the purchaser must at a minimum maintain all insurance and name the Objecting Landlords as additional insureds/ loss payees as required by the Leases.

### **Joinder**

34. The Objecting Landlords join in the objections filed by other landlords to the Sale Motion to the extent they are not inconsistent with this Limited Objection.

**WHEREFORE**, the Objecting Landlords respectfully request that any order granting the Sale Motion be modified pursuant to the terms of this Limited Objection, or that the Sale Motion be denied in its entirety, and that the Objecting Landlords be granted such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: June 25, 2009  
Wilmington, Delaware

/s/ Leslie C. Heilman  
Leslie C. Heilman, Esquire (No. 4716)  
BALLARD SPAHR ANDREWS & INGERSOLL, LLP  
919 N. Market Street, 12th Floor  
Wilmington, DE 19801  
Telephone: (302) 252-4465  
Facsimile: (302) 252-4466  
E-mail: heilmanl@ballardspahr.com

-and-

MENTER, RUDIN & TRIVELPIECE, PC
Kevin M. Newman, Esq.
James C. Thoman, Esq.
308 Maltbie Street, Suite 200
Syracuse, New York 13204
Telephone: (315) 474-7541
Facsimile: (315) 474-4040

*Attorneys for Steamtown Mall Partners, L.P.; Birch Run Outlets II, LLC; Gulf Coast Factory Shops Limited Partnership; Gaffney Outlets LLC; Grove City Factory Shops Limited Partnership; Outlet Village of Hagerstown Limited Partnership; Second Horizon Group Limited Partnership; Huntley Factory Shops Limited Partnership; The Prime Outlets at Lebanon Limited Partnership; Lee Outlets LLC; Williamsburg Outlets, L.L.C.; Minot Dakota Mall, LLC; Orlando Outlet Owner, LLC; Prime Outlets at Pleasant Prairie, LLC; and Ohio factory Shops Limited Partnership*