## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EDDIE BAUER HOLDINGS, INC., ET AL.,[1]<br><br>Debtors. | Chapter 11<br>Case No. 09-12099 (MFW)<br>(Jointly Administered)<br><br>Related Docket No. 24 |

**LIMITED OBJECTION BY CAPITAL AUGUSTA PROPERTIES LIMITED PARTNERSHIP TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(A), 363, 365, AND BANKRUPTCY RULES 2002, 6004, 6006 FOR (I) ENTRY OF AN ORDER (A) ESTABLISHING BIDDING AND AUCTION PROCEDURES RELATED TO THE SALE OF ALL OF THE DEBTORS' ASSETS; (B) APPROVING BID PROTECTIONS FOR THE SALE OF THE DEBTORS' ASSETS; (C) SCHEDULING AN AUCTION AND SALE HEARING FOR THE SALE OF THE DEBTORS' ASSETS; (D) ESTABLISHING CERTAIN NOTICE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND LEASES TO BE ASSIGNED; AND (E) GRANTING CERTAIN RELATED RELIEF; AND (II) ENTRY OF AN ORDER (A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) ESTABLISHING REJECTION PROCEDURES AND GUIDELINES FOR CONDUCTING STORE CLOSING SALES; AND (D) EXTENDING THE DEADLINE TO ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY PURSUANT TO 11 U.S.C. § 365(D)(4)**

NOW COMES Capital Augusta Properties Limited Partnership, a landlord of the Debtors

(the "Landlord"), and hereby objects on a limited basis (the "Objection") to the Debtors' Motion

Pursuant to 11 U.S.C. §§ 105(A), 363, 365, and Bankruptcy Rules 2002, 6004, 6006 for (I) Entry

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Eddie Bauer Holdings, Inc., a Delaware Corporation (2352); Eddie Bauer, Inc., a Delaware corporation (9737); Eddie Bauer Fulfillment Services, Inc., a Delaware Corporation (0882); Eddie Bauer Diversified Sales, LLC, a Delaware limited liability company (1567); Eddie Bauer Services, LLC, an Ohio limited liability company (disregarded), Eddie Bauer International Development, LLC, a Delaware limited liability company (1571); Eddie Bauer Information Technology, LLC, a Delaware limited liability company (disregarded); Financial Services Acceptance Corporation, a Delaware corporation (7532); and Spiegel Acceptance Corporation, a Delaware corporation (7253). The mailing address for Eddie Bauer Holdings, Inc. is 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004. On or about the Petition Date, Eddie Bauer of Canada, Inc. and Eddie Bauer Customer Services, Inc., affiliates of the Debtors, commenced a proceeding before the Superior Court of Justice, Commercial List, for the Judicial District of Ontario, for a plan of compromise or arrangement under the Companies' Creditors Arrangement Act.

of an Order (A) Establishing Bidding and Auction Procedures Related to the Sale of All of the Debtors' Assets; (B) Approving Bid Protections for the Sale of the Debtors' Assets; (C) Scheduling an Auction and Sale Hearing for the Sale of the Debtors' Assets; (D) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Leases to be Assigned; and (E) Granting Certain Related Relief; and (II) Entry of an Order (A) Approving the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (C) Establishing Rejection Procedures and Guidelines for Conducting Store Closing Sales; and (D) Extending the Deadline to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to 11 U.S.C. § 365(D)(4) (the "Sale Motion"). In support of this Objection, the Landlord respectfully states as follows:

## I. BACKGROUND

1. On or about June 17, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to act as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

2. The Landlord leases retail space (the "Premises") to one of the Debtors within a shopping center (the "Shopping Center") pursuant to a lease agreement dated April 27, 2001 (the "Lease").

3. The Shopping Center is a "shopping center" as that term is used in Bankruptcy Code § 365(b)(3). See In re Joshua Slocum, Ltd., 922 F.2d 1081 (3d Cir. 1990). Consequently, the Landlord is entitled to the protections that Bankruptcy Code § 365(b)(3) grants to landlords of shopping centers.

2

4. The Shopping Center is a newer, successful, open-air shopping center located in Augusta, Maine. It is the largest open-air shopping center in Maine.

5. On the Petition Date, the Debtors filed the Sale Motion seeking, among other relief, an order approving bidding and auction procedures for the sale of substantially all of the Debtors' assets to Rainier Holdings LLC (the "Stalking Horse Bidder") or another successful bidder.

6. The Debtors also seek authority to assume and assign certain unexpired leases, as well as an order establishing rejection procedures and guidelines for conducting store closing sales (the "Store Closing Sales") at some of its locations. The Debtors have yet to identify the leases that will be rejected or the locations where Store Closing Sales may occur. The Debtors include as an exhibit to the Sale Motion the guidelines (the "Sale Guidelines" or "Guidelines") that they propose the Store Closing Agent (defined in the Guidelines as the Stalking Horse Bidder or successful bidder) follow when conducting the Store Closing Sales.

