IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EDDIE BAUER HOLDINGS, INC., *et al.* | ) | Case No. 09-12099 (MFW) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Objection Deadline: 6/26/09 at 12:00 p.m. |
| | ) | Hearing Date: 6/29/09 at 11:30 a.m. |
| | ) | |
| | ) | Re: D.I. 24 |

**OBJECTION OF INLAND SOUTHWEST MANAGEMENT LLC, INLAND AMERICAN RETAIL MANAGEMENT LLC, AND INLAND COMMERCIAL PROPERTY MANAGEMENT, INC. TO MOTION PURSUANT TO 11 U.S.C. §§ 105(A), 363, 365, AND BANKRUPTCY RULES 2002, 6004, 6006 FOR (I) ENTRY OF AN ORDER (A) ESTABLISHING BIDDING AND AUCTION PROCEDURES RELATED TO THE SALE OF ALL OF THE DEBTORS' ASSETS; (B) APPROVING BID PROTECTIONS FOR THE SALE OF THE DEBTORS' ASSETS; (C) SCHEDULING AN AUCTION AND SALE HEARING FOR THE SALE OF THE DEBTORS' ASSETS; (D) ESTABLISHING CERTAIN NOTICE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND LEASES TO BE ASSIGNED; AND (E) GRANTING CERTAIN RELATED RELIEF; AND (II) ENTRY OF AN ORDER (A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) ESTABLISHING REJECTION PROCEDURES AND GUIDELINES FOR CONDUCTING STORE CLOSING SALES; AND (D) EXTENDING THE DEADLINE TO ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY PURSUANT TO 11 U.S.C. § 365(D)(4)**

Inland Southwest Management LLC ("Inland Southwest"), Inland American Retail Management LLC ("Inland American") and Inland Commercial Property Management, Inc. ("Inland Commercial," and together with Inland Southwest and Inland American, "Inland"), by and through their undersigned counsel, hereby object (the "Objection") to the *Motion Pursuant to 11 U.S.C. §§ 105(a), 363 and 365, and Bankruptcy Rules 2002, 6004, 6006 for (I) Entry of an Order (A) Establishing Bidding and Auction Procedures Related to the Sale of All of the Debtors' Assets; (B) Approving Bid Protections for the Sale of the Debtors' Assets; (C) Scheduling an Auction and Sale*

*Hearing for the Sale of the Debtors' Assets; (D) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Leases to Be Assigned; and (E) Granting Certain Related Relief; and (II) Entry of an Order (A) Approving the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (C) Establishing Rejection Procedures and Guidelines for Conducting Store Closing Sales; and (D) Extending the Deadline to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to 11 U.S.C. § 365(d)(4)* (D.I. 24) ("Procedures Motion"). In support of this Objection, Inland respectfully states as follows:

## BACKGROUND

1. On June 17, 2009, the above-captioned debtors ("Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code"). The Debtors are operating their businesses and managing their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. Inland Southwest is the managing agent for landlords who are parties to certain unexpired leases of non-residential real property with the Debtors for premises located in (i) the Southlake Town Square Phase I shopping center in Southlake, Texas ("Southlake Lease"), and (ii) the Huebner Oaks Center in San Antonio, Texas ("San Antonio Lease"). Inland American is the managing agent for a landlord who is a party to a certain unexpired lease of non-residential real property with the Debtors for premises located in the Streets of Indian Lake shopping center in Hendersonville, Tennessee

("Hendersonville Lease"). Inland Commercial is the managing agent for a landlord who is a party to a certain unexpired lease of non-residential real property with the Debtors for premises located in the Joliet Commons Phase II shopping center in Joliet, Illinois ("Joliet Lease," and together with the Southlake Lease, the San Antonio Lease, and the Hendersonville Lease, the "Leases"). The Leases are leases "of real property in a shopping center" for purposes of section 365(b)(3) of the Bankruptcy Code.

3. According to the Procedures Motion, which the Debtors filed on the Petition Date, prior to the Petition Date, the Debtors determined it was in the best interests of their estates and creditors to preserve their businesses as a going concern and pursue a sale process by which they would sell substantially all of their Assets,[1] including, but not limited to, as many of their leases as possible. To that end, the Debtors entered into a Stalking Horse Asset Purchase Agreement with Rainier Holdings, LLC ("Stalking Horse Bidder").

