---------------------------------------------------------------X
:
In re: :
: Chapter 11
EDDIE BAUER HOLDINGS, INC., *et al.*, :
: Case No. 09-12099 (MFW)
:
Debtors. : Jointly Administered
:
: Hearing Date: 6/29/2009 at 11:30 a.m.
  Objection Deadline: 6/29/2009 at 9:30 a.m.
  for the Committee

  Re: Docket No. 24

---------------------------------------------------------------X

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(A), 363, 365, AND BANKRUPTCY RULES 2002, 6004, 6006 FOR ENTRY OF AN ORDER (A) ESTABLISHING BIDDING AND AUCTION PROCEDURES RELATED TO THE SALE OF ALL OF THE DEBTORS' ASSETS; (B) APPROVING BID PROTECTIONS FOR THE SALE OF THE DEBTORS' ASSETS; (C) SCHEDULING AN AUCTION AND SALE HEARING FOR THE SALE OF THE DEBTORS' ASSETS; (D) ESTABLISHING CERTAIN NOTICE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND LEASES TO BE ASSIGNED; AND (E) GRANTING CERTAIN RELATED RELIEF**

**TO THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE:**

The Official Committee of Unsecured Creditors (the "Committee") of Eddie Bauer Holdings, Inc. and its affiliated debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), by and through its proposed counsel Cooley Godward Kronish LLP and Benesch, Friedlander, Coplan & Aronoff LLP, hereby submits this limited objection (this "Limited Objection") to the Debtors' motion for entry of an order (the "Bid Procedures Order"): (a) establishing bidding and auction procedures (the "Proposed Bid Procedures") in connection with the potential sale of substantially all of the Debtors' assets; (b)

approving the proposed bid protections to Rainier Holdings LLC (the "Stalking Horse Bidder"); (c) scheduling an auction and sale hearing for the sale of assets; (d) establishing procedures for noticing and determining cure amounts for executory contracts and leases to be assigned; and (e) granting certain related relief, dated June 17, 2009 (Doc. No. 24). In support of its Limited Objection, the Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1. This Limited Objection represents the Committee's first opportunity to express to the Court its significant concerns regarding the Proposed Bid Procedures and the general posture of these chapter 11 cases. The Debtors filed these cases with the Stalking Horse Bidder in tow and obtained interim postpetition financing sufficient only to fund an expedited sale process that, as currently constructed, would benefit only the Secured Lenders.[1] Just two business days following the Committee's appointment, the Debtors are seeking authorization to implement bid and auction procedures to sell substantially all of their assets, including previously unencumbered assets, which could marginalize the possibility of a recovery for general unsecured creditors.

2. The Committee has two main concerns with the Proposed Bid Procedures.[2] First, the prohibition against qualifying bids for less than all of the Debtors' assets reduces the pool of potential bidders and could chill the bidding in this three-week postpetition sale process. Indeed,

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Proposed Bid Procedures and/or the proposed Bid Procedures Order.

[2] Annexed hereto as **Exhibit A** is a redline of the proposed Bid Procedures Order and the Proposed Bid Procedures illustrating the Committee's proposed modifications, including those not specifically referenced in this Limited Objection.

with $240 million in collective prepetition secured claims asserted by the Secured Lenders[3] and a Stalking Horse Bid valued at $202 million, the Debtors *should* be asking this Court to approve flexible procedures that provide the best opportunity to (i) maximize the value of the Debtors' assets, (ii) minimize the remaining administrative and priority claims, and (iii) produce a return to general unsecured creditors. Absent efforts to reach all three of these goals, these cases should not be in chapter 11.

3. Second, while the Committee can appreciate that the dialogue today should be narrowly focused on the relief presently sought by the Debtors, the Proposed Bid Procedures are rife with protections crafted solely for the benefit of the Prepetition Term Lenders, including those assuming the validity and enforceability of their prepetition liens and the finality and applicability of proposed new liens on previously unencumbered assets. This Court should not allow the Prepetition Term Lenders to credit bid the full face amount of their claim without assurances that administrative and priority claims will be paid in full. Moreover, the Bid Procedures must adequately safeguard the interests of these estates and creditors in the event the Prepetition Term Lenders' prepetition liens and claims are successfully challenged on any number of grounds. Moreover, the Prepetition Term Lenders – who are merely consenting to the Debtors' use of cash collateral to monetize their collateral without providing any additional funding – must not be permitted to credit bid their claim for assets of the Debtors that were not part of their prepetition collateral, including, without limitation, the Debtors' Chicago IT Center

---

[3] The Committee makes no acknowledgments concerning the validity, enforceability, nature, extent, priority or amount of the Secured Lenders' prepetition indebtedness and reserves all rights to challenge such indebtedness, and the purported liens and claims securing such indebtedness, as well as to object to the proposed DIP Facility at a later time.

and other owned real property, one third of the equity in the Canadian Debtors and the Debtors' real property leases.

