# EXHIBIT A

## Revised Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER HOLDINGS, INC., *et al.,*[1] | Case No. 09-12099 (MFW) |
| Debtors. | Jointly Administered |
| | **Docket No. 24** |

**ORDER PURSUANT TO 11 U.S.C. §§ 105(A), 363, 365, AND BANKRUPTCY RULES 2002, 6004, 6006 (A) ESTABLISHING BIDDING AND AUCTION PROCEDURES RELATED TO THE SALE OF ALL OF THE DEBTORS' ASSETS; (B) APPROVING BID PROTECTIONS FOR THE SALE OF ALL OF THE DEBTORS' ASSETS; (C) SCHEDULING AN AUCTION AND SALE HEARING FOR THE SALE OF ALL OF THE DEBTORS' ASSETS; (D) ESTABLISHING CERTAIN NOTICE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND LEASES TO BE ASSIGNED; AND (E) GRANTING CERTAIN RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of the Debtors for entry of an order (the "**Bidding Procedures Order**") (A) establishing bidding and auction procedures (the "**Bidding Procedures**") in connection with the sale of substantially all of the Debtors assets (the "**Assets**") free and clear of all claims (as defined in section 101(5) of the Bankruptcy Code) and any other interests, liens, mortgages, pledges, security interests, rights of first refusal, obligations and encumbrances of any kind whatsoever (collectively, the "**Interests**"), as more fully described and except to the extent identified in the Stalking Horse Asset Purchase Agreement or

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Eddie Bauer Holdings, Inc., a Delaware corporation (2352); Eddie Bauer, Inc., a Delaware corporation (9737); Eddie Bauer Fulfillment Services, Inc., a Delaware corporation (0882); Eddie Bauer Diversified Sales, LLC, a Delaware limited liability company (1567); Eddie Bauer Services, LLC, an Ohio limited liability company (disregarded); Eddie Bauer International Development, LLC, a Delaware limited liability company (1571); Eddie Bauer Information Technology, LLC, a Delaware limited liability company (disregarded); Financial Services Acceptance Corporation, a Delaware corporation (7532); and Spiegel Acceptance Corporation, a Delaware corporation (7253). The mailing address for Eddie Bauer Holdings, Inc. is 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004. On or about the Petition Date, Eddie Bauer of Canada, Inc. and Eddie Bauer Customer Services, Inc., affiliates of the Debtors, commenced a proceeding before the Superior Court of Justice, Commercial List, for the Judicial District of Ontario, for a plan of compromise or arrangement under the Companies' Creditors Arrangement Act.

any other Successful Bidder's asset purchase agreement, as applicable; (B) approving the proposed bid protections, including, without limitation, the break-up fee (the "**Break-Up Fee**") to Rainier Holdings LLC (the "**Stalking Horse Bidder**") and expense reimbursement (the "**Expense Reimbursement**") in accordance with that certain Asset Purchase Agreement dated June 17, 2009, (the "**Stalking Horse Asset Purchase Agreement**") for the purchase of the Assets; (C) scheduling an auction (the "**Auction**") and sale hearing (the "**Sale Hearing**") for the Sale of the Assets; (D) establishing certain notice procedures for determining cure amounts for executory contracts and leases to be assigned (the "**Cure Amounts**") and for the Sale; and (E) granting certain related relief; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this Motion is a core proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the Motion and opportunity for objection having been given, with no objections or requests for hearing having been filed, or all objections having been overruled, as the case may be; and it appearing that no other notice need be given; and after due deliberation and sufficient cause therefore, it is hereby:

## FOUND AND DETERMINED THAT:

A.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 363, and 365[3] and Bankruptcy Rules 2002, 6004

---

[2]     Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Motion or in the Stalking Horse Asset Purchase Agreement, as applicable.

[3]     All section references herein shall be to title 11 of the United States Code, unless otherwise indicated.

and 6006.  Venue for these cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Notice of the Motion, the proposed entry of the Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, the Auction, and Bid Procedures Hearing has been provided as set forth in the Motion.  The Debtors' notice of the Motion, the proposed entry of the Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, the Auction, and Bidding Procedures Hearing is appropriate and reasonably calculated to provide all interested parties with timely and proper notice under Bankruptcy Rules 2002, 4001, 6004 and 6006, and no other or further notice of, or hearing on, the Motion or this Bidding Procedures Order is required.

C.      The Debtors' proposed notices of (i) the proposed Sale of the Assets, (ii) the assumption and assignment of the Assumed Contracts, (iii) the Stalking Horse Asset Purchase Agreement, (iv) the proposed procedures for noticing and determining Cure Amounts for Executory Contracts and Leases to be Assigned, and (v) the Bidding Procedures, substantially in the form attached hereto as Exhibit 1, are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of each, and no further notice of, or hearing on, each is necessary or required.

D.      The Bidding Procedures and the Assumption and Assignment Procedures substantially in the form set forth in the Motion are fair, reasonable, and appropriate and are designed to maximize the value of the Debtors' estates.

E.      The Debtors have demonstrated a compelling and sound business justification for approving the payment of the Break-Up Fee and the Expense Reimbursement under the circumstances and timing set forth in the Motion and Stalking Horse Asset Purchase Agreement.

F.      The Debtors' granting of bid protections to the Stalking Horse Bidder is (a) an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates, (c) effectively compensates the Stalking Horse Bidder for granting of unsecured credit to the Debtors within the meaning of section 364(c)(1) in the form of uncompensated efforts and expenditure of human and monetary capital necessary to drive the entire auction process, capital which would not have been and will not be expended absent the granting of a super priority administrative expense claim, and (d) fair, reasonable and appropriate, in light of, among other things, (i) the size and nature of the proposed Sale of the Assets, (ii) the substantial efforts that have been expended by the Stalking Horse Bidder, and (iii) the benefits the Stalking Horse Bidder has provided to the Debtors' estates and creditors and all parties-in-interest herein.

G.      The Debtors have (i) articulated good and sufficient reasons to this Court to grant the relief requested in the Motion and the Stalking Horse Asset Purchase Agreement and (ii) demonstrated sound business justifications to support such relief.

H.      Entry of this Bidding Procedures Order is in the best interests of the Debtors and their respective estates and creditors, and all other parties-in-interest.

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT:**

1.      The (i) Bidding Procedures, including references to the Stalking Horse Asset Purchase Agreement, and (ii) Assumption and Assignment Procedures are hereby APPROVED, and fully incorporated into this Bidding Procedures Order, and shall apply with respect to the proposed Sale of the Assets and assumption and assignment of contracts and unexpired leases contemplated by the Motion.  The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

2.      All objections to the relief requested in the Motion with respect to (i) the Bidding Procedures and (ii) the Assumption and Assignment Procedures that have not been withdrawn, waived or settled as announced at the Bid Procedures Hearing on the Motion, or resolved by stipulation signed by the Debtors and filed with this Court, are overruled on their merits.

## I.      AUCTION AND BIDDING PROCEDURES

3.      The Debtors are authorized (i) to conduct an auction (the "**Auction**") with respect to all or some of the Assets.  The Auction, if any, shall be conducted at Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022-4834 (the "**Auction Site**") at 11:00 a.m. (prevailing Eastern time) on July 16, 2009 (the "**Auction Date**"), or at such other place and time or later date as the Debtors shall notify those bidders whose bids are deemed to be Qualified Bids and who expressed their intent to participate in the Auction as set forth in the Bidding Procedures.  The Debtors are authorized, subject to the terms of this Bidding Procedures Order, to take all actions necessary, in the discretion of the Debtors, to conduct and implement such Auction.

4.      Subject to the rights of parties in interest to challenge the Debtors' decisions with respect to the sale process, and to argue that such decisions are not governed by the "business

judgment" standard, the Debtors, in consultation with the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent, the Committee, and the Monitor, may, (i) select, in their business judgment, pursuant to the Bidding Procedures the highest or otherwise best offer(s) and the Successful Bidder or Bidders, and (ii) reject any bid that, in the Debtors' business judgment, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules or the Bidding Procedures, or (c) contrary to the best interests of the Debtors and their estates, creditors, interest holders or parties-in-interest.

