IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EDDIE BAUER HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-12099 (MFW)<br><br>Jointly Administered<br><br>Hearing Date: July 7, 2009 at 9:30 a.m. (ET)<br>Objection Deadline: July 3, 2009 at 12:00 p.m. (ET)<br><br>Re: D.I. 12 |

**LIMITED OBJECTION OF WILMINGTON TRUST FSB, AS AGENT FOR DEBTORS' SECURED TERM LENDERS, TO MOTION OF DEBTORS FOR A FINAL WAGE ORDER AUTHORIZING (A) THE DEBTORS TO PAY CERTAIN PRE-PETITION: (I) WAGES, SALARIES, AND OTHER COMPENSATION; (II) EMPLOYEE, MEDICAL AND SIMILAR BENEFITS; (III) REIMBURSABLE EMPLOYEE EXPENSES; (IV) OTHER MISCELLANEOUS EMPLOYEE EXPENSES AND BENEFITS; AND (V) INDEPENDENT CONTRACTOR FEES AND EXPENSES AND (B) DIRECTING BANKS TO RECEIVE, PROCESS, HONOR AND PAY ALL CHECKS PRESENTED FOR PAYMENT AND ELECTRONIC PAYMENT REQUESTS RELATING TO THE FOREGOING**

Wilmington Trust FSB, successor by assignment to JPMorgan Chase Bank, N.A., as Agent (the "Term Loan Agent") for the pre-petition term loan lenders (collectively, the "Term Lenders"), through its undersigned counsel, respectfully submits this limited objection (the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Eddie Bauer Holdings, Inc., a Delaware corporation (2352); Eddie Bauer, Inc., a Delaware corporation (9737); Eddie Bauer Fulfillment Services, Inc., a Delaware corporation (0882); Eddie Bauer Diversified Sales, LLC a Delaware limited liability company (1567); Eddie Bauer Services, LLC, an Ohio limited liability company (disregarded), Eddie Bauer International Development, LLC, a Delaware limited liability company (1571); Eddie Bauer Information Technology, LLC, a Delaware limited liability company (disregarded); Financial Services Acceptance Corporation, a Delaware Corporation (7532); and Spiegel Acceptance Corporation, a Delaware corporation (7253). The mailing address for Eddie Bauer Holdings, Inc. is 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004. On or about the Petition Date, Eddie Bauer of Canada, Inc. and Eddie Bauer Customer Services, Inc., affiliates of the Debtors, commenced a proceeding before the Superior Court of Justice, Commercial List, for the Judicial District of Ontario, for a plan of Compromise or arrangement under the Companies' Creditors Arrangement Act.

"Objection") to the motion of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a Final Wage Order authorizing: (a) the Debtors to pay certain pre-petition: (i) wages, salaries, and other compensation; (ii) employee, medical and similar benefits; (iii) reimbursable employee expenses and benefits; (iv) other miscellaneous employee expenses and benefits; and (v) independent contractor fees and expenses; and (b) directing banks to receive, process, honor and pay all checks presented for payment and electronic payment requests relating to the foregoing (the "Motion") (D.I. 12).[2] In support of this Objection, the Term Loan Agent respectfully states as follows:

## PRELIMINARY STATEMENT

1. This Court recently blessed an auction and sale process that will result in the sale of substantially all of the Debtors' assets. This process will unfold over the upcoming weeks, and creditor recoveries will depend on the sale. Further, substantially all of the Debtors' assets are encumbered by liens held by the DIP lenders, the Revolving Lenders, and the Term Lenders. It would therefore be premature to authorize the payment of unsecured priority claims until it is clear whether sufficient assets will be available to pay such claims in full. Authorizing the relief sought in the Motion would effectively elevate pre-petition wage and benefit claims above both administrative expense claims and secured claims by allowing their payment today. This result is not dictated by the Bankruptcy Code and would contravene the priorities set forth therein. Accordingly, the Term Loan Agent requests that this Court deny the Motion, only to the extent it seeks to pay any pre-petition priority claims arising under Severance Plans or Vacation and other Paid Time Off, without prejudice to the Debtors' ability to renew the Motion once it is clear that there are sufficient funds to pay such priority claims.

---

[2] Capitalized terms used, but undefined herein, shall have the meaning ascribed to them in the Motion.

