IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X
In re:                                                    : Chapter 11
                                                          :
EDDIE BAUER HOLDINGS, INC., *et al.*,                     : Case No. 09-12099 (MFW)
                                                          :
                                                          : Jointly Administered
                    Debtors.                              :
                                                          : **Related Docket No. 28**
                                                          :
                                                          : **Hearing Date: July 7, 2009 at 9:30 a.m.**
----------------------------------------------------------X

## LIMITED OBJECTION BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO APPLICATION FOR ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF PETER J. SOLOMON COMPANY AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE DEBTORS UNDER 11 U.S.C. §327(a), 328(a)

TO THE HONORABLE MARY F. WALRATH,
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") of Eddie Bauer Holdings, Inc. and its affiliated debtors (collectively, the "Debtors"), by and through its proposed counsel Cooley Godward Kronish LLP and Benesch, Friedlander, Coplan & Aronoff LLP, hereby submits this limited objection (the "Objection") to the Debtors' *Application Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code for an Order Authorizing the Debtors to Retain and Employ Peter J. Solomon Company* ("PJS") *as Investment Banker and Financial Advisor for the Debtors Nunc Pro Tunc to the Petition Date* (the "Application"), and respectfully submits as follows:

### PRELIMINARY STATEMENT

If PJS's compensation is approved in the manner proposed by the Debtors, PJS will be guaranteed to earn more than $3 million for services provided in the first thirty days of these

cases without any opportunity for the Committee or this Court to review those fees for reasonableness. Based upon the proposal, PJS has already earned approximately:

- $600,000 in monthly advisory fees through March 31, 2009;
- $1,000,000 in financing fees (fifty percent of which will be applied to the transaction fee); and
- $2,250,000 in transaction fees.

No part of this compensation is contingent, incentive-based, success-based, result oriented or reasonably related to the services that are proposed. If PJS's proposed compensation was keyed to additional value to these estates (maximizing value and minimizing liabilities), in excess of the Stalking Horse APA the Debtors entered into prior to the filing of these cases (defined below), this Court could justify ignoring the reasonableness standard with respect to PJS's retention.

Without any contingent portion of PJS's compensation, these estates could be faced with closing on the Stalking Horse APA, which PJS assisted the Debtors in negotiating prepetition, and paying PJS more than $3 million postpetition for a stalking horse bid that neither provides sufficient proceeds to pay the Debtors' prepetition lenders in full nor ensures the administrative solvency of these estates.

## BACKGROUND

1. On June 17, 2009 (the "Petition Date"), the Debtors each filed voluntary petitions for relief with this Court under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On June 25, 2009, the Office of the United States Trustee appointed the Committee consisting of following members: Simon Property Group, AQR Capital Management,

The Bank of New York Mellon, Tara Hill, GGP Limited Partnership, and Highbridge International LLC, and RR Donnelley & Sons Company. Subject to approval by this Court, the Committee has retained Cooley Godward Kronish LLP, as its lead counsel, Benesch, Friedlander, Coplan & Aronoff LLP, as its local counsel, and Capstone Advisory Group, LLC as its financial advisor.

3. On June 29, 2009, this Court approved the bid and auction procedures for the sale of the Debtors' assets, which is scheduled to take place on July 16, 2009. This Court also approved the stalking horse protections for Rainer Holdings LLC ("Rainer") in connection with that certain agreement to purchase substantially all of the Debtors' assets and assume some of the Debtors' liabilities entered into between the Debtors and Rainer as of June 16, 2009, the day before the Petition Date (the "Stalking Horse APA"). The hearing to approve the sale of the Debtors' assets is scheduled to take place on July 22, 2009.

4. Notwithstanding the financial realities of this case, the Debtors seek authority from the Court to retain PJS on terms which may not be reasonable and provide no incentive for PJS to maximize value for the Debtors and their creditors. PJS is poised to be paid more than $3 million even if there is no bidding at the auction. For that reason and other reasons stated herein, the Committee objects to certain of the proposed financial terms summarized in the Application and engagement letter annexed thereto as Exhibit A (the "PJS Agreement").

