IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EDDIE BAUER HOLDINGS, INC., et al.[1] | ) | Case No. 09-12099 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Hearing Date: August 18, 2009 @ 11:30 a.m. ET |
| | | Objection Deadline: July 29, 2009 @ 4:00 p.m. ET |

**APPLICATION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ORDER AUTHORIZING THE EMPLOYMENT
AND RETENTION OF CAPSTONE ADVISORY GROUP, LLC AS
FINANCIAL ADVISOR, NUNC PRO TUNC TO JUNE 25, 2009**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby submits this application (the "Application") to the Court pursuant to sections 328(a) and 1103(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended and supplemented, the "Bankruptcy Code") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), for the entry of an order authorizing the Committee to retain and employ Capstone Advisory Group, LLC ("Capstone"), *nunc pro tunc* to June 25, 2009, as financial advisor to the Committee in the above-captioned Chapter 11 cases (the "Chapter 11 Cases"). In support of its Application, the Committee relies upon the Affidavit of Jay I. Borow. (the "Borow Affidavit"), attached hereto as Exhibit A and incorporated herein by reference, and respectfully represents as follows:

---

[1] The Debtors in these Chapter 11 Cases are: Eddie Bauer Holdings, Inc., Eddie Bauer, Inc., Eddie Bauer Fulfillment Services, Inc., Eddie Bauer Diversified Sales, LLC, Eddie Bauer International Development, LLC, Eddie Bauer information Technology, LLC, Financial Services Acceptance Corporation, and Spiegel Acceptance Corporation.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 328 and 1103(a) of the Bankruptcy Code, as complemented by Bankruptcy Rules 2014(a) and 2016 and Local Bankruptcy Rule 2014-1.

## BACKGROUND

2. On June 17, 2009, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On June 18, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4. On June 17, 2009, the Debtors' Canadian affiliates (collectively, the "Canadian Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Canadian Companies' Creditors Arrangement Act ("CCAA"). The Canadian Debtors continue to operate their businesses and manage their properties under the supervision of the Canadian Court.

5. On June 25, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware appointed the Committee. The Committee currently consists of seven members.[2]

6. At a meeting of the Committee on June 25, 2009, the Committee duly voted to retain Capstone as its financial advisor in connection with the Chapter 11 Cases.

## RELIEF REQUESTED

7. By this Application, the Committee seeks to employ Capstone as its financial advisor, *nunc pro tunc* to June 25, 2009, and for Capstone to be compensated at the hourly rates referenced herein, plus properly reimbursable expenses and out-of-pocket costs as an expense of administration and/or in accordance with any order of this Court, subject to approval by this Court. Specifically, the Committee respectfully requests entry of an order pursuant to sections 328 and 1103(a) of the Bankruptcy Code authorizing Capstone to perform those financial advisory services that will be necessary during these Chapter 11 Cases on behalf of, and for the benefit of, the Committee as more fully described below.

---

[2] The Committee currently consists of: The Bank of New York Mellon, Tara Hill, RR Donnelley & Sons, Simon Property Group, GGP Limited Partnership, AQR Capital and Highbridge International LLC.

# RETENTION OF CAPSTONE

A. **Introduction**

8. The Committee submits the Application because of its need to retain a financial advisor to help guide it through the Debtors' reorganization efforts and to assist it in the tasks associated with negotiating and implementing the Debtors' proposed sale of assets and plan of reorganization. The Committee determined that Capstone's broad experience and role as financial advisor to the Committee would best serve the interests of the Committee, its counsel and, by extension, the Debtors' unsecured creditors.

9. The Committee believes that Capstone is well qualified and uniquely able to provide financial advisory services to it in these cases in an efficient manner. Capstone professionals have assisted and advised debtors, creditors, creditors' committees, bondholders, investors, and other stakeholders in numerous bankruptcy cases such as Chrysler LLC, Tropicana Entertainment, LLC, Spiegel Inc., W.R. Grace, Kmart Corp., Mirant Energy, Adelphia, Owens-Corning, Polaroid, Sunbeam, U.S. Office Products, Collins & Aikman, Federal-Mogul, U.S. Industries and Calpine.

