IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER HOLDINGS, INC., *et al.*, | Case No. 09-12099 (MFW) |
| Debtors. | Jointly Administered |

**OBJECTION OF WESTFIELD, LLC AND CERTAIN AFFILIATES TO MOTION PURSUANT TO 11 U.S.C. §§ 105(a), 363, 365, AND BANKRUPTCY RULES 2002, 6004, 6006 FOR (I) ENTRY OF AN ORDER (A) ESTABLISHING BIDDING AND AUCTION PROCEDURES RELATED TO THE SALE OF ALL OF THE DEBTORS' ASSETS; (B) APPROVING BID PROTECTIONS FOR THE SALE OF THE DEBTORS' ASSETS; (C) SCHEDULING AN AUCTION AND SALE HEARING FOR THE SALE OF THE DEBTORS' ASSETS; (D) ESTABLISHING CERTAIN NOTICE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND LEASES TO BE ASSIGNED; AND (E) GRANTING CERTAIN RELATED RELIEF; AND (II) ENTRY OF AN ORDER (A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) ESTABLISHING REJECTION PROCEDURES AND GUIDELINES FOR CONDUCTING STORE CLOSING SALES; AND (D) EXTENDING THE DEADLINE TO ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY PURSUANT TO 11 U.S.C. § 365(d)(4)**

WESTFIELD, LLC, and those of its affiliates listed on the attached Schedule A (collectively, the "Westfield Landlords"), hereby submit this Objection (the "Objection") to Motion Pursuant to 11 U.S.C. §§ 105(a), 363, 365, and Bankruptcy Rules 2002, 6004, 6006 For (I) Entry of an Order (A) Establishing Bidding and Auction Procedures Related to the Sale of All of the Debtors' Assets; (B) Approving Bid Protections For the Sale of the Debtors' Assets; (C) Scheduling an Auction and Sale Hearing for the Sale of the Debtors' Assets; (D) Establishing Certain Notice Procedures For Determining Cure Amounts For Executory Contracts and Leases to Be Assigned; and (E) Granting Certain Related Relief; and (II) Entry of an Order (A) Approving the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances

and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (C) Establishing Rejection Procedures and Guidelines For Conducting Store Closing Sales; and (D) Extending the Deadline To Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to 11 U.S.C. § 365(d)(4) (the "Sale Motion"), and in support thereof, state as follows:

## I. BACKGOUND

1. On June 17, 2009 (the "Petition Date"), the above-captioned debtors (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court").

2. The Westfield Landlords are the landlords and certain of the Debtors are the tenants pursuant to numerous unexpired leases (the "Westfield Leases") of nonresidential real property for retail stores (the "Premises") located at shopping centers (the "Centers") around the country. Each of the Centers constitutes a "shopping center" as that term is used in 11 U.S.C. § 365(b)(3).

3. Pursuant to the Sale Motion, the Debtor sought, *inter alia*, to establish procedures to for (i) the assumption and assignment or rejection of the Westfield Leases, and (ii) going-out-of-business or similarly themed store closing sales (the "Store Closing Sales") at the Premises that are subject to Westfield Leases that the Debtors will seek to reject.

4. On June 30, 2009, this Court entered its Order Pursuant to 11 U.S.C. §§ 105(a), 363, 365, and Bankruptcy Rules 2002, 6004, 6006 (A) Establishing Bidding and Auction Procedures Related to the Sale of All of the Debtors' Assets; (B) Approving Bid Protections for the Sale of All of the Debtors' Assets; (C) Scheduling an Auction and Sale Hearing for the Sale

of All of the Debtors' Assets; (D) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Leases to be Assigned; and (E) Granting Certain Related Relief (the "Bidding Procedures Order").

5. Upon information and belief, on July 16, 2009, pursuant to the Bidding Procedures Order, the Debtors conducted the Auction.[1]

6. On or about Friday, July 17, 2009, the Debtors filed their Notice of Successful Bidder and of Assumption and Assignment of Executory Contracts and Unexpired Leases (the "Successful Bidder Notice").

7. According to the Successful Bidder Notice, the Successful Bidder at the Auction was Everest Holdings LLC ("Everest" or the "Successful Bidder").

