IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EDDIE BAUER HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-12099 (MFW)<br><br>Jointly Administered<br><br>**Hearing Date: July 22, 2009 at 9:30 a.m.**<br>**Objection Deadline: July 20, 2009 at 12:00 noon** |

**LIMITED OBJECTION OF WILMINGTON TRUST FSB, AS AGENT FOR DEBTORS' SECURED TERM LENDERS, TO PROPOSED ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS TO GOLDEN GATE CAPITAL AS SUCCESSFUL BIDDER AT DEBTORS' 363(b) AUCTION SALE**

Wilmington Trust FSB, successor by assignment to JPMorgan Chase Bank, N.A., as Agent (the "Term Loan Agent") for the pre-petition term loan lenders (collectively, the "Term Lenders"), through its undersigned counsel, respectfully submits this limited objection (the "Limited Objection"), to the proposed Order (A) Approving the Sale of the Debtors' Assets Free and Clear of all Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (C) Establishing Rejection Procedures and Guidelines for Conducting Store Closing Sales; and (D) Extending the Deadline to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to 11 U.S.C.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Eddie Bauer Holdings, Inc., a Delaware corporation (2352); Eddie Bauer, Inc., a Delaware corporation (9737); Eddie Bauer Fulfillment Services, Inc., a Delaware corporation (0882); Eddie Bauer Diversified Sales, LLC a Delaware limited liability company (1567); Eddie Bauer Services, LLC, an Ohio limited liability company (disregarded), Eddie Bauer International Development, LLC, a Delaware limited liability company (1571); Eddie Bauer Information Technology, LLC, a Delaware limited liability company (disregarded); Financial Services Acceptance Corporation, a Delaware Corporation (7532); and Spiegel Acceptance Corporation, a Delaware corporation (7253). The mailing address for Eddie Bauer Holdings, Inc. is 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004. On or about the Petition Date, Eddie Bauer of Canada, Inc. and Eddie Bauer Customer Services, Inc., affiliates of the Debtors, commenced a proceeding before the Superior Court of Justice, Commercial List, for the Judicial District of Ontario, for a plan of Compromise or arrangement under the Companies' Creditors Arrangement Act.

§365(d)(4) (the "Proposed Sale Order"). In support of the Limited Objection, the Term Loan Agent respectfully states as follows:

**PRELIMINARY STATEMENT**

On July 17, 2009, a Section 363(b) auction was held with respect to substantially all of the assets of the Eddie Bauer group of companies. Following several rounds of robust bidding, both on individual categories of assets and on all of the Debtors' assets as a group, the Debtors selected the $286 million going concern bid of Golden Gate Capital as the successful bid and are now seeking approval of a sale based on that offer.

The Term Loan Agent objects to the Proposed Sale Order to the extent it fails to provide for the immediate payment of the Term Loan Agent's and the Term Lenders' secured claims immediately upon closing. As Term Loan Agent's and the Term Lenders' secured claims are oversecured, postpetition interest, fees, expenses and other components of the Debtors' obligations to the Term Lenders under the governing loan documents will continue to accrue until all such obligations are paid in full. If all or any part of the Term Lenders' liens or claims are successfully challenged, any payments made at closing would be subject to disgorgement and therefore such payments would not prejudice the Committee's rights to challenge the Term Loan Agent's and the Term Lenders' liens and claims. In that regard, this is a situation that is no different from the many orders entered by courts in Delaware authorizing the re-financing of pre-petition debt (and the immediate payment of such debt) despite the fact that the creditors' committee's challenge period has not expired. Those financing orders typically provide that the payments made are subject to disgorgement, as would the sale order. Accordingly, the Term Loan Agent requests that the Proposed Sale Order be modified to provide for the payment of the full amount of the Term Lenders' secured claims immediately at closing.

## BACKGROUND

### A. All Assets of Debtors Being Sold Through Section 363(b) Auction

1. Prior to the commencement of these cases, the Debtors, with the assistance of their financial advisors, identified Rainier Holdings LLC as a "stalking horse" bidder (the "Stalking Horse Bidder") for the sale of substantially all of their assets (the "Assets") for an all-cash purchase price of $202,300,000. Thereafter, on June 17, 2009, the Debtors filed a Motion seeking approval of the sale of the Assets to the Stalking Horse Bidder pursuant to that certain Asset Purchase Agreement dated as of June 16, 2009 (the "Stalking Horse Purchase Agreement"), or to such other entity submitting the highest and best offer for their Assets, and seeking certain related relief, including approval of bid and sale procedures related to the auction (the "Sale Motion") [D.I. 24]. On July 2, 2009, the Debtors filed the Proposed Sale Order. [D.I. 251].

2. Following a hearing held on June 29, 2009, the Court entered an Order approving the bid procedures related to the sale and scheduled the auction for July 16, 2009. The auction was conducted as scheduled and, following several rounds of bidding, which included bids on all Assets together as well as on individual asset categories, the Debtors selected Golden Gate Capital, which submitted an all cash bid of $286 million, as the successful bidder. The terms of the proposed sale are substantially the same as those contained in the Stalking Horse Purchase Agreement, modified to reflect the substantially increased purchase price now being paid. Pursuant to the Sale Motion, the Debtors are seeking authority to sell substantially all of their Assets to Golden Gate Capital.

