# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
:
**In re:**                                              :   **Chapter 11**
:
**EDDIE BAUER HOLDINGS, INC., et al.,**                  :   **Case No. 09-12099 (MFW)**
:
**Debtors.**                                  :   **Jointly Administered**
:
------------------------------------------------------------ x   Docket No. 24

### ORDER (A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) ESTABLISHING REJECTION PROCEDURES AND GUIDELINES FOR CONDUCTING STORE CLOSING SALES; AND (D) EXTENDING THE DEADLINE TO ASSUME OR REJECT UNEXPIRED LEASES OF <u>NONRESIDENTIAL REAL PROPERTY PURSUANT TO 11 U.S.C. § 365(D)(4)</u>

Upon the motion, dated June 17, 2009 (the "***Motion***"),[1] of Eddie Bauer Holdings, Inc. and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "***Debtors***"), pursuant to sections 105(a), 363, 365, and 503 of chapter 11 of the United States Code (the "***Bankruptcy Code***") and Rules 2002, 6004, 6006 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), for (I) Entry of an Order (A) Establishing Bidding and Auction Procedures (the "***Bidding Procedures***") Related to the Sale of All of the Debtors' Assets; (B) Approving Bid Protections for Sale of the Debtors' Assets; (C) Scheduling an Auction and Sale Hearing for the Sale of the Debtors' Assets; (D) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Leases to be Assigned; and (E) Granting Certain Related Relief; and (II) Entry of an Order (A) Approving the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (B)

---

[1]   Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the Motion.

Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (C) Establishing Rejection Procedures and Guidelines for Conducting Store Closing Sales; and (D) Extending the Deadline to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to 11 U.S.C. § 365(d)(4); after holding a hearing on June 29, 2009 (the "**Procedures Hearing**") this Court entered an order dated June 30, 2009 (the "**Procedures Order**"), (A) Establishing Bidding and Auction Procedures Related to the Sale of All of the Debtors' Assets; (B) Approving Bid Protections for the Sale of All of the Debtors' Assets; (C) Scheduling an Auction and Sale Hearing for the Sale of All of the Debtors' Assets; (D) Establishing Certain Notice Procedures for Determining Cure Amounts for Executory Contracts and Leases To Be Assigned; and (E) Granting Certain Related Relief; and the Auction having commenced on July 16, 2009 (and concluding on July 17, 2009), for the consideration of Qualified Bids and the selection of a Successful Bidder (each as defined in the Procedures Order) and Everest Holdings LLC (together with its successors, assigns, subsidiaries and affiliates, "**Everest**") having been selected as the Successful Bidder; and upon Everest and the Debtors having entered into that certain Asset Purchase Agreement, dated as of July 17, 2009 (attached hereto as <u>Exhibit A</u>, and as may be amended, supplemented or restated, the "**Purchase Agreement**") and that certain Real Property Leases Transitional Services Agreement, to be dated as of the date of the Closing (the "**TSA**", and, together with all other agreements contemplated by the Purchase Agreement, the "**Ancillary Documents**"); and the Bankruptcy Court having conducted a hearing on the Motion on July 22, 2009 (the "**Sale Approval Hearing**"); and all parties in interest having been heard or having had the opportunity to be heard, regarding the Purchase Agreement; and the Bankruptcy Court having reviewed and considered the Motion and all objections thereto (such filed objections being referred to as the "**Filed Objections**"), and the

2

arguments of counsel made, and the evidence adduced, at the Procedures Hearing and the Sale

Approval Hearing; and upon the record of the Procedures Hearing and the Sale Approval

*and after consideration of the UST's Objection to the Proposed Order,*

Hearing and these chapter 11 cases and proceedings, and after due deliberation thereon, and good

cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:[2]

A.    **Jurisdiction and Venue**.  This Court has jurisdiction over the Motion and the

Transactions under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C.

§ 157(b).  Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408

and 1409.

B.    **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion

are sections 105(a), 363, 365 and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004,

6006 and 9014 and the applicable Local Rules of Bankruptcy Practice and Procedure of the

United States Bankruptcy Court for the District of Delaware (the "*Local Rules*").

C.    **Sale Notice**.  As evidenced by the affidavits of service filed with this Court and

based upon the representations of counsel at the Sale Approval Hearing and as approved under

the Procedures Order:  (i) due, proper, timely, adequate and sufficient notice of the Motion, the

Auction, the Sale Approval Hearing and the Transactions has been provided to all parties in

interest, in light of the circumstances of the Debtors and the depreciating nature of the Debtors'

assets; (ii) such notice was and is good, sufficient and appropriate under the circumstances of the

Debtors' chapter 11 cases and was provided in accordance with sections 102(1) and 363(b) of the

Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006 and 9007 and the Local Rules; and (iii)

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact to the fullest extent of the law.  See Fed. R. Bankr. P. 7052.

DB02:8391433.1
CH\1113144.5

068417.1001

no other or further notice of the Motion, the Auction, the Sale Approval Hearing, the Transactions, or of the entry of this Sale Order is necessary or shall be required.

