# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| EDDIE BAUER HOLDINGS, INC., *et al.*,[1] | : | |
| | : | Case No. 09-12099 (MFW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## FIRST AND FINAL APPLICATION OF PETER J. SOLOMON COMPANY AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE DEBTORS FOR INTERIM AND FINAL ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM JUNE 17, 2009 THROUGH JULY 31, 2009

| | |
|---|---|
| Name of Applicant: | Peter J. Solomon Company |
| Authorized to Provide Professional Services to: | Eddie Bauer Holdings, Inc., *et al.* |
| Date of Retention: | July 7, 2009, *nunc pro tunc* to June 17, 2009 |
| Final period for which compensation and reimbursement is sought: | June 17, 2009 through July 31, 2009, inclusive |
| Amount of compensation sought as actual, reasonable and necessary: | $2,950,000.00 |

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Eddie Bauer Holdings, Inc., a Delaware corporation (2352); Eddie Bauer, Inc., a Delaware corporation (9737); Eddie Bauer Fulfillment Services, Inc., a Delaware corporation (0882); Eddie Bauer Diversified Sales, LLC, a Delaware limited liability company (1567); Eddie Bauer Services, LLC, an Ohio limited liability company (disregarded); Eddie Bauer International Development, LLC, a Delaware limited liability company (1571); Eddie Bauer Information Technology, LLC, a Delaware limited liability company (disregarded); Financial Services Acceptance Corporation, a Delaware corporation (7532); and Spiegel Acceptance Corporation, a Delaware corporation (7253). The mailing address for Eddie Bauer Holdings, Inc. is 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004. On or about the Petition Date, Eddie Bauer of Canada, Inc. and Eddie Bauer Customer Services, Inc., Canadian affiliates of the Debtors, commenced a proceeding before the Ontario Superior Court of Justice (Commercial List), for a plan of compromise or arrangement under the Companies' Creditors Arrangement Act.

Amount of reimbursement
sought as actual, reasonable and necessary:        $66,133.13[2]


This is a ___ monthly __X__ interim __X__ final application


This is the first interim and final fee application filed by Peter J. Solomon Company in these cases. No prior fee application has been filed.

---

[2]    This amount also includes expenses incurred by Peter J. Solomon Company ("PJSC") (primarily expenses
of PJSC's counsel) after July 31, 2009 in connection with the preparation and filing of this final application
(the "Application") in the amount of $8,663.49. In accordance with the order approving PJSC's retention,
PJSC is entitled to reimbursement of the reasonable fees and expenses of its counsel. Accordingly, by this
Application, PJSC also seeks authority from the Court for reimbursement of fees and costs of its legal
counsel of up to $25,000.00 in connection with the processing of the Application, addressing any questions
regarding or objections to the Application and attending the hearing on the Application. While PJSC has
included the maximum amount of $25,000.00 in its request for reimbursement of expenses, it will charge
the Debtors only for actual amounts incurred by counsel.

## Summary of Time Expended by Professional

| Professional | Hours (6/17/09 – 6/30/09) | Hours (7/1/09 – 7/31/09) |
|---|---|---|
| Ken T. Berliner | 8.50 | 46.50 |
| Ken D. Baronoff | 43.50 | 113.00 |
| Brad Dietz | 43.25 | 51.25 |
| David Zolot | 66.75 | 104.25 |
| Neil Mahajan | 68.25 | 123.25 |
| Andrew Colvin | 1.00 | 24.50 |
| **TOTAL:** | **231.25** | **462.75** |

## Summary of Time Expended by Project Category

| Project Category/Code | Hours (6/17/09 – 6/30/09) | Hours (7/1/09 – 7/31/09) |
|---|---|---|
| 1. Preparation and Review of Court Filings/Court Hearings | 41.75 | 154.75 |
| 2. Travel | 13.50 | 41.50 |
| 3. PJSC Retention | 0.00 | 72.25 |
| 4. Financing | 0.75 | 0.00 |
| 5. M&A Process | 140.50 | 179.75 |
| 6. Creditor Due Diligence (Non-M&A) | 34.75 | 1.50 |
| 7. Board of Directors Communications | 0.00 | 13.00 |
| **TOTAL:** | **231.25** | **462.75** |