7. The Landlord objects to the Sale Motion and to certain provisions of the Sale Guidelines for the reasons set forth herein.

## II. LANDLORD'S OBJECTIONS

### A. LANDLORD'S OBJECTIONS TO ASSUMPTION & ASSIGNMENT

8. The Sale Motion fails to adequately address the assumption and assignment of non-residential real property leases under Bankruptcy Code § 365. The Landlord objects to the assumption and assignment of the Lease as set forth below. Further, the Landlord reserves the right to supplement this section once the Debtors disclose the identity of a proposed assignee.

### *(i) Adequate Assurance of Future Performance*

9. Landlords are entitled to "adequate assurance" of future performance by any proposed assignee. See Bankruptcy Code § 365(b). Further, pursuant to Bankruptcy Code § 365(b)(3), in a shopping center, adequate assurance of future performance includes adequate assurance:

> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

#### a. *Timing*

10. The Landlord objects to the Sale Motion to the extent that the procedures proposed therein fail to establish an appropriate and reasonable timeline for the Debtors to circulate adequate assurance information to landlords. The Debtors' proposed timeline includes a sale hearing (the "Sale Hearing") on July 17, 2009, one day after the auction and three days after the bid submission deadline. This proposed process fails to provide adequate time for the Landlord to vet adequate assurance materials and address any issues that may arise at the Sale Hearing.

4

### b. *Financial Assurances*

11. Since the identity of any future assignee is currently unknown, the Landlord reserves all of its rights regarding adequate assurance including, without limitation, issues regarding financial condition and ability. Without limitation, the Landlord will require the following information to meaningfully assess the financial condition and ability of any proposed assignee:

- (i) The exact name of the successful bidder and the exact name of the entity that is going to be designated as the assignee of Lease;

- (ii) The assignee's and/or guarantor's audited (or un-audited, if audited is not available) financial statements and any supplemental schedules for the calendar or fiscal years ended 2006, 2007, and 2008;

- (iii) Any and all documents regarding the proposed assignee's experience in operating in-line retail stores in shopping centers;

- (iv) The number of stores the proposed assignee operates and all trade names the proposed assignee uses;

- (v) A statement setting forth the proposed assignee's intended use of the premises;

- (vi) The proposed assignee's 2009 and 2010 business plans including sales and cash flow projections; and

- (vii) Any financial projections, calculations and/or financial proformas prepared in contemplation of purchasing the Lease.

12. Further, depending on the scope and quality of the adequate assurance materials provided by the proposed assignee, the Landlord might require additional time to examine the materials and, possibly, to conduct discovery, including but not limited to, interviewing or subpoenaing individuals with information concerning the proposed assignee.

### c. *Use & Tenant Mix Provisions*

13. To maintain the particular tenant mix desired by the Shopping Center's discerning customers, the Lease contains specific use and occupancy provisions. Bankruptcy Code §

365(b)(3) requires the Debtors to provide adequate assurance that any proposed assignee will remain subject to all lease restrictions, including use restrictions. Any otherwise-qualified assignee or purchaser must abide by the terms of the Lease and be prohibited from using the Premises for any restricted purpose.

### (ii) *Post-Petition Payment of Rent*

14. The Debtors must timely perform their post-petition obligations under non-residential real property leases until the assumption or rejection of the lease. Bankruptcy Code § 365(d)(3). These obligations include the payment of rent. See e.g. Towers v. Chickering & Gregory (In re Pacific-Atlantic Trading Co.), 27 F.3d 401, 404 (9th Cir. 1994). Accordingly, the Landlord requests that this Court specifically order the Debtors to timely pay all rent obligations as they come due.

15. The Debtors must also ensure that all accrued but unbilled charges, including year-end adjustments and reconciliations, if any, are paid in accordance with the terms of the Lease and that any assignee assumes all such obligations upon any assignment of the Lease. This result is mandated by the requirement of Bankruptcy Code §§ 365(b)(1)(A) and 365(f)(2) that the Debtors cure all arrears and that the Debtors provide adequate assurance of future performance under the terms of the Lease. This includes providing the Landlord with adequate assurance "of the source of rent and other consideration due under the lease." Bankruptcy Code § 365(b)(3)(A).

### B. LANDLORD'S OBJECTIONS TO PROPOSED SALE GUIDELINES

16. Broadly, the Landlord objects to the Sale Guidelines because they offer minimal protections for non-enclosed shopping centers, such as the Shopping Center. For example, the Guidelines require the Debtors and/or Store Closing Agent to abide by the rules and regulations of enclosed shopping centers—but not non-enclosed shopping centers—with respect to operating hours, maintenance, security, and trash removal. The Guidelines also offer <u>no limitations whatsoever</u> on the size, number, or placement of signs and banners at non-enclosed shopping centers, like the Shopping Center.