4. Through the Procedures Motion, the Debtors seek to sell their Assets to the Stalking Horse Bidder, and, in connection therewith, the Debtors seek authority to establish (a) bidding and auction procedures in connection with the sale of the Debtors' Assets ("Bidding Procedures"); (b) procedures for noticing and determining cure amounts for executory contracts and leases to be assigned ("Assumption/Assignment Procedures"); (c) rejection procedures for the rejection of certain leases (the "Rejection Procedures"); and (d) guidelines (the "Sale Guidelines") for conducting promotional, going-out-of-business or similar liquidation sales (the "GOB Sales").

5. Pursuant to the deal the Debtors have reached with the Stalking Horse Bidder, the Stalking Horse Bidder has not yet identified which unexpired leases it will

---

[1] All terms not defined herein shall have the meanings ascribed to them in the Procedures Motion.

assume, and will likely have as many as 210 days from the Petition Date to make its decision. Presumably because the Debtors are uncertain regarding the future status of their unexpired leases, they have sought approval of a multitude of lease-related procedures, as set forth above. However, such uncertainty has made this proposed sale more complicated and more confusing for the landlords to determine exactly what may happen with respect to their leases with the Debtors.

## OBJECTIONS TO THE PROCEDURES MOTION

6. Inland hereby objects to the Procedures Motion, including, but not limited to: (a) the Assumption/Assignment Procedures; (b) the Sale Guidelines that will govern the conduct of the GOB Sales; and (c) the Rejection Procedures.

### A. OBJECTIONS TO THE ASSUMPTION/ASSIGNMENT PROCEDURES

7. Inland objects to the Assumption/Assignment Procedures in that they fail to adequately protect Inland's rights and interests under the Leases. Specifically, the Assumption/Assignment Procedures fail to provide Inland (i) with any adequate assurance information *whatsoever* prior to the Sale Hearing with respect to either the Stalking Horse Bidder or any other Bidder; and (ii) an opportunity to object to what adequate assurance information may be available, if any, other than at the Sale Hearing.

8. The Procedures Motion and Bidding Procedures establish the following deadlines that will govern the sale of the Debtors' Assets:

- July 14, 2009 – Submission Deadline for Qualified Bids
- July 16, 2009 – Auction
- July 17, 2009 – Sale Hearing
- July 31, 2009 – Consummation of Sale of Debtors' Assets

9. While the Debtors do state that they will provide a Cure Notice, and an opportunity to object thereto, nowhere in the Procedures Motion do the Debtors commit

4

to providing adequate assurance information with respect to the Stalking Horse Bidder, or any other Bidder, prior to the Sale Hearing. In fact, the only mention of adequate assurance appears in paragraph 35 of the Procedures Motion, which states: "[a]t the Sale Hearing, the Debtors shall (i) present evidence necessary to demonstrate adequate assurance of future performance by any Successful Bidder. . . ." Procedures Motion, ¶ 35.

10. The lack of obligations placed upon the Debtors with respect to adequate assurance information is clearly inadequate, particularly in light of the fact that the Debtors are presumably already in possession of the adequate assurance information for the Stalking Horse Bidder, and will be in possession of the adequate assurance information for any other Qualified Bidders no later than July 14, 2009. At a minimum, Inland will need to review relevant financial information for the Stalking Horse Bidder and any other Qualified Bidders in order to ensure the Debtors are able to satisfy the requirements set forth in 11 U.S.C. § 365.

11. The Procedures Motion leaves open the possibility that, at least in the event the Stalking Horse Bidder is the Successful Bidder, the Debtors *may not* seek approval of the assumption and assignment of any leases at the Sale Hearing. Alternatively, the Debtors *may* seek approval of the assumption and assignment of any leases at the Sale Hearing (with any such assignments effective on the Closing Date). In the latter case, Inland will need to undertake the time-consuming task of reviewing not only the Leases, but the leases of every other tenant in the relevant shopping centers to make sure that any assignment will not violate any use, radius or location provision contained in such leases and will not otherwise disrupt the tenant mix at the relevant

shopping center. Inland's review of such information cannot be conducted at the Sale Hearing while such evidence is simultaneously being presented to the Court, as proposed in the Procedures Motion.