## BACKGROUND

4. On June 17, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and properties as debtors-in-possession. No trustee or examiner has been appointed in these cases.

5. On June 25, 2009, the Committee was appointed in these cases by the Office of the United States Trustee for the District of Delaware, consisting of the following seven members: (i) The Bank of New York Mellon, as Indenture Trustee; (ii) Tara Hill, c/o Marc Primo, Esq., Initiative Legal Group LLP; (iii) RR Donnelley & Sons Company; (iv) Simon Property Group; (v) GGP Limited Partnership; (vi) AQR Capital; and (vii) Highbridge Capital Management, LLC. On that same day, the Committee selected Cooley Godward Kronish LLP as its lead counsel, Benesch, Friedlander, Coplan & Aronoff LLP as its local counsel, and Capstone Advisory Group, LLC as its financial advisors.

## LIMITED OBJECTION

### A. The Bid Procedures Should Permit Multiple Bids For Less Than All Assets

6. The Proposed Bid Procedures force the bidders to submit bulk bids for all or substantially all of the Debtors' assets. While the Committee appreciates the Debtors' desire to have their business and assets sold as a going concern, the financial realities of these cases – with more than $240 million in claims asserted by the Secured Lenders and a Stalking Horse Bid of only $202 million – dictate that these estates and creditors can ill afford an inflexible sale process

that does anything to discourage bidders or chill the bidding process. The Committee is not presently arguing that a going concern sale will produce less value than the aggregate of the highest offers for the Debtors' assets in whole or in part, including, without limitation, the Canadian assets and the U.S. Debtors' assets (including inventory, the Chicago IT Center and other owned real estate, real property leases and intellectual property). However, the Committee does argue that the Bid Procedures must (a) not chill the bidding and sell short the interests of these estates and creditors, (b) provide flexibility and encourage bids for all or a portion of the Debtors' assets, and (c) ensure that the pool of potential bidders is as large as possible.

7. The Committee requests this Court to direct that the Proposed Bid Procedures be modified in furtherance of the best interests of these estates and creditors so as to permit all otherwise qualifying bids for substantially all or a portion of the Debtors' assets by one or more bidders. *See e.g., In re Food Barn Stores, Inc.*, 107 F.3d 558, 565 (8th Cir. 1997) ("[T]he court must remain mindful of the ubiquitous desire of the unsecured creditors, and a primary objective of the Code, to enhance the value of the estate at hand."); *In re President Casinos, Inc., et al.*, 314 B.R. 784, 786 (Bankr. E.D. Mo. 2004) ("Structured bid procedures should provide a vehicle to enhance the bid process and should not be a mechanism to chill prospective bidders' interests.").

8. While the Committee understands the leverage that the Stalking Horse Bidder must have had to obtain this extraordinary bid protection from the Debtors, the Committee asserts that the expedited nature of this sale process, plus the Break-Up Fee of more than $5 million, plus the Expense Reimbursement for expenses incurred by the Stalking Horse prior to and after the Petition Date, plus the requirement that all other qualified bidders overbid the Stalking Horse Bidder on every round by an amount equal to $500,000 plus the Break-Up Fee

and the Expense Reimbursement, is more than sufficient bid protection under the circumstances of these cases. The additional requirement of only qualifying bulk bids for all the Debtors' assets will chill the bidding to the detriment of the Debtors' estates and creditors.

### B. The Bid Procedures Must Contain Adequate Safeguards For Credit Bids

9. Section 363(k) of the Bankruptcy Code does not limit a secured creditor's credit bid to the actual value of its collateral, but rather to the amount of the secured creditor's allowed secured claim. The Committee does not know whether sufficient grounds exist to challenge the amount of the Prepetition Term Lenders' claims or the liens purportedly securing such claims and, therefore, would dispute an allowance of their secured claim at this time. In light of the Committee's appointment just two business days before this hearing, the Committee should not be forced to fully investigate the amount of the Prepetition Term Lenders' claims and the validity and enforceability of their liens at this time. Accordingly, in exchange for the Prepetition Term Lenders' right to credit bid the amount of their secured claim as negotiated with the Debtors (which amount is in excess of the face amount of the claim), the Committee respectfully requests that this Court direct that the Bid Procedures and Bid Procedures Order include the necessary and reasonable safeguards proposed by the Committee herein, and any additional protections the Court deems appropriate, to ensure that the Prepetition Term Lenders do not chill the bidding and obtain unfair leverage in this expedited sale process.