5.     The failure to specifically include or reference any particular provision, section or article of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such procedures, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

6.     The DIP Lenders, the Pre-Petition Revolving Lenders, and the Pre-Petition Term Lenders shall be permitted to credit bid at the Auction to the extent permitted by the Bidding Procedures. For the purposes of any credit bid submitted by the Pre-Petition Term Lenders, or their assignee or designee, pursuant to section 363(k) of the Bankruptcy Code, the Pre-Petition Term Lenders shall be deemed to hold an allowed secured claim in the amount of $200,607,947.43; provided, however, that the Committee shall retain all rights to challenge (i) the validity, extent, perfection, enforceability and priority of any mortgage, security interests and liens of the Pre-Petition Term Lenders or (ii) the validity, allowability, priority, status, enforceability or amount of the Pre-Petition Term Lenders' claim on terms and conditions as set forth in the Court's interim post-petition financing order entered on June 18, 2009 (the "**Interim Order**"), as such may be modified by any final postpetition financing order entered in these cases, authorizing inter alia the incurrence by the Debtors of post-petition secured indebtedness,

as such Interim Order may be modified in any final order. For the avoidance of doubt, the Pre-Petition Lenders shall not be permitted to credit bid their allowed secured claim against the assets of the Canadian Debtors or any other assets of the Debtors upon which the Pre-petition Term Lenders did not hold a valid and perfected first priority lien or security interest prior to the filing of these cases. Notwithstanding anything contained herein to the contrary, nothing in this Order or the relief granted herein shall constitute a waiver by the Committee, any form of estoppel or res judicata as to the rights of the Committee to challenge the extent, validity, priority or amount of the Prepetition Term Lenders' claims or to challenge their conduct.

7.     The Stalking Horse Bidder, and each of the DIP Lenders, the Pre-Petition Revolving Lenders, and the Pre-Petition Term Lenders are deemed to be Qualified Bidders, and the Stalking Horse Bidder's bid for the Assets is deemed a Qualified Bid. In the event there are no other Qualifying Bids, the Debtors shall accept the Stalking Horse Bid .

## II.    THE BIDDING PROTECTIONS

8.     Pursuant to sections 105, 363, 364, 503, 506 and 507 of the Bankruptcy Code, the Debtors are hereby authorized to pay the Break-Up Fee and the Expense Reimbursement pursuant to the terms and conditions set forth in the Stalking Horse Asset Purchase Agreement and the Bidding Procedures.

9.     The Break-Up Fee and the Expense Reimbursement are hereby approved and (i) shall be paid to the Stalking Horse Bidder as set forth in Sections 7.3 and 7.11 of the Stalking Horse Asset Purchase Agreement.

10.     The Break-Up Fee and the Expense Reimbursement shall be the sole remedy of the Stalking Horse Bidder if the Stalking Horse Asset Purchase Agreement is terminated under circumstances where the Break-Up Fee and the Expense Reimbursement are payable.

## III.    ADDITIONAL NOTICE PROVISIONS

11.     Within two (2) days after the entry of this Bidding Procedures Order (the "**Mailing Date**") or as soon thereafter as practicable, the Debtors (or their agents) shall serve the Motion, the Stalking Horse Asset Purchase Agreement, the Bidding Procedures and a copy of this Bidding Procedures Order by first-class mail, postage prepaid, on a compact disc, upon (i) all entities known to have expressed an interest in a transaction with respect to the Assets during the past two (2) months; (ii) all entities known to have asserted any lien, claim, interest or encumbrance in or upon any of the Assets; (iii) counsel for the Committee; (iv) counsel for the postpetition lenders; (v) counsel for the Prepetition Secured Lenders; (vi) all federal, state, county and local and foreign regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (vii) the United States Attorney's office; (viii) the Internal Revenue Service; (ix) the Securities and Exchange Commission; (x) the Pension Benefit Guaranty Corporation; (xi) the Office of the United States Trustee; (xii) counsel for the indenture trustee for the $75 million 5.25% convertible senior notes due 2014; (xiii) each of the Debtors' landlords and each of the notice parties identified in the real property leases, to the extent possible; and (xiv) those parties who have filed the appropriate notice requesting notice of all pleadings filed in these cases.

12.     On the Mailing Date or as soon thereafter as practicable, the Debtors (or their agents) shall serve by first-class mail, postage prepaid, a sale notice (the "**Sale Notice**") upon all other known creditors of the Debtors.

13.     On the Mailing Date or as soon as practicable thereafter, the Debtors shall publish the Sale Notice once in *The Wall Street Journal*, and such publication notice shall be deemed proper notice to any other interested parties whose identities are unknown to the Debtors.

## IV.     ASSUMPTION AND ASSIGNMENT PROCEDURES

14.     The Assumption and Assignment Procedures are approved with respect to all parties other than non-debtor parties to unexpired real property leases.

15.     Within two (2) days after entry of this Bidding Procedures Order or as soon thereafter as practicable, the Debtors will file a notice of cure amount (the "**Cure Notice**"), substantially in the form attached to the Motion as Exhibit F, with this Court and serve the Cure Notice on all non-debtor parties to any executory contracts and leases (other than unexpired real property leases) (the "**Contract Notice Parties**") that may be assumed by the Debtors and assigned to the Successful Bidder; *provided, however*, that the presence of a contract, lease or agreement listed on Exhibit F does not constitute an admission that such contract or agreement is an executory contract. The Debtors reserve all of their rights, claims and causes of action with respect to the contracts, leases and agreements listed on Exhibit 1 to the Cure Notice.

16.     The Cure Notice shall state the cure amounts that the Debtors believe are necessary to assume such executory contracts or leases pursuant to section 365 of the Bankruptcy Code (the "**Cure Amount**") and notify the non-debtor party that such party's contract or lease may be assumed and assigned to a purchaser of the Assets to be identified at the conclusion of the Auction. The Cure Notice shall set a deadline by which the non-debtor party shall file an objection to the Cure Amount and the possible assumption and assignment. The Cure Notice

shall also provide that any such objections will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors.

17.    All objections by non-debtor parties to the Cure Amount, or to the possible assumption and assignment, must be filed on or before 4:00 p.m. on July 16, 2009 (the "**Cure Objection Deadline**") and served on the Debtors' co-counsel by mail (a) Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, (Attn: Michael R. Nestor, Esq.), and by facsimile, (302) 571-1253, (b) Latham & Watkins LLP, Sears Tower, Suite 5800, 233 South Wacker Drive, Chicago, IL 60606, (Attn: David Heller, Esq.), and by facsimile, (312) 993-9767, Latham & Watkins LLP, 140 Scott Drive, Menlo Park, CA 94025 (Attn: Tony Richmond, Esq.), and by facsimile, (650) 463-2600, Latham & Watkins LLP, 355 South Grand Avenue, Los Angeles, CA 90071-1560, (Attn: Heather Fowler, Esq.), and by facsimile, (213) 891-8763, and the Debtors by mail, Eddie Bauer, Inc., 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004, (Attn: Freya Brier), and by facsimile, (425) 755-7671, (c) the Committee's counsel Cooley Godward Kronish LLP, 1114 Avenue of the Americas, New York, NY 10036 (Attn: Eric Haber, Esq.) and by facsimile, (212) 479-6275, and (d) counsel to the Pre-Petition Term Agent, Paul, Hastings, Janofsky & Walker LLP, 75 East 55th Street, New York, NY 10022 (Attn: Mario J. Ippolito, Esq.), and by facsimile, (212) 230-7717.

18.    Unless a non-debtor party to any executory contract or lease (other than unexpired real property leases) files an objection to the Cure Amount by the Cure Objection Deadline, then such counterparty shall be (i) forever barred from objecting to the Cure Amount; and (ii) forever barred and estopped from asserting or claiming any Cure Amount, other than the Cure Amount listed on Exhibit 1 to the Cure Notice, against the Debtors, any Successful Bidder or any other

assignee of the relevant contract. For the avoidance of any doubt, Paragraphs 17 and 18 of this Order are not binding on and do not apply to non-debtor parties to unexpired real property leases.

19.     All timely filed objections to any Cure Amount must set forth (i) the basis for the objection, (ii) the exact amount the party asserts as the Cure Amount, and (iii) sufficient documentation to support the Cure Amount alleged.

20.     Hearings on objections to any Cure Amount may be held at the Sale Hearing or upon such other date as this Court may designate upon request by the Debtors and with the prior consent of the Successful Bidder.

21.     As soon as practicable after the conclusion of the Auction, the Debtors shall file with this Court a Post Auction Notice that identifies the Successful Bidder and provides notice that the Debtors will seek to assume and assign certain executory contracts and leases at the Sale Hearing.