# BACKGROUND

A.  **Introduction**

2. On June 17, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.

3. The Debtors continue in possession of their properties and the management of their affairs as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. An Official Committee of Unsecured Creditors was appointed herein by the United States Trustee on June 25, 2009. No trustee or examiner has been appointed in the Debtors' Chapter 11 cases.

4. On June 18, 2009, this Court entered its Interim Order (1) Authorizing Incurrence by the Debtors of Post-Petition Secured Indebtedness with Priority Over Certain Secured Indebtedness and with Administrative Superpriority, (2) Granting Liens, (3) Authorizing Use of Cash Collateral by the Debtors Pursuant to 11 U.S.C. § 363 and Providing for Adequate Protection, (4) Modifying the Automatic Stay and (5) Scheduling a Final Hearing (the "Interim DIP Order") (D.I. 64).

5. Thereafter, on June 30, 2009, this Court entered its Order Pursuant to 11 U.S.C. §§ 105(A), 363, 365, and Bankruptcy Rules 2002, 6004, 6006 (A) Establishing Bidding and Auction Procedures Related to the Sale of all of the Debtors' Assets; (B) Approving Bid Protections for the Sale of All of the Debtors Assets; (C) Scheduling an Auction and Sale Hearing for the Sale of All of the Debtors' Assets; (D) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Leases to be Assigned; and (E) Granting Certain Related Relief (the "Bidding Procedures Order") (D.I. 222). Pursuant to the Bidding Procedures Order, potential purchasers of the Debtors' assets may bid on all or any part

of the Debtors' assets. Moreover, depending on the nature and amount of any bids received, and the plans any potential bidder may have for the Assets, the auction may result in the continuation of the Debtors' businesses as going concerns, or alternatively, a liquidation of the Debtors' assets on a piecemeal basis.

B.   **Pre-petition Secured Indebtedness**

6.   The Term Loan Agent, the Term Lenders, and the Debtors are parties to that certain Amended and Restated Term Loan Agreement dated April 4, 2007, as amended (the "Pre-petition Term Loan Agreement"). As of the Petition Date, the principal outstanding indebtedness under the Pre-petition Term Loan Agreement as acknowledged by the Debtors was at least $200,607,949, together will all fees, costs, interest, professional fees and other obligations properly chargeable thereunder. (Interim DIP Order at p. 10).

7.   In addition to their secured obligations to the Term Lenders, the Debtors have also incurred secured revolving indebtedness to certain pre-petition lenders (the "Pre-petition Revolving Lenders") under that certain Loan and Security Agreement dated June 21, 2005, as amended, with Bank of America, N.A., as Agent (the "Pre-petition Revolving Credit Agreement") and the lender parties thereto. As of the Petition Date, the outstanding principal indebtedness due and owing under the Pre-petition Revolving Credit Agreement, as acknowledged by the Debtors, was approximately $41,551,000, together with issued and outstanding letters of credit totaling $9,689,362, plus all interest, fees, costs, professional fees and other obligations properly chargeable thereunder. (Interim DIP Order at p. 8).

C.   **Summary of Relief Requested**

8.   On June 18, 2009, this Court entered an interim order approving the Motion (the "Interim Wage Order") (D.I. 65). By the Motion, the Debtors request a final order (the "Final Wage Order") authorizing, *inter alia*, the Debtors to continue to honor Employee

Obligations and Employee Benefits in accordance with the Debtors' stated policies and pre-petition practices, and in the ordinary course of the Debtors' businesses, including but not limited to Incentive Plans, Severance Plans and Severance Benefits pay any obligations arising thereunder, including those obligations which arose pre-petition, subject to the applicable limitations set for in section 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

**LIMITED OBJECTION**

9. The Debtors have estimated that the pre-petition claims arising under the Severance Plans, subject to applicable caps, could be as much as approximately $7.7 million. Further, the Debtors have estimated that the pre-petition claims arising under Vacation and other Paid Time Off, subject to the applicable caps, will cost the estates an additional $5.2 million, bringing the total amount sought to be paid to unsecured priority claim holders to $13 million. Because it is unclear whether unsecured priority claims will be paid in full in these cases, payment of these claims at this time will be done at the expense, and to the prejudice of the Debtors' secured creditors and administrative expense claimants.