## PROPOSED PJS EMPLOYMENT TERMS

5. The Debtors propose to retain PJS, for a term through and including March 31, 2010 to perform a variety of advisory services (the "Advisory Services"), ranging from evaluating the liquidity and financing needs of the Debtors to advising on the timing, nature and terms of potential financing sources or buyers. See Application, ¶15(a)-(k).

6.  For the Advisory Services, the Debtors propose to pay PJS a monthly fee of $200,000 payable on July 1, 2009 and on the first day of each month thereafter (payable for a minimum of three months (the "Monthly Advisory Fee")), even though the auction to sell the Debtors' assets is scheduled for July 16th. Further, prior to the Petition Date, the Debtors deposited a $250,000 retainer deposit into a segregated escrow account for the benefit of PJS. In addition to the Monthly Advisory Fee, under the proposed retention PJS would be entitled to reimbursement of reasonable out-of-pocket expenses including, but not limited to, PJS's attorney fees, not to exceed $75,000.00 ("Attorney Fees") without the Debtors' prior consent.[1]

7.  In addition to the Monthly Advisory Fee and reimbursement of expenses, the Debtors propose to pay PJS the following "success" fees, none of which are provided for in the Debtors' budget, as follows:

| Type of Transaction | Proposed PJS "Success" Fee |
| --- | --- |
| "Financing Transaction" | (i) 1% of the gross proceeds for senior debt, plus (ii) 3% of the gross proceeds of the subordinated debt |
| "Sale Transaction" *<br><br>* Which includes liquidation of the Debtors' assets. | $2,250,000 transaction fee, less 50% of any amount paid as part of a Financing Transaction not previously credited, and less any amount paid in connection with PSJ rendering an opinion in connection with the Sale Transaction |

8.  Given that the Debtors entered into the Stalking Horse APA before the Petition Date, PJS could receive more than $3 million for thirty days work. While this fee may be reasonable if the Committee and this Court have the opportunity to assess that reasonableness

---

[1] Moreover, the Debtors' proposed order regarding the DIP Facility requests that the Debtors' estates also be responsible for millions of dollars in investment banker fees to Lazard Freres & Co. LLC, the investment banker retained by the secured lenders to which the Committee will be filing a separate objection.

after the closing, this compensation structure provides no incentive for PJS to maximize value above the stalking horse bid for the benefit of the Debtors' and their creditors.

9. Further, if the assets of the Debtors are liquidated, rather than sold to a going concern buyer, PJS would receive fees of more than $3 million simply for arranging an orderly liquidation of the Debtors' assets. This is neither reasonable, nor market.

## **LIMITED OBJECTION**

10. In a case poised to sell all of the Debtors' assets at an auction less than 30 days from the Petition Date and with a Stalking Horse APA that neither provides sufficient proceeds to pay the secured creditors in full nor ensures the administrative solvency of these cases, PJS's proposed compensation is simply not warranted.

11. <u>Reasonableness Standard</u>: Any order authorizing PJS's retention should permit this Court, the U.S. Trustee and the Committee to review PJS's fee statements and applications for compensation and expense reimbursement on all grounds, including, without limitation, reasonableness.

12. The Debtors' seek to employ PJS pursuant to §§ 327(a) and 382(a) of the Bankruptcy Code. By seeking employment under § 328(a), PJS's fees would only be reduced "if the terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). Thus, parties in interest would be prohibited from reviewing whether PJS's contributions were reasonable in light of its efforts.

13. The Committee respectfully requests that this Court authorize PJS's retention pursuant to § 330 of the Bankruptcy Code. Section 330 authorizes a bankruptcy court to award retained professionals "reasonable compensation for actual, necessary services ….," based on

various factors, including the time spent, the rates charged and the reasonableness of the professional's rate compared to that charged by comparably skilled practitioners in non-bankruptcy cases.[2] Thus, this Court, the U.S. Trustee and the Committee would be afforded the right to review PJS's compensation for reasonableness.