10. It is expected that Capstone will provide the following services to the Committee:

   (i) advise and assist the Committee in its analysis of the asset purchase agreement dated June 16, 2009 for the purchase of substantially all of the assets of the Debtors as well as any additional purchase offers or liquidation bids received by the Debtors;

   (ii) analyze the Debtors' assets and analyze possible recovery to the various creditor constituencies under various scenarios;

   (iii) analyze information from the Debtors regarding potential bidder due diligence efforts;

   (iv) advise and assist the Committee in its analysis and monitoring of the Debtors' historical, current and projected financial affairs, including without limitation, schedules of assets and liabilities, statement of financial affairs, periodic operating reports, analyses of cash receipts and disbursements, analyses of cash

flow forecasts, analyses of intercompany transactions, analyses of trust accounting, analyses of various asset and liability accounts, analyses of any unusual or significant transactions between the Debtors and any other entities;

(v) monitor and analyze the Debtors' cash position, liquidity, intercompany charges, and financial results versus forecast;

(vi) assist and advise the Committee and counsel in reviewing and evaluating any court motions, applications or other forms of relief filed or to be filed by the Debtors, Canadian Debtors or any other parties-in-interest;

(vii) monitor Debtors' claims management process, analyze claims, analyze guarantees, and summarize claims by entity;

(viii) analyze any proposed critical vendor arrangements, current status of trade support and monitor any subsequent changes in amounts and terms of credit extension;

(ix) advise and assist the Committee in identifying and/or reviewing preference payments, fraudulent conveyances and other causes of action that the Debtors' estates may hold against third parties;

(x) assist and advise the Committee in evaluating and analyzing restructuring proposals of the Debtors and assist counsel and the Committee in developing negotiation strategies to support the Committee's position;

(xi) advise and assist the Committee in its assessment of proposed bonus, incentive and retention plans;

(xii) render expert testimony as requested from time to time by the Committee and counsel, regarding the feasibility of a plan of reorganization and other matters;

(xiii) attend Committee meetings and court hearings as may be required in the role of advisors to the Committee; and

(xiv) provide other services that are consistent with the Committee's role and duties as may be requested from time to time.

11. The Committee hereby requests that the Court approve Capstone's retention *nunc pro tunc* to June 25, 2009. This is appropriate because, since that date, Capstone has provided necessary services to the Committee, which services include reviewing the Debtors' financial and operating information and analyzing various issues confronting the Debtors and creditors in

connection with the Debtors' proposed sale of assets and communicating with the Committee regarding such matters.

### B. The Terms of Capstone's Retention

12. Capstone will be entitled to receive, as compensation for its services, fees based on the following hourly rates:

| | |
|---|---|
| Executive Directors | $570 - $795 |
| Staff | $250 - $550 |
| Support Staff | $110 - $170 |

Capstone's hourly rates are adjusted annually on January 1. The rates stated above are in effect as of the date of this filing.

13. In addition, Capstone will be entitled to seek reimbursement for reasonable and actual out of pocket expenses, including, but not limited to, costs of reproduction, typing, computer usage, legal counsel and other direct expenses incurred in connection with Capstone providing professional services to the Committee.

14. By this Application, in connection with Capstone's retention to provide financial advisory services to the Committee, the Committee requests that the Debtors and their estates agree to indemnify and hold harmless Capstone against any and all loses, claims, damages, liabilities, penalties, judgments, awards, costs, fees, expenses and disbursements including, without limitation, defending any action, suit, proceedings or investigation (whether or not in connection with a proceeding or litigation in which Capstone is a party), directly or indirectly, caused by, related to, based upon, arising out of or in connection with the retention of Capstone or any services rendered pursuant to this retention, unless there is a final non-appealable order of a court of competent jurisdiction, finding Capstone directly liable for gross negligence or willful misconduct (the "Indemnity"). The Indemnity extends to the members and employees of Capstone.