8. The Westfield Landlords have been provided with six pages of "adequate assurance" regarding Golden Gate Capital. Presumably Everest is a newly-created entity that will be owned by Golden Gate Capital.

9. Pursuant to the Bidding Procedures Order, the Westfield Landlords have until Monday, July 20 at noon to file objections to the relief requested in the Sale Motion, including specifically, that the Westfield Leases be assumed and assigned to Everest.

## II. PROCEDURAL OBJECTIONS TO THE SALE MOTION

### A. Westfield Landlords' Request for Evidentiary Hearing and Establishment of a Discovery Schedule in Accordance with the Federal Rules of Bankruptcy Procedure

10. Pursuant to Rule 6006(a) of the Federal Rules of Bankruptcy Procedure, the Sale Motion initiated a contested matter under Rule 9014. See Fed. R. Bankr. P. 6006(a) ("[a]

---

[1] Capitalized terms that are used but not defined herein, shall have the meanings ascribed to such terms in the Bidding Procedures Order.

proceeding to assume, reject, or assign an . . . unexpired lease, other than as part of a plan, is governed by Rule 9014" ).

11. Rule 9014(c) contemplates the applicability of most of the discovery-related rules that govern adversary proceedings. See Fed. R. Bankr. P. 9014(c).

12. Additionally, pursuant to Rule 9014(e) of the Federal Rules of Bankruptcy Procedure, the Court "shall provide procedures that enable parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses will testify." Fed. R. Bankr. P. 9014(e).

13. Given the short time between the conclusion of the Auction and the Sale Hearing, if the Westfield Landlords do not have "adequate assurance" in every manner contemplated by Bankruptcy Code section 365, the Westfield Landlords may wish to take discovery of the Debtors and the Successful Bidder regarding, *inter alia*, the Successful Bidder's current financial condition and operating performance, the Successful Bidder's intended use of the Premises, and the Debtors' financial condition at the time it entered into the Westfield Leases, before an evidentiary hearing on any proposed assumption and assignment of any of the Westfield Leases.[2]

14. Accordingly, the Westfield Landlords respectfully ask this Court to use the Sale Hearing, as a status conference to establish a discovery schedule and an appropriate date for a final evidentiary hearing on the proposed assumption and assignment of any of the Westfield Leases to the Successful Bidder that are contested by the Westfield Landlords.

---

[2] See, e.g., 11 U.S.C. § 365(b)(3)(A)-(D).

4

B.   **No Order Granting Relief Requested in the Sale Motion Should Eliminate the Westfield Landlords' Ability to Compel the Debtors to Comply With Their Obligations Under Bankruptcy Code Section 365(d)(3)**

15.   Bankruptcy Code section 365(d)(3) requires the Debtors to "timely perform" all of their Lease obligations until the Debtors assume or reject the Westfield Leases. 11 U.S.C. § 365(d)(3).

16.   Accordingly, no order granting the relief requested in the Sale Motion should interfere or otherwise limit the Westfield Landlords right to ask this Court to compel the Debtors to comply with their obligations under 11 U.S.C. § 365(d)(3) pending the assumption or rejection of each of the Westfield Leases whether subject to designation rights or otherwise.

III.   **SUBSTANTIVE OBJECTIONS TO THE SALE MOTION**

A.   **Objection to Assumption and Assignment of the Westfield Leases**

17.   Before assuming a lease of a shopping center that is in default, a debtor must, *inter alia*, provide adequate assurance of future performance to the landlord. 11 U.S.C. § 365(b)(1).[3] Bankruptcy Code section 365(b)(3) states:

> (3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—
>
> > (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

---

[3] Bankruptcy Code section 365(b)(1) provides that "[i]f there has been a default in an . . . unexpired lease of the debtor, the trustee may not assume such . . . lease unless, at the time of assumption of such . . . lease, the trustee" (A) cures, or provides adequate assurance that it will promptly cure such default, (B) compensates, or provides adequate assurance that it will promptly compensate the landlord for actual pecuniary loss resulting from the default, and (C) provide adequate assurance of future performance under such lease. 11 U.S.C. § 365(b)(1).