### B. Description of Senior Secured Claims of Term Lenders and Revolving Lenders

3. As of the date of the commencement of the Debtors' Chapter 11 cases (the "Petition Date"), the Debtors were indebted to the Term Lenders in the principal amount of no less then $200,607,949, together will all fees, costs, interest, professional fees and other obligations properly chargeable thereunder. In addition to their secured obligations to the Term Lenders, the Debtors also incurred secured revolving indebtedness to certain prepetition lenders (the "Revolving Lenders"). The total amount of the principal indebtedness owed to the Revolving Lenders as of the Petition Date was approximately $41,551,000, together with issued and outstanding letters of credit totaling $9,689,362, plus all interest, fees, costs, professional fees and other obligations properly chargeable thereunder. The amounts owed to the Revolving Lenders were subsequently rolled up into the DIP financing facility provided to the Debtors and now represent postpetition obligations of the Debtors.

4. The Debtors' obligations to both the Term Lenders and the Revolving Lenders are secured by substantially all of the Debtors' Assets, with the specific rights and priorities between and among the secured creditors governed by that certain Intercreditor Agreement dated June 21, 2005 (the "Intercreditor Agreement"). Under the terms of the Intercreditor Agreement, the Term Lenders have first priority liens on, and security interests in, all of the Debtors' real property, plant and equipment, intellectual property, capital stock and general intangibles (other than certain intangibles pledged to the Revolving Lenders) (collectively, the "Term Priority Collateral") and second priority liens on the Revolver Priority Collateral (as defined below).

5. The Debtors' obligations to the Revolving Lenders are secured by first priority liens on accounts receivable, inventory and specified general intangibles related thereto

4

(the "Revolver Priority Collateral"), together with second priority liens on the Term Priority Collateral.

**LIMITED OBJECTION**

6. The Term Loan Agent objects to the Proposed Order to the extent that it fails to expressly provide that the proceeds from the sale will immediately be paid to the Term Loan Agent and the Term Lenders up to the amount of their claims.

7. Subject to adjustments, the consummation of the transaction with Golden Gate Capital will result in $286 million in proceeds to the estate. Aside from the fully secured claims of the Revolving Lenders arising under the DIP financing facility, which should be no more than $54 million as of August 15, 2009 (the projected closing date), substantially all of the remaining proceeds of sale will be available to pay the allowed claims of the Term Lenders. Accordingly, there is no reason the Term Lenders should not be paid in full upon the closing of the sale transaction.

8. The ovesecured nature of the Term Lenders' claims can easily be demonstrated based on certain individual bids received at the auction solely for assets on which the Term Lenders have a right of distribution. Specifically, during the auction, the Debtors received separate bids on their intellectual property (over which the Term Lenders have a first priority lien) for $150 million and inventory (over which the Term Lenders have a second priority lien only junior to the DIP lien) for approximately between $130 million and $140 million.[2] Though the Debtors have elected to pursue consummation of the going concern transaction proposed by Golden Gate Capital, that decision has no bearing or effect on the actual value of the collateral underlying the Term Lenders' claims, which now has been unequivocally

---

[2] It should be noted that the inventory bid included inventory located in Canada, over which the Term Lenders do not have a direct lien on, however, the value of that inventory is only approximately $10 million.

5

established to be well in excess of those claims as of the petition date.

9. As oversecured creditors, the Term Lenders will be entitled to receive not only the principal amount of their claims, but also all accrued and accruing interest, fees, expenses, and other items in accordance with the underlying loan documents. These charges will continue to accrue until the claims are fully satisfied.

10. The Term Loan Agent acknowledges that the creditors' committee's (the "Committee") investigation period as established under the DIP financing order, has not yet expired and the Term Lenders' liens are still subject to possible challenge. However, to the best of the Term Loan Agent's knowledge, the Committee has not raised any concerns regarding the outstanding principal amount or the validity of the Term Loan Agent and Term Lenders' underlying liens. The Committee has only raised concern over certain fees which were accrued in connection with the first amendment to the Term Loan Agreement, which amounts to only approximately $22 million of the current total approximately $200 million secured claim. The Term Loan Agent respectfully submits that, this is a situation that is no different from the many orders entered by courts in Delaware authorizing the re-financing of pre-petition debt (and the immediate payment of such debt) despite the fact that the creditors' committee's challenge period has not expired. Those financing orders typically provide that the payments made are subject to disgorgement, as would the sale order.

WHEREFORE, the Term Loan Agent respectfully submits that the Court should condition approval of the Motion on appropriate modifications to the Proposed Sale Order as described herein and grant such other and further relief as is just and proper.

Dated: July 20, 2009
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Robert J. Dehney (No. 3578)
Gregory W. Werkheiser (No. 3553)
Erin R. Fay (No. 5268)
Matthew B. Harvey (No. 5186)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

and

Luc A. Despins, Esq.
Leslie A. Plaskon, Esq.
Christopher M. Desiderio, Esq.
PAUL HASTINGS JANOFSKY & WALKER LLP
Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

*Counsel for Wilmington Trust FSB in its capacity as Term Loan Agent*