D. **Cure Notices**. Cure Notices of assignment and Cure Amounts have been provided to all of the counterparties to executory contracts and unexpired leases of personal property (the "***Potentially Assumed Contracts***").[3] Such Cure Notices were adequate and sufficient for the assumption and assignment of the Potentially Assumed Contracts which may be designated by Everest, all in accordance with and as provided by the Procedures Order. Notice of the potential assumption and assignment of unexpired leases of real property (the "***Real Property Leases***") and of the process for determining the Cure Amounts with respect to such leases has been provided to all of the counterparties to Real Property Leases.

E. **Opportunity to Object**. A reasonable opportunity to object and to be heard with respect to the sale of the Assets, the potential assumption and assignment of the Potentially Assumed Contracts that Everest elects to have assumed and assigned to it and the defaults and Cure Amounts related thereto, the process for assuming and assigning Real Property Leases and determining the applicable Cure Amounts, the Transactions, the Motion and the relief requested therein has been given to all interested persons and entities, including, without limitation, the following: (i) all counterparties to the Potentially Assumed Contracts and the Real Property Leases, (ii) all parties listed on the Master Services List, and (iii) all applicable federal, state and local taxing and regulatory authorities.

F. **Auction**. Potential bidders had the full and fair opportunity to submit bids and participate in the Auction on the terms set forth in the Procedures Order. The Auction was

---

[3] As used in this Order, the term Potentially Assumed Contracts does not include unexpired leases of real property.

DB02:8391433.1
CH\1113144.5

068417.1001

conducted fairly and in good faith, without collusion and in accordance with the Procedures Order. At the Auction, Everest was selected as the Successful Bidder. The Purchase Agreement constitutes the highest and best offer for the Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Purchase Agreement constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment.

G.    **Purchased Assets**.  The Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The Debtors have all right, title, and interest in the Assets required to transfer and convey the Assets as contemplated by the Purchase Agreement and the Ancillary Agreements.

H.    **Business Justification**.  The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications for, and (ii) compelling circumstances to consummate the transaction contemplated by the Purchase Agreement (the "***Transactions***") other than in the ordinary course of business under Bankruptcy Code section 363(b) and before, and outside of, a plan of reorganization, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors. Such business reasons include, but are not limited to, the facts that: (i) there is substantial risk of depreciation of the value of the Assets if the sale is not consummated quickly; (ii) the Purchase Agreement constitutes the highest or best offer for the Assets; (iii) the Purchase Agreement and the Closing (as defined in the Purchase Agreement) will present the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' businesses; and (iv) unless the sale is concluded expeditiously as

5

provided for in the Motion and pursuant to the Purchase Agreement, potential creditor recoveries may be substantially diminished.

The Debtors and their professionals widely marketed the Assets to all potential purchasers, both before and during their chapter 11 cases, as set forth in the Motion and in accordance with the Procedures Order. The bidding and auction process set forth in the Procedures Order and the Bidding Procedures afforded a full and fair opportunity for any entity to make a higher or otherwise better offer to purchase the Assets. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Assets.

No other person or entity or group of persons or entities has offered to purchase the Assets for an amount that would give equal or greater economic value to the Debtors than the value being provided by Everest pursuant to the Purchase Agreement. Among other things, the Transactions are the best alternative available to the Debtors to maximize the return to their creditors and limit the losses to counterparties to Potentially Assumed Contracts and Real Property Leases. Approval of the Motion, the Purchase Agreement, the Ancillary Agreements, and the Transactions by this Court on the terms of this Sale Order is in the best interests of the Debtors, their creditors and all other parties in interest. No alternative to the Transactions exists that would provide a greater value to the Debtors, their creditors, or other parties in interest.

I. **Sale Order Required by Everest.** Entry of an order approving the Purchase Agreement, the Ancillary Agreements, and the Transactions, and all the provisions thereof, on the terms requested in the Motion and set forth in the form and substance of this Sale Order, is a necessary and appropriate condition precedent to Everest's consummation of the Transactions.

DB02:8391433.1
CH\1113144.5

068417.1001

J.    **Consideration**.  The total consideration provided by Everest for the Assets is the highest and best offer received by the Debtors, and the purchase price for the Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia.

K.    **Arm's-Length Sale**.  The Purchase Agreement and Ancillary Agreements and other documents and instruments related to and connected with the Transactions and the consummation thereof were negotiated, proposed and entered into by the Debtors and Everest without collusion, in good faith and from arm's-length bargaining positions.  Neither Everest nor any of its affiliates, partners, principals, or shareholders or their respective representatives is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  Neither the Debtors, Everest or its respective affiliates, partners, principals, or shareholders or their representatives has engaged in any conduct that would cause or permit the Purchase Agreement or any Ancillary Agreements or other documents and instruments related to or connected with the Transactions and the consummation thereof to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any person.  The terms and conditions of the Purchase Agreement, Ancillary Agreements, and other documents and instruments related to and connected with the Transactions and the consummation thereof, and the Transactions themselves, including without limitation the consideration provided in respect thereof, are fair and reasonable, and the Transactions are not avoidable and shall not be avoided under section 363(n) of the Bankruptcy Code.