### Expense Summary

| Category | Expenses |
|---|---:|
| Travel | $12,256.83 |
| Taxis | $497.48 |
| Lodging | $1,792.42 |
| Miscellaneous | $1.98 |
| Meals | $1,556.25 |
| Word Processing | $0.00 |
| Duplicating | $2,375.00 |
| Faxing | $0.00 |
| Research/Database | $1,053.50 |
| Legal Fees | $46,348.67 |
| Telephone/Communications | $251.00 |
| Courier Services | $0.00 |
| Shipping | $0.00 |
| **TOTAL:** | **$66,133.13**[1] |

---

[1] This amount also includes expenses incurred by Peter J. Solomon Company ("PJSC") (primarily expenses of PJSC's counsel) after July 31, 2009 in connection with the preparation and filing of this final application (the "Application") in the amount of $8,663.49. In accordance with the order approving PJSC's retention, PJSC is entitled to reimbursement of the reasonable fees and expenses of its counsel. Accordingly, by this Application, PJSC also seeks authority from the Court for reimbursement of fees and costs of its legal counsel of up to $25,000 in connection with the processing of the Application, addressing any questions regarding or objections to the Application and attending the hearing on the Application. While PJSC has included the maximum amount of $25,000 in its request for reimbursement of expenses, it will charge the Debtors only for actual amounts incurred by counsel.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| EDDIE BAUER HOLDINGS, INC., | : | |
| *et al.*,[1] | : | Case No. 09-12099 (MFW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### FIRST AND FINAL APPLICATION OF PETER J. SOLOMON COMPANY AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE DEBTORS FOR INTERIM AND FINAL ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM JUNE 17, 2009 THROUGH JULY 31, 2009

Pursuant to sections 328(a), 330 and 331 of Title 11 of the United States Code

(the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), Rule 2016-2 of the Local Rules for the United States Bankruptcy Court for

the District of Delaware (the "Local Rules"), and the Order Establishing Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals, entered on July 6, 2009

[Docket No. 290] (the "Administrative Order"), Peter J. Solomon Company ("PJSC"), financial

advisor and investment banker to the debtors and debtors-in-possession in the above-captioned

cases (collectively, the "Debtors"), hereby submits its first and final application (the

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Eddie Bauer Holdings, Inc., a Delaware corporation (2352); Eddie Bauer, Inc., a Delaware corporation (9737); Eddie Bauer Fulfillment Services, Inc., a Delaware corporation (0882); Eddie Bauer Diversified Sales, LLC, a Delaware limited liability company (1567); Eddie Bauer Services, LLC, an Ohio limited liability company (disregarded); Eddie Bauer International Development, LLC, a Delaware limited liability company (1571); Eddie Bauer Information Technology, LLC, a Delaware limited liability company (disregarded); Financial Services Acceptance Corporation, a Delaware corporation (7532); and Spiegel Acceptance Corporation, a Delaware corporation (7253). The mailing address for Eddie Bauer Holdings, Inc. is 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004. On or about the Petition Date, Eddie Bauer of Canada, Inc. and Eddie Bauer Customer Services, Inc., Canadian affiliates of the Debtors, commenced a proceeding before the Ontario Superior Court of Justice (Commercial List), for a plan of compromise or arrangement under the Companies' Creditors Arrangement Act.

"Application") for interim and final allowance of compensation for services rendered and reimbursement of actual, reasonable and necessary out-of-pocket expenses incurred. This Application requests interim and final approval and allowance of compensation in the amount of $2,950,000.00 and reimbursement of expenses in the amount of $66,133.13[2] for the period June 17, 2009 through July 31, 2009 (the "Application Period"). In support of this Application, PJSC respectfully represents as follows:

**JURISDICTION**

1.       This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and this Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 328(a), 330, and 331 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 2016 and Local Rule 2016-2.