17. The Shopping Center is a newer, successful open-air shopping center that attracts a diverse and discerning clientele. Unchecked activity of the Debtors and/or the Store Closing Agent with respect to the Premises would damage the value of the Premises, impact adjacent stores, and/or negatively affect the Shopping Center itself. The Landlord therefore requests that it be offered, at a minimum, the same protections and limitations that the Guidelines allow for landlords of enclosed shopping centers. As identified below, however, the Landlord believes that the Guidelines are deficient even as they pertain to enclosed shopping centers.

18. In addition to the objections set forth below, the Landlord objects to the inclusion in the future of additional Sale Guidelines or procedures adverse to the Landlord, and reserves the right to object to any additional guidelines proposed in the future.

#### *(i) Hours of Operation and Related Guidelines*

19. Guideline 2 states that the Store Closing Sales shall be conducted "during hours that are deemed appropriate by the Store Closing Agent (irrespective of any operating hours restriction provision contained in [the Lease], <u>provided, however</u>, as to stores located within enclosed shopping malls, the Store Closing Agent shall abide by any applicable mall guidelines

7

regarding operating hours, maintenance, security and trash removal." The Landlord objects to this Guideline because it offers no protections whatsoever for *non-enclosed* shopping centers, such as the Shopping Center. The Landlord requests that the Court require the Debtors to keep the Premises open for business during the Shopping Center's normal hours of operation.[2] The Landlord also requests that the Court require the Debtors and/or the Store Closing Agent to abide by all of Lease and or Shopping Center guidelines pertaining to maintenance, security, and trash removal, as required at enclosed shopping malls.

### *(ii)* *Signage*

20. The Landlord objects to the Guidelines to the extent that they offer <u>no limitations or protections whatsoever</u> with respect to signage at non-enclosed shopping centers, such as the Shopping Center. The Debtors and the Store Closing Agent should not be permitted to hang an excessive number of large signs and banners at the Premises simply because the Premises is located within a non-enclosed shopping center. However, even the signage limitations offered in the Guidelines to landlords of enclosed shopping centers are unacceptable to the Landlord in their current form.

21. Specifically, since a cluttered look does not match the ambiance of the Shopping Center or of the neighboring stores, signage within the Premises should be limited to a small number of "toppers" and, after more specific discussions with the Landlord, a moderate number of moderately sized signs in the interior of the store at mutually agreed-upon locations.

22. The Debtors and the agent should be prohibited from affixing any signs to either the internal or external glass store windows within the Premises. The Shopping Center was created to encourage foot traffic among and between the stores located within the Shopping

---

[2] Section 10.2(h) of the Lease requires the Premises to remain open for business at least 9:30 A.M. to 9:30 P.M. Monday through Saturday and noon to 6:00 P.M. on Sundays.

8

Center and signage taped or affixed to the glass windows is unattractive, obnoxious, and inappropriate within this atmosphere.

23. Further, the Guidelines are insufficient with respect to external signage limits in "non-enclosed" locations. There must be reasonable limits on any external signs on non-enclosed locations including, without limitation, size and location limits. For example, the Debtors and the Store Closing Agent should be limited to one exterior storefront banner measuring no greater than 3' x 15'. Under no circumstances may the Debtors or the Store Closing Agent place a sign on the rooftop or the rear of the Shopping Center.

24. If an exterior banner is hung, the Debtors and the Store Closing Agent must be strictly prohibited from damaging the façade of the Shopping Center including, without limitation, utilizing nails, screws, or any other adhesive which would penetrate or otherwise damage the façade of the Premises.

25. In connection with the requirement of Guideline 8 that all display and hanging signs be "professionally produced" and hung in a "professional manner," the Landlord requests specific authorization in the Guidelines to immediately remove from the Premises signage that appears in any way unprofessional or that clearly fails to conform to the terms of the final Sale Guidelines.

26. In order to ensure a professional look regarding signage, the Debtors and the Store Closing Agent should be required to use only two-color signage produced on a neutral background.

27. While the Landlord has no specific objection to use of the term "store closing sale" (as contemplated in Guideline 9), the Landlord objects to use of terms like "liquidation" (also contemplated in Guideline 9) and "bankruptcy," both in signage at the Premises and in

9

other public advertisements (i.e., print media, radio, internet, etc.). Such terms imply catastrophic demise, which is harmful to the images of the Shopping Center. Further, under no circumstances should the Debtors be permitted to include the bankruptcy case number in their advertisements. The Landlord requests that the Court limit the Debtors and the Store Closing Agent to advertising a "store closing sale."