12. Instead, Inland respectfully submits that the Procedures Motion and the Assumption/Assignment Procedures should be modified to include the following provisions:

> (a) The Debtors shall provide to Inland and its undersigned counsel, via facsimile or e-mail, the adequate assurance information with respect to the Stalking Horse Bidder simultaneously with the Cure Notice, *i.e.* within five (5) business days after entry of an order approving the Bidding Procedures;
>
> (b) The Debtors shall provide to Inland and its undersigned counsel, via facsimile or e-mail, the adequate assurance information with respect to any Qualified Bidders by no later than 5:00 p.m. (E.T.) on July 14, 2009; and
>
> (c) Objections to the adequate assurance information of the Stalking Horse or any Qualified Bidder may be submitted prior to or at the Sale Hearing.

13. Additionally, the Debtors seek approval of expedited Assumption/Assignment Procedures ("Expedited Assumption/Assignment Procedures") for those executory contracts and unexpired leases that are not assumed and assigned to the Successful Bidder at the Closing on the sale of the Debtors' Assets. The Expedited Assumption/Assignment Procedures are objectionable because they fail to adequately protect Inland's rights and interests in the Leases. First, the Debtors propose that they will send the Post-Closing Assumption Notices directly to Inland via overnight delivery, but not to known undersigned counsel. Procedures Motion, ¶ 37. Instead, the Debtors should be required to send undersigned counsel copies of any Post-Closing Assumption Notices that relate to the Leases. Second, the Expedited Assumption/Assignment

6

Procedures do not place any obligations upon the Debtors to provide adequate assurance information to landlords. Instead, at a minimum, the Expedited Assumption/Assignment Procedures should be modified to require the Debtors to include with the Post-Closing Assumption Notice any adequate assurance information with respect to the Successful Bidder.

B.     OBJECTIONS TO THE SALE GUIDELINES

14.     Many aspects of the GOB Sales are not addressed by the Sale Guidelines, and the Sale Guidelines are not sufficient to protect Inland's interest in the Leases and the premises subject to the Leases (the "Leased Premises"). The GOB Sales should not be approved unless sufficient guidelines are in place to ensure that relevant provisions of the Leases will be complied with and that the dignity and value of the Leased Premises will be maintained. Allowing the GOB Sales to go forward as proposed, without adequate limitations, will disturb the quiet enjoyment and economic prosperity of the applicable shopping centers.

15.     Specifically, Inland objects to the Sale Guidelines on the following bases:

     a.     The Sale Guidelines do not restrict the number of days during which the GOB Sales may be conducted;

     b.     The Sale Guidelines do not require the Store Closing Agent to operate the closing stores during normal operating hours that are required by the Leases, but rather permit the Store Closing Agent to choose whatever hours they deem appropriate;

     c.     The Sale Guidelines do not restrict the augmentation of inventory at a closing store in order to avoid violation of any use restrictions;

     d.     The Sale Guidelines do not contain any limitations on the number, size or location of signs and advertisements at the closing stores with respect to non-enclosed mall locations and the limitations with respect to enclosed mall locations are objectionable;

e. The Sale Guidelines permit the Store Closing Agent to utilize exterior banners at the non-enclosed closing stores without regard to lease terms and without placing any limitations on the number of exterior banners that may be used and/or where they may be placed;

f. The Sale Guidelines do not require the Store Closing Agent to repair (or indemnify landlord for the costs to repair) any damage caused to the stores by the Store Closing Agent's advertising and signage;

g. The Sale Guidelines do not require the immediate removal of advertising from the closing stores upon conclusion of the GOB Sales;

h. The Sale Guidelines may permit the Store Closing Agent to solicit customers and/or advertise the GOB Sales outside of the subject premises including, but not limited to, distribution of handbills, leaflets and other written materials, and permit the use of street signage on landlord property;

i. The provision in the Sale Guidelines authorizing the abandonment of personal property at the Leased Premises cannot excuse the Store Closing Agent from its obligation to vacate the Leased Premises in "broom clean" condition at the conclusion of the GOB Sales;