10. First, the Prepetition Term Lenders should not be permitted to credit bid any portion of their claim without assurances that sufficient cash is available to pay the Debtors' administrative and priority creditors in full. Permitting the Prepetition Term Lenders to credit

bid $200 million in the absence of such assurances would discourage other potential bidders who might assume more administrative and priority claims, and would simply continue an alarming trend in retail chapter 11 cases where courts have far too frequently been asked to bless inadequate financing facilities and expedited sale schedules that achieve little more than to guarantee the repayment of lenders at the expense of administrative, priority and general unsecured creditors.[4] Accordingly, this Court should condition the Prepetition Term Lenders' right to credit bid on the receipt of appropriate assurances from them that the cash portion of their bid will be sufficient to pay in full all administrative and priority claims not otherwise paid for by the Debtors.

11. Second, the Prepetition Term Lenders – who are merely consenting to the Debtors' use of cash collateral to monetize their collateral without providing the Debtors with any additional funding – must not be permitted to credit bid their claim for assets of the Debtors that were not part of their prepetition collateral, including, without limitation, the Debtors' Chicago IT Center, one third of the equity in the Canadian Debtors and the Debtors' real property leases. Congress enacted section 363(k) of the Bankruptcy Code to provide a mechanism for creditors to retain their perceived value in only that collateral in which they hold a secured interest. Nothing in section 363(k) gives the Prepetition Term Lenders the right to credit bid for the Debtors' unencumbered assets. *See generally* 7 Collier on Bankruptcy P 1129.05[2][b], at 1129-34 (15th ed. rev. 1998) (The credit bid provision "gives the secured creditor protections against attempts to sell the collateral too cheaply; if the secured party thinks

---

[4] In another retail case pending in this district, Judge Gross recently conditioned his approval of a section 363 sale involving a junior lender's credit bid on the junior lender's agreement to pay all outstanding "stub" rent. *See In re G.I. Joe's Holding Corp. and G.I. Joe's, Inc.*, Case No. 09-10713 (KG), at Doc. No. 208 (Sale Order) and Doc. No. 221 (Transcript of April 9, 2009 Sale Hearing). A copy of the Sale Order is annexed hereto as **Exhibit B** (See ¶ 39).

the collateral is worth more than the debtor is selling it for, it may effectively bid its debt and take title to the property.").

12. Accordingly, the Prepetition Term Lenders should be permitted to credit bid only for their *prepetition* collateral and must pay cash for any other assets of the Debtors they seek to purchase. The Prepetition Term Lenders have not submitted evidence of any actual diminution in value of their collateral and this expedited sale process should provide them with sufficient adequate protection because they could not force a faster liquidation of their collateral if the Debtors granted them relief from the automatic stay, nor would they be able to sell their collateral to the Stalking Horse Bidder without the Debtors' unencumbered assets. Therefore, this Court should not permit the Prepetition Lenders to extend the reach of their credit bid by virtue of any new, priming or replacement liens provided under the proposed DIP Facility, particularly since the Committee has not yet voiced its concerns with respect thereto.

13. Finally, the Bid Procedures must also adequately safeguard the interests of these estates and their creditors in the event the Prepetition Term Lenders' prepetition liens and claims are successfully challenged on any number of grounds. The Bid Procedures must clarify that the "deemed allowance" of the Prepetition Term Lenders' claim for purposes of section 363(k) of the Bankruptcy Code does not prejudice the Committee's rights to challenge the Prepetition Term Lenders' liens, claims and conduct and to seek appropriate "clawback" relief in the event that all or a portion thereof is successfully disputed. Furthermore, any future Sale Order entered by this Court should prohibit the Prepetition Term Lenders from receiving any of the proceeds of the sale at closing, but rather only after the Court is satisfied that the costs and expenses of preserving and disposing of the Prepetition Term Lenders' collateral have been paid in full and their claim is allowed by the Court.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

**WHEREFORE**, the Committee respectfully requests that the Court enter an order sustaining the Committee's limited objections to the Proposed Bidding Procedures and granting such other and further relief as the Court deems just and proper.

Dated: June 28, 2009
       Wilmington, Delaware

    Respectfully Submitted,

By: /s/ _____
Bradford J. Sandler (#4142)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
(302) 442-7007
(302) 442-7012 (Facsimile)

    -and-

COOLEY GODWARD KRONISH LLP
1114 Avenue of the Americas
New York, New York 01136
(212) 479-6000
(212) 479-6275 (Facsimile)
Jay R. Indyke (JI 0353)
Cathy R. Hershcopf (CH 5875)
Seth Van Aalten (SV 2663)

*Proposed Local and Lead Counsel For The Official Committee Of Unsecured Creditors Of Eddie Bauer Holdings, Inc., et al.*