22.     In addition, in the event this Court approves the Stalking Horse Bidder as the purchaser of the Assets, pursuant to section 2.5 of the Stalking Horse Asset Purchase Agreement, the Stalking Horse Bidder may, during the period after the Sale Hearing and before the applicable Designation Deadline, remove or add additional executory contracts and leases from the list of executory contracts and leases it seeks to have assumed and assigned (the "**Stalking Horse Assumed Contracts**").

23.     The Stalking Horse Bidder shall provide the Debtors, the Committee and all non-debtor parties to unexpired real property leases (collectively, the "**Lease Parties**") with materials demonstrating adequate assurance of future performance in accordance with Sections

365(b)(1)(A) and 365(f)(2)(B) of the Bankruptcy Code by facsimile or overnight mail on or before July 3, 2009, provided that the Lease Parties execute a reasonable confidentiality agreement, to be provided by the Debtors to the Lease Parties by facsimile or overnight mail on or before July 3, 2009. As set forth in the Bidding Procedures, all bidders must submit materials demonstrating adequate assurance of future performance in accordance with Sections 365(b)(1)(A) and 365(f)(2)(B) of the Bankruptcy Code in connection with their bids and if the Lease Parties execute a reasonable confidentiality agreement, the Debtors shall provide the Committee and the Lease Parties with such materials as soon as possible following the Bid Deadline.

24.     Within two (2) days after entry of this Bidding Procedures Order or as soon thereafter as practicable, the Debtors will file with this Court a Notice of (i) Potential Assumption and Assignment of Real Property Leases, (ii) Requirement to Provide Information as to Cure Amounts, and (iii) Process for Determining Cure Amounts with Respect to Real Property Leases to be Assumed and Assigned (the "**Real Property Lease Cure Notice**"), substantially in the form attached hereto as <u>Exhibit 2</u>, and shall serve the Real Property Lease Cure Notice on all non-debtor parties to any unexpired domestic real property leases (the "**Lease Notice Parties**") that may be assumed by the Debtors and assigned to the Successful Bidder; *provided, however*, that the presence of a lease or agreement listed on <u>Exhibit 2</u> does not constitute an admission that such lease or agreement is an unexpired real property lease. The Debtors reserve all of their rights, claims and causes of action with respect to the leases and agreements listed on <u>Exhibit 2</u>.

25.     As set forth in the Real Property Lease Cure Notice, each non-Debtor party to a Lease shall be required to provide an estimate of the cure amount that would be owed under such

Lease if the Lease is assumed and assigned (the "**Landlord's Cure Amount**"). Specifically, on or before **July 15, 2009**, each non-Debtor party must file with the Court and serve on the parties listed below a good faith statement of all pre- and post-petition amounts claimed to be due under the Lease, as well as a statement of any other claimed monetary defaults that are included in the Landlord's Cure Amount. Service of the Landlord's Cure Amount must be made by mail or other delivery service or by facsimile to (i) Debtors' co-counsel (a) Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, (Attn: Michael R. Nestor, Esq.), facsimile: (302) 571-1253, and (b) Latham & Watkins LLP, Sears Tower, Suite 5800, 233 South Wacker Drive, Chicago, IL 60606, (Attn: David Heller, Esq.), facsimile: (312) 993-9767, Latham & Watkins LLP, 140 Scott Drive, Menlo Park, CA 94025 (Attn: Tony Richmond, Esq.), facsimile: (650) 463-2600, Latham & Watkins LLP, 355 South Grand Avenue, Los Angeles, CA 90071-1560, (Attn: Heather Fowler, Esq.), facsimile: (213) 891-8763, (ii) the Debtors, Eddie Bauer, Inc., 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004, (Attn: Freya Brier), facsimile: (425) 755-7671, (iii) the Committee's counsel, Cooley Godward Kronish LLP, 1114 Avenue of the Americas, New York, NY 10036 (Attn: Eric Haber, Esq.), facsimile: (212) 479-6275, and (iv) all other parties that have requested notice in these cases.

26.     No hearing shall be held or final determination made regarding cure amounts until a Lease is proposed to be assumed and assigned. At such time, the Debtors shall file and serve their Notice of Assumption and Assignment of Unexpired Real Property Leases (the "Notice"). The Debtors shall set forth in the Notice the "**Debtors' Final Cure Amount**." In addition, the Notice shall provide that the non-Debtor party to a Lease objects to the Debtors' Final Cure Amount, or to the assumption and assignment of the Lease, such party must file an objection with the Court and serve a copy on specified parties by the deadline set forth in the Notice. Any

such objection must set forth (i) the basis for the objection, (ii) the exact amount the party asserts as the correct cure amount, and (iii) sufficient documentation to support the cure amount asserted. In the absence of a timely filed objection to the Debtors' Final Cure Amount, then the non-Debtor party shall be (i) forever barred from objecting to the Debtors' Final Cure Amount; and (ii) forever barred and estopped from asserting or claiming any cure amount, other than the Debtors' Final Cure Amount, against the Debtors, any Successful Bidder or any other assignee of the relevant lease. Any timely filed objection will be considered at a hearing to be held before the Honorable Judge Walrath, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street Wilmington, DE 19801-3024, at such date and time as will be stated in the Notice.

## V.     ADDITIONAL PROVISIONS

27.     Pursuant to 11 U.S.C. § 332(a), the United States Trustee is directed to appoint one (1) disinterested person (other than the United States Trustee) to serve as the consumer privacy ombudsperson in these chapter 11 cases.

28.     Subject to further order of the Court, the consumer privacy ombudsperson shall perform the functions set forth in 11 U.S.C. § 332(b).

29.     The consumer privacy ombudsperson shall at all times comply with 11 U.S.C. § 332(c). The consumer privacy ombudsperson shall be compensated pursuant to 11 U.S.C. § 330 upon approval by the Court of a request for compensation.

30.     The Debtors are authorized and empowered to take such actions as may be necessary to implement and effect the terms and requirements established under this Bidding Procedures Order.

31.     A Sale Hearing to approve the sale of substantially all of the Assets to any Successful Bidder and authorizing the assumption and assignment of certain executory contracts and unexpired leases shall be held on July 22, 2009 at 9:30 a.m. (prevailing Eastern time), unless otherwise continued upon request by the Debtors.  All objections to the ultimate Sale, the extension of the 365(d)(4) period, the Store Closing Guidelines and the Rejection Procedures are hereby expressly preserved.

32.     Objections, if any, to any Sale must be filed by July 20, 2009 at 12:00 p.m. (prevailing Eastern time) (the "**Sale Objection Deadline**") and served on (i) the Debtors' co-counsel by mail (a) Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, (Attn: Michael R. Nestor, Esq.), and by facsimile, (302) 571-1253, and (b) Latham & Watkins LLP, Sears Tower, Suite 5800, 233 South Wacker Drive, Chicago, IL 60606, (Attn: David Heller, Esq.), and by facsimile, (312) 993-9767, Latham & Watkins LLP, 140 Scott Drive, Menlo Park, CA 94025 (Attn: Tony Richmond, Esq.), and by facsimile, (650) 463-2600, Latham & Watkins LLP, 355 South Grand Avenue, Los Angeles, CA 90071-1560, (Attn: Heather Fowler, Esq.), and by facsimile, (213) 891-8763, (ii) the Debtors by mail, Eddie Bauer, Inc., 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004, (Attn: Freya Brier), and by facsimile, (425) 755-7671, (iii) the Committee's counsel by mail Cooley Godward Kronish LLP, 1114 Avenue of the Americas, New York, NY 10036 (Attn: Eric Haber, Esq.) and by facsimile, (212) 479-6275, (iv) counsel to the Pre-Petition Term Agent, Paul, Hastings, Janofsky & Walker LLP, 75 East 55th Street, New York, NY 10022 (Attn: Mario J. Ippolito,

Esq.), and by facsimile, (212) 230-7717, and (v) all other parties that have requested notice in these cases.

33.     This Bidding Procedures Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors. Certain provisions of this Bidding Procedures Order that relate to bid protections shall inure to the benefit of the Stalking Horse Bidder and its affiliates, successors and assigns.

34.     This Bidding Procedures Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

35.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

36.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Expense Reimbursement, the Break-Up Fee, the Stalking Horse Asset Purchase Agreement, the Bidding Procedures and the implementation of this Bidding Procedures Order.