**A. It Is Premature To Authorize Payment Of Unsecured Priority Claims**

10. The Debtors have announced their intention to sell all of their assets to Rainier Holdings LLC (the "Stalking Horse Bidder") or to another bidder submitting a higher or better offer. Further, as dictated by the Bidding Procedures Order, the Debtors' assets could be sold in lots or collectively as a going concern. Until a successful bidder has been determined it is impossible to know whether the assets will be sold as a going concern and whether there will be sufficient funds to pay all claims senior to the priority unsecured claims in full. Further, substantially all of the Debtors' assets are encumbered by the liens of the DIP Lenders, the Revolving Lenders and the Term Lenders. To pay priority claims prior to ensuring that there are

sufficient available funds to satisfy the Debtors' secured claims in full would essentially elevate the status of priority claims above those of the secured lenders in contravention of the Bankruptcy Code.

11. In the Third Circuit, wage and severance claims are only given administrative expense priority to the extent that they are actually earned and accrued after the petition date. *See e.g. In re Roth American, Inc.*, 975 F.2d 949, 958 (3d. Cir. 1992 ) (claims for vacation pay and severance pay are administrative expenses only to the extent that these benefits were earned by services rendered post-petition); *Former Employees of Builders Square Retail Stores v. Hechinger Investment Co. of Delaware, et. al. (In re Hechinger Investment Co. of Delaware)*, 298 F.3d 219, 225 (3d Cir. 2002) (wages, salaries, or commissions for services rendered after the commencement of the case may be allowed as administrative expenses). The Term Agent does not object to payment of any Employee Obligations to the extent such obligations to the extent they are administrative expenses of the Debtors' estate. However, to the extent such benefits were earned for services rendered pre-petition, they are either entitled to unsecured priority or general unsecured status pursuant to the Bankruptcy Code and should not be paid at this time.

12. Section 507(a)(4) of the Bankruptcy Code grants certain employee claims priority status, subject to certain limitations. The priorities granted by section 507 of the Bankruptcy Code are priorities as against other holders of unsecured claims only. *Collier on Bankruptcy*, ¶ 507.02[4][a] (15th ed. rev. 1996). The rights of all holders of unsecured claims, including those that constitute unsecured priority claims, are subordinate to the lien rights held by secured parties. Priority status of an unsecured claim does not grant or imply any right to affect such secured parties' rights or interests. *Id.* Moreover, there is no provision in the

Bankruptcy Code that could be read to mandate payment of pre-petition priority claims, whether pursuant to a plan of reorganization or otherwise, if and to the extent the claims of the Debtors' more senior claims remain unpaid. Therefore, the Court should deny the relief requested in the Motion, only to the extent it seeks to pay any pre-petition unsecured priority claims arising under Severance Plans or Vacation and other Paid Time Off without prejudice to the Debtors' ability renew the Motion at such time that it becomes apparent that the claims senior to those unsecured priority claims will be satisfied in full.

### B. Entitlement to Post-petition Employee Obligations and Employee Benefits Should Only Be Enlarged Pursuant to Further Order Of This Court

13. To the extent that the Motion is granted, the Term Loan Agent further objects to the Debtors' ability to modify the terms of any Employee Obligations or Employee Benefits at will. The Final Wage Order provides that the Debtors are authorized to "continue to honor, pay, and modify the Employee Obligations, Employee Benefits and Independent Contractor Obligations in accordance with the Debtors' stated policies and pre-petition practices, and in the ordinary course of the Debtors' businesses . . ." (Final Wage Order, at p. 2) (emphasis added). The Debtors should not be permitted to expand the scope of, or increase employee benefit entitlements under, Employee Obligations or Employee Benefits without further order of this Court. The Debtors employ over 7,500 employees and even a minor increase in the Debtors' liabilities under any Employee Obligations or Employee Benefits could result in substantial unanticipated administrative expense claims against the Debtors' estates, and therefore, such modifications should only be made subject to further order of this Court.

### RESERVATION OF RIGHTS

14. The Term Loan Agent respectfully reserves the right to supplement this Objection as circumstances warrant.

WHEREFORE the Term Loan Agent respectfully requests that the Court (i) should condition approval of the Motion on appropriate modifications to the Final Wage Order as described herein; and (ii) grant such other and further relief as is just and proper.

Dated: July 3, 2009
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Robert J. Dehney (No. 3578)
Gregory W. Werkheiser (No. 3553)
Erin R. Fay (No. 5268)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

and

Luc A. Despins, Esquire
Leslie A. Plaskon, Esquire
Christopher M. Desiderio, Esquire
PAUL HASTINGS JANOFSKY & WALKER LLP
Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

*Counsel for Wilmington Trust FSB*

2990920.1