14. The fees proposed to be paid to PJS should not preclude a reasonableness review of such fees. *See In re Stations Holding, Inc.*, 2004 WL 1857116, *3 (Bankr. D. Del. 2004) (reducing a financial advisor's flat fee from $1 million to $104,000 based upon amount of hours that were billed and the reasonableness of the hourly rate); *see also In re Bob's Stores, Inc., et al.*, Case No. 03-13254 (LHK) (Bankr. D. Del. 2003) (ECF No. 163) (debtors' investment banker's success fee was subject to court approval under a reasonableness standard).

15. By permitting this Court, the U.S. Trustee and the Committee to review PJS's fee statements and applications for compensation and expense reimbursement under a reasonableness standard, the same standard to which other professionals in this case are being

---

[2] Pursuant to § 330 of the Bankruptcy Code, in determining the amount of reasonable compensation to be awarded to a professional person:

> the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
>
> 11 U.S.C. § 330.

held, this Court, the U.S. Trustee and the Committee can make certain that PJS's compensation reasonably relates to the time, nature, extent and value of the services PJS rendered to the Debtors' estates.

16. If this Court approves PJS's retention subject to the reasonableness standard, the Committee supports PJS's retention and the proposed compensation. *See In re Bob's Stores, Inc., et al.*, Case No. 03-13254 (LHK) (Bankr. D. Del. 2003) (ECF No. 163) (debtors' investment banker's success fee was subject to court approval under a reasonableness standard).

17. <u>Success Fee Should be an Incentive</u>: If PJS's retention is not approved subject to the reasonableness standard, PJS's compensation structure should be revised to provide PJS with the incentive to maximize the value of the Debtors' assets and minimize the liabilities they retain.

18. <u>Limit Length of Employment</u>: Given the 30-day sale posture of these cases, PJS should not be retained through March 31, 2010 at a cost of $200,000.00 per month.

19. <u>Expense Reimbursement Should Exclude Attorney Fees</u>: PJS's $75,000 expense reimbursement allowance should exclude attorney fees. *See e.g. In re Crafts Retail Holding Corp., et al.*, Case No. 108-42272 (JF) (Bankr. S.D.N.Y. 2007) (ECF No. 596) (financial advisor's request for reimbursement of its attorney fees in the amount of $35,000 was denied). These cash strapped Debtors cannot afford the luxury of permitting estate professionals to retain their own professionals.

## CONCLUSION

20. The Committee respectfully requests that this Court approve PJS's retention subject to the reasonableness standard. To the extent this Court does not determine that the Committee should have an opportunity to review PJS's fees for reasonableness, the Committee respectfully requests that this Court limit the monthly fees to July (subject to further court order),

expressly exclude attorney fees from PJS's expense reimbursement, and require PJS's compensation structure be revised in order to provide PJS with the proper incentive to maximize the recovery for the benefit of the Debtors' estates.

**WHEREFORE,** the Committee respectfully requests that the Court issue an order sustaining the Committee's Objection and granting such additional relief as is just.

Dated: New York, New York
July 6, 2009

          Respectfully Submitted,

          By: /s/Bradford J. Sandler
          Bradford J. Sandler (#4142)
          Jennifer R. Hoover (#5111)
          Jennifer E. Smith (#5278)
          BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
          222 Delaware Avenue, Suite 801
          Wilmington, DE 19801
          (302) 442-7007
          (302) 442-7012 (Facsimile)

          -and-

          COOLEY GODWARD KRONISH LLP
          1114 Avenue of the Americas
          New York, New York 01136
          (212) 479-6000
          (212) 479-6275 (Facsimile)
          Jay R. Indyke (JI 0353)
          Cathy R. Hershcopf (CH 5875)
          *Creditors Of Eddie Bauer Holdings, Inc., et al.*