15. Notwithstanding anything to the contrary set forth above, during the pendency of these Chapter 11 Cases, the Indemnity shall be subject to the following:

(a) Subject to the provisions of subparagraph (c), infra, the Debtors are authorized to indemnify, and to provide contribution and reimbursement to and shall indemnify, and provide contribution and reimbursement to, Capstone, its members and employees, in accordance with this Application for any claim arising from, related to, or in connection with the services provided for in this Application, but not for any claim arising from, related to, or in connection with Capstone's postpetition performance of any other services unless such postpetition services and indemnification therefore are approved by this Court;

(b) notwithstanding any provisions of this Application to the contrary, the Debtors shall have no obligation to indemnify Capstone or provide contribution or reimbursement to Capstone (i) for any claim or expense that is judicially determined (the determination having become final) to have resulted from Capstone's gross negligence, willful misconduct, bad faith or self-dealing or (ii) for a contractual dispute in which the Debtors allege the breach of Capstone's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to In re United Artists Theatre Company, et, al, 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c), infra, to be a claim or expense for which Capstone should not receive indemnity, contribution or reimbursement under the terms of this Application;

(c) if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, Capstone believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under this Application (as modified by this Order), including without limitation the advancement of defense costs, Capstone must file an application before the Court, and the Debtors shall not pay any such amounts to Capstone before the entry of an order by the Bankruptcy Court approving the payment. This paragraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for compensation and expenses by Capstone for indemnification, contribution or reimbursement and is not a provision limiting the duration of the Debtors' obligation to indemnify Capstone.[3]

---

[3] This Indemnity is identical to the indemnity approved for Capstone as financial advisor to the creditors' committee in In re Nortel Networks Inc., et al.  See In re Nortel Networks Inc., et al., Case No. 09-10138 (KG) (D. Del. 2009) (ECF No. 431).

16. The Indemnity is a customary and reasonable term of consideration for financial advisors such as Capstone for proceedings both out-of-court and in chapter 11. The indemnification, contribution and exculpation procedures reflected in the attached order are in substantially the same form as the indemnification, contribution and exculpation procedures that have been approved, in this district and in other jurisdictions. As such, the Committee respectfully submits that the Indemnification, viewed in conjunction with the other terms of Capstone's proposed retention, are reasonable and in the best interests of the Debtors, their estates and creditors, and specifically, the Committee.

17. As described more fully in the Borow Affidavit in support of the Application, the terms of the Capstone retention are similar to the terms, both financial and otherwise, agreed to by Capstone and other financial advisory firms, both inside and outside of bankruptcy.

18. The terms of the Capstone retention were negotiated between the Committee and Capstone, and reflect the extensive work to be performed by Capstone and the firm's financial advisory expertise.

### C. The Application Should be Approved Pursuant to Section 328(a) of the Bankruptcy Code

19. The Committee seeks to retain Capstone pursuant to section 328(a) of the Bankruptcy Code. Section 328(a) provides, in part, that a committee, "with the court's approval, may employ or authorize the employment of a professional person under section…1103…on any reasonable terms and conditions of employment, including a retainer…." 11 U.S.C. § 328(a). Section 328 reflects a significant departure from prior bankruptcy practice relating to the compensation of professionals, as it permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the Court of Appeals for the Fifth Circuit recognized in

<u>Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)</u>, 123 F.3d 861 (5th Cir. 1997) (citations omitted):

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants reasonable compensation based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

<u>Id</u>. at 862.

20. Subject to Court approval in accordance with sections 328, 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the orders of this Court, Capstone intends to apply to the Court for the payment of compensation for services rendered and reimbursement of actual and necessary expenses incurred in connection with professional services rendered on behalf of the Committee at its normal and customary hourly rates then in effect.

### D. <u>Capstone is a Disinterested Party</u>

21. To the best of the Committee's knowledge, information and belief and based upon the Borow Affidavit, Capstone is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. Capstone's compliance with the requirements of section 504 of the Bankruptcy Code and Bankruptcy Rules 2014, 2016 and 5002 is set forth in greater detail in the Borow Affidavit.