5

(B) that any percentage rent due under such lease will not decline substantially;

(C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

18. Because the Westfield Landlords have yet to receive any information about the Successful Bidder, aside from the unsupported allegations in the six pages regarding Golden Gate Capital which, upon information and belief, is the controlling shareholder of the Successful Bidder, the Westfield Landlords object to the proposed assumption and assignment of the Westfield Leases to the Successful Bidder for lack of adequate assurance.

### A. The Debtors Have Not Provided Adequate Assurance of the Successful Bidder's Ability to Satisfy the Tenants' Financial Obligations Under Each of the Westfield Leases

19. As stated above, the Westfield Landlords have not been provided with any financial information for the Successful Bidder (such as a basic list of its assets, liabilities and projected available liquid assets and/or free cash flow), and thus, the cannot determine whether the Successful Bidder can provide adequate assurance of future performance within the meaning of 11 U.S.C. § 365(b) and (f).

20. Under 11 U.S.C. § 365(b)(1) and (b)(3) and under 11 U.S.C. § 365(f)(2)(B), the Westfield Landlords are entitled to "adequate assurance" of future performance by the Successful Bidder. In re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2d Cir. 1996) (§ 365(b) is designed to ensure that parties receive the benefit bargained for if a lease or contact is assumed); c.f., In re Embers 86th Street, Inc., 184 B.R. 892, 900-01 (Bankr.S.D.N.Y. 1995) (adequate assurance of

payment of cure did not exist where plan was to "meet projections by reducing staff (and thereby affording customers fewer services) while simultaneously offering smaller food portions at increased prices"); Matter of World Skating Center, Inc., 100 B.R. 147, 148-49 (Bankr. D. Conn. 1989) ("[a]dequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure the landlord that it will receive the amount of the default"); In re Future Growth Enterprises, Inc., 61 B.R. 469 (Bankr. E.D. Pa. 1986) (lease could not be assumed where operating profit was too narrow to provide adequate assurance that arrearages could be cured).

21.  As noted above, the Westfield Landlords have not received any financial information from the Successful Bidder and thus, must object to the proposed assumption and assignment of the Westfield Leases to the Successful Bidder for lack of adequate assurance of future performance under 11 U.S.C. §§ 365(b) and (f)(2)(B).

22.  Additionally, pursuant to Bankruptcy Code section 365(l), the Westfield Landlords request that the Successful Bidder be required to provide the Westfield Landlords with an adequate security deposit under each of the Westfield Leases. See 11 U.S.C. §365(l) ("[i]f an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant"). Because the Westfield Landlords have no financial information regarding the Successful Bidder, the Westfield Landlords request a minimum of two months rent under each Westfield Lease that is to be assumed, as an appropriate security deposit.

23.  Also to the extent that the Successful Bidder is a single purpose entity or not the main operating company with substantial assets, the Westfield Landlords demand that a guaranty by a suitable entity be provided.

## B. The Debtors Have Not Provided Adequate Assurance of Future Performance of Lease Terms

24. The Westfield Landlords object to any attempts by the Debtors and/or the Successful Bidder to modify the Westfield Leases or any of the Westfield Landlords' rights thereunder. The Westfield Leases must be assumed and assigned without modification, with all of their benefits and burdens, as expressly provided in 11 U.S.C. §365(b)(3)(C). See Thompson v. Texas Mexican Railway Co., 328 U.S. 134 (1946); In re Jamesway Corp., 201 B.R. 73, 76 (Bankr. S.D.N.Y. 1996) (same); Rockland Center Assoc. v. TSW Stores of Nanuet, Inc. (In re TSW Stores of Nanuet, Inc.), 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1985) (same).

25. Furthermore, "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases for shopping centers." In re Joshua Slocumb Ltd., 922 F.2d at 1086. "Congress recognized that unlike the usual situation where a lease assignment affects only the lessor, an assignment of a shopping center lease to an outside party can have a significant detrimental impact on others, in particular, the center's other tenants." Id. "Where the leased premises are in a shopping center, the assignee must meet the heightened definition of adequate assurance of future performance in section 365(b)(3) to ensure that [t]he essential terms of a debtor's lease in a shopping center [are] not . . . changed in order to facilitate assignment." In re Rickel Home Centers, Inc., 209 F.3d 291, 299 (3rd Cir. 2000), cert. denied, 121 S.Ct. 175 (2000) (internal quotation marks omitted).