DB02:8391433.1
CH\1113144.5

068417.1001

L. **Good Faith Purchaser**. Everest, its respective affiliates, partners, principals, shareholders and their respective representatives have proceeded in good faith and without collusion in all respects in connection with this proceeding. Such persons are therefore entitled to all of the benefits and protections section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transactions shall not affect the validity of the Transactions (including, without limitation, the Ancillary Agreements and other documents and instruments related to or connected with the Transactions and the consummation thereof, and the assumption and assignment of the Potentially Assumed Contracts that Everest elects to have assumed and assigned to it and Real Property Leases). No stay pending appeal of this Sale Order has been requested, and the stay contained in Fed. R. Bankr. P. 6004(h) has been and hereby is expressly and irrevocably waived as set forth in paragraph 27 below.

M. **Corporate Authority**. Subject to the entry of this Sale Order, the Debtors (i) have full corporate power and authority to perform all of their obligations under the Purchase Agreement, the Ancillary Agreements, and all other documents and instruments related to and connected with the Transactions and the consummation thereof, and the Debtors' prior execution and delivery of, and performance of obligations under, the Purchase Agreement, Ancillary Agreements, and other documents and instruments is hereby ratified, (ii) have all of the corporate power and authority necessary to consummate the Transactions, (iii) have taken all corporate action necessary to authorize, approve, execute and deliver the Purchase Agreement, Ancillary Agreements, and all other documents and instruments related to or connected with the Transactions and the consummation thereof and the Transactions themselves, and (iv) no consents or approvals are required to consummate Transactions or otherwise perform obligations

8

under the Purchase Agreement, Ancillary Agreements, or other documents and instruments, except for the closing conditions expressly agreed to therein.

N. **Cure/Adequate Assurance**. The assumption and assignment or transfer of the Potentially Assumed Contracts that Everest elects to have assumed and assigned to it pursuant to the terms of this Sale Order or such further order of the Court, and the process for assuming and assigning the Real Property Leases, is integral to the Purchase Agreement, does not constitute unfair discrimination, and is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors. The Debtors have or will have as of the assumption and assignment of any contract or lease to Everest: (i) to the extent necessary, cured or provided adequate assurance of cure, of any default existing prior to the Designation Deadline (as defined herein) with respect to the Potentially Assumed Contracts that Everest elects to have assumed and assigned to it and Real Property Leases, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the Designation Deadline with respect to the Potentially Assumed Contracts that Everest elects to have assumed and assigned to it and Real Property Leases. Based on the evidence adduced at the Sale Hearing, Everest has provided sufficient adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code, to the extent that any such assurance is required and not waived by the counterparties, to Real Property Leases (other than those for which Filed Objections specifically contain objections on adequate assurance grounds(the "*Specified Real Property Leases*")) and Potentially Assumed Contracts. As to the Specified Real Property

Leases, in the event Everest designates such Leases for assumption and assignment in accordance with the Purchase Agreement, the Debtors will deliver a notice of such designation to the applicable lessor and its counsel, if any, who has filed a notice of appearance on behalf of such lessor and provide an opportunity within 10 days after notice for such lessor to object to the assignment of the Specified Real Property Lease on adequate assurance, cure and other grounds. If such lessor does not timely object, the applicable Specified Real Property Lease can be assumed and assigned in accordance with the designation notice without further need for adequate assurance by Everest. Other than the Filed Objections relating to the Specified Real Property Leases, to the extent such objections relate to Cure Amounts and adequate assurance, and Potentially Assumed Contracts, to the extent of any unresolved Cure Amounts, any objections to any Cure Amount or defaults under Potentially Assumed Contracts, or the assumption and assignment of any of the Potentially Assumed Contracts to Everest, including without limitation the Filed Objections, are hereby overruled, withdrawn or otherwise treated as set forth in paragraph 2 below.

O. **Contract Assignments in Best Interests**. The Debtors have demonstrated that assuming and assigning the Potentially Assumed Contracts and the Real Property Leases in connection with the Transactions is an exercise of their sound business judgment, and that such assumption and assignment is in the best interests of the Debtors' estates, for the reasons set forth in the Motion and on the record at the Sale Approval Hearing, including, without limitation, because the assumption and assignment of the Potentially Assumed Contracts and the Real Property Leases in connection with the Transactions will maintain the ongoing business of the Debtors, limit the losses of counterparties to Potentially Assumed Contracts and Real Property Leases, and maximize the distribution to creditors of the Debtors.

P. **Free and Clear**. The transfer of the Assets to Everest under the Purchase Agreement will be a legal, valid, and effective transfer, and will vest at the Closing Everest with all right, title, and interest of the Debtors to the Assets free and clear of all of the following (collectively, "*Interests*") liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights of first refusal, rights of setoff or recoupment (to the extent permitted under applicable law), or interests of any kind or nature whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, (i) those Interests that purport to give to any party a right or option to effect a setoff against or any forfeiture, modification or termination of the Debtors' interests in the Assets, or any similar rights if any; (ii) those Interests arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, (iii) those Interests that are Excluded Liabilities set forth in the Purchase Agreement; and (iv) those Interests arising in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, affiliates, or representatives including, but not limited to, Interests arising under any doctrines of successor liability or similar theories under applicable state or federal law or otherwise. For the avoidance of doubt, without limiting the effect of the foregoing, the assumption and assignment of any Potentially Assumed Contract that Everest elects to have assumed and assigned to it or Real Property Lease is free and clear of all Interests, with all such

11

Interests to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as of the Closing.