**BACKGROUND**

2.       On June 17, 2009 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2]       This amount also includes expenses incurred by Peter J. Solomon Company ("PJSC") (primarily expenses of PJSC's counsel) after July 31, 2009 in connection with the preparation and filing of this final application (the "Application") in the amount of $8,663.49. In accordance with the order approving PJSC's retention, PJSC is entitled to reimbursement of the reasonable fees and expenses of its counsel. Accordingly, by this Application, PJSC also seeks authority from the Court for reimbursement of fees and costs of its legal counsel of up to $25,000 in connection with the processing of the Application, addressing any questions regarding or objections to the Application and attending the hearing on the Application. While PJSC has included the maximum amount of $25,000 in its request for reimbursement of expenses, it will charge the Debtors only for actual amounts incurred by counsel.

3.     On June 25, 2009, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors in these cases (the "Committee") [Docket No. 143]. On July 10, 2009, the U.S. Trustee amended its appointment of the Committee [Docket No. 324].

4.     On July 6, 2009, the Court entered the Administrative Order, which authorizes professionals to submit applications for interim compensation and reimbursement of expenses pursuant to the procedures specified therein.

5.     On July 7, 2009, the Court entered the Order Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code Authorizing the Debtors to Retain and Employ Peter J. Solomon Company as Investment Banker and Financial Advisor to the Debtors *Nunc Pro Tunc* to the Petition Date [Docket No. 310] (the "Retention Order"). A copy of the Retention Order is annexed hereto as Exhibit A.

## REQUEST FOR INTERIM AND FINAL APPROVAL AND PAYMENT OF ALL FEES AND EXPENSES FOR THE APPLICATION PERIOD

6.     By this Application, PJSC seeks interim and final approval and allowance of (i) compensation, including applicable Transaction Fees,[3] in the aggregate amount of $2,950,000.00, and (ii) reimbursement of expenses incurred during the Application Period, in the aggregate amount of $66,133.13. A summary schedule, with descriptions of the expenses for which PJSC is seeking reimbursement and the total amount for each such expense category, is annexed hereto as Exhibit B.

7.     PJSC respectfully submits that: (i) the services provided by PJSC have been necessary and in the best interests of the Debtors and have furthered the goals of all parties in

---

[3]   Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Engagement Letter (as defined below).

interest, (ii) PJSC has satisfied the requirements of Sections 328(a) of the Bankruptcy Code, as set forth in the Retention Order, and (iii) the requested compensation is appropriate based on the complexity, importance and nature of the services performed.

8.      PJSC does not maintain, in the normal course of providing financial advisory and investment banking services to its clients, detailed written time records, and does not bill its clients based on the number of hours expended by its professionals. However, as required by the Retention Order, PJSC has maintained written time records in one-half (.5) hour increments of the time expended by its professionals in the rendition of professional services to the Debtors for the duration of these chapter 11 cases. A schedule setting forth the number of hours expended by each of the professionals who rendered services to the Debtors during the Application Period is annexed hereto as <u>Exhibit C</u>.

**SUMMARY OF TERMS OF**
**<u>RETENTION AND COMPENSATION OF PJSC</u>**

9.      Pursuant to the engagement letter between Eddie Bauer Holdings, Inc. and PJSC, dated June 9, 2009, and annexed hereto as <u>Exhibit D</u> (the "<u>Engagement Letter</u>"), as approved and modified by the Retention Order, PJSC was retained as financial advisor and investment banker to the Debtors to provide the following professional services, among others:

    a.      familiarizing itself, to the extent reasonably necessary to perform the services to be provided pursuant to the Engagement Letter, with the business, operations, properties, financial condition and prospects of the Debtors and, to the extent relevant, any prospective Buyer;

    b.      advising and assisting the Debtors in evaluating their liquidity and financing needs;

    c.      advising and assisting the Debtors in evaluating their recapitalization alternatives, including pursuing a Restructuring/Amendment Transaction, pursuing a Financing Transaction, and pursuing a possible Sale Transaction;