28. The Landlords also objects to the Sale Guidelines to the extent that they may permit promotional advertisements and/or behavior that is offensive to customers of the Shopping Center. The Landlord requests that the Sale Guidelines specifically prohibit A-Frame signs, sign walkers, balloons, distribution of handbills, and street signage at the Premises or in the vicinity of the Shopping Center.

### *(iii)* *Abandoned Property & Fixtures*

29. The Landlord objects to Guideline 6 to the extent that it permits the Debtors and the Store Closing Agent to leave any Abandoned Property (defined as trade fixtures or other materials of de minimis value) at the Premises at the conclusion of the Store Closing Sales. As the Debtors will sell all of their inventory and FF&E to the Store Closing Agent, that agent will become the owner of all such assets and will receive the benefit of advertising each for sale. The Landlord should not be forced to incur costs for removal of assets simply because the Store Closing Agent fails in its goal of selling those assets. The Landlord requests that the Court require the Store Closing Agent to dispose of any and all personal property and FF&E before vacating the Premises.

30. The Landlord also objects to Guideline 6 to the extent that it permits removal of FF&E during regular business hours at a non-enclosed shopping center, like the Shopping Center. Removal of FF&E should take place before or after the regular hours of the Shopping

Center and/or the Premises, so as not to disrupt visitors to the Shopping Center or the businesses adjacent to the Premises. Notably, Guideline 6 requires removal of FF&E only before or after regular business hours of *enclosed* shopping centers.

### *(iv)* *Conclusion of the Store Closing Sales*

31. The Landlord objects to Guideline 5 to the extent that the Debtors and the Store Closing Agent may be permitted to leave the Premises in any condition other than "broom clean condition" at the conclusion of the Store Closing Sales.

32. The Landlord requires <u>immediate</u> access to the Premises upon conclusion of the Store Closing Sales in order to dress store windows and otherwise minimize the appearance of a dark store.

33. If the Premises will be "dark" for any length of time, the Debtors should be required to reject the Lease and return the Premises to the Landlord. Alternatively, the Court should set limits on the potential duration for the Premises to remain "dark."

### *(v)* *Dispute Resolution Process*

34. Should any issues arise regarding the conduct of the Store Closing Sale, the Landlord will first attempt to contact the party that will be designated pursuant to Guideline 15. However, nothing in the Guidelines should limit the Landlord's ability to seek and obtain immediate relief from the Bankruptcy Court if necessary. Any passage of time, in the face of the Debtors' or the Store Closing Agent's non-compliance with the certain of the Guidelines, might severely damage the Shopping Center and the Premises. Nothing in the Guidelines should prohibit the Landlord's ability to obtain immediate relief in such a situation.

## C. LANDLORD'S OBJECTIONS TO AUGMENTATION OF INVENTORY

35. The Landlord objects to any inclusion of augmented merchandise in the Store Closing Sales and any order approving the Store Closing Sales should explicitly prohibit augmentation of inventory from other sources. There is no basis under the Bankruptcy Code to authorize inventory augmentation as part of an asset sale and it would impose a tremendous burden on the Landlord to monitor and regulate potential "dumping" of assets owned by the Store Closing Agent or third parties into the Premises. Customers at the Premises could be misled by inferior products. Further, augmentation of inventory would likely extend the duration of the Store Closing Sale beyond when it would otherwise conclude.

## III. CONCLUSION

24. The Landlord reserve the right to amend this Objection as appropriate once the Debtors determine the identity of the Store Closing Agent and provide more detail regarding the proposed Store Closing Sales. The Landlords also reserve all rights to object to the Store Closing Sales themselves, once the Debtors identify the Store Closing Agent and provide detailed information regarding same.

25. Further, to the extent not inconsistent herewith, the Landlord adopts and incorporates objections filed by other landlords impacted by the Sale Motion.

WHEREFORE, the Landlord respectfully requests that the Court enter an Order:

A.  Granting relief consistent with the foregoing objections; and

B.  Granting the Landlord such other and further relief as is just.

Respectfully submitted,

CAPITAL AUGUSTA PROPERTIES
LIMITED PARTNERSHIP,

By its attorney,

*/s/ William A. Hazeltine*
William A. Hazeltine, Esq. (3294)
Sullivan Hazeltine Allinson LLC
4 East 8th Street, Suite 400
Wilmington, DE 19801
Phone: (302) 428-8191
Fax:   (302) 428-8195

AND

Joseph H. Baldiga BBO #549963
Paul W. Carey, BBO #566865
Gina M. Barbieri, BBO # 670596
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:   (508) 791-8502
Email: bankrupt@modl.com
Email: jhbaldiga@modl.com
Email: pwcarey@modl.com
Email: gmbarbieri@modl.com

Dated: June 26, 2009