j. The Sale Guidelines do not permit a landlord to seek expedited redress from the Court in the event of a dispute between a landlord and the Store Closing Agent;

k. The Sale Guidelines permit a store to "go dark" prior to rejection of the applicable lease;

l. The Sale Guidelines permit the Store Closing Agent to sell and remove FF&E during the GOB Sales without (i) complying with any terms of the Leases that restrict or limit the liquidation of inventory, fixtures or equipment at the closing stores, and (ii) without limiting the timing for the removal of the FF&E to the last days of the GOB Sales; and

m. The Sale Guidelines do not require the Debtors and the Store Closing Agent to indemnify landlords in the event a landlord receives any citations from local authorities resulting from the GOB Sales.

16. Moreover, Inland objects to the Debtors' attempt to nullify unspecified provisions of the Leases, which the Debtors may deem to restrict the GOB Sales, in their sole discretion. Despite the Debtors' assertion that they should be freed from any provisions contained in the Leases that may limit the GOB Sales, the Bankruptcy Code does not automatically abrogate all lease provisions that limit such sales. *See In re Ames Department Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992).

17. The terms and conditions of the Leases (to which Debtors agreed) are designed to maintain the dignity and value of the Leased Premises. The Court should not provide the Debtors with the unfettered discretion to deem unspecified terms of the Leases invalid merely because the Debtors feel that those portions are restrictive. The Court must balance any benefit to the Debtors' estate that will be achieved from the proposed GOB Sales with the right of Inland to rely on the enforceability of the bargained-for provisions of the Leases. *See In re Libson Shops, Inc.*, 24 B.R. 693, 695 (Bankr. E.D. Mo. 1982) (court required the debtor to continue to comply with lease provisions that were not in contravention of the sale order).

18. If the Debtors believe that particular provisions of the Leases will restrict the GOB Sales, the burden remains with the Debtors to specifically identify those provisions. Upon adequate notice, this Court may then determine whether nullification is fair and just.

19. Additionally, Inland objects to the Debtors' request for an overly broad injunction against Inland. The Debtors seek an injunction from this Court prohibiting Inland from taking action "to prevent, interfere with, or otherwise hinder consummation of the Store Closing Sales . . . ." Procedures Motion, ¶ 93. The Debtors have established

neither a factual nor legal basis for the issuance of such an injunction. If implemented, the proposed injunction must be restricted to situations where the Debtors (or their agent) are fully complying with the Leases, the Sale Guidelines and/or any order entered in connection therewith.

20. To assure notice and fairness, any order of this Court or agreement between the Debtors' Store Closing Agent and Inland relating to the GOB Sales must control over any agency agreement that may be otherwise approved by this Court.

21. Lastly, Inland hereby reserves its right to object to any and all additional guidelines governing the conduct of the GOB Sales that may be adopted by the Store Closing Agent deemed the Successful Bidder following the conclusion of the Auction.

C. OBJECTION TO THE REJECTION PROCEDURES

22. Inland also objects to the Rejection Procedures in their current form as they fail to adequately protect Inland's rights and interests in the Leases. The Debtors propose that they will send the Rejection Notices directly to Inland, via overnight mail, but not to its undersigned counsel. Procedures Motion, ¶ 39(i). As undersigned counsel has entered its appearance in these cases, the Debtors should be required to send undersigned counsel copies of the Rejection Notices.

23. To the extent not inconsistent with the Leases or the arguments raised herein, Inland hereby joins in the objections to the Procedures Motion filed by other landlords.

WHEREFORE, for all of the foregoing reasons, Inland respectfully requests that this Court enter an order that denies the Procedures Motion in its current form unless and until any order granting the Procedures Motion is modified to address the concerns raised

herein, and that grants Inland such other and further relief as the Court deems just and proper.

Dated: June 26, 2009

CONNOLLY BOVE LODGE & HUTZ LLP

_/s/ Kelly M. Conlan_
Karen C. Bifferato (No. 3295)
Christina M. Thompson (No. 3976)
Kelly M. Conlan (No. 4786)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
Telephone: (302) 658-9141

*Attorneys for Inland Southwest Management, LLC, Inland American Retail Management, LLC, and Inland Commercial Property Management, Inc.*

696193