37.     In any event of a conflict among this Bidding Procedures Order, the Bidding Procedures and the Stalking Horse Asset Purchase Agreement, this Bidding Procedures Order shall govern.

Dated: June 30, 2009
Wilmington, Delaware

_____
Mary F. Walrath
United States Bankruptcy Judge

# EXHIBIT 1 TO BID PROCEDURES ORDER

## Bidding Procedures

# Bidding Procedures

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the sale (the "Sale") of the assets (the "Assets") of Eddie Bauer Holdings, Inc., a Delaware corporation ("Eddie Bauer"), 8 of its affiliates who, with Eddie Bauer, are debtors and debtors-in-possession in the jointly administered chapter 11 cases pending in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to Case No. 09-12099 (MFW) (collectively, the "U.S. Debtors"), and Eddie Bauer Canada, Inc. and Eddie Bauer Customer Services Inc. (collectively, the "Canadian Debtors" and, with the U.S. Debtors, the "Debtors") who are applicants in proceedings commenced before the Ontario Superior Court of Justice, Commercial List (the "Canadian Court") under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA"). RSM Richter Inc. was appointed as monitor (the "Monitor") of the Canadian Debtors in the CCAA proceedings. Pursuant to the Bidding Procedures Orders (defined below), each of the Bankruptcy Court and the Canadian Court have approved Rainier Holdings LLC as the stalking horse bidder (the "Stalking Horse Bidder") for the Assets, as set forth more fully in that certain asset purchase agreement dated June 16, 2009 (the "Stalking Horse Asset Purchase Agreement").[1] All amounts specified herein are in United States dollars.

On June 17, 2009, the U.S. Debtors filed a Motion Pursuant to 11 U.S.C. §§ 105(a), 363, 365 and Fed. R. Bankr. P. 2002, 6004, 6006 for (I) Entry of an Order (A) Establishing Bidding and Auction Procedures Related to the Sale of Some or All of the U.S. Debtors' Assets; (B) Approving Bid Protections for Sale of the Assets; (C) Scheduling an Auction and Sale Hearing for the Sale of the U.S. Debtors' Assets; (D) Establishing Certain Notice Procedures for Determining Cure Amounts; and (E) Granting Certain Related Relief; and (II) Entry of an Order (A) Approving the Sale of the U.S. Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (C) Establishing Rejection Procedures; and (d) Granting Certain Related Relief (the "Bidding Procedures and Sale Motion"). On June 29, 2009 the Bankruptcy Court entered an order approving the Bidding Procedures set forth herein (the "Bidding Procedures Order"). The Bidding Procedures Order also set July 22, 2009 as the date the Bankruptcy Court will conduct a sale hearing (the "Sale Hearing"). At the Sale Hearing, in consultation with the Committee, the DIP Lenders, the Monitor, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent (as each is defined below) the U.S. Debtors shall seek entry of an order from the Bankruptcy Court authorizing and approving the Sale of the Assets of the U.S. Debtors to the Stalking Horse Bidder or one or more Qualified Bidder(s) (as defined below) that the Debtors determine to have made the highest or best offer for the Assets (the "Successful Bidder").

On June 29, 2009, the Canadian Debtors were granted an order by the Canadian Court approving (A) execution and delivery of the Stalking Horse Asset Purchase Agreement by the Canadian Debtors; and (B) the Bidding Procedures (the "Canadian Bidding Procedures Order" and, with the Bidding Procedures Order, the "Bidding Procedures Orders"). In conjunction with

---

[1]  The Stalking Horse Asset Purchase Agreement is attached as <u>Exhibit A</u> to the Bidding Procedures and Sale Motion (as defined herein). All capitalized terms not otherwise defined herein, shall have the meaning ascribed to them in the Stalking Horse Asset Purchase Agreement.

or within two (2) business days of the Sale Hearing, the Canadian Debtors shall seek entry of an order (the "Canadian Sale Approval Motion") by the Canadian Court authorizing and approving the Sale of the Assets of the Canadian Debtors to the Successful Bidder(s) (such order, as approved, the "Canadian Sale Approval and Vesting Order").

## Assets to be Sold

The Debtors are offering for sale all of their Assets and encourage bids for all of the Assets, in whole or in part. The Debtors and, as applicable, the DIP Lenders, the Pre-Petition Revolving Lenders, and the Pre-Petition Term Lenders, shall retain all rights to the Assets that are not subject to a bid accepted by the Debtors and approved by the Bankruptcy Court at the Sale Hearing and the Canadian Court at the hearing on the Canadian Sale Approval Motion.

## The Bidding Process

The Debtors and their advisors, after consultation with the Official Committee of Unsecured Creditors (the "Committee"), the U.S. Debtors' prepetition secured lenders,[2] the lenders under the U.S. Debtors' existing Debtor-in-possession financing facilities (the "DIP Lenders"), and the Monitor, shall (i) determine whether any person is a Qualified Bidder, (ii) coordinate the efforts of Qualified Bidders in conducting their due diligence investigations, (iii) receive offers from Qualified Bidders, and (iv) negotiate any offers made to purchase all or substantially all of the Assets or any portion thereof (collectively, the "Bidding Process"). The Debtors, after notice and consultation with the Committee and the Monitor and upon the consent of the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent, as directed by the Term Lender Group, shall have the right, in the exercise of their fiduciary duties, to adopt such other rules for the Bidding Process (including rules that may depart from those set forth herein) that will better promote the goals of the Bidding Process; *provided, however,* that such other rules are not inconsistent with any of (i) the provisions of the Stalking Horse Asset Purchase Agreement (including the deadlines therein), (ii) the Bid Deposit Requirement (as defined below), (iii) the Break-Up Fee and Expense Reimbursement (each as defined below) requirement, and (iv) the bid protections granted to the Stalking Horse Bidder herein.

---

[2] The Debtors are a party to that certain (i) Loan and Security Agreement dated June 21, 2005 (as amended and in effect, the "Pre-Petition Revolving Credit Agreement") with, among others, Bank of America, N.A., as Agent (in such capacity, the "Pre-Petition Revolving Agent") for certain "Lenders" (as defined therein) (the "Pre-Petition Revolving Lenders", and together with the Pre-Petition Revolving Agent, collectively, the "Pre-Petition Revolving Secured Parties") and (ii) Amended and Restated Term Loan Agreement dated April 4, 2007 (as amended and in effect, the "Pre-Petition Term Credit Agreement") with, among others, Wilmington Trust FSB (as successor by assignment to JPMorgan Chase Bank, N.A.), as Agent (in such capacity, the "Pre-Petition Term Agent", and together with the Pre-Petition Revolving Agent, collectively, the "Pre-Petition Agents") for certain "Lenders" (as defined therein) (the "Pre-Petition Term Lenders", together with the Pre-Petition Term Agent, collectively, the "Pre-Petition Term Secured Parties", and together with the Pre-Petition Revolving Secured Parties, collectively, the "Pre-Petition Secured Parties"). The consent of the Pre-Petition Term Lenders shall be obtained through the Pre-Petition Term Agent as directed by that certain group of "Required Lenders" under the Debtors' Pre-Petition Term Credit Agreement (the "Term Lender Group").

## Participation Requirements

A "Qualified Bidder" is a potential bidder that the Debtors, in consultation with the Monitor, the Committee and the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent, determine is reasonably likely (based on financial information submitted by the bidder, the availability of financing, experience and other consideration deemed relevant by the Debtors), to be able to consummate a sale if selected as the Successful Bidder (as defined below). Notwithstanding the foregoing, the Stalking Horse Bidder and each of the DIP Lenders, the Pre-Petition Revolving Lenders, and the Pre-Petition Term Lenders shall be deemed Qualified Bidders.

## Due Diligence

Any person that wishes to participate in the Bidding Process must (i) execute a confidentiality agreement in form and substance acceptable to the Debtors; provided however, the Debtors will consult with the Monitor, the Committee and the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent concerning resolving any open issues with respect thereto and (ii) be a Qualified Bidder. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that the Debtor determines not to be a Qualified Bidder. The Debtors will afford any Qualified Bidder the time and opportunity to conduct reasonable due diligence. The Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders. Neither the Debtors nor any of their respective representatives are obligated to furnish any information to any person other than a Qualified Bidder.