22. To the best of the Committee's knowledge, information and belief and as described in the Borow Affidavit, Capstone does not represent any of the Debtors' creditors or other parties to these Chapter 11 Cases, or their respective attorneys or accountants, in any

9

matter that is adverse to the interests of the estates with respect to the matters on which Capstone will be employed that would impair Capstone's ability to perform professional services for the Committee in an objective manner.

23. More specifically, as set forth in the Borow Affidavit, Capstone, its members and employees:

    (i)    are not creditors, equity security holders or insiders of the Debtors;

    (ii)    are not and were not, within 2 years before the Petition Date, directors, officers, or employees of the Debtors; and

    (iii)    do not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors for any other reason.

24. To make this determination, Capstone submitted the names of individuals or entities that may be parties-in-interest in the Chapter 11 Cases, including the names of each of the Debtors' affiliates, the Debtors' 5% shareholders, current and former officers and directors for the three years prior to the petition date, the Debtors' significant vendors, the Debtors' major litigants, the Debtor's lenders, the Debtors' credit card processors, the Debtors' landlords, the Debtors' insurers, counterparties to the Debtors' significant contracts, the Debtors' bondholders and Trustees, the Debtors' professionals, the debtors' major competitors, the Debtors' top 30 unsecured creditors, Committee members and their proposed professionals, and parties filing a notice of appearance (as of June 26, 2009), to its internal conflicts procedures.

25. Capstone has determined that none of its members or employees has any connection with the Debtors, their professional advisors, their creditors, members of the Committee or Office of the United States Trustee or any employee thereof, except as described on the list attached as <u>Exhibit A-1</u> to the Borow Affidavit. However, none of these engagements

are related to the Debtors or the Chapter 11 Cases except for Capstone's prior representation of the Official Committee of Unsecured Creditors in the bankruptcy proceedings of Spiegel, Inc., Eddie Bauer Holdings, Inc.'s former parent, as more fully described in the Borow Affidavit. Many of Capstone's engagements are for syndicated lending groups and a number of the financial institutions listed on Exhibit A-1 are either agents or participating lenders in such groups. It is typical in such engagements for Capstone's bills to be rendered to the related borrower, not to Capstone's clients. As such, Capstone maintains it's billing records on an "engagement" basis. Accordingly, the precise amount of fees that may be indirectly ascribed or applicable to each of these institutions is not readily or accurately discernable. This is due to, among other reasons, regular commonly active trading of debt. Capstone has been directly involved in or served in matters with parties listed in Exhibit A-1.

26. None of the engagements described above are or were in connection with matters relating to the Debtors or their estates, and none of the representations would adversely affect Capstone's retention by the Committee. To the extent Capstone discovers any additional facts bearing upon matters described herein or its retention by the Committee during the period of its employment, Capstone will supplement the information contained in the Application and the Borow Affidavit.

## **NOTICE**

27. This Application has been served on (i) the Office of the United States Trustee for the District of Delaware, (ii) Eddie Bauer Holdings, Inc., the Debtors, (iii) Latham & Watkins LLP, counsel to the Debtors, (iv) Young Conaway Stargatt & Taylor, LLP, counsel to the Debtors, and (v) all parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Committee respectfully requests that no further notice is necessary.

28. No prior application for the relief requested herein has been presented to this or any other court.

**WHEREFORE**, the Committee requests that this Court enter the Order in the form annexed hereto as <u>Exhibit B</u> (i) authorizing the Committee to employ and retain Capstone as financial advisor in connection with these Chapter 11 Cases, *nunc pro tunc* to June 25, 2009, (ii) authorizing the payment and reimbursement of Capstone's fees and disbursements, subject to interim and final allowance thereof in accordance with sections 330 and 331 of the Bankruptcy Code or as otherwise ordered by the Court, and (iii) providing the Committee such other and further relief as the Court may deem just and proper.

Dated: Indianapolis, IN
July 15, 2009

Respectfully submitted,

The Official Committee of Unsecured
Creditors of Eddie Bauer Holdings, Inc.,
*et al.*

By: /s/ Catherine Martin
Catherine Martin (Committee Co-Chair)

1554660 v2/ NY

12