26. Specifically, the Debtors should not be permitted to limit the Westfield Landlords' rights under the Westfield Leases to assert claims against the Successful Bidder for accrued but as yet unbilled adjustments for such items as common area maintenance charges and taxes ("Adjustments"). The Successful Bidder will receive the benefit of any Adjustments in the

8

tenant's favor under the Westfield Leases, so the Successful Bidder should be required to accept the burdens of any Adjustment in the Westfield Landlords' favor.

27. The Westfield Landlords also object to any attempt by the Debtors to assume the Westfield Leases free and clear of the Debtors' indemnity obligations (including, without limitation, accrued obligations for personal injury or negligence against the Debtors that could be asserted against the Westfield Landlords) under the Westfield Leases (collectively, the "Unliquidated Claims"). As far as the Westfield Landlords are aware, the Debtors are not currently in default under the Westfield Leases with respect to any such Unliquidated Claims. Again, Bankruptcy Code section 365(b)(3) requires that the Westfield Leases be assumed "subject to all the provisions thereof." 11 U.S.C. §365(b)(3)(C). The Westfield Landlord's Unliquidated Claims under the Lease should be preserved and survive any order authorizing assumption of any Westfield Leases.

28. Accordingly, any requests by the Debtors to modify clauses in the Westfield Leases to suit the desires of the Successful Bidder are without merit and inconsistent with the protections afforded by Bankruptcy Code section 365(b)(3) to lessors of real property contained within a shopping center. To the extent this Court authorizes assumption and assignment of any of the Westfield Leases, the Successful Bidder must be required to accept all clauses in those Leases. Id.

C. **The Debtors Also Have Not Provided Adequate Assurance of Future Performance of Their Cure Obligations**

29. In the event that the Westfield Leases are assumed and assigned to the Successful Bidder, the Debtors shall be required to, among other things, cure all defaults under the Westfield Leases and compensate the Westfield Landlords for actual pecuniary loss as a result of such defaults. 11 U.S.C. § 365(b).

30. As required by the Bidding Procedures Order, on July 15, 2009, the Westfield Landlords timely filed their Statement of Cure Amounts (Doc. I.D. No. 379). The Westfield Landlords hereby incorporate their Statement of Cure Amounts as if fully set forth herein.

### IV. LIMITED OBJECTION TO PROPOSED REJECTION PROCEDURES

31. The Westfield Landlords do not object to the Debtors' proposed Rejection Procedures, with one exception. Paragraph (v) should be modified to apply only in the instances where the objection to the proposed rejection of a Westfield Lease is filed by the Westfield Landlords. If a non-Westfield Landlord third party files an objection to the proposed rejection of a Westfield Lease, then the rejection of the affected Lease should be deemed effective as of the later of (a) ten (10) days from the date that the applicable Rejection Notice was served on the relevant Westfield Landlord, (b) the date that the Debtor vacated the premises and turns over complete possession of the Premises to the relevant Westfield Landlord, and (c) the date the Bankruptcy Court enters an order overruling the third-party objection and authorizing the rejection of the Westfield Lease. This modification is appropriate because the Westfield Landlords' have no control over third-party objections and cannot retake the Premises until the rejection of the affected Westfield Lease is authorized by Court order.

### V. OBJECTION TO PROPOSED STORE CLOSING GUIDELINES

32. Although the Westfield Leases prohibit the Debtors from conducting Store Closing Sales at the Premises, the Westfield Landlords understand that there is authority holding that lease clauses prohibiting Store Closing Sales are not strictly enforced because such clauses contravene the overall policy of the Bankruptcy Code requiring debtors to maximize the value available for distribution to creditors. *See, e.g., In re Ames Dept. Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992).

33. The same authorities that generally permit Store Closing Sales, however, also provide that, consistent with the Bankruptcy Code, reasonable time, place and manner restrictions may be imposed on Store Closing Sales.

> [Not enforcing an anti-GOB Sale clause in a lease] is not to say the Code abrogates all lease provisions and statutes conditioning GOB Sales. Section 363(e) reserves for bankruptcy courts the discretion to condition the time, place and manner of GOB sales, thereby providing adequate safeguards to protect shopping center landlords and their other tenants, while allowing the Trustee to fulfill its fiduciary obligations.