Q.  **Free and Clear Findings Required by Everest**.  Everest would not have entered into the Purchase Agreement and would not have consummated the Transactions, thus adversely affecting the Debtors, their estates and their creditors, if the sale of the Assets to Everest, and the assumption and assignment or transfer of the Potentially Assumed Contracts that Everest elects to have assumed and assigned to it and the Real Property Leases to Everest, were not free and clear of all Interests of any kind or nature whatsoever, as set forth in this Sale Order, or if Everest would, or in the future could, be liable for any of the Interests.  A sale of the Assets other than one free and clear of all Interests would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the sale contemplated by the Purchase Agreement.  Therefore, the sale contemplated by the Purchase Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

R.  **Satisfaction of Section 363(f) Standards**.  The Debtors may sell the Assets free and clear of any Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests who did not object to or who withdrew their objections to the sale of the Assets, the Transactions or the Cure Notices are deemed to have consented to the Motion and sale and assignment of the Assets to Everest pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests attach to the net proceeds ultimately attributable to the Assets against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in

12

the same order of priority, which such Interests now have against the Assets or their proceeds, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

S.    **No Fraudulent Transfer**.  The Purchase Agreement and Ancillary Agreements were not entered into, and the Transactions are not consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.  Neither the Debtors nor Everest has entered into the Purchase Agreement or the Ancillary Agreements or are consummating the Transactions with any fraudulent or otherwise improper purpose.  The consideration for the purchase of the Assets by Everest and for the other Transactions that are set forth in the Purchase Agreement is at least reasonably equivalent value for the purchase of such assets and for such other Transactions.

T.    **Excluded Liabilities**.  Except for the Assumed Liabilities set forth in the Purchase Agreement, the transfer of the Assets to Everest under the Purchase Agreement shall not result in Everest having any liability or responsibility for, or any Assets being recourse for, (i) any Interest asserted against the Debtors or against an insider of Debtors or against any of the Assets or any other assets of the Debtors, or (ii) the satisfaction in any manner, whether at law or in equity, whether by payment, setoff, recoupment, or otherwise, directly or indirectly, and whether from the Assets or otherwise, of any Interest or Excluded Liability, or (iii) otherwise to third parties or the Debtors, except, with respect to the Debtors, as is expressly set forth in the Purchase Agreement.  The Debtors will release and forever discharge Everest and its successors and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or

13

contingent, relating to the sale and assignment of the Assets, except for the Assumed Liabilities and the other obligations under the Purchase Agreement.

U. **No Successor Liability**. Without limiting the effect or scope of the foregoing, the transfer of the Assets from the Debtors to Everest does not and will not subject Everest or its affiliates, successors or assigns or their respective properties (including the Assets) to any liability for Interests against the Debtors or the Debtors' Interests in such Assets by reason of such transfer or otherwise under the laws of the United States or any state, territory, possession thereof, or the District of Columbia applicable to such Transaction, including, without limitation, any successor liability or similar theories. The Transactions contemplated by the Purchase Agreement do not amount to a consolidation, merger or de facto merger of Everest and the Debtors and/or the Debtors' estates, there is not substantial continuity between Everest and the Debtors, there is no common identity between the Debtors and Everest, Everest is not a mere continuation of the Debtors or their estates, and Everest does not constitute a successor to the Debtors or their estates. For the avoidance of doubt, notwithstanding the consummation of the Transactions and the employment by Everest of certain persons previously employed by the Debtors, Everest shall not have any obligations or liabilities to any employee of the Debtors or in respect of any employee benefits owing to any employee of the Debtors by the Debtors or by any plan or program administered by the Debtors or for the benefit of the Debtors' employees, and any obligations of Everest to any such person shall be limited to (i) those obligations expressly agreed by Everest with such person on and following the later of the Closing and the date, if any, that such person first becomes employed by Everest, and (ii) those obligations explicitly assumed by Everest under the Purchase Agreement.

DB02:8391433.1
CH\1113144.5

068417.1001

V.    **Prompt Consummation**.  The Transactions must be approved by the Court and consummated promptly in order to preserve the viability of the business subject to the sale as a going concern, and to thereby maximize the value of the Debtors' estates, for the reasons set forth in the Motion and on the record at the Sale Approval Hearing.  For those reasons, time is of the essence in consummating the Sale.  Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rule 6004 with regards to the transactions contemplated by this Sale Order.

W.    **Avoidance Action Releases are Required**.  The avoidance action releases described in section 7.18(b) of the Purchase Agreement, including without limitation the releases of any causes of action under sections 544 through 553 of the Bankruptcy Code that each Debtor and each Debtors' bankruptcy estate may have, as set forth therein, are an express condition to Everest's consummation of the Transactions and are required to implement the free and clear nature of the Transactions.  The Transactions viewed as a whole, together with such releases, will provide a greater benefit to the Debtors, their estates, and their creditors than would the prosecution of the released causes of action in the absence of the Transactions.