- 8 -

d.     advising and assisting the Debtors in considering the desirability of effecting a Transaction, and, in the event the Debtors believed any such Transaction to be desirable, in developing a general strategy for accomplishing such Transaction, including its form and structure;

e.     advising and assisting the Debtors in identifying potential financing sources or Buyers, and contacting, on behalf of the Debtors, such potential financing sources or Buyers, as designated by the Debtors in advance;

f.     advising and assisting the Debtors in the course of their negotiations of any Transaction with any potential financing source or Buyer, including, without limitation, in connection with any amendment to, or restructuring of, the Debtors' Existing Debt;

g.     advising and assisting management of the Debtors in making presentations to the Debtors' Board of Directors concerning any proposed Transaction;

h.     advising and assisting the Debtors in: (i) evaluating and obtaining debtor-in-possession financing ("DIP Financing") and exit financing; (ii) assessing the valuation of the Debtors and their assets, including valuations proposed by any interested party; (iii) providing expert testimony relating to valuation, efforts undertaken to identify potential purchasers of assets or securities or consider other financial alternatives and as to the other services contemplated by the Engagement Letter, if required; and (iv) developing, analyzing, structuring and negotiating the terms and conditions of any potential plans of reorganization;

i.     advising and assisting the Debtors in the execution of and closing under definitive agreements relating to a Transaction;

j.     in connection with a Sale Transaction (other than as part of a Chapter 11 Proceeding) and if requested by the Debtors' Board of Directors, rendering, in accordance with customary practices, an opinion ("Opinion") as to the fairness to the Debtors, from a financial point of view, of the consideration to be paid in such Sale Transaction, in such form reasonably determined by PJSC to be in accordance with customary practices and qualified in such manner as deemed appropriate by PJSC; and

k.     rendering such other financial advisory and investment banking services as may have from time to time been agreed upon by PJSC and the Debtors, in writing.

10.     Pursuant to the Engagement Letter, as approved and modified by the Retention Order, PJSC was authorized to receive a financial advisory fee of $200,000 per month for the term of the engagement, plus the following Transaction Fees:

a.      a Restructuring/Amendment Transaction Fee of $2,250,000 <u>less</u> 50% of any Financing Transaction Fee paid by the Debtors and not previously credited;

b.      a Financing Transaction Fee equal to: (i) 1% of the gross proceeds for senior debt, <u>plus</u> (ii) 3% of the gross proceeds for subordinated debt;

c.      a Sale Transaction Fee of $2,250,000, <u>less</u> 50% of any Financing Transaction Fee paid by the Debtors and not previously credited, and <u>less</u> any amount paid in connection with the rendering of an Opinion by PJSC in connection with the Sale Transaction (an "<u>Opinion Fee</u>"); and/or

d.      a Opinion Fee of $500,000, payable on the date on which PJSC renders an Opinion.

11.     Additionally, the Debtors agreed to reimburse PJSC for its reasonable expenses incurred in connection with the provision of services, such as travel and other reasonable out-of-pocket expenses.

## SUMMARY OF SERVICES RENDERED

12.     The following summary of services rendered by PJSC during the Application Period is not intended to be a detailed or exhaustive description of the work performed. A summary description of the work performed, categorized by project code, and those day-to-day services and the time expended in performing such services, are fully set forth in <u>Exhibit E</u>. The following summary is intended to highlight certain key areas where PJSC provided services to the Debtors during the Application Period.

### A.  *Debtor-in-Possession Financing*

13.     Prior to and during the Application Period, PJSC assisted the Debtors in obtaining DIP Financing to ensure that the Debtors had adequate liquidity during the chapter 11 cases.  In connection with the Debtors' efforts to procure DIP Financing, PJSC contacted (or was contacted by) thirteen (13) potential providers of DIP Financing ("DIP Lenders"), including the lenders under the Debtors' prepetition revolving credit facility, the lenders under the Debtors' prepetition term loan facility, and third-party lenders, in order to gauge such lenders' interest in providing DIP Financing to the Debtors and to solicit indications of interest from such potential DIP Lenders.  The Debtors, with the assistance of PJSC and Latham & Watkins, LLP ("Latham"), counsel to the Debtors, negotiated non-disclosure agreements ("NDAs") with six (6) potential DIP Lenders, and eight (8) potential lenders received access to the online data room maintained by PJSC.