## Bid Deadline

A Qualified Bidder that desires to make a bid shall deliver written copies of its bid and the Required Bid Materials (defined below) to (i) the Debtors, c/o Eddie Bauer Holdings, Inc., 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004, (Attn: Freya Brier); (ii) co-counsel to the Debtors, (a) Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, (Attn: Michael R. Nestor, Esq.), (b) Latham & Watkins LLP, Sears Tower, Suite 5800, 233 South Wacker Drive, Chicago, IL 60606, (Attn: David Heller, Esq.), Latham & Watkins LLP, 140 Scott Drive, Menlo Park, CA 94025 (Attn: Tony Richmond, Esq.), Latham & Watkins LLP, 355 South Grand Avenue, Los Angeles, CA 90071-1560, (Attn: Heather Fowler, Esq.) and (c) Goodmans LLP, 250 Yonge St., Suite 2400, Toronto, ON M5B 2M6, (Attn: L. Joseph Latham); (iii) financial advisors to the Debtors, Alvarez & Marsal, 100 Pine Street, 9th Floor, San Francisco, CA 94111 (Attn: Kay Hong); (iv) Investment Bankers, Peter J. Solomon Company, 520 Madison Avenue, 29th Floor, New York, NY 10022 (Attn: Ken Baronoff); (v) counsel to the Term Lender Group, Kasowitz Benson Torres & Friedman LLP, 1633 Broadway, New York, NY 10019 (Attn: David S. Rosner, Esq. and Adam L. Shiff, Esq.); (vi) counsel to the Pre-Petition Term Loan Agent, Paul, Hastings, Janofsky & Walker LLP, 75 East 55th Street, New York, NY 10022 (Attn: Mario J. Ippolito, Esq.); (vii) counsel to the Creditors Committee, Cooley Godward Kronish LLP, 1114 Avenue of the Americas, New York, New York 10036, (Attn: Cathy Hershcopf, Esq, Seth Van Aalten, Esq. and Eric J. Haber, Esq); (viii) counsel to the Pre-Petition Revolving Lenders and DIP Lenders, Riemer & Braunstein

LLP, 3 Center Plaza, Boston, Massachusetts 02108 (Attn: Donald E. Rothman, Esq.); and (viii) the Monitor, RSM Richter Inc., 200 King Street West, Suite 1100, Toronto, ON Canada M5H 3T4, (Attn: Robert Kofman), not later than 5:00 p.m. (prevailing Eastern time) on July 14, 2009 (the "Bid Deadline"). In the event that a bid is determined to be a Qualified Bid for the Assets, the Debtors shall deliver a written copy of any such Qualified Bid and the Required Bid Materials to the Stalking Horse Bidder's counsel, (a) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: David Blittner and Alfredo Perez) and (b) Womble Carlyle Sandridge & Rice, PPLC 222 Delaware Avenue, Suite 1501, Wilmington, DE 19801 (Attn: Mark Desgrosseilliers and Matthew Ward).

## Bid Requirements

All bids (other than the (a) Stalking Horse Bid, or (b) subject to the limitations below, a credit bid by the DIP Lenders, Pre-Petition Revolving Lenders, or Pre-Petition Term Lenders that is not a Joint Credit Bid (defined below)) must include (unless such requirement is waived by the Debtors) (the "Required Bid Materials"):

(i.) A cash purchase price equal to or greater than $208,500,000 (the "Minimum Bid Amount"), if the bid is for substantially all of the Debtors' assets.

(ii.) A letter stating that the bidder's offer is irrevocable until the first business day after the Assets on which the Qualified Bidder is submitting a bid have been sold pursuant to the closing of the sale or sales approved by the Bankruptcy Court and the Canadian Court.

(iii.) An executed copy of a purchase agreement and a redline of a Qualified Bidder's proposed purchase agreement reflecting variations from the Stalking Horse Asset Purchase Agreement (the "Marked Agreement"). All Qualified Bids must provide (a) a commitment to close within the later of (1) the later of eleven days after the entry of the Sale Order and the Canadian Sale Approval and Vesting Order and (2) the expiration or termination of the applicable HSR (defined below) and, if applicable, Competition Act waiting periods; (b) a representation that the Qualified Bidder will (1) make all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended ("HSR") and the Canadian Competition Act, R.S.C. 1985, c. C-34, as amended (the "Competition Act") and pay the fees associated with such filings and (2) submit all necessary filings under HSR and the Competition Act within 2 business days following the entry of the Sale Order; and (c) the identity of and contact information for the bidder and full disclosure of any affiliates and any debt or equity financing sources involved in such bid.

(iv.) A cash deposit in the amount of $5,057,500 in the form of a wire transfer, certified check or such other form acceptable to the Debtors (the "Bid Deposit" which shall be placed in an escrow account, the "Escrow Account"). The Escrow Account shall not be subject to the claims, liens, security interests, or encumbrances of Debtors' creditors, including those creditors serving as debtor-in-possession or cash collateral lenders to the Debtors, and funds shall be

disbursed from the Account only as follows: (i) if the Qualified Bidder becomes the Successful Bidder, its Bid Deposit will be used to satisfy any Break-Up Fee and Expense Reimbursement to which the Stalking Horse Bidder is entitled hereunder by reason of its not being the Successful Bidder, with the balance, if any, to be released to the Debtors or applied as provided under any asset purchase agreement between the Debtors and such Successful Bidder, and (ii) if such Qualified Bidder is not the Successful Bidder at the Auction, then its Bid Deposit shall be returned to it (subject to the other provisions of these Bid Procedures and the terms of its asset purchase agreement with the Debtors).

(v) A representation of the bidder and written evidence that the bidder has a commitment for financing or other evidence of the proposed purchaser's ability to consummate the proposed transaction, including executed copies of any financing agreements, commitments, guarantees of the payment obligations of the proposed purchaser, and which the Debtors, in consultation with the Monitor, Committee and the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent, believe to be sufficient to satisfy the bidder's obligations under its proposed bid, including the standards to provide adequate assurance of future performance of any contracts and leases to be assumed and assigned under Bankruptcy Code section 365 and to consummate the transaction contemplated by the Marked Agreement.

(vi.) The bid shall identify with particularity the Debtors' executory contracts and unexpired leases with respect to which the bidder seeks to receive an assignment and any designation rights it seeks.

(vii.) The bid shall not request or entitle the bidder to any transaction or break up fee, expense reimbursement, termination or similar type of fee or payment and shall include an acknowledgement and representation of the bidder that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guarantees, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or the Stalking Horse Asset Purchase Agreement.

(viii.) The bid shall not contain any due diligence, financing or regulatory contingencies of any kind (other than a condition that any applicable waiting period under HSR or the Competition Act, as the case may be, shall have expired or been terminated), though the bid may be subject to the satisfaction of specific conditions in all material respects at Closing.

(ix.) The bid shall fully disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation.

(x.) The bid shall state that the offering party consents to the jurisdiction of each of the Bankruptcy Court and the Canadian Court.

(xi.) The bid shall include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the submitted purchase agreement of the bidder.

(xii.) The bid shall include an allocation of the cash purchase price among the Assets.

(xiii.) The bid shall identify with particularity the Assets included in the bid and the liabilities, if any, being assumed.

(xiv.) Materials demonstrating that the bidder can satisfy the requirement of adequate assurance of future performance in accordance with Sections 365(b)(1)(A) and 365(f)(2)(B) of the Bankruptcy Code. Such materials shall include but are not limited to sufficient information, as may be requested by the Debtors, to allow the Debtors to determine that the bidder has the financial wherewithal to close a sale of the Assets, including, but not limited to, a signed commitment for any debt or equity financing, a bank account statement showing the ability of a Qualified Bidder to pay cash for the Assets, and current audited financial statements (or such other form of financial disclosure and credit-quality support or enhancement acceptable to the Debtors) of the Qualified Bidder or those entities that will guarantee in full the payment obligations of the Qualified Bidder, and appropriate projections of future performance.

(xv.) Written acknowledgement and agreement that the sale, if any, of customer lists, customer data and other consumer privacy information shall be subject to and conform to the recommendations of the consumer privacy ombudsperson to be appointed pursuant to 11 U.S.C. §332 (the "Consumer Privacy Ombudsperson") (to the extent that appointment of a Consumer Privacy Ombudsman is necessary) in connection with the transactions contemplated herein.