*Ames*, 136 B.R. at 359. Thus, the Court should balance the Debtors' obligation to maximize value to the estate and the Westfield Landlords' need to preserve the image of quality and prosperity at the Centers.[4]

34. The Debtors have submitted generally acceptable proposed Store Closing Guidelines that are to be binding upon the Westfield Landlords and the Successful Bidder or its liquidation agent (the "Agent"), who will sell certain of the Debtors' inventory assets at the Premises. However, in view of 11 U.S.C. § 363(e), at a minimum, the Store Closing Sales should be subject to slightly more restrictive court-ordered Store Closing Sales guidelines which would (in addition to the restrictions in the Debtors' proposed Store Closing Guidelines) more evenly balance the Debtors' obligation to maximize value to the estates and the Westfield Landlords' need to preserve the image of quality and prosperity at the Centers (the "Modified Sore Closing Guidelines"):

   a. Limit the Agent to a reasonable number and size of signs in the Stores as follows: signs shall be limited to one per window not to exceed 48 inches

---

[4] At times in the Sale Motion, the Debtors request that the Court "invalidate any restrictions" in the Westfield Leases "that may impair the Debtors' ability to conduct the Store Closing Sales." This request is too broad. Any Court order authorizing the Debtors or their agent to conduct a Store Closing Sale should simply authorize the Store Closing Sale notwithstanding such prohibitions in the Westfield Leases, as opposed to "invalidating" those provisions.

by 36 inches and in the case of stores within enclosed malls, shall be at least twelve inches inside the glass storefront windows; in addition to window signs, no more than five hanging signs for each 1,000 square feet of leased space shall be posted in the interior of a store, each sign not to exceed 37 inches by 26 inches; "toppers", if any, shall not exceed 7½ inches by 11 inches, shall be of the same color(s) as the other signs, and shall be limited to one for each rack, counter or shelf. No interior or exterior banners shall be permitted at enclosed mall shopping centers. No "Popsicle Stick" signs, A-frame signs or anything similar shall be used anywhere on the property of any of the Centers.

b.  Require the Agent to abide by the Centers' hours (both opening and closing times).

c.  Prohibit advertising and/or signage from containing the terms "going out of business sale," bankruptcy sale," "Chapter 11 sale," lost lease," "court ordered sale," "liquidation sale" or "total liquidation sale."

d.  Prohibit augmentation of the Debtors' inventory.

e.  To the extent that a Westfield Landlord believes that the Agent is conducting the Store Closing Sales in violation of the Store Closing Guidelines (an "Alleged Violation"), the Westfield landlord should have to provide not more than 24 hours notice to the Debtors and the Agent, subject to the Court's calendar, before an expedited hearing on the Alleged Violation. Furthermore, the Westfield Landlords should be permitted to exercise peaceable self help in advance of a Court order with respect to

obvious violations of the Store Closing Guidelines (such as preventing sign walkers from being utilized on Center property by having local police enforce trespassing and safety laws and removing any signs that may be placed in the parking fields or other common areas of the Centers) pending a ruling by the Court.

f. The Store Closing Guidelines should apply regardless of whether the specific conduct is restricted under a particlular Westfield Lease. Additionally, compliance with the Store Closing Guidelines should not be excused based on alleged "customary practices" at a particular Premises or Center.

g. Condition the Store Closing Sales upon the Debtors' prompt compliance with its ongoing rental and other obligations under the Westfield Leases in accordance with §365(d)(3) of the Bankruptcy Code.

WHEREFORE, the Westfield Landlords respectfully request that this Court enter an order:

a. Sustaining this Objection;

b. Establishing an appropriate discovery schedule and an appropriate date for a final evidentiary hearing on the their objections to cure amounts and adequate assurance issues, in accordance with the Federal Rules of Bankruptcy Procedure and this Objection;

c. Adopting their requested modifications to the Debtors' proposed Assumption and Assignment Procedures, Rejection Procedures and Store Closing Guidelines;

d. Denying the Debtors' request to assume and assign the Westfield Leases to the Successful Bidder unless the Debtors meet all requirements under the Bankruptcy Code; and

e.  Granting the Westfield Landlord such other and further relief as the court deems appropriate.