X.    **Modifications to Purchased Assets, Potentially Assumed Contracts and Real Property Leases**.  Given the unique circumstances of the Debtors' chapter 11 cases, including the need to rapidly stabilize the Debtors' business, the Debtors and Everest have agreed that Everest shall maintain certain rights to modify certain of the Potentially Assumed Contracts that Everest elects to have assumed and assigned to it and Real Property Leases, after the date of this Sale Order and up to the applicable Assignment Deadline as set forth in section 2.5 of the Purchase Agreement, as modified by the Sale Order.  Such modification rights include but are not limited to the right of Everest, prior to the applicable Assignment Deadline, to designate a Potentially Assumed Contract or Real Property Lease for assumption by the Debtors and

15

assignment to Everest and to compel the Debtors to assume and assign such Potentially Assumed Contract or Real Property Lease. Everest would not have agreed to the Transactions without the rights set forth in section 2.5, which rights do not affect the purchase price. The notice and opportunity to object provided to counterparties to Potentially Assumed Contracts and Real Property Leases and to other parties in interest, as set forth in the Procedures Order and this Sale Order (with respect to the Specified Real Property Leases), fairly and reasonably protects any rights that such counterparties and other parties in interest may have with respect to the Potentially Assumed Contracts and Real Property Leases pursuant to an exercise by Everest of such rights.

Y.    **Assignment to Substitute Purchaser**. In order to allow for the assumption and assignment of any Potentially Assumed Contracts or Real Property Leases under the terms of the Purchase Agreement, Everest shall have the right, prior to the applicable Assignment Deadline, to direct the Debtors to assign prior to the applicable Assignment Deadline any Potentially Assumed Contract(s) or Real Property Lease(s) to one or more Buyer Designee (as such term is used in the Purchase Agreement). In the event that Everest designates any Buyer Designee to acquire any Potentially Assumed Contract(s) or Real Property Lease(s), the Debtors will provide notice to the applicable non-debtor counterparty and their counsel of record and an opportunity to object to the proposed assignments on adequate assurance, cure and other grounds and, unless the context requires otherwise, any reference to Everest in this Sale Order or the Purchase Agreement shall be deemed to be a reference to Everest and/or such Buyer Designee, as applicable.

Z.    **Sale in Best Interests**. Good and sufficient reasons for approval of the Purchase Agreement, Ancillary Agreements, and the Transactions have been articulated to the Court in the

DB02:8391433.1
CH\1113144.5

068417.1001

Motion and on the record at the Sale Approval Hearing, and the relief requested in the Motion and set forth in this Sale Order is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

AA. **Canadian Sale Order**. The Debtors' Canadian affiliates will file, in accordance with the Purchase Agreement, a motion with the Canadian Court in the CCAA Case seeking an order approving the transactions contemplated by this Sale Order and the Purchase Agreement, recognizing and implementing this Sale Order in Canada (the "*Canadian Sale Approval and Vesting Order*"), and vesting the Canadian Assets in Everest and/or the Buyer Designees free and clear of all claims, liens and encumbrances whatsoever. The consummation of the transactions contemplated by the Purchase Agreement and the Closing are conditioned on the entry of the Canadian Sale Approval and Vesting Order.

BB. **Buyer's Lenders.** Everest's ability to pay the purchase price under the Agreement is subject to its obtaining financing, which Everest has obtained from Bank of America, N.A. and General Electric Capital Corporation (collectively, "*Buyer's Lenders*"). Everest and Buyer's Lenders would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if the sale of the Assets to Everest and the assumption and assignment of the Potentially Assumed Contracts that Everest elects to have assumed and assigned to it and the Real Property Leases to Everest was not free and clear of all Interests of any kind or nature whatsoever, or if Everest would, or in the future could, be liable for any of the Interests (other than any Assumed Liabilities under the Purchase Agreement). Buyer's Lenders will not consummate the transactions contemplated by the Agreement unless the Agreement specifically provides, and the Bankruptcy Court specifically orders, that none of Everest or its affiliates,

17

members or shareholders or the Assets will have any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Lien or Excluded Liability.

## NOW, THEREFORE, IT IS ORDERED THAT:

1. **Motion is Granted**. The Motion and the relief requested therein is **GRANTED** and **APPROVED** as set forth herein.

2. **Objections Overruled**. Other than the Filed Objections relating to the Specified Real Property Leases, to the extent such objections relate to Cure Amounts and adequate assurance, and Potentially Assumed Contracts, to the extent of any unresolved Cure Amounts, the Filed Objections and any other objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice. No appeal, motion to reconsider, or similar pleading has been filed with respect to the Procedures Order, and the Procedures Order is a final order of the Bankruptcy Court, has not been vacated, withdrawn, rescinded, or amended, and remains in full force and effect. Notwithstanding anything herein to the contrary, a hearing on the objection filed by Otto-Sumisho Inc. shall be conducted before this Court on July 30, 2009 at 9:30 a.m.