14.     PJSC assisted the potential DIP Lenders with due diligence, including arranging and attending meetings between the potential DIP Lenders, their counsel and financial advisors, and the Debtors' management.   Additionally, PJSC assisted the potential DIP Lenders in conducting their review and analysis of the Debtors' business, the DIP budget (the "DIP Budget"), 13-week cash flow forecast, liquidity needs, and collateral. After concluding the diligence process, four (4) potential DIP Lenders submitted preliminary DIP Financing proposals.  PJSC assisted the Debtors in negotiating the structure and terms of the various DIP Financing proposals with the potential DIP Lenders, including financial covenants, reporting requirements, and cash collateral account mechanics.   Following the submission of final proposals from the potential DIP Lenders, PJSC analyzed the terms of the various proposals and advised the Debtors' board of directors in their decision to select the DIP Financing proposal submitted by the group of lenders for which Bank of America, N.A. served as agent.

15.    In addition, PJSC's provided the following services in connection with the DIP Financing:

      a.    assisting the Debtors' management in evaluating the liquidity needs of the business and determining the required size of the DIP Financing;

      b.    working with the Debtors and their advisors to develop the DIP Budget;

      c.    assisting in preparations for the hearings at which the Debtors sought and obtained interim and final approval of the DIP Financing; and

      d.    contacting potential providers of supplemental, second-tranche financing ("Supplemental Lenders"), in order to ensure that the Debtors would continue to have adequate liquidity in the event that the liquidity provided by the DIP Financing proved insufficient, and evaluating financing proposals submitted by potential Supplemental Lenders.

**B.    *Sale Process***

16.    Prior to and during the Application Period, PJSC and the Debtors' other professionals assisted and advised the Debtors in connection with the Debtors' efforts to sell substantially all of their assets pursuant to section 363 of the Bankruptcy Code. Prior to the Petition Date, PJSC initiated a competitive sale process that extended through the Application Period. Throughout that process, PJSC worked diligently to identify potential strategic and financial buyers of the Debtors' assets. To gauge and generate interest among potential purchasers, PJSC prepared and circulated a "teaser" setting forth certain public information regarding the assets being sold by the Debtors. PJSC also assisted the Debtors management in preparing forecasts to be presented to prospective buyers. In the course of its search for a "stalking horse" bidder for the Debtors' assets (the "Stalking Horse"), PJSC contacted (or was contacted by) fifty-seven (57) potential purchasers. The Debtors, with the assistance of PJSC, negotiated NDAs with twenty-one (21) such purchasers. PJSC assisted such potential purchasers

with diligence by, among other things: (a) maintaining a data room (the "Data Room") to which such purchasers were provided access upon signing an NDA; (b) facilitating and participating in meetings and conference calls among the prospective purchasers and the Debtors' management; and (c) maintaining ongoing discussions with the potential purchasers in order to ensure that such purchasers' data and information requests were promptly addressed. After concluding the diligence process, six (6) potential purchasers submitted indications of interest, and three such purchasers returned markups of the Debtors' proposed form of asset purchase agreement ("APA"). PJSC, with the assistance of the Debtors' other advisors, negotiated the terms of the various APAs. Additionally, PJSC and the Debtors' other advisors analyzed the terms of the indications of interest received by the Debtors and assisted and advised the Debtors' board of directors in their decision to select CCMP Capital Advisors ("CCMP") as the Stalking Horse.