A bid received from a Qualified Bidder that includes all of the Required Bid Materials and is received by the Bid Deadline is a "Qualified Bid." The Debtors, in consultation with the Committee, the DIP Lenders, the Pre-Petition Revolving Agent, the Pre-Petition Term Agent, and the Monitor, reserve the right to determine the value of any Qualified Bid (or aggregate Qualified Bids), and which Qualified Bid (or aggregate Qualified Bids) constitutes the highest or best offer. Subject to the paragraph below titled "Credit Bidding," for the Debtors to determine, after consultation with the Committee, the DIP Lenders, the Pre-Petition Revolving Agent, the Pre-Petition Term Agent, and the Monitor, that a combination of Qualified Bids for the Debtors' Assets are the Successful Bids (defined below), such combination of bids must provide a cash component at closing in excess of $208,500,000.

Notwithstanding the bid requirements detailed above, (a) the Stalking Horse Bid shall be deemed a Qualified Bid; (b) the DIP Lenders, Pre-Petition Revolving Lenders, or Pre-Petition Term Lenders, or their applicable designee or assignee, submitting a credit bid that is not a Joint Credit Bid (defined below) pursuant to section 363(k) of the Bankruptcy Code shall not be required to comply with the requirements set forth in subparagraphs (i), or (v) of the Bid Requirements (in each case, unless otherwise required by the Court or as set forth below), it being understood that the Pre-Petition Term Lenders and the Pre-Petition Term Agent shall be free to participate in discussions and arrangements with potential investors and/or joint venture partners that might be involved in a credit bid (provided that such parties are bound by appropriate confidentiality agreements); and (c) the DIP Lenders, Pre-Petition Revolving Lenders, or Pre-Petition Term Lenders as of July 14, 2009 submitting a credit bid pursuant to section 363(k) of the Bankruptcy Code shall not be required to comply with the requirements set forth in subparagraph (iv); provided that if any such DIP Lender, Pre-Petition Revolving Lender, or Pre-Petition Term Lender participates in or submits a bid, directly or indirectly, by way of equity investment, contract or other type of arrangement with any partner, investors, joint ventures, other co-bidder or any person that is not a DIP Lender, Pre-Petition Revolving Lender or Pre-Petition Term Lender of record as of July 14, 2009 (a "Joint Credit Bid"), such DIP Lender, Pre-Petition Revolving Lender, or Pre-Petition Term Lender and other participants shall be required to comply with the requirements of subparagraphs (i) through (xv) above. The Debtors shall (i) notify the Stalking Horse Bidder, the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent upon receipt if one or more Qualified Bids are received and (ii) provide the Required Bid Materials relating to such Qualified Bids to the Stalking Horse Bidder, the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent.

## Credit Bidding

The DIP Lenders, the Pre-Petition Revolving Lenders, and the Pre-Petition Term Lenders, or their designee or assignee, may make a credit bid or Joint Credit Bid for all of the collateral securing their claims to the full extent permitted by Bankruptcy Code section 363(k); *provided, however,* that any credit bid or Joint Credit Bid must include a cash amount for any assets upon which the DIP Lenders, the Pre-Petition Revolving Lenders, the Pre-Petition Term Lenders, or other participants in a Joint Credit Bid, as applicable, did not have a valid and perfected first priority pre-petition security interest if such assets are sought to be obtained through such credit bid. To the extent applicable, any party submitting a Joint Credit Bid shall identify all participants in a Joint Credit Bid. In the event a DIP Lender, Pre-Petition Revolving Lender, or Pre-Petition Term Lender or their applicable designee or assignee submits a Joint Credit Bid for all of their collateral pursuant to these Bidding Procedures at any Auction (as defined below), the Debtors reserve their rights to not consult with such DIP Lender, Pre-Petition Revolving Lender, or Pre-Petition Term Lender; provided however, (i) that if such DIP Lender, Pre-Petition Revolving Lender, or Pre-Petition Term Lender is bidding solely on its own collateral such consultation rights shall not be altered, and (ii) that if such DIP Lender, Pre-Petition Term Lender permanently withdraws from the bidding process, the applicable consultation rights shall be reinstated. If a DIP Lender, Pre-Petition Revolving Lender, or Pre-Petition Term Lender does not consummate the sale transaction contemplated by such credit bid as a result of a breach of the terms and conditions of the credit bid, then the Debtors shall have the right to reduce such Pre-Petition Revolving Lender's, or Pre-Petition Term Lender's pre-petition debt by at least $5,057,500 and to reduce the DIP Lenders' post-petition claim by at

least $5,057,500.[2] Notwithstanding anything to the contrary set forth herein, prior to making any changes to the rights of (i) the DIP Lenders, (ii) the Pre-Petition Revolving Agent, and (iii) the Pre-Petition Term Agent to credit bid on the terms and conditions set forth in this paragraph, the Debtors will obtain the consent of (i) the DIP Lenders, (ii) the Pre-Petition Revolving Agent, and (iii) the Pre-Petition Term Agent, as directed by the Term Lender Group or permission of the Bankruptcy Court to make such changes.

### "As Is, With All Faults"

The sale of the Assets shall be on an "as is" and "with all faults" basis and without representations, warranties, or guarantees, express, implied or statutory, written or oral, of any kind, nature, or description by the Debtors, their agents, their representatives or their estates, or any of the other parties participating in the sales process pursuant to these Bid Procedures, except as otherwise provided in a definitive purchase agreement with the Debtors. By submitting a bid, each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guarantees, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or as set forth in a definitive purchase agreement with the Debtors.

### Free of Any and All Interests

Except as otherwise provided in the Stalking Horse Asset Purchase Agreement or another Successful Bidder's purchase agreement (i) all of the U.S. Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Interests") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Interests applied against the Assets, and (ii) all of the Canadian Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any Interests (except for any permitted encumbrances identified in the Canadian Sale Approval and Vesting Order) pursuant to the Canadian Sale Approval and Vesting Order.

### The Auction and Auction Procedures

If a credit bid (that is not a Joint Credit Bid unless such Joint Credit Bid is deemed by the Debtors, after consultation with the Committee, the Monitor, the DIP Lenders, the Pre-Petition

---

[2] The Debtors and the Committee each reserve all of their other rights and remedies in the event that a DIP Lender, Pre-Petition Revolving Lender, or Pre-Petition Term Lender or their applicable designee or assignee does not consummate the sale transaction contemplated by a credit bid that is deemed to be the Successful Bid at the conclusion of the Auction.

Revolving Agent, and the Pre-Petition Term Agent, to be a Qualified Bid), or a Qualified Bid (other than that submitted by the Stalking Horse Bidder) or Qualified Bids which, in either case, in the aggregate provide for cash consideration of not less than $208,500,000, have been received by the Debtors, the Debtors may conduct an auction (the "Auction") with respect to all of the Assets. The Auction shall be conducted at the offices of Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (the "Auction Site") at 11:00 a.m. (prevailing Eastern time) on July 16, 2009 (the "Auction Date"), or such other place and time as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids and expressed their intent to participate in the Auction as set forth above. Prior to moving the Auction Date, the Debtors shall consult with the Stalking Horse Bidder, the Committee, the Monitor, the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent.

Except as otherwise provided herein, based upon the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction, and such other information as the Debtors determine is relevant, the Debtors, in consultation with the Monitor, the Committee, the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent, may conduct the Auction in any manner that they determine will achieve the maximum value for the Assets, including, without limitation, conducting bidding for various lots of Assets, if appropriate. The Debtors thereafter, in consultation with the Monitor, the Committee, the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent, may offer the Assets in such successive rounds as the Debtors, in consultation with the Monitor, the Committee, the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent, determine to be appropriate so as to obtain the highest or otherwise best bid or combination of bids for the Assets. The Debtors, in consultation with the Monitor, the Committee, the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent, also may set opening bid amounts in each round of bidding as the Debtors determine to be appropriate.

If Qualified Bidders submit Qualified Bids, then the Debtors, in consultation with the Monitor, the Committee, the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent, shall (i) promptly following the Bid Deadline, review each Qualified Bid on the basis of the financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale, and (ii) as soon as practicable after the conclusion of the Auction, identify the highest or otherwise best offer or combination of offers for the Assets (to the extent any such bid(s) is acceptable to Debtors, in consultation with the Monitor, the Committee, the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent, a "Successful Bid" and the bidder or bidders making such bid, the "Successful Bidder"). At the Sale Hearing, the Debtors, after consultation with the Monitor, the Committee, the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent, may present the Successful Bid(s) to the Bankruptcy Court for approval. At the hearing on the Canadian Sale Approval Motion, the Debtors will present the same Successful Bid(s) to the Canadian Court for approval as were presented to the Bankruptcy Court. The Debtors reserve all rights not to submit any bid which is not acceptable to the Debtors for approval by the Bankruptcy Court and the Canadian Court. The Debtors acknowledge that the Stalking Horse Bid is a Qualified Bid and shall be submitted to the Bankruptcy Court and the Canadian Court for approval in the event that there are no other Successful Bids. Except as otherwise provided herein or as restricted by the Stalking Horse

Asset Purchase Agreement, the Debtors, in the exercise of their fiduciary duties, and upon consultation with the Committee, the Monitor, the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent, may adopt rules for bidding at the Auction that, in its business judgment, will better promote the goals of the bidding process, the Bankruptcy Code, the CCAA or any order of the Bankruptcy Court or the Canadian Court entered in connection herewith.