Dated: July 20, 2009

                               **SEITZ VAN OGTROP & GREEN PA**

                                 /s/ *Patricia P. McGonigle*
                                 _____
                                 Patricia P. McGonigle
                                 (Bar ID No. 3126)
                                 222 Delaware Avenue, Suite 1500
                                 P.O. Box 68
                                 Wilmington, DE 19899
                                 (302) 888-0600
                                 (302) 888-0606 (fax)
                                 pmcgonigle@svglaw.com

                                    and

                                 Niclas A. Ferland (NAF-5367)
                                 Ilan Markus (IM-7174)
                                 **LeClairRyan, A Professional Corporation**
                                 555 Long Wharf Drive, 8th Floor
                                 New Haven, CT  06511
                                 Tel: (203) 773-5026
                                 Fax: (203) 773-5027
                                 niclas.ferland@leclairryan.com
                                 ilan.markus@ leclairryan.com

                                 Counsel to:
                                 Westfield, LLC and its affiliates on <u>Schedule A</u>

# SCHEDULE A

**Westfield, LLC and Affiliates**
**Eddie Bauer, Inc.**

| Westfield Landlord | Tenant Lease Entity | Center | State | SF | RCD | EXP |
|---|---|---|---|---|---|---|
| CAPITAL MALL LAND LLC | Eddie Bauer, Inc | Capital-Promenade | WA | 5,983 | 10/27/06 | 1/31/17 |
| Citrus Park Venture Limited Partnership | " " | Citrus Park | FL | 6,691 | 3/3/99 | 1/31/10 |
| Emporium Mall LLC | " " | Emporium | CA | 5,742 | 9/28/06 | 1/31/17 |
| Fox Valley Mall LLC | " " | Fox Valley | IL | 6,475 | 2/1/09 | 1/31/12 |
| Westfield Franklin Park Mall LLC | " " | Franklin Park | OH | 7,160 | 2/1/00 | 1/31/10 |
| WEA Gateway LLC | " " | Gateway | OH | 6,156 | 2/1/06 | 1/31/16 |
| Hawthorn, L.P., an Illinois limited partnership, as beneficiary under Land Trust No. 41999 dated March 1, 1971, with Chicago Title Land Trust Company as successor trustee to LaSalle Bank National Association | " " | Hawthorn | IL | 8,503 | 2/1/09 | 1/31/14 |
| Mainplace Shoppingtown LLC | " " | Mainplace | CA | 6,000 | 2/1/04 | 1/31/10 |
| Roseville Shoppingtown LLC | " " | Roseville | CA | 8,549 | 9/1/04 | 1/31/11 |
| Westfield Topanga Owner LP | " " | Topanga | CA | 5,460 | 6/15/06 | 6/30/17 |
| UTC Venture LLC | " " | UTC | CA | 5,003 | 5/27/04 | 1/31/10 |
| V F Mall LLC | " " | Valley Fair | CA | 5,365 | 6/1/05 | 1/31/12 |

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 20, 2009, a copy of the foregoing *Objection* was served upon those parties appearing on the CM/ECF Notice and upon the parties below via mail and facsimile in the manner indicated:

Michael R. Nestor, Esquire
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Fax: 302-571-1253

David S. Heller, Esquire
Latham & Watkins, LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Fax: (312) 993-9797

Tony Richmond, Esquire
Latham & Watkiins LLP
140 Scott Drive
Menlo Park, CA 94025
Fax: 650-463-2600

Bradford J. Sandler, Esquire
Benesch Friedlander Coplan & Arnoff LLP
222 Delaware Avenue Suite 801
Wilmington, DE 19801
Fax: 442-7012

Freya Brier
Eddie Bauer, Inc.
10401 N.E. 8th Street, Suite 500
Bellevue, WA 98004
Fax: 425-755-7671

Heather L. Fowler, Esquire
Latham & Watkins, LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 891-8763

Eric Haber, Esquire
Cooley Godward Kronish LLP
1114 Avenue of the Americas
New York, NY 10036
Fax: 212-479-6275

David Buchbinder, Esquire
United States Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19899
302.573.6497

Mario J. Ippolito, Esquire
Paul Hastings Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022
Fax: 212-230-7717

/s/ Patricia P. McGonigle
PATRICIA P. MCGONIGLE (ID #3126)

71910 v1