3. **Approval**. The Purchase Agreement, the Ancillary Agreements, and, so long as consistent with the Purchase Agreement and this Order, all other documents and all other instruments related to and connected with the Transactions and the consummation thereof, and all of the terms and conditions thereto, are hereby approved. Debtors are hereby authorized to (i) execute the Ancillary Agreements along with any additional instruments or documents that may

18

be reasonably necessary or appropriate to implement the Purchase Agreement and the Transactions, and any prior execution by the Debtors of such agreements, documents, and instruments is hereby ratified; (ii) perform all obligations under the Purchase Agreement, Ancillary Agreements, and other documents and instruments related to or connected with the Transactions and the consummation thereof, including but not limited to deeds, assignments, stock powers, and other instruments of transfer, and consummate the Transactions, and any prior performance of such obligations and any prior consummation of such Transactions is hereby ratified; (iii) upon designation by Everest, assume and assign to Everest the Potentially Assumed Contracts; (iv) undertake the process of assuming and assigning the Real Property Leases to Everest under the Procedures Order and this Sale Order; and (v) take all other and further actions as may be reasonably necessary to consummate and implement the Transactions and perform all obligations under the Purchase Agreement, the Ancillary Agreements, and all other documents and instruments related to and connected with the Transactions and the consummation thereof, without any further corporate action or orders of the Bankruptcy Court. Everest shall have no obligation to proceed with the Closing until all conditions precedent to their obligations to do so have been met, satisfied or waived.

4. **Valid Transfer**. As of the Closing Date, (i) the consummation of the Transactions shall effect a legal, valid, enforceable and effective sale and transfer of the Assets to Everest, and shall vest Everest with title to such Assets and Buyer's Lender's liens on the Assets so transferred shall constitute first priority liens free and clear of all Interests of any kind whatsoever; and (ii) the Purchase Agreement, the Ancillary Agreements, any other documents or instruments related to or connected with the Transactions and the consummation thereof, and the Transactions shall be enforceable against and binding upon, and not subject to rejection or

DB02:8391433.1
CH\1113144.5

068417.1001

avoidance by, the Debtors, any successor trustee appointed with respect thereto, and each other person and entity.

5. **Free and Clear**. Except as expressly provided for in the Purchase Agreement or this Sale Order, pursuant to Bankruptcy Code sections 105(a) and 363(f), the Debtors are authorized and directed to transfer the Assets to Everest and Everest shall take title to and possession of the Assets, upon the Closing, free and clear of all Interests of any kind or nature whatsoever, with all such Interests to attach to the proceeds ultimately attributable to the property against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Assets or their proceeds, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto. The provisions of this Sale Order authorizing the sale and assignment of the Assets and Buyer's Lender's liens on the Assets so transferred shall constitute first priority liens free and clear of Interests and the Excluded Liabilities, shall be self-executing, and neither the Debtors nor Everest shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Sale Order.

6. **Limitation on Actions**. The Sale is free and clear of all Claims and Interests other than Assumed Liabilities, and all such Claims and Interests, if any, shall be, and hereby are transferred and attached to the proceeds from the Transaction in the order of their priority, with the same validity, force and effect which they have against such Assets as of the Closing, subject to any rights, claims and defenses that the Debtors' estates and Debtors, as applicable, may possess with respect thereto. Except as expressly permitted by the Purchase Agreement as to Assumed Liabilities, all persons and entities, including, but not limited to, all debt security

20

holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, contract counterparties, customers, landlords, licensors, employees, litigation claimants and other persons, holding Interests or Claims of any kind or nature whatsoever against or in the Debtors or the Debtors' interests in the Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, the operation of the Debtors' businesses before the Closing or the transfer of the Debtors' interests in the Assets to Everest, shall not assert, prosecute or otherwise pursue Interests or Claims against Everest, its property (including, without limitation, the Assets), its successors and assigns, or any of its affiliates, partners, principals, or shareholders; or interfere with Everest's title to, use or enjoyment of the Assets, in each case, without first obtaining an Order of this Court after notice and a hearing permitting such Interest or Claim to proceed.

7. **General Assignment**. On the date on which Everest elects to have assumed and assigned to it by the Debtors a Potentially Assumed Contract or Real Property Lease (subject to the lessor's limited rights to object to the extent set forth herein), as applicable, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Assets acquired by Everest under the Purchase Agreement and/or a bill of sale or assignment transferring indefeasible title and interest in the Assets, including the Potentially Assumed Contracts that Everest elects to have assumed and assigned to it and Real Property Leases, to Everest. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and

21

instruments necessary and appropriate to consummate the Transactions and to reflect the effectiveness of the Transactions.

8. **No Successor Liability**. Neither Everest nor its affiliates, successors or assigns shall, as a result of the consummation of the Transaction: (i) be a successor to the Debtors or the Debtors' estates; (ii) have, *de facto* or otherwise, merged or consolidated with or into the Debtors or the Debtors' estates; or (iii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors. Except for the Assumed Liabilities, Everest shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law. Except for the Assumed Liabilities, the transfer of the Assets to Everest under the Purchase Agreement shall not result in (i) Everest, its affiliates, partners, principals or shareholders, or the Assets having any liability or responsibility for any Interest against the Debtors or against an insider of the Debtors, (ii) Everest, its affiliates, partners, principals or shareholders, or the Assets having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability, or (iii) Everest, its affiliates, partners, principals or shareholders, or the Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the Purchase Agreement.