17.     Following the Petition Date and the Court's entry of an order approving of the APA between the Debtors and CCMP and the Debtors' proposed bidding procedures [Docket No. 222] (the "Bidding Procedures Order"), PJSC and the Debtors continued their efforts to solicit higher and better offers for the Debtors' assets. In addition to those of the fifty-seven (57) potential purchasers contacted prior to the Petition Date that expressed continuing interest in the Debtors' assets after the selection of CCMP as the Stalking Horse, PJSC contacted, or responded to communications from, approximately twenty-seven (27) additional potential purchasers that had either not participated in or dropped out of the sale process prior to the Petition Date. The Debtors, with the assistance of PJSC, negotiated and executed NDAs with eighteen (18) of such new potential purchasers and provided such potential purchasers with access to the financial and operational due diligence information available in the online Data Room along with a detailed offering memorandum prepared by PJSC and the Debtors' management. In total, PJSC and the

Debtors provided prospective purchasers with approximately 15,000 pages of due diligence materials. In addition, PJSC continued to coordinate and attend live and telephonic meetings between prospective purchasers and the Debtors' management, and also maintained a separate dialogue with potential buyers in order to respond to inquiries regarding the assets for sale and the sale process.

18.     Pursuant to the Bidding Procedures Order, prospective purchasers were required to submit Qualified Bids (as defined in the Bidding Procedures Order) by July 14, 2009 (the "Bid Deadline"). Prior to the bid deadline, the Debtors received Qualified Bids from a total of seven Qualified Bidders (as defined in the Bidding Procedures Order), including a credit bid submitted by certain of the Debtors' prepetition secured lenders (the "Term Loan Group"). Two of such Qualified Bids were for the purchase of the Debtors' inventory only, three were for the purchase of the Debtors' intellectual property only,[4] and two, including the Stalking Horse bid, were for the purchase of substantially all of the Debtors' assets as a going concern. The Qualified Bids were for different packages of the Debtors' assets and were comprised of various forms of consideration, including cash and assumed liabilities.

19.     PJSC played an integral role in the bid submission and auction processes. Specifically, PJSC, Latham, and Alvarez & Marsal North America, LLC ("A&M"), the Debtors' restructuring advisors, were responsible for determining whether submitted bids were Qualified Bids in accordance with the procedures set forth in the Bidding Procedures Order, and for assessing the value of each Qualified Bid. In addition, PJSC, Latham, and A&M communicated regularly with key creditor constituencies, including the Term Loan Group and the Committee,

---

[4]     The Term Loan Group initially submitted a Qualified Bid for the Debtors' intellectual property only, but at the Auction (as defined below) expressed interest in purchasing substantially all of the Debtors' assets as a going concern.

regarding the bidding process and the salient terms of the various Qualified Bids. PJSC and Latham also negotiated the terms of the APAs with the Qualified Bidders. On July 16, 2009, PJSC and Latham conducted the auction (the "Auction") for the Debtors' assets, at which Golden Gate Capital emerged as the winning bidder.

20.     Following the Auction, PJSC assisted the Debtors' management and legal counsel prepare for the sale hearing on July 22, 2009, including by:

  a. assisting the Debtors' legal counsel in the preparation of testimony;

  b. reviewing and providing comments and supporting analysis for the brief in support of the sale motion; and

  c. analyzing objections to the sale and assisting legal counsel in responding to such objections.

## C.     *Financial Monitoring and Business Plan Review*

21.     Prior to and during the Application Period, PJSC assisted the Debtors and their other advisors with monitoring the financial and operational performance of the Debtors, including:

  a. reviewing and analyzing historical and forecasted financial information, monthly divisional operating reports, comparisons of actual performance versus forecast and compliance with DIP Financing covenants;

  b. assisting the Debtors in developing a detailed financial model to be used as a tool for strategic planning and forecasting;

  c. preparing financial analyses related to the DIP Budget, the Debtors' liquidity position, working capital needs and cash flow forecasts; and

  d. assisting the Debtors' management and their other advisors in assessing the risks and opportunities related to the business and the cash flow forecast.

***D.***     ***Communications and Negotiations with Various Constituencies and Representatives***

22.     Prior to and during the Application Period, PJSC developed analyses and participated in discussions and meetings to further negotiations with and supply information to the Debtors' key creditor constituencies, including the Debtors' prepetition secured lenders, the DIP Lenders, the Committee, and other parties in interest and their advisors, as well as the Debtors and their professionals. Among other things, PJSC's involvement included:

      a.     preparing materials for and participating in conference calls with the Debtors' board of directors;

      b.     arranging and attending meetings between the advisors to the Committee and the Debtors' management team;

      c.     facilitating diligence requests and organizing meetings and conference calls with the Debtors' management and maintaining an ongoing dialogue with the DIP Lenders, the Stalking Horse, and advisors to the Committee; and

      d.     providing frequent updates on the sale process and discussing the Debtors' year-to-date financial results, the DIP Budget, the financial projections, the Debtors' near-term liquidity outlook and other elements of the chapter 11 cases.