If no Qualified Bid is submitted by the Bid Deadline or all Qualified Bids that have been submitted have been withdrawn prior to the Bid Deadline or the Auction Date, then the Debtors shall cancel the Auction and accept the Stalking Horse Bid (in which case, the Successful Bid shall be the Stalking Horse Bid, and the Successful Bidder shall be the Stalking Horse Bidder).

## Break-Up Fee and Expense Reimbursement

To provide an incentive and to compensate the Stalking Horse Bidder for performing the substantial due diligence and incurring the expenses necessary and entering into the Stalking Horse Asset Purchase Agreement with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Debtors have agreed to pay the Stalking Horse Bidder, under the conditions outlined herein and in the Stalking Horse Asset Purchase Agreement, a break-up fee in the amount of $5,057,500, (the "Break-Up Fee") and to reimburse the Stalking Horse Bidder for the reasonable out-of-pocket expenses associated with the Stalking Horse Asset Purchase Agreement (in excess of the amounts paid prior to the Petition Date) in the amount of $253,500 (the "Expense Reimbursement"). The Debtors will take into account the Break-Up Fee and Expense Reimbursement in each round of bidding with respect to the Stalking Horse Bidder and with respect to a credit bid of the Pre-Petition Term Lenders that is not a Joint Credit Bid.

The Break-Up Fee and the Expense Reimbursement shall be paid to be determined in accordance with the Stalking Horse Asset Purchase Agreement.

The Break-Up Fee and Expense Reimbursement were a material inducement for, and a condition of, the Stalking Horse Bidder's entry into the Stalking Horse Asset Purchase Agreement. The Break-Up Fee and Expense Reimbursement shall be payable as set forth herein and in the Bidding Procedures Orders.

To the extent that the DIP Lenders, Pre-Petition Revolving Lenders, Pre-Petition Term Lenders is the Successful Bidder pursuant to a credit bid, the Break-Up Fee and Expense Reimbursement shall not be paid to the Stalking Horse Bidder. To the extent that the DIP Lenders, Pre-Petition Revolving Lenders, or Pre-Petition Term Lenders participate in a Joint Credit Bid and such Joint Credit Bid is the Successful Bid, the Break-Fee and Expense Reimbursement shall be paid to the Stalking Horse Bidder.

## Overbid Amount; Minimum Bid Increment

There shall be an overbid amount that a Qualified Bidder or aggregate Qualified Bidders must bid to exceed the Stalking Horse Bid ("Overbid Amount"), and that amount shall be at least $6,200,000 for all bids made by Qualified Bidders. For example, (a) if a Qualified Bidder bids the Overbid Amount, the next bid for any Qualified Bidder other than the Stalking Horse Bidder

cannot be less than $208,500,000 ($202,300,000 plus $6,200,000) and (b) if the Stalking Horse Bidder submits a bid in excess of the stalking horse bid set forth in the Stalking Horse Asset Purchase Agreement, such bid cannot be less than $202,800,000 ($202,300,000 plus $500,000). Subsequent bids and subsequent aggregate bids shall not be less than $500,000 in excess of the preceding bid. The Debtors will take into account the fact that the Break-Up Fee and Expense Reimbursement is not payable in each round of bidding with respect to the Stalking Horse Bidder and with respect to a credit bid of the Pre-Petition Term Lenders. The Debtors will take into account the fact that the Break-Up Fee and Expense Reimbursement will be payable in each round of bidding with respect to a Joint Credit Bid.

## Acceptance of Qualified Bids

The Debtors shall sell the Assets to any Successful Bidder only upon the approval of a Successful Bid by the Bankruptcy Court after the Sale Hearing and by the Canadian Court after the hearing on the Canadian Sale Approval Motion. The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court and the Canadian Court for approval does not constitute the Debtors' acceptance of the bid. The Debtors will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing and the Canadian Court at the hearing on the Canadian Sale Approval Motion. All counterparties to assumed contracts reserve their right to object to the Debtors' selection of any Successful Bidder (including the assignment of any of such objector's assumed executory contract or unexpired lease thereto, *provided, however*, that any objection to such assignment on the basis of the cure amount must be made and/or reserved as set forth in any order of the Bankruptcy Court or the Canadian Court).

## Sale Hearing

A Sale Hearing is scheduled for July 22, 2009 at 9:30 a.m. (prevailing Eastern Time) in the Bankruptcy Court with Objections to the Sale to be filed on or before July 20, 2009 at 12:00 p.m. Cure objections for all non-debtor parties to executory contracts and unexpired leases (other than unexpired real property leases) must be filed on or before July 16, 2009 at 4:00 p.m. A hearing on the Canadian Sale Approval Motion will be held in conjunction with the Sale Hearing or no later than two (2) business days after the Sale Hearing. Following the approval of the Sale of all or substantially all of the Assets to any Successful Bidder at the Sale Hearing and at hearing on the Canadian Sale Approval Motion, if the Successful Bidder fails to consummate an approved Sale within the later of (1) eleven days after the entry of the Sale Order and the applicable waiting period in the Canadian Proceeding and (2) the expiration or termination of the applicable HSR and, if applicable, Competition Act waiting periods, the Debtors, and upon consultation with the Committee, the Monitor, the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent, shall be authorized, but not required, to deem the next highest or otherwise best Qualified Bid (the "Back-Up Bid" and the party submitting the Back-Up Bid, the "Back-Up Bidder"), as disclosed at the Sale Hearing and in connection with the Canadian Sale Approval Motion, the Successful Bid, and the Debtors in consultation with the Committee, the Monitor, the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent, shall be authorized, but not required, to consummate the sale with the Back-Up Bidder submitting such bid without further order of the Bankruptcy Court or the Canadian Court. The Back-Up Bid shall remain open until the first business day following the

consummation of a Sale of the Assets to the Successful Bidder. The Debtors, in the exercise of their business judgment, in consultation with the Committee, the Monitor, the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent, as directed by the Term Lender Group, reserve their right to the extent consistent with the Stalking Horse Asset Purchase Agreement to change the date of the Sale Hearing and the hearing on the Canadian Sale Approval Motion in order to achieve the maximum value for the Assets. Notwithstanding anything to the contrary in this paragraph, the Stalking Horse Bidder shall not be considered a Back-Up Bidder and the Stalking Horse Bid shall not be considered a Back-Up Bid, unless, prior to the Sale Hearing, the Stalking Horse Bidder agrees otherwise.

## Modifications

The Debtors, in prior consultation with the Monitor, the Committee, the DIP Lenders, the Pre-Petition Revolving Agent, and the Pre-Petition Term Agent, may (a) determine which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtors, their estates and creditors. Notwithstanding the foregoing, the provisions of this paragraph shall not operate or be construed to permit the Debtors to (i) accept any Qualified Bid that (x) does not require a bid deposit of at least $5,057,500 be placed in a protected, segregated account, which shall serve as protection and security for the Stalking Horse Bidder as outlined herein or (y) does not equal or exceed the Overbid Amount, or (ii) impose any terms and conditions upon the Stalking Horse Bidder that are contradictory to or in breach of the terms of the Stalking Horse Asset Purchase Agreement other than any such terms and conditions set forth in these Bidding Procedures or the Bidding Procedures Order.

## Miscellaneous

The Auction and Bid Procedures are solely for the benefit of the Debtors and nothing contained in the Bidding Procedures Order or Bid Procedures shall create any rights in any other person or bidder (including without limitation rights as third party beneficiaries or otherwise) other than the rights expressly granted to a Successful Bidder under the Bidding Procedures Order. The bid protections incorporated in these Bidding Procedures are solely for the benefit of the Stalking Horse Bidder.