9. **Examples of No Successor Liability**. Without limiting the generality, effect, or scope of the foregoing, as a result of and following the Closing of the Transactions, Everest, except as expressly assumed under the Purchase Agreement, shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, federal, state or other tax liabilities, U.S. or foreign pension liabilities, or liabilities based on any theory of antitrust,

DB02:8391433.1
CH\1113144.5

068417.1001

environmental, labor or employment or benefits law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, *de facto* merger or substantial continuity, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities arising, accruing or payable under, out of, in connection with, or in any way relating to or calculated or determined with respect to or based in whole or in any part upon the operation of the Assets prior to the Closing Date, or any taxes in connection with, or in any way relating to the cancellation of debt of the Debtors or their affiliates. For the avoidance of doubt, notwithstanding the consummation of the Transactions and the employment by Everest of certain persons previously employed by the Debtors, Everest shall not have any obligations or liabilities to any employee of the Debtors or in respect of any employee benefits owing to or on behalf of any employee of the Debtors (except to the extent Everest has expressly agreed to pay certain employee benefits to designated employees in the Purchase Agreement or Ancillary Agreements), or with respect to any plan or program administered by the Debtors or any other person or entity or administered for the benefit of the Debtors' employees, and any obligations of Everest to any such person shall be limited to those obligations agreed to by Everest with such person, if any, on and following the later of the Closing and the date, if any, that such person first becomes employed by Everest. In the event that Everest elects to assume any liability related to the Debtors' employees, Everest shall not by reason of any such election be deemed to have assumed any other liabilities or to be a successor for any other purpose.

DB02:8391433.1
CH\1113144.5

068417.1001

10. **Assumption and Assignment**. Pursuant to Bankruptcy Code sections 105(a), 363 and 365, and subject to and conditioned upon the Closing Date, the Debtors' assumption and assignment to Everest of the Potentially Assumed Contracts that Everest elects to have assumed and assigned to it, and Everest's acceptance of such assignment on the terms set forth in the Purchase Agreement, the Motion, and the Procedures Order, are hereby approved subject to the terms set forth below. On or before the applicable Assignment Deadline, Everest retains the right to designate which Potentially Assumed Contract are to be assumed and assigned in accordance with the Purchase Agreement and the Cure Notices. From time to time prior to the applicable Assignment Deadline, the Potentially Assumed Contracts that Everest elects to have assumed and assigned to it shall be transferred to Everest free and clear of all Interests of any kind or nature whatsoever, other than the Assumed Liabilities. The Potentially Assumed Contracts that Everest elects to have assumed and assigned to it shall remain in full force and effect for the benefit of Everest in accordance with their respective terms, notwithstanding any provision in any such Potentially Assumed Contracts of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code that prohibits, restricts, or conditions such assignment, transfer or sublease. Pursuant to Bankruptcy Code section 365(k), the Debtors shall be relieved from any further liability with respect to the Potentially Assumed Contracts that Everest elects to have assumed and assigned to it arising after assignment to Everest, except liability for Cure Amounts as set forth in the Purchase Agreement and herein. Debtors are hereby authorized to execute and deliver to Everest such documents or other instruments as may be necessary to assign or transfer the Potentially Assumed Contracts that Everest elects to have assumed and assigned to it to Everest at prior to the applicable Assignment Deadline. Each counterparty to a Potentially Assumed Contract that Everest elects to have assumed and assigned to it hereby is forever

DB02:8391433.1
CH\1113144.5

068417.1001

barred, estopped, and permanently enjoined from raising or asserting against the Debtors, Everest or Buyer's Lenders, or the property of any of them, any assignment fee, default, breach, claim, pecuniary loss, liability or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinate) arising under or related to the Potentially Assumed Contracts that Everest elects to have assumed and assigned to it existing as of the Closing Date or arising by reason of the Closing.

11. **Assignment and Designation Deadline**.  The assignment deadline shall be (i) the Closing, with respect to the Domestic Non-Real Property Contracts (as defined in the Purchase Agreement) other than the Specified Contracts (as defined in the Purchase Agreement), or (ii) the later of 5:00 p.m. (New York time) on the date that is two hundred ten (210) days from the Petition Date (January 13, 2010) with respect to the Domestic Real Property Leases (as defined in the Purchase Agreement) and if there is an objection to the Debtors' assumption or assignment of such a Domestic Real Property Lease, two business days after such objection is resolved, overruled or sustained, or (iii) the later of 5:00 p.m. (New York time) on the date that is one hundred twenty (120) days from the Petition Date (October 15, 2009) with respect to the Specified Contracts and, if there is an objection to the Debtor's assumption or assignment of such a Specified Contract, two business days after such objection is resolved, overruled or sustained (each instance, the "*Assignment Deadline*").

12. **Extension of Time to Assume Domestic Real Property Leases**.  The time within which the Debtors may assume or reject the Domestic Real Property Leases pursuant to section 365(d)(4) of the Bankruptcy Code is hereby extended to and including January 13, 2010, without prejudice to the right of any of the Debtors' lessors to file an appropriate application with the Court for a hearing to consider on the basis of cause a reduction of such time upon prior notice to

DB02:8391433.1
CH\1113144.5

the Debtors, the official committee of unsecured creditors appointed in the Debtors' cases, Everest, and the United States Trustee, all in accordance with the Federal Rules of Bankruptcy Procedure and the local bankruptcy rules and orders of the Court.