## BASIS FOR RELIEF

23.     PJSC respectfully submits that it is entitled to receive the fees it has requested in accordance with the express terms of the Engagement Letter, as modified and approved by the Retention Order. Section 330 of the Bankruptcy Code provides for the award of compensation to professionals. 11 U.S.C. § 330. Section 330, by its terms, is "subject to" the provisions of Section 328(a) of the Bankruptcy Code. <u>Id.</u> Section 328(a) permits a debtor, with court approval, to employ a professional person "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

24.     Section 328(a) represents a departure from the practice that prevailed prior to the enactment of the Bankruptcy Code in 1978. The purpose of Section 328(a) is to permit the pre-approval of compensation arrangements as a method of insuring that the most competent professionals would be available to provide services in bankruptcy cases. See In re Westbrooks, 202 B.R. 520, 521 (Bankr. N.D. Ala. 1996) (finding that percentage fee arrangements "comport with the Bankruptcy Code's goal of attracting highly qualified professionals to the bankruptcy forum"); In re Olympia Holding Corp., 176 B.R. 962, 965 (Bankr. M.D. Fla. 1994) ("In contrast to pre-code law, [section] 328 allows the court to pre-approve various types of employment arrangements including contingency agreements."). Once the terms of a professional's retention have been approved under Section 328(a), the agreed-upon compensation cannot be altered unless the agreed terms "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. §328(a); see also Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.), 123 F.3d 861 (5th Cir. 1997) ("If prior approval is given to a certain compensation, [section] 328 controls and the court starts with that approved compensation, modifying it only for developments unforeseen when originally approved."); In re Reimers, 972 F.2d 1127, 1128 (9th Cir. 1992) (compensation agreement approved under Section 328(a) must be enforced in the absence of unforeseeable circumstances, and is not subject to a "reasonableness" review under Section 330); Olympia Holding Corp., 176 B.R. at 964 (same). As the Fifth Circuit explained in Nat'l Gypsum:

> If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment. Courts must protect those agreements and expectations, once found to be acceptable.

123 F.3d at 863.

25. In this case, the Retention Order provides that fees to be paid to PJSC pursuant to the terms of the Engagement Letter "shall be subject to review pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standards set forth in section 330 of the Bankruptcy Code except that the U.S. Trustee shall retain the right to object to the Transaction Fees payable under the Engagement Letter based on the reasonableness standard provided for in section 330 of the Bankruptcy Code." Retention Order ¶ 4.

26. PJSC respectfully submits that: (i) the professional services performed by PJSC were necessary and appropriate and substantially benefited the Debtors' estates; (ii) the compensation requested in this application is in accordance with the terms of the Engagement Letter as approved by the Retention Order pursuant to Section 328(a) of the Bankruptcy Code; and (iii) no unforeseeable developments have arisen during these cases that would render the approval of PJSC's fees to have been "improvident" within the meaning of Section 328(a) of the Bankruptcy Code. In addition, PJSC's compensation is fully justified and reasonable based upon the: (i) complexity of issues presented; (ii) skill required to perform the financial advisory services properly; (iii) preclusion of other similar employment; (iv) customary fees charged to clients in non-bankruptcy situations for similar services rendered; (v) time constraints required by the exigencies of the cases; (vi) experience, reputation and ability of the professionals rendering services; (vii) time and labor required; (viii) the success of the Debtors in consummating of a sale of substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code; and (ix) a comparison of the transaction fees payable in these cases to fees paid to other investment banking firms offering comparable services in other chapter 11 cases.

27. Accordingly, PJSC's total fee request in the aggregate amount of $2,950,000.00 for the Application Period should be approved and allowed on an interim and final basis.