Except as provided in the Bidding Procedures Orders and Bidding Procedures, the Bankruptcy Court and the Canadian Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of the Bidding Procedures Order and the Canadian Bidding Procedures Order, respectively.

In the event the Stalking Horse Bidder is not the Successful Bidder, the Stalking Horse Bidder shall have standing to object to the sale of the Assets or any portion thereof (including the conduct of the Auction and interpretation of these bidding procedures) at the Sale Hearing and at the hearing on the Canadian Sale Approval Motion.

The Pre-Petition Term Secured Parties shall be deemed to have consented and waived any and all applicable rights under section 363(f) of the Bankruptcy Code.

# EXHIBIT 2 TO BID PROCEDURES ORDER

## Real Property Lease Cure Notice

| In re: | Chapter 11 |
|---|---|
| EDDIE BAUER HOLDINGS, INC., *et al.*,[1] | Case No. 09-12099 (MFW) |
| | Jointly Administered |
| Debtors. | **Sale Hearing:** |
| | **Objection Deadline:** |

**NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF REAL PROPERTY LEASES, (II) REQUIREMENT TO PROVIDE INFORMATION AS TO CURE AMOUNTS, AND (III) PROCESS FOR DETERMINING CURE AMOUNTS WITH RESPECT TO REAL PROPERTY LEASES TO BE ASSUMED AND ASSIGNED**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      Pursuant to the Order Pursuant to 11 U.S.C. §§ 105(A), 363, 365, and Bankruptcy Rules 2002, 6004, 6006 (A) Establishing Bidding and Auction Procedures Related to the Sale of All of the Debtors' Assets; (B) Approving Bid Protections for the Sale of the Debtors' Assets; (C) Scheduling an Auction and Sale Hearing for the Sale of the Debtors' Assets; (D) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Leases to be Assigned; and (E) Granting Certain Related Relief (the "**Bidding Procedures Order**") entered by the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") on June [____], 2009, the above captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby provide notice that they are a party to various

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Eddie Bauer Holdings, Inc., a Delaware corporation (2352); Eddie Bauer, Inc., a Delaware corporation (9737); Eddie Bauer Fulfillment Services, Inc., a Delaware corporation (0882); Eddie Bauer Diversified Sales, LLC, a Delaware limited liability company (1567); Eddie Bauer Services, LLC, an Ohio limited liability company (disregarded); Eddie Bauer International Development, LLC, a Delaware limited liability company (1571); Eddie Bauer Information Technology, LLC, a Delaware limited liability company (disregarded); Financial Services Acceptance Corporation, a Delaware corporation (7532); and Spiegel Acceptance Corporation, a Delaware corporation (7253). The mailing address for Eddie Bauer Holdings, Inc. is 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004.

unexpired real property leases as set forth on Exhibit 1 attached hereto (individually, a "**Lease**",

collectively the "**Leases**") and they intend to seek to assume and assign some or all of the Leases

(individually, a "**Potentially Assumed Lease**", collectively, the "**Potentially Assumed Leases**")

to the Successful Bidder[2] in connection with the proposed Sale of the Debtors' assets..

2.      You have been identified as a party to a Potentially Assumed Lease.  If your

Lease is actually to be assumed or assigned, a separate notice of such assumption and assignment

will be provided to you, as provided below.

3.      The Potentially Assumed Lease with respect to which you have been identified as

a non-Debtor counterparty, and the corresponding proposed amount the Debtors' records reflect

is owing for all arrearages due prior to the closing of the Sale (the "**Debtors' Initial Cure**

**Amount**"), has been set forth on Exhibit 1, as attached hereto.  The Debtors' records reflect, as

of the date hereof, that all postpetition amounts owing under your Potentially Assumed Lease

have been paid and will continue to be paid and that there are no other defaults under the

Potentially Assumed Lease.  Amounts due and owing under the Lease with respect to the period

after the closing date of the Sale are not included in the Debtor's Initial Cure Amounts.  The

Debtors' Cure Amount provided on Exhibit 1 is informational only.

4.      You are required to provide your own estimate of the cure amount that would be

owed under your Potentially Assumed Lease if the lease is assumed and assigned (the

"**Landlord's Cure Amount**").  Specifically, on or before **July 15, 2009**, you must file with the

Court and serve on the parties listed in paragraph 5 a good faith statement of all pre- and post-

---

[2]      Capitalized terms not otherwise defined in this notice shall have the meanings set forth in the Bidding Procedures approved as part of the Bidding Procedures Order.  All documents filed with the Bankruptcy Court in connection with these Chapter 11 Cases, including orders of the Bankruptcy Court, are available to the public at no charge by visiting: www.kccllc.net/EddieBauer or by calling (866) 967-1781.

petition amounts claimed to be due under your Potentially Assumed Lease, as well as a statement of any other claimed monetary defaults that are included in the Landlord's Cure Amount.

5. Service of the Landlord's Cure Amount must be made by mail or other delivery service or by facsimile to (i) Debtors' co-counsel (a) Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, (Attn: Michael R. Nestor, Esq.), facsimile: (302) 571-1253, and (b) Latham & Watkins LLP, Sears Tower, Suite 5800, 233 South Wacker Drive, Chicago, IL 60606, (Attn: David Heller, Esq.), facsimile: (312) 993-9767, Latham & Watkins LLP, 140 Scott Drive, Menlo Park, CA 94025 (Attn: Tony Richmond, Esq.), facsimile: (650) 463-2600, Latham & Watkins LLP, 355 South Grand Avenue, Los Angeles, CA 90071-1560, (Attn: Heather Fowler, Esq.), facsimile: (213) 891-8763, (ii) the Debtors, Eddie Bauer, Inc., 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004, (Attn: Freya Brier), facsimile: (425) 755-7671, (iii) the Committee's counsel, Cooley Godward Kronish LLP, 1114 Avenue of the Americas, New York, NY 10036 (Attn: Eric Haber, Esq.), facsimile: (212) 479-6275, and (iv) all other parties that have requested notice in these cases.

6. No hearing will be held or final determination made regarding cure amounts until a Lease is proposed to be assumed and assigned. At such time, the Debtors will file and serve their Notice of Assumption and Assignment of Unexpired Real Property Leases (the "Notice"). The Debtors will set forth in the Notice the "**Debtors' Final Cure Amount**," [together with a detailed breakdown thereof]. In addition, the Notice will provide that if you object to the Debtors' Final Cure Amount, or to the assumption and assignment of your Lease, you must file an objection with the Court and serve a copy on specified parties by the deadline set forth in the Notice. Any such objection must set forth (i) the basis for the objection, (ii) the exact amount the party asserts as the correct cure amount, and (iii) sufficient documentation to support the cure

amount asserted. If you fail to file a timely objection to the Debtors' Final Cure Amount, then you will be (i) forever barred from objecting to the Debtors' Final Cure Amount; and (ii) forever barred and estopped from asserting or claiming any cure amount, other than the Debtors' Final Cure Amount, against the Debtors, any Successful Bidder or any other assignee of the relevant lease. Any timely filed objection will be considered at a hearing to be held before the Honorable Judge Walrath, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street Wilmington, DE 19801-3024, at such date and time as will be stated in the Notice.

7.      With respect to adequate assurance of future performance of your Potentially Assumed Lease, the Stalking Horse Bidder and any other competing bidders will submit materials demonstrating adequate assurance of future performance in accordance with Sections 365(b)(1)(A) and 365(f)(2)(B) of the Bankruptcy Code. Upon execution of a confidentiality agreement, you will be entitled to receive such materials. You will receive separate notice concerning the confidentiality agreement requirement.

8.      The presence of a lease or other agreement on Exhibit 1, as attached hereto, does not constitute an admission that such lease or other agreement is an unexpired real property lease or that such lease will be assumed by the Debtors and assigned to any Successful Bidder or other assignee. The Debtors reserve all of their rights, claims and causes of action with respect to the contracts, leases and other agreements listed on Exhibit 1, as attached hereto.

Dated: June [_____], 2009
Wilmington, Delaware

Respectfully submitted,

Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

David S. Heller
Josef S. Athanas
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

-and-

Heather L. Fowler
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, California 90071-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
ATTORNEYS FOR DEBTORS AND
DEBTORS-IN-POSSESSION

**S**CHEDULE OF **D**EBTORS' **I**NITIAL **C**URE **A**MOUNTS FOR **U**NEXPIRED **R**EAL **P**ROPERTY **L**EASES

1