13. **Store Operations**. Everest shall be entitled to avail itself of any and all services related to the Stores (as such term is defined in the TSA), at Everest's full expense, including, but not limited to, all utilities, water, cleaning services, garbage removal, free of any interference from any entity or person, subject to compliance with this Sale Order and the TSA. All Inventory (as such term is defined in the TSA) sold from the Stores and all Proceeds (as such term is defined in the TSA) shall be the sole property of Everest and constitute part of the Assets for all purposes, including under the Purchase Agreement, and shall be sold free and clear of any Interest which any person may assert against such Inventory or Proceeds. Debtor and Everest shall be authorized to continue to take any and all actions as may be necessary or desirable to operate the Stores and to otherwise implement the TSA and each of the transactions contemplated thereby subject to the limitations on actions by the Debtor set forth in the Purchase Agreement. Other than actions permitted by an Order of this Court, all utility providers, landlords, creditors and all persons acting for or on their behalf shall not interfere with or otherwise impede the Store operations, institute any action in any court (other than in this Court) or before any administrative body which in any way directly or indirectly interferes with or obstructs or otherwise impedes the Store Operations. The landlords under the Real Property Leases shall be third party beneficiaries and, accordingly, shall have a direct and independent right to collect upon, enforce, or otherwise seek and obtain relief as against Everest with respect to, Everest's undertaking in Section 4 of the TSA to pay for Expenses (as defined in the TSA) and Everest's covenant in Section 6(d) of the TSA to comply with the terms of the applicable

DB02:8391433.1
CH\1113144.5

068417.1001

Domestic Real Property Leases (as defined in the TSA) other than terms and conditions with which Everest is not required to comply pursuant to the terms of this Order.

Also, Everest shall maintain through the applicable Store Termination Date (as defined in the TSA) public liability insurance and insurance policies covering injuries to persons and property in or in connection with Everest's operation at each Store (as defined in the TSA) as is required by the terms of the applicable Domestic Real Property Lease, including or naming the landlord as an additional insured or loss payee, as appropriate and if required. Further, Everest shall indemnify and hold harmless each landlord from and against any and all losses, claims, damages, liabilities and expenses (including reasonable expenses of investigation and reasonable attorneys' fees and expenses) caused by failure of Everest to conduct the Store Operations during the applicable Store Terms (as defined in the TSA) in compliance with all applicable laws or the terms of any applicable Store Lease (as defined in the TSA) other than terms and conditions with which Everest is not required to comply pursuant to the terms of this Order.

14. **Store Closing Guidelines**. The Store Closing Guidelines, substantially in the form attached hereto as <u>Exhibit B</u>, are hereby approved and the Debtors and Everest (or any applicable designated agents) shall abide by guidelines substantially similar to such guidelines (including any separate agreements reached between the Debtors and Everest (or any applicable designated agents), on the one hand, and any landlord, on the other hand). The Debtors and Everest (or their selected agents), as applicable, shall have the right to conduct the Store Closing Sales pursuant to the Store Closing Guidelines. Notwithstanding the foregoing, the Debtors and Everest will file with the Court a notice of the times and places of the Store Closing Sales or inventory reduction sales to be conducted pursuant to the Store Closing Guidelines. The Debtors and Everest will serve such notice on the affected landlords and their counsel of record and such landlords shall

DB02:8391433.1
CH\1113144.5

068417.1001

have the right to object to the Store Closing Guidelines by setting forth in reasonable detail why the Store Closing Guidelines and/or any other agreement regarding the conduct of the Sale should be altered, but such landlords shall not be permitted to object to Everest or its selected agent conducting Store Closing Sales or inventory reduction sales generally. The Real Property Leases at which the Store Closing Sales or inventory reduction sales are conducted shall not be assumed and assigned by the Debtors to Everest, absent consent of the Debtors and the applicable landlord. The foregoing is only approved in light of the consent of the landlords and the unusual and unique circumstances specific to these Chapter 11 Cases and this Sale. It should not be construed as precedent for other cases with different circumstances. In addition to Everest's obligations under the Purchase Agreement, at the conclusion of the Store Closing Sales, Everest shall pay to the Debtors the lesser of 1% of the net proceeds of such Store Closing Sales or $25,000.

15. **Cure Notices**. The Debtors have served by first-class mail on all of the non-debtor counterparties to the Potentially Assumed Contracts, a Contract Notice that included, to the extent applicable (i) the Contract, (ii) the name of the counterparty to the Contract, (iii) the Cure Amounts, and (iv) the deadline by which any such Contract counterparty must file an objection (the "*Objection*") to the proposed assumption and assignment and no other or further notice is required, except as otherwise provided herein.

16. **Objections to Cure Notices**. If a timely Objection is received and such Objection cannot otherwise be resolved by the parties, the Bankruptcy Court may hear such Objection at a later date set by the Bankruptcy Court. The pendency of a dispute relating to a particular Contract shall not, in the discretion of Everest, delay the assumption and assignment of any other

DB02:8391433.1
CH\1113144.5

068417.1001