28.     As set forth above, by this Application, PJSC also seeks reimbursement for the actual, reasonable and necessary expenses incurred by PJSC during the Application Period in the aggregate amount of $66,133.13, which should be approved and allowed on an interim and final basis.

29.     Annexed hereto as <u>Exhibit B</u> is a summary of actual, reasonable and necessary expenses incurred by PJSC during the Application Period.  Out-of-pocket expenses incurred by PJSC are charged to a client if the expenses are incurred for the client or are otherwise reasonable and necessary in connection with services rendered for such particular client.  The amount of the expenses sought in this Application and PJSC's billing processes (i) are consistent with market practice both in and out of a bankruptcy context, and (ii) comply with the Administrative Order.

## PRIOR PAYMENTS TO PJSC

30.     In connection with PJSC's prepetition engagement by the Debtors, the Debtors deposited a $250,000 retainer into a segregated escrow account for the benefit of PJSC.  Based on fees and disbursements incurred through the Petition Date, PJSC holds a retainer of $245,441.60.  By this Application, PJSC is seeking authority to apply the retainer against the final allowance of compensation it is awarded.

31.     No other payments have heretofore been made or promised to PJSC for services rendered or to be rendered in any capacity and expenses incurred in connection with these chapter 11 cases.

## NO SHARING OF COMPENSATION

32.     No agreement or understanding prohibited by section 504 of the Bankruptcy Code exists between PJSC and any other person for sharing of compensation received or to be received for services rendered in or in connection with these chapter 11 cases, nor shall PJSC share or

agree to share the compensation paid or allowed for the Debtors' estates for such services with any other person in contravention of section 504 of the Bankruptcy Code. PJSC has not made any agreement or understanding prohibited by 18 U.S.C. § 155.

## CERTIFICATION PURSUANT TO LOCAL RULE 2016-2(f)

33.     As set forth in the Certification of Bradley I. Dietz, annexed hereto as Exhibit F and incorporated herein by reference, PJSC believes the Application complies with the Local Rule 2016-2 and the Administrative Order in all material respects. To the extent the Application does not comply in all respects with any requirements of Bankruptcy Rule 2016-2, PJSC believes such deviations are not material and respectfully requests that such requirements be waived.

## NOTICE

34.     In accordance with the Administrative Order, notice of this Application has been provided to: (i) the Debtors, c/o Eddie Bauer Holdings, Inc., 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004 (Attn: Freya Brier, Esq.); (ii) counsel to the Debtors, Latham & Watkins, LLP, Sears Tower, Suite 5800, 233 South Wacker Drive, Chicago, IL 60606 (Attn: David S. Heller, Esq.) and Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19899-0391 (Attn: Michael R. Nestor, Esq.); (iii) counsel to the Official Committee of Unsecured Creditors, Cooley Godward Kronish LLP, 1114 Avenue of the America, New York, NY 10036 (Attn: Cathy Heschcopf, Esq.); and (iv) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2313, Wilmington, DE 19801 (Attn: David Buchbinder, Esq.). PJSC submits that no other or further notice is required under the circumstances.

## CONCLUSION

WHEREFORE, PJSC respectfully requests that the Court enter an order, substantially in the form annexed hereto as <u>Exhibit G</u>: (a) allowing, on an interim and final basis, (i) PJSC's fees earned during the Application Period, in the aggregate amount of $2,950,000.00, and (ii) reimbursement of PJSC's expenses incurred during the Application Period, in the aggregate amount of $66,133.13; (b) authorizing and directing the Debtors to pay the foregoing amounts to PJSC to the extent not already paid; (c) authorizing PJSC to apply the remaining prepetition retainer amount of $245,441.60 against the final allowance of compensation awarded; and (d) granting such other and further relief as may be just and proper.

Dated: New York, New York
      August 28, 2009

PETER J. SOLOMON COMPANY

By: _____
     Bradley I. Dietz
     Managing Director

Peter J. Solomon Company
520 Madison Avenue, 29th Floor
New York, NY 10022