## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EBHI HOLDINGS, INC., *et al.*, [1] | ) | Case No. 09-12099 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION OF EBHI HOLDINGS, INC., *ET AL.* UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: EBHI Holdings, Inc. f/k/a Eddie Bauer Holdings, Inc., a Delaware corporation (2352); Amargosa, Inc. f/k/a Eddie Bauer, Inc., a Delaware corporation (9737); Gobi Fulfillment Services, Inc. f/k/a Eddie Bauer Fulfillment Services, Inc., a Delaware corporation (0882); Arabian Diversified Sales, LLC f/k/a Eddie Bauer Diversified Sales, LLC, a Delaware limited liability company (1567); Gibson Services, LLC f/k/a Eddie Bauer Services, LLC, an Ohio limited liability company (disregarded); Karakum International Development, LLC f/k/a Eddie Bauer International Development, LLC, a Delaware limited liability company (1571); Simpson Information Technology, LLC f/k/a Eddie Bauer Information Technology, LLC, a Delaware limited liability company (disregarded); Sandy Financial Services Acceptance Corporation f/k/a Financial Services Acceptance Corporation, a Delaware corporation (7532); and Sonoran Acceptance Corporation f/k/a Spiegel Acceptance Corporation, a Delaware corporation (7253). The mailing address for EBHI Holdings, Inc. is 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004.

# TABLE OF CONTENTS

**Page No.**

BACKGROUND ...................................................................................................1

PRELIMINARY STATEMENT ..........................................................................1

ACCEPTANCE OF THE PLAN BY THE VOTING CLASSES ......................3

ARGUMENT........................................................................................................3

    I.     The Plan Should Be Confirmed. ................................................................3

         A.     The Plan Complies with Applicable Provisions of the Bankruptcy Code Section 1129(a)(1). ..................................................................3

         B.     The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2)). ....................................13

         C.     The Plan Has Been Proposed in Good Faith and not by Any Means Forbidden by Law (Section 1129(a)(3)). ....................................14

         D.     The Plan Provides for Bankruptcy Court Approval of Certain Administrative Payments (Section 1129(a)(4)). ........................15

         E.     The Debtors Have Disclosed the Identity and Affiliations of the Liquidating Trustee (Section 1129(a)(5)). ...................................16

         F.     The Plan Does not Require Governmental Regulatory Approval (Section 1129(a)(6)). ....................................................................16

         G.     The Plan Is in the Best Interests of Creditors and Interest Holders (Section 1129(a)(7)). ...................................................16

         H.     Acceptance of Impaired Classes (Section 1129(a)(8)). ............19

         I.     The Plan Complies with Statutorily Mandated Treatment of Administrative and Priority Tax Claims (Section 1129(a)(9)). .................20

         J.     At Least One Impaired Class of Claims Has Accepted the Plan, Excluding the Acceptances of Insiders (Section 1129(a)(10)). .................20

         K.     The Plan Is Feasible (Section 1129(a)(11)). .............................21

         L.     The Plan Provides for the Payment of All Fees Under 28 U.S.C. § 1930 (Section 1129(a)(12)). ................................................................21

         M.     The Plan Does Not Modify Retiree Benefits (Section 1129(a)(13)). ........22

         N.     The Plan Satisfies the "Cram Down" Requirements (11 U.S.C. § 1129(b)). ..................................................................................22

O.     The Purpose of the Plan Is Not the Avoidance of Taxes or the Avoidance of the Securities Laws (11 U.S.C. § 1129(d)).............................................24

RESOLUTION OF OBJECTIONS TO CONFIRMATION ........................................................24

CONCLUSION.....................................................................................................................30

EXHIBIT A – HONG DECLARATION

EXHIBIT B – SUMMARY OF PLAN OBJECTIONS

DB02:9373052.3                            068417.1001

# TABLE OF AUTHORITIES

Page No.

## Cases

Aetna Cas. & Sur. Co. v. Clerk of U.S. Bankr. Court (In re Chateaugay Corp.),
    89 F.3d 942 (2d Cir. 1996) ...................................................................................5

Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,
    526 U.S. 434 (1999)....................................................................................17, 23

Clarkson v. Cooke Sales & Serv. Co. (In re Clarkson),
    767 F.2d 417 (8th Cir. 1985) ...............................................................................21

Frito-Lay, Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.),
    10 F.3d 944 (2d Cir. 1993) ....................................................................................5

In re 203 N. LaSalle St. Ltd. P'ship.,
    190 B.R. 567, 585 (Bankr. N.D. Ill. 1995) ........................................................23

In re Adelphia Commc'ns Corp.,
    368 B.R. 140 (Bankr. S.D.N.Y. 2007).................................................................17

In re Ambanc La Mesa Ltd. P'ship,
    115 F.3d 650 (9th Cir. 1997) ...............................................................................24

In re Armstrong World Indus., Inc.,
    348 B.R. 111 (D. Del. 2006).................................................................................3

In re Aztec Co.,
    107 B.R. 585 (Bankr. M.D. Tenn. 1989) ...........................................................24

In re Bergman,
    585 F.2d 1171 (2d Cir. 1978) ..............................................................................21

In re Bowles,
    48 B.R. 502 (Bankr. E.D. Va. 1985)....................................................................23

In re Briscoe Enters., Ltd., II,
    994 F.2d 1160 (5th Cir. 1993) .............................................................................21

In re Century Glove, Inc.,
    Nos. 90-400-SLR, 90-401-SLR, 1993 WL 239489 (D. Del. Feb. 10, 1993) ...................14

In re Coram Healthcare Corp.,
    315 B.R. 321 (2004) ............................................................................................11

In re Drexel Burnham Lambert Group, Inc.,
    138 B.R. 723 (Bankr. S.D.N.Y. 1992)..................................................15, 17, 19

DB02:9373052.3

068417.1001

In re DRW Prop. Co. 82,
    60 B.R. 505 (Bankr. N.D. Tex. 1986)................................................................4

In re Elsinore Shore Assocs.,
    91 B.R. 238 (Bankr. D.N.J. 1988) ...............................................................15

In re Exide Techs.,
    303 B.R. 48 (Bankr. D. Del. 2003)........................................................11, 23

In re Freymiller Trucking, Inc.,
    190 B.R. 913 (Bankr. W.D. Okla. 1996) ......................................................23

In re Genesis Health Ventures, Inc.,
    266 B.R. 591 (Bankr. D. Del. 2001)..............................................................23

In re Heritage Org., L.L.C.,
    375 B.R. 230 (Bankr. N.D. Tex. 2007)............................................................4

In re Johns-Manville Corp.,
    68 B.R. 618 (Bankr. S.D.N.Y. 1986) ...........................................................24

In re Kaiser Aluminum Corp.,
    No. 02-10429, 2006 WL 616243 (Bankr. D. Del. Feb. 6, 2006)........................4

In re Madison Hotel Assocs.,
    749 F.2d 410 (7th Cir. 1984) .......................................................................14

In re Magnatrax Corp.,
    No. 03-11402, 2003 WL 22807541 (Bankr. D. Del. Nov. 17, 2003)..................5

In re Master Mortgage Inv. Fund, Inc.,
    168 B.R. 930 (Bankr. W.D. Mo. 1994) ...................................................10, 11

In re Mirant Corp.,
    No. 03-46590DML11, 2007 WL 1258932, (Bankr. N.D. Tex. Apr. 27, 2007) .................4

In re River Vill. Assocs.,
    161 B.R. 127 (Bankr. E.D. Pa. 1993), aff'd, 181 B.R. 795 (E.D. Pa. 1995) ....................14

In re S & W Enter.,
    37 B.R. 153 (Bankr. N.D. Ill. 1984) ...............................................................4

In re Sun Country Dev., Inc.,
    764 F.2d 406 (5th Cir. 1985) .......................................................................14

In re T-H New Orleans L.P.,
    116 F.3d 790 (5th Cir. 1997) .......................................................................14

In re WorldCom, Inc.,
    No. 02-13533, 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003)........13, 15

DB02:9373052.3
068417.1001

In re Zenith Elecs. Corp.,
  241 B.R. 92 (Bankr. D. Del. 1999) ...................................................................11, 14

IRS v. Kaplan (In re Kaplan),
  104 F.3d 589 (3d Cir. 1997) .........................................................................21

John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.,
  987 F.2d 154 (3d Cir. 1993) .......................................................................4, 22

Lisanti v. Lubetkin (In re Lisanti Foods, Inc.),
  329 B.R. 491 (D.N.J. 2005) ..........................................................................15

Norwest Bank Worthington v. Ahlers,
  485 U.S. 197 (1988).....................................................................................23

United States v. Energy Res. Co.,
  495 U.S. 545 (1990).....................................................................................21

**Statutes**

11 U.S.C. § 363(b) .........................................................................................26

11 U.S.C. § 105(a) .......................................................................................9, 26

11 U.S.C. § 1114 ...........................................................................................22

11 U.S.C. § 1122 .......................................................................................3, 4, 5

11 U.S.C. § 1123 .........................................................................................3, 4

11 U.S.C. § 1123(a) ...................................................................................5, 6, 7

11 U.S.C. § 1123(a)(1) ....................................................................................6

11 U.S.C. § 1123(a)(2) ....................................................................................6

11 U.S.C. § 1123(a)(3) ....................................................................................6

11 U.S.C. § 1123(a)(4) ....................................................................................6

11 U.S.C. § 1123(a)(5) ...............................................................................6, 7, 9

11 U.S.C. § 1123(a)(6) ....................................................................................7

11 U.S.C. § 1123(a)(7) ....................................................................................7

11 U.S.C. § 1123(b) .....................................................................................8, 9

11 U.S.C. § 1123(b)(1) ....................................................................................8

11 U.S.C. § 1123(b)(2) ....................................................................................8

11 U.S.C. § 1123(b)(3)(A) .................................................................8

11 U.S.C. § 1123(b)(3)(B) .................................................................8

11 U.S.C. § 1123(b)(4) .................................................................8

11 U.S.C. § 1123(b)(5) .................................................................8

11 U.S.C. § 1123(b)(6) .................................................................8

11 U.S.C. § 1125 .................................................................13

11 U.S.C. § 1126 .................................................................13

11 U.S.C. § 1126(c) .................................................................19

11 U.S.C. § 1126(f) .................................................................19

11 U.S.C. § 1126(g) .................................................................19

11 U.S.C. § 1129 .................................................................3

11 U.S.C. § 1129(a) .................................................................22

11 U.S.C. § 1129(a)(1) .................................................................3, 4

11 U.S.C. § 1129(a)(10) .................................................................19, 20

11 U.S.C. § 1129(a)(11) .................................................................21

11 U.S.C. § 1129(a)(12) .................................................................21

11 U.S.C. § 1129(a)(13) .................................................................22

11 U.S.C. § 1129(a)(2) .................................................................13

11 U.S.C. § 1129(a)(3) .................................................................14, 15

11 U.S.C. § 1129(a)(4) .................................................................15

11 U.S.C. § 1129(a)(5) .................................................................16

11 U.S.C. § 1129(a)(5)(A) .................................................................16

11 U.S.C. § 1129(a)(6) .................................................................16

11 U.S.C. § 1129(a)(7) .................................................................16, 17, 18

11 U.S.C. § 1129(a)(7)(A) .................................................................17

11 U.S.C. § 1129(a)(8) .................................................................19, 20, 22

11 U.S.C. § 1129(a)(9) .................................................................20

DB02:9373052.3
068417.1001

11 U.S.C. § 1129(a)(9)(C) ...................................................................................................20

11 U.S.C. § 1129(b) .....................................................................................................20, 22

11 U.S.C. § 1129(b)(2)(B)(ii) ......................................................................................22, 23

11 U.S.C. § 1129(b)(2)(C)(ii) ......................................................................................22, 23

11 U.S.C. § 1129(d) ........................................................................................................24

11 U.S.C. § 507(a) ........................................................................................................20, 26

11 U.S.C. § 507(a)(8) .......................................................................................................20

11 U.S.C. § 541(d) ............................................................................................................26

26 U.S.C. Section 6621 ..............................................................................................26, 28

26 U.S.C. Section 6622 ..............................................................................................26, 28

28 U.S.C. § 1930 ...............................................................................................................21

DB02:9373052.3                                                                                      068417.1001

## PRELIMINARY STATEMENT

This Memorandum of Law (this "Memorandum")[2] in support of confirmation of the Debtors' *First Amended Joint Plan of Liquidation of EBHI Holdings, Inc., et al.* (as may be amended from time to time, the "Plan") filed by the above-captioned debtors and debtors-in-possession in these chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned attorneys, presents an analysis of the issues regarding confirmation ("Confirmation") of the Plan pursuant to section 1129 of title 11 of the United States Code (the "Bankruptcy Code").

As provided in detail below and in the *Declaration of Kay Hong in Support of Confirmation of the First Amended Joint Plan of Liquidation of EBHI Holdings, Inc., et al.* (the "Hong Declaration"),[3] the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and is overwhelmingly supported by the Debtors' creditor constituencies. Only seven objections have been filed to date in connection with confirmation of the Plan. The Debtors' responses to those objections are set forth below in the section titled "Resolution of Objections to Confirmation." The Debtors believe all of the objections, except for those of the IRS and Customs, have been consensually resolved by the modifications to the Plan set forth in the Confirmation Order or otherwise withdrawn.[4]

Accordingly, the Debtors submit that the Plan should be confirmed.

## BACKGROUND

On June 17, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code and continued to manage their assets as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. The events leading up to the Petition Date are more fully set forth in the First Day Declaration of Marvin Edward Toland [Docket No. 2] (the "Toland Declaration"), also filed on June 17, 2009.

---

[2] Unless otherwise noted, any capitalized terms used but not defined herein shall have the meanings given to them in the Plan.

[3] The Hong Declaration is attached hereto as Exhibit A.

[4] A summary of the objections to the Plan and the Debtors' responses thereto is attached hereto as Exhibit B.

On June 25, 2009, the Office of the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors in these cases (the "Creditors' Committee" or "Committee") [Docket No. 143].

By order entered on June 30, 2009 (the "Sale Procedures Order") [Docket No. 222], this Court approved the sale procedures for a sale of all or a portion of the Debtors' assets. In accordance with the Sale Procedures Order, a hearing to approve the Debtors' proposed sale of their assets was held on July 22, 2009. At the conclusion of that hearing, the Court entered its *Order (A) Approving the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (C) Establishing Rejection Procedures and Guidelines for Conducting Store Closing Sales; and (D) Extending the Deadline to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to 11 U.S.C. § 365(d)(4)* (the "Sale Order") [Docket No. 508] approving the sale of substantially all of the Debtors' assets to Everest Holdings LLC (together with its successors, assigns, subsidiaries and affiliates, "Everest"). The sale to Everest closed on August 3, 2009.

On January 26, 2010, the Debtors filed the Plan [Docket No. 1269] and accompanying disclosure statement [Docket No. 1270] (as amended from time to time, the "Disclosure Statement"). By Order dated January 29, 2010 [Docket No. 1289], the Court approved the Disclosure Statement and certain solicitation procedures.

Prior to the filing of this Memorandum, Kurtzman Carson Consultants, the Debtors' claims and balloting agent (the "Voting Agent"), filed a report detailing the results of the Plan voting process. As set forth more fully in the Voting Report (as defined herein), the Plan has been accepted by all classes that voted. The Pre-Petition Term Agent and the Creditors' Committee both support Confirmation of the Plan.

## ACCEPTANCE OF THE PLAN BY THE VOTING CLASSES

On March 15, 2010, the Voting Agent filed the Voting Report.[5] As set forth more fully in the Voting Report, Classes 3 and 4 voted to accept the Plan. Creditors in Classes 1 and 2 are Unimpaired and deemed to have accepted the Plan, and, therefore, are not entitled to vote to accept or reject the Plan.

Creditors and Holders of Interests in Classes 5, 6, 7A, and 7B (collectively, the "Deemed Rejecting Classes") are Impaired and will receive no distribution under the Plan on account of their Claims or Interests and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. As discussed below, the Debtors satisfy section 1129(b)'s "cram down" requirements with respect to the Deemed Rejecting Classes. Therefore, the Deemed Rejecting Classes' deemed rejection of the Plan should not prevent the Court from confirming the Plan.

## ARGUMENT

### I.    The Plan Should Be Confirmed.

To confirm the Plan, the Court must find that the Debtors have satisfied the provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.[6] The Debtors submit that the Plan complies with all relevant sections of the Bankruptcy Code, Bankruptcy Rules, and applicable non-bankruptcy law. In particular, the Plan fully complies with the requirements of sections 1122, 1123, and 1129 of the Bankruptcy Code. This Memorandum addresses each requirement individually.

#### A.    The Plan Complies with Applicable Provisions of the Bankruptcy Code Section 1129(a)(1).

Section 1129(a)(1) of the Bankruptcy Code requires that a plan of reorganization comply with the applicable provisions of the Bankruptcy Code. A principal objective of section 1129(a)(1)  is to

---

[5]    See *Certification of Michael J. Paque with Respect to the Tabulation of Votes on the First Amended Joint Plan of Liquidation of EBHI Holding, Inc. et al.*, including Exhibit A attached thereto. [Docket No. 1435] (the "Voting Report").

[6]    See In re Armstrong World Indus., Inc., 348 B.R. 111, 120 (D. Del. 2006).

068417.1001

assure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a plan of reorganization, and so the determination of whether the Plan complies with section 1129(a)(1) requires an analysis of sections 1122 and 1123 of the Bankruptcy Code.[7] As explained below, the Plan complies with sections 1122 and 1123 in all respects.

### 1. The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code.

The Plan satisfies section 1122's classification requirements. Section 1122 of the Bankruptcy Code provides:

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.[8]

Claims or interests in a class need not be identical but should be substantially similar in nature to each other.[9] The Third Circuit has recognized that plan proponents have significant flexibility in placing similar claims into different classes, provided there is a rational basis to do so.[10] Courts have identified grounds justifying separate classification, including where members of a class possess different legal rights[11] and where there are good business reasons for separate classification.[12]

---

[7] See In re S & W Enter., 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984) (determining that the provisions of section 1129(a)(1) are aimed most directly at sections 1122 and 1123); see also S. REP. NO. 95-989, at 126 (1978); H.R. REP. NO. 95-595, at 412 (1977).

[8] 11 U.S.C. § 1122.

[9] In re DRW Prop. Co. 82, 60 B.R. 505, 511 (Bankr. N.D. Tex. 1986).

[10] See John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs., 987 F.2d 154, 158–59 (3d Cir. 1993) (explaining that a classification is proper as long as each class represents a voting interest "sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed").

[11] See, e.g., In re Heritage Org., L.L.C., 375 B.R. 230, 299 n.86 (Bankr. N.D. Tex. 2007) (finding that if creditors had different legal rights under equitable subordination, then separate classification would be appropriate); In re Mirant Corp., No. 03-46590DML11, 2007 WL 1258932, at *7 (Bankr. N.D. Tex. Apr. 27, 2007) (permitting separate classification because holders of claims had different legal interests in the debtor's estate); In re Kaiser Aluminum Corp., No. 02-10429, 2006 WL 616243, at *5–6 (Bankr. D. Del. Feb. 6, 2006) (permitting classification scheme after consideration of characteristics of each class and creditors' legal rights).

The Plan's classification of Claims and Interests into seven Classes[13] satisfies the requirements of section 1122 because the Claims in each Class differ from the Claims and Interests in each other Class in a legal or factual nature or based on other relevant criteria. In each instance of separate classification, the Plan classifies Claims and Interests based on the different rights and attributes of the respective holders.[14] Thus, valid business, factual, and legal reasons exist for classifying separately the various Classes under the Plan. Additionally, each of the Claims or Interests in each particular Class is substantially similar to the other Claims or Interests in such Class. Thus, the Plan satisfies section 1122 of the Bankruptcy Code.

### 2. The Plan Satisfies the Seven Plan Requirements of Section 1123(a) of the Bankruptcy Code.

The Plan meets the seven mandatory requirements of section 1123(a). Specifically, section 1123(a) requires that a plan:

(1)     designate classes of claims and interests;

(2)     specify unimpaired classes of claims and interests;

(3)     specify treatment of impaired classes of claims and interests;

(4)     provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim agrees to a less favorable treatment of such particular claim or interest;

(5)     provide adequate means for implementation of the plan;

---

12   See Aetna Cas. & Sur. Co. v. Clerk of U.S. Bankr. Court (In re Chateaugay Corp.), 89 F.3d 942, 949 (2d Cir. 1996) (finding that the debtor must have a legitimate reason supported by credible proof to justify separate classification of similar, unsecured claims); Frito-Lay, Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.), 10 F.3d 944, 956–57 (2d Cir. 1993) (finding separate classification appropriate because classification scheme had a rational basis; separate classification based on bankruptcy court-approved settlement); In re Magnatrax Corp., No. 03-11402, 2003 WL 22807541, at *4 (Bankr. D. Del. Nov. 17, 2003) (permitting separate classification based on valid business, factual, and legal reasons).

13   The Plan contains seven Classes of Claims and Interests, designated as Classes 1 through 7. Class 7 is further subclassified into two subclasses, designated as Class 7A and Class 7B. See Plan Art. 5; Hong Decl. ¶ 5.

14   See Plan Arts. 3, 5; see also Hong Decl. ¶ 5.

DB02:9373052.3                                                                                          068417.1001

(6)     provide for the prohibition of the issuance of nonvoting equity securities and provide an appropriate distribution of voting power among the classes of securities; and

(7)     contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the reorganized company's officers and directors.[15]

Articles 2, 3, 4, and 5 of the Plan satisfy the first three requirements of section 1123(a) by: (a) designating Classes of Claims and Interests, as required by section 1123(a)(1); (b) specifying the Classes of Claims and Interests that are Unimpaired under the Plan, as required by section 1123(a)(2); and (c) specifying the treatment of each Class of Claims and Interests that are Impaired, as required by section 1123(a)(3). The Plan also satisfies section 1123(a)(4)—the fourth requirement—because the treatment of each Claim or Interest within a Class is the same as the treatment of each other Claim or Interest within that Class, unless the holder agrees to a less favorable treatment on account of its Claim or Interest.

Article 7 and various other provisions of the Plan provide adequate means for the Plan's implementation, thus satisfying the fifth requirement, which is set forth in section 1123(a)(5) of the Bankruptcy Code.[16] Article 7 of the Plan and various other provisions of the Plan specifically provide for, among other things, (a) the establishment of a Liquidating Trust for the purpose of liquidating the Debtors' remaining Assets and distributing the proceeds, if any, as prescribed by the Plan; (b) the ability, following Confirmation and prior to the Effective Date, of the then-current officers and directors of each of the Debtors to execute such documents and take such other action as is necessary

---

[15]  11 U.S.C. § 1123(a) .

[16]  See id. § 1123(a)(5); Plan Art. 7; Hong Decl. ¶ 8(b). Section 1123(a)(5) specifies that adequate means for implementation of a plan may include: (A) retention by the debtor of all or part of its property; (B) the transfer of property of the estate to one or more entities; (C) merger or consolidation of the debtor with one or more persons; (D) sale or distribution of property of the estate; (E) satisfaction or modification of any lien; (F) cancellation or modification of any indenture; (G) curing or waiving of any default; (H) extension of a maturity date or a change in an interest rate or other term of outstanding securities; (I) amendment of the debtor's charter; or (J) issuance of securities for cash, for property, for existing securities, in exchange for claims or interests, or for any other appropriate purpose. 11 U.S.C. § 1123(a)(5) .

to effectuate the transactions provided for in the Plan; and (c) the transfer and assignment, on the Effective Date, of each Debtor's respective Assets to the Liquidating Trust free and clear of all Liens, Claims, interests and encumbrances. As a result thereof, the requirements of section 1123(a)(5) of the Bankruptcy Code have been satisfied.

The sixth requirement of section 1123(a)—that a plan prohibit the issuance of nonvoting equity securities—does not apply to the Plan because the Debtors do not propose to issue any equity securities under the Plan. As the Court is aware, the Debtors have already sold to Everest substantially all of their Assets. The policy behind section 1123(a)(6) of the Bankruptcy Code was to ensure that public investors would have a voice in the selection of a reorganized debtor's management. This section should not apply, since the Debtors are issuing no securities under the Plan, as the Plan is a liquidating plan.

Similarly, the seventh requirement of section 1123(a)—that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan"[17]—does not apply, because the Plan does not propose to retain any of the Debtors' officers as an officer of the post-Confirmation Debtors.[18] After the Effective Date, the Liquidating Trustee shall be authorized to file each Debtor's final tax returns, and shall be authorized to file and shall file with the official public office for keeping corporate records in each Debtor's state of incorporation a certificate of dissolution or equivalent document.[19] The Liquidating Trustee has ample liquidation experience and was chosen by the Creditors' Committee. The Liquidating Trust Committee that oversees the Liquidating Trustee will be comprised of members appointed by the Creditors' Committee. The Plan thus satisfies section 1123(a)(7) of the Bankruptcy Code.

---

[17] 11 U.S.C. § 1123(a)(7).

[18] See Plan § 7.6; Hong Decl. ¶ 8(d).

[19] See Plan § 7.9; Hong Decl. ¶ 8(d).

### 3. The Discretionary Contents of the Plan Are Appropriate.

Section 1123(b) of the Bankruptcy Code identifies various discretionary provisions that may be included in a plan of reorganization. A plan may impair or leave unimpaired any class of claims or interests, or provide for the assumption or rejection of executory contracts or unexpired leases.[20] A plan also may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate" or "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest."[21] It may provide for the sale of substantially all of the property of the estate and for the distribution of the proceeds of any such sale.[22] A plan may "modify the rights of holders of secured claims . . . or . . . unsecured claims, or leave unaffected the rights of holders of any class of claims"[23] and may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."[24]

Here, the Plan employs various provisions in accordance with section 1123(b)'s discretionary authority. For example, the Plan provides for treatment of Executory Contracts and Unexpired Leases,[25] provides a structure for Claim allowance and disallowance,[26] sets forth a process to distribute proceeds to holders of Allowed Claims through the establishment of the Liquidating Trust,[27] and provides for the implementation of release, exculpation, and injunction provisions.[28]

---

[20]  11 U.S.C. § 1123(b)(1), (2).

[21]  Id. § 1123(b)(3)(A), (B).

[22]  Id. § 1123(b)(4).

[23]  Id. § 1123(b)(5).

[24]  Id. § 1123(b)(6).

[25]  See Plan Art. 6; Hong Decl. ¶ 8(e).

[26]  See Plan Arts. 2, 3; Hong Decl. ¶¶ 5, 8(i).

[27]  See Plan Art. 7; Hong Decl. ¶ 8(b).

[28]  See Plan Art. 11; Hong Decl. ¶ 8(i). The release, exculpation, and injunction provisions are discussed in detail in the following subsection.

**4.      The Settlement, Release, Exculpation, and Injunction Provisions Are Integral Components of the Plan.**

Section 105(a) of the Bankruptcy Code and the case law promulgated thereunder permit the issuance of injunctions and exculpations and the approval of settlements and releases such as those set forth in Article 11 of the Plan, where such provisions:  (i) are essential to the formulation and implementation of the Plan, as provided in section 1123(a)(5) of the Bankruptcy Code; (ii) are important to the overall objectives of the Plan to finally resolve, except to the extent otherwise provided in the Plan, all claims among or against the parties in interest in these Chapter 11 Cases with respect to the Debtors; (iii) confer substantial benefits on the Debtors' Estates; (iv) are fair and reasonable; and (v) are in the best interests of the Debtors, their Estates, and parties in interest.

The Plan provides for Releases to the released parties, as well as the Exculpation and the Injunction provisions prohibiting parties from pursuing claims and causes of action released under the Plan.[29]  These provisions are proper because, among other things, they are the product of arm's-length negotiations, have been critical to obtaining the support of the various constituencies for the Plan, and, as part of the Plan, have received overwhelming support from the creditors that voted for the Plan.  The Releases, Exculpation, and Injunction provisions are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtors and these Chapter 11 Cases.  None of these provisions are inconsistent with the Bankruptcy Code, and so the requirements of section 1123(b) of the Bankruptcy Code are satisfied.  The principal terms of these provisions in Article 11 of the Plan are discussed below.

**a.      The Releases**

Sections 11.5 and 11.6 of the Plan provide for releases by (i) the Debtors (e.g., "debtor releases") and (ii) each present and former holder of a Claim or Interest **who voted in favor** of the Plan (e.g., "consensual third party releases").  These provisions provide releases to the Debtor

---

[29]   See Plan Art. 11.

Releasees and the Creditor Releasees with respect to any claims, demands, indebtedness, agreements, promises, debts, rights, causes of action, obligations, suits, judgments, damages or liabilities of any nature whatsoever (other than rights to enforce obligations of the Debtors or the Debtor Releasees, as applicable, under the Section 506(c) Stipulation, the Committee Settlement Stipulation, the orders of the Bankruptcy Court, the Plan and the securities, contracts, instruments, releases and other agreements and documents delivered in connection therewith), whether liquidated or unliquidated, suspected or claimed, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any matter, cause, thing, act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan against any of the Debtor Releasees or the Creditor Releasees, as applicable.[30]

The Debtor Releasees and Creditor Releasees include (a) the officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, and other agents of the Debtors; (b) the Creditors' Committee (solely with respect to each member's conduct in furtherance of its, his, or her duties as a member of the Committee, and not with respect to the actions of such members as individual creditors); (c) the Liquidating Trustee; (d) the Pre-Petition Term Agent; (e) the Pre-Petition Term Lenders; (f) the Indenture Trustee; and (e) such parties' respective agents, attorneys, and other professionals acting in conjunction with the Chapter 11 Cases, as applicable.[31]

In approving debtor releases and third party releases, a court may consider a number of factors (often described as the "Master Mortgage factors"), including: (i) whether an identity of interest between the Debtors and the releasees exists, such that a suit against the releasees is, in essence, a suit against the Debtors or would deplete assets of the estates; (ii) the substantial contribution of the

---

[30] See id. §§ 11.5, 11.6.

[31] See id. §§ 1.32, 1.36.

releasees since the Petition Date; (iii) the essential nature of the releases to the approval of the Plan; and (iv) whether a substantial majority of the creditors support the Plan.[32]

Consideration of the debtor releases and the third party consensual releases provided for in the Plan under the Master Mortgage factors supports confirmation of the Plan.[33] First, the officers, directors, and other individual releasees share an identity of interest with the Debtors. The Pre-Petition Term Agent, the Prepetition Term Lenders, the Indenture Trustee, and the Debtors' officers and directors are likely entitled to indemnification from the Debtors with respect to the released claims and, in the case of the directors, such claims are likely insured under the Debtors' D&O insurance policies. Second, each of the releasees has participated in the Plan process and made substantial contributions to the Plan. Such contributions include, among other things, (a) compromising claims and accepting diminished recoveries, (b) funding the Debtors during these Chapter 11 Cases, (c) funding the Plan, (d) negotiating and supporting the Plan, and (e) in the case of officers and directors, their efforts on behalf of the Debtors prior to and throughout the Chapter 11 Cases.[34] Third, the Releases are an integral part of the Plan, and the failure to effect the release provisions set forth in the Plan would seriously impair the Debtors' ability to confirm the Plan, which would reduce the value available for distribution to Creditors and negatively impact the distribution to Creditors.[35] Fourth, the

---

[32] See In re Master Mortgage Inv. Fund, Inc., 168 B.R. 930, 935-36 (Bankr. W.D. Mo. 1994); In re Zenith Elecs. Corp., 241 B.R. 92, 110 (Bankr. D. Del. 1999) (considering similar factors to determine if a debtor release of a third party should be allowed as part of a plan).

[33] Although consideration of the debtor releases and the third party consensual releases provided for in the Plan under the Master Mortgage factors supports confirmation of the Plan, some courts have noted that with respect to debtor releases and situations in which third party releases are consensual there is no need to consider the Master Mortgage factors. Specifically, with respect to consensual third party releases, these courts have noted that because a plan is a contract that may bind those who vote in favor of it, those creditors who vote in favor of a plan may be bound by the releases under the plan. See In re Exide Techs., 303 B.R. 48, 74 (Bankr. D. Del. 2003) (finding that where releases bind only those creditors and equity holders who accept the terms of the Plan, "there is no need to consider the Zenith factors"); In re Coram Healthcare Corp., 315 B.R. 321, 336 (2004) (citing Zenith, 241 B.R. at 111) (allowing release by any creditor who actually voted in favor of the plan). As noted above, here, the third party releases provided for in the Plan are consensual and apply only to a present or former holder of a Claim or Interest who voted in favor of the Plan. See Plan § 11.6.

[34] See Hong Decl. ¶ 35.

[35] See id. ¶ 36.

overwhelming majority of the voting Creditors voted in favor of the Plan.[36] These factors thus weigh in favor of approval of the releases set forth in the Plan.

### b. The Exculpation

In requesting that the Court approve the Exculpation in Article 11.3 of the Plan, the Debtors are essentially asking the Court to make a finding of fact that the exculpated parties—which include (a) the Debtors; (b) the Committee; (c) the Pre-Petition Term Agent; (d) the Pre-Petition Term Lenders; (e) the Indenture Trustee; and (e) such parties' respective present members, officers, directors, shareholders, employees, representatives, advisors, attorneys, financial advisors, investment bankers, and other agents, successors, and assigns—have participated in good faith with respect to formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, and all sales of property of the estates.[37] The Debtors believe—and there are no allegations to the contrary—that the exculpated parties have participated in all of the foregoing in good faith. Further, the scope of the Exculpation is targeted and has no effect on liability that is determined to have resulted from gross negligence or willful misconduct.[38] Thus, the Exculpation should be approved in connection with the Confirmation of the Plan.

### c. The Injunction Provisions

Article 11.4 of the Plan provides that all Entities who have held, hold or may hold Claims against or Interests in the Debtors are, with respect to any such Claims or Interests, permanently enjoined on and after the Confirmation Date from (a) the enforcement, attachment, collection or

---

[36]  See Voting Rep. at Exh. A.

[37]  See Plan § 11.3.

[38]  See id.

recovery by any manner or means of any judgment, award, decree or order with respect to any Claim, Interest or any other right or claim against the Debtors, or any assets of the Debtors which such Entities possessed or may possess prior to the Effective Date, (b) the creation, perfection or enforcement of any encumbrance of any kind with respect to any Claim, Interest or any other right or claim against the Debtors or any assets of the Debtors which they possessed or may possess prior to the Effective Date, and (c) the assertion of any Claims that are released by the Plan.[39] This Injunction is necessary to preserve and enforce the Releases and the Exculpation granted by the Plan, and it is narrowly tailored to achieve that purpose.[40] Accordingly, the injunction provisions should be approved.

## B. The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2)).

The Debtors have satisfied section 1129(a)(2), which requires that the proponent of a plan of reorganization comply with the applicable provisions of the Bankruptcy Code. The caselaw and legislative history discussing section 1129(a)(2) indicate that this section principally embodies the disclosure and solicitation requirements of section 1125 of the Bankruptcy Code.[41] The Debtors have complied with section 1129(a)(2) of the Bankruptcy Code by distributing their Disclosure Statement and soliciting acceptances of the Plan through their Voting Agent as authorized by the Order dated January 29, 2010 [Docket No. 1289] approving the Disclosure Statement and the Solicitation Procedures. The Debtors have also satisfied section 1125 by obtaining Bankruptcy Court approval of the Disclosure Statement as containing adequate information, and the Debtors have complied with all noticing, solicitation and tabulation requirements described in the Solicitation Procedures.

---

[39] See id. § 11.4.

[40] See id.; see also Hong Decl. ¶ 36.

[41] See In re WorldCom, Inc., No. 02-13533, 2003 WL 23861928, at *49 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that section 1129(a)(2) requires plan proponents to comply with applicable Bankruptcy Code provisions, including "disclosure and solicitation requirements under sections 1125 and 1126").

## C. The Plan Has Been Proposed in Good Faith and not by Any Means Forbidden by Law (Section 1129(a)(3)).

Section 1129(a)(3) of the Bankruptcy Code requires that a plan of reorganization be "proposed in good faith and not by any means forbidden by law."[42] The section requires that a plan be "proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code."[43] Courts generally view the good faith requirement in light of the totality of the circumstances surrounding the establishment of the chapter 11 plan.[44] In assessing good faith, courts should look to a chapter 11 plan itself to determine whether it seeks relief in good faith and is otherwise consistent with the Bankruptcy Code.[45] Accordingly, where the plan satisfies the purposes of the Code and has a good chance of succeeding, the good faith requirement of section 1129(a)(3) is satisfied.[46] Failure to satisfy the section, on the other hand, generally requires a finding of "misconduct in bankruptcy proceedings, such as fraudulent misrepresentations or serious nondisclosures of material facts to the court."[47]

The Debtors have proposed the Plan in good faith, with the legitimate and honest purposes of effecting an orderly liquidation of the Debtors' assets and an orderly distribution of the proceeds to holders of Allowed Claims pursuant to the Plan.[48] The Plan is the product of comprehensive and arm's-length negotiations among the Debtors, the Pre-Petition Term Agent in favor of the Pre-Petition Term Lenders, the Committee, and certain other major stakeholders in this case. The support of the Plan by a majority of the Debtors' major creditor constituencies is the best evidence that the Plan has

---

[42] 11 U.S.C. § 1129(a)(3) .

[43] In re Zenith Elecs., 241 B.R. 92, 107 (Bankr. D. Del. 1999) (internal quotation marks omitted).

[44] In re T-H New Orleans L.P., 116 F.3d 790, 802 (5th Cir. 1997).

[45] In re Madison Hotel Assocs., 749 F.2d 410, 425 (7th Cir. 1984).

[46] In re Century Glove, Inc., Nos. 90-400-SLR, 90-401-SLR, 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993) (citing In re Sun Country Dev., Inc., 764 F.2d 406, 408 (5th Cir. 1985)).

[47] In re River Vill. Assocs., 161 B.R. 127, 140 (Bankr. E.D. Pa. 1993), aff'd, 181 B.R. 795 (E.D. Pa. 1995).

[48] See Plan Arts. 7, 9; see also Hong Decl. ¶ 10.

been proposed in good faith and treats creditors with fundamental fairness. In addition, the Plan has not been proposed by any means prohibited by law. Accordingly, the Debtors submit that the Plan complies with section 1129(a)(3) of the Bankruptcy Code.

### D. The Plan Provides for Bankruptcy Court Approval of Certain Administrative Payments (Section 1129(a)(4)).

Section 1129(a)(4) of the Bankruptcy Code requires bankruptcy court approval of certain professional fees and expenses paid by the plan proponent, by the debtor, or by a person issuing securities or acquiring property under the plan. Specifically, section 1129(a)(4) provides that:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.[49]

This section of the Bankruptcy Code has been construed to require that all payments of professional fees that are made from estate assets be subject to review and approval by the Court as to their reasonableness.[50]

All payments made or to be made by the Debtors for services rendered and expenses incurred in connection with the Chapter 11 Cases have been approved by, or are subject to approval of, the Court as reasonable. In particular, Article 2 of the Plan provides for the payment of only Allowed Administrative Expense Claims and Professional Claims.[51] Finally, the Bankruptcy Court will retain jurisdiction after the Effective Date to grant or deny applications for allowance of compensation or

---

[49] 11 U.S.C. § 1129(a)(4).

[50] See, e.g., Lisanti v. Lubetkin (In re Lisanti Foods, Inc.), 329 B.R. 491, 503 (D.N.J. 2005); WorldCom, 2003 WL 23861928, at *54; In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 760 (Bankr. S.D.N.Y. 1992).

[51] See Plan Art. 2; see also In re Elsinore Shore Assocs., 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (holding that requirements of section 1129(a)(4) were satisfied where the plan provided for payment of only "allowed" administrative expenses).

payment of expenses authorized pursuant to the Bankruptcy Code or the Plan.[52] Thus, the Plan complies fully with the requirements of section 1129(a)(4).

## E. The Debtors Have Disclosed the Identity and Affiliations of the Liquidating Trustee (Section 1129(a)(5)).

Section 1129(a)(5)(A) of the Bankruptcy Code provides that a court may confirm a plan only if the plan proponent discloses "the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan."[53] The Liquidating Trustee, Larry Waslow, was identified in the Debtors' Disclosure Statement. Mr. Waslow was appointed by the Creditors' Committee and consented to by the Prepetition Term Agent on behalf of the Prepetition Term Lenders.

## F. The Plan Does not Require Governmental Regulatory Approval (Section 1129(a)(6)).

The Bankruptcy Code permits confirmation of a plan only if any regulatory commission that will have jurisdiction over the debtor subsequent to confirmation has approved any rate change provided for in the debtor's plan.[54] Section 1129(a)(6) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases because the Debtors' rates are not subject to approval of any governmental regulatory commission.

## G. The Plan Is in the Best Interests of Creditors and Interest Holders (Section 1129(a)(7)).

The Bankruptcy Code requires that a plan be in the best interests of creditors and equity holders.[55] The section 1129(a)(7) "best interests" test requires that, with respect to each class, each holder of a claim or an equity interest in such class either:

---

[52] See Plan Art. 12.

[53] 11 U.S.C. § 1129(a)(5)(A).

[54] 11 U.S.C. § 1129(a)(6).

[55] Id. § 1129(a)(7).

DB02:9373052.3

068417.1001

(i)      has accepted the plan; or

(ii)     will receive or retain under the plan . . . property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of [the Bankruptcy Code].[56]

The best interests test applies to individual dissenting holders of claims and interests rather than classes,[57] and is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's plan of reorganization.[58] As the language of section 1129(a)(7) makes clear, the best interests test applies only to non-accepting impaired claims or interests; if a class of claims or interests unanimously approves a plan, the best interests test is deemed satisfied for all members of that class.[59]

To calculate the probable distribution to holders of each Impaired Class of Claims and Interests if the Debtors were liquidated under chapter 7, a bankruptcy court must first determine the aggregate dollar amount that would be generated from the debtors' assets if their chapter 11 cases were converted to chapter 7 cases under the Bankruptcy Code.[60] Because the Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the best interests test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Plan.[61] However, the Debtors believe that in a chapter 7 liquidation, there would be additional

---

[56]  Id. § 1129(a)(7)(A).

[57]  Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 441-42 n. 13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan.").

[58]  See In re Adelphia Commc'ns Corp., 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (section 1129(a)(7) satisfied where impaired holder of claim would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation").

[59]  Drexel Burnham Lambert, 138 B.R. at 761.

[60]  See Adelphia, 368 B.R. at 251-54.

[61]  See id.

costs and expenses that the Debtors would incur as a result of the ineffectiveness associated with replacing existing management and professionals in a chapter 7 case.[62]

To find that a plan satisfies the best interests test, the Bankruptcy Court must: (a) estimate the cash liquidation proceeds that a chapter 7 trustee would generate if each of the debtors' Chapter 11 cases were converted to a chapter 7 case and the assets of such Debtors' estates were liquidated; (b) determine the liquidation distribution that each non-accepting holder of a claim or an equity interest would receive from such liquidation proceeds under the priority scheme dictated in chapter 7; and (c) compare such holder's liquidation distribution to the distribution under the plan that such holder would receive if the plan were confirmed and consummated.[63]

Costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as compensation of counsel and other professionals retained by the trustee, asset disposition expenses, all unpaid expenses incurred by the Debtors in their Chapter 11 Cases (such as compensation of attorneys, financial advisors and accountants) that are allowed in the chapter 7 cases, litigation costs, and claims arising from the operations of the Debtors during the pendency of the Chapter 11 Cases.

Attached as <u>Exhibit C</u> to the Disclosure Statement is a liquidation analysis (the "<u>Liquidation Analysis</u>") which shows (a) the expected recoveries if these cases were converted to Chapter 7 and (b) the expected recoveries under the Plan. Based upon the Liquidation Analysis, the Debtors believe that anticipated recoveries to each Class of Impaired Claims under the Plan implies a greater or equal recovery to holders of Claims in Impaired Classes than the recovery available in a chapter 7

---

[62]  <u>Cf</u>. <u>id.</u> at 254 ("[T]he chapter 7 trustee's advisors would be entitled to reasonable compensation for services rendered and related expenses incurred, which would be entitled to treatment as administrative expense claims. Given the amount of time such professionals would be required to devote to become familiar with the Debtors and the issues related to these cases, such fees and costs would reduce overall recoveries." (footnote omitted)).

[63]  <u>See</u> <u>id.</u> at 251-52.

liquidation. Accordingly, the Debtors believe that the best interests test of section 1129(a)(7) of the Bankruptcy Code is satisfied.

### H.    Acceptance of Impaired Classes (Section 1129(a)(8)).

Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.[64]  Pursuant to section 1126(c), a class of impaired claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in that class actually vote to accept the plan.[65]  A class that is not impaired under a plan, and each holder of a claim or interest in such class, is conclusively presumed to have accepted the plan.[66]  Conversely, a class is deemed to have rejected a plan if the plan provides that the holders of claims or interests of such class are not entitled to receive or retain any property under the plan on account of such claims or interests.[67]

As set forth in the Voting Report, Classes 3 and 4 voted to accept the Plan.  Specifically, 20 Class 3 claims in the amount of $131,828,682.18 voted to accept the Plan, and no claims in Class 3 voted to reject the Plan.  Accordingly, 100% of the voting Class 3 creditors voted to accept the Plan. 88 Class 4 claims in the amount of $47,684,423.92 voted to accept the Plan, and 10 Class 4 claims in the amount of $6,404,450.26 voted to reject the Plan.  Accordingly, 94.95% of the voting Class 4 creditors voted to accept the Plan, and those creditors held 88.16% of the total dollar amount of such claims.

Thus, the only Impaired Classes not voting to accept the Plan are the Classes statutorily deemed to reject the Plan (Classes 5, 6, 7A and 7B).  Section 1129(a)(8) is not satisfied.  Nevertheless, as

---

[64]    11 U.S.C. § 1129(a)(8).

[65]    Id. § 1126(c).

[66]    Id. § 1126(f); see also In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 290 (2d Cir. 1992) ("If the claimholder's interests are unimpaired, the claimholder is conclusively presumed to have accepted the plan, and his participation in or approval of the reorganization plan is not necessary for the plan to gain confirmation by the bankruptcy court." (internal quotation marks omitted)).

[67]    11 U.S.C. § 1126(g).

discussed more fully below, the Debtors have satisfied section 1129(a)(10) of the Bankruptcy Code—because at least one Impaired Class accepted the Plan—and section 1129(b), which allows the plan proponent to "cram down" any rejecting classes under certain conditions that are satisfied here.

### I. The Plan Complies with Statutorily Mandated Treatment of Administrative and Priority Tax Claims (Section 1129(a)(9)).

Section 1129(a)(9) of the Bankruptcy Code generally requires that persons holding claims entitled to priority under section 507(a) receive payment in full in cash unless the holder of a particular claim agrees to a different treatment with respect to such claim. As required by section 1129(a)(9) of the Bankruptcy Code, Section 2.1 of the Plan provides for full payment of Allowed Administrative Expense Claims on or as soon as reasonably practicable after the Effective Date, unless the holder of such a claim agrees to a different treatment with respect to such claim. Further, Section 2.4 of the Plan provides for full payment of Allowed Priority Tax Claims on or as soon as reasonably practicable after the Effective Date or, if applicable, in regular installment payments in accordance with section 1129(a)(9)(C),[68] unless the holder of such a claim agrees to a different treatment with respect to such claim. Therefore, the Plan complies with section 1129(a)(9) of the Bankruptcy Code.

### J. At Least One Impaired Class of Claims Has Accepted the Plan, Excluding the Acceptances of Insiders (Section 1129(a)(10)).

Section 1129(a)(10) of the Bankruptcy Code is an alternative requirement to section 1129(a)(8)'s requirement that each class of claims or interests must either accept the plan or be unimpaired under the plan. Section 1129(a)(10) provides that to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan, excluding acceptance by any insider. Here, Classes 3 and 4 voted to accept the Plan and such acceptance does not include the acceptance of a plan by an insider. Therefore, the Plan satisfies the requirement of section 1129(a)(10)

---

[68] See id. § 1129(a)(9)(C) (providing that holders of claims under 11 U.S.C. § 507(a)(8) will receive payment for such claims in regular cash installments).

### K. The Plan Is Feasible (Section 1129(a)(11)).

Section 1129(a)(11) of the Bankruptcy Code requires that the bankruptcy court find that a plan is feasible as a condition precedent to confirmation. Specifically, the bankruptcy court must determine that:

> [c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.[69]

To demonstrate that a plan is feasible, it is not necessary for a debtor to guarantee success; rather, only a reasonable assurance that the provisions of a plan can be performed is required.[70]

Here, because the Plan is a liquidating plan, there is no need to evaluate the commercial viability of the Debtors after Confirmation,[71] but the Plan must still be feasible in what it proposes to do.[72] As will be shown at the Confirmation hearing, the Debtors fully expect—and there is a high probability that the Debtors will have sufficient funds available—to meet their obligations under the Plan. Accordingly, the Plan is feasible and satisfies section 1129(a)(11) of the Bankruptcy Code.

### L. The Plan Provides for the Payment of All Fees Under 28 U.S.C. § 1930 (Section 1129(a)(12)).

Section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930. Section 2.2 of the Plan provides that all fees payable pursuant to 28 U.S.C. § 1930 shall be paid in full on or before the Effective Date.[73] The Plan, therefore, complies with section 1129(a)(12) of the Bankruptcy Code.

---

[69] Id. § 1129(a)(11).

[70] See United States v. Energy Res. Co., 495 U.S. 545, 549 (1990); IRS v. Kaplan (In re Kaplan), 104 F.3d 589, 597 (3d Cir. 1997); Clarkson v. Cooke Sales & Serv. Co. (In re Clarkson), 767 F.2d 417, 420 (8th Cir. 1985) ("[T]he feasibility test contemplates 'the probability of actual performance of the provisions of the plan. . . . The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts.'" (quoting In re Bergman, 585 F.2d 1171, 1179 (2d Cir. 1978))).

[71] Cf. In re Briscoe Enters., Ltd., II, 994 F.2d 1160, 1166 (5th Cir. 1993) (stating that reasonable assurance of commercial viability is required in case of reorganizing debtor).

[72] See Kaplan, 104 F.3d at 597; Bergman, 585 F.2d at 1179.

[73] Plan § 2.2; see also Hong Decl. ¶ 27.

**M.** **The Plan Does Not Modify Retiree Benefits (Section 1129(a)(13)).**

Section 1129(a)(13) of the Bankruptcy Code provides that a plan must provide for continued, post-confirmation payments of all retiree benefits at the levels established in accordance with section 1114 of the Bankruptcy Code. The Debtors do not have any obligations on account of retiree benefits (as such term is used in section 1114) and, therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

**N.** **The Plan Satisfies the "Cram Down" Requirements (11 U.S.C. § 1129(b)).**

Two of the Impaired Classes (Classes 3 and 4) have voted to accept the Plan. However, Classes 5, 6, 7A and 7B were deemed to reject the Plan, requiring the Debtors to "cram down" these Classes pursuant to section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code provides that if all applicable requirements of section 1129(a), other than section 1129(a)(8), are met, a plan may be confirmed so long as it does not discriminate unfairly and is fair and equitable with respect to each class of claims and interests that is impaired and has not accepted the plan.[74] Thus, to confirm a plan that has not been accepted by all impaired classes, the plan proponent must show that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.[75] The Debtors' satisfaction of these conditions is discussed in detail below.

**1.** **The Plan Is Fair and Equitable with Respect to Each Impaired Class that Has Not Voted to Accept the Plan.**

Sections 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii) provide that a plan is fair and equitable with respect to a class of impaired unsecured claims or interests if the plan provides that the holder of any claim or interest that is junior to the claims or interests of such class will not receive or retain under the plan on account of such junior claim or interest any property. This central tenet of bankruptcy law—

---

[74] See 11 U.S.C. § 1129(b).

[75] See John Hancock Mut. Life, 987 F.2d at 157 n.5 ("Under [section 1129(b) ], the plan must also satisfy all of the requirements of [section 1129(a)] except for subsection (a)(8) . . . and must not 'discriminate unfairly' against and must be 'fair and equitable' with respect to all impaired classes that do not approve the plan.").

DB02:9373052.3

068417.1001

the "absolute priority rule"—requires that, if the holders of claims or interests in a particular class that votes to reject a plan receive less than full value for their interests, then no holder of claims or interests in a junior class may receive property under the plan.[76] Another condition under the absolute priority rule is that senior classes cannot receive more than a 100 percent recovery for their claims.[77]

The Plan satisfies the absolute priority rule with respect to all claims and interests. No junior holder of a claim or interest will receive any distribution unless the holders of higher priority claims receive the full value of their claims or the holders of such higher priority claims have consented to lesser treatment. Accordingly, the Plan satisfies the requirements of Bankruptcy Code sections 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii) and is fair and equitable with respect to all classes of claims and interests.

### 2. The Plan Does Not Unfairly Discriminate with Respect to Each Impaired Class that Has Not Voted to Accept the Plan.

The Plan also does not discriminate unfairly with respect to Impaired Classes that have rejected the Plan. The Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists.[78] Rather, courts typically examine the facts and circumstances of the particular case to determine whether unfair discrimination exists.[79] At a minimum, however, the unfair

---

[76] 203 N. LaSalle, 526 U.S. at 441-42 (explaining that, under the absolute priority rule, "a plan may be found to be 'fair and equitable' only if the allowed value of the claim [in a dissenting class of impaired unsecured creditors] is to be paid in full . . . or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property'" (citations omitted)); Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 202 (1988) (stating that "the absolute priority rule provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a reorganization] plan" (internal quotation marks and citations omitted)).

[77] See In re Exide Techs., 303 B.R. 48, 61 (Bankr. D. Del. 2003); In re Genesis Health Ventures, Inc., 266 B.R. 591, 612 (Bankr. D. Del. 2001).

[78] See In re 203 N. LaSalle St. Ltd. P'ship., 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established"), rev'd on other grounds sub nom. Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434 (1999).

[79] See In re Bowles, 48 B.R. 502, 507 (Bankr. E.D. Va. 1985) (explaining that "whether or not a particular plan does [unfairly] discriminate is to be determined on a case-by-case basis"); In re Freymiller Trucking, Inc., 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (finding that determination of unfair discrimination requires court to "consider all aspects of the case and the totality of all the circumstances").

discrimination standard prevents creditors and interest holders with similar legal rights from receiving materially different treatment under a proposed plan without compelling justifications for doing so.[80]

The Plan does not unfairly discriminate with respect to Impaired Classes and the cram down test is thus satisfied. Accordingly, the Plan should be confirmed.

**O.     The Purpose of the Plan Is Not the Avoidance of Taxes or the Avoidance of the Securities Laws (11 U.S.C. § 1129(d))**

"[O]n request of a party in interest that is a governmental unit, the court may not confirm a plan if the principle purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."[81] The primary purpose of the Plan is not the avoidance of taxes or the avoidance of the application of the Securities Laws. Further, no party currently objects to Confirmation of the Plan on the basis of section 1129(d). Accordingly, section 1129(d) offers no bar to the Confirmation of the Plan.

## RESOLUTION OF OBJECTIONS TO CONFIRMATION

On or prior to March 4, 2010, seven (7) objections to Confirmation of the Plan (collectively, the "**Objections**") were timely filed before the Plan Objection Deadline by: (i) the Treasurer of Douglas County, Colorado, (ii) the United States Internal Revenue Service, (iii) the Texas Comptroller of Public Accounts, (iv) Pima County, Arizona, (v) the Travis County Tax Assessor-Collector, (vi) the Katy Independent School District, and (vii) United States Customs and Border Protection.[82] As discussed below, as of the filing of this Memorandum, the Debtors have resolved all Objections except for the Objections of the IRS and Customs, which the Debtors hope to resolve prior to the Confirmation Hearing.

---

[80] See In re Ambanc La Mesa Ltd. P'ship, 115 F.3d 650, 654-55 (9th Cir. 1997); In re Aztec Co., 107 B.R. 585, 589-91 (Bankr. M.D. Tenn. 1989); In re Johns-Manville Corp., 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986).

[81] 11 U.S.C. § 1129(d).

[82] A chart providing a summary of the Objections and the Debtors' responses thereto is attached hereto as Exhibit B.

### i. Douglas County

The Objection by the Treasurer of Douglas County, Colorado, primarily relates to the treatment

of its claim for *ad valorem* commercial personal property taxes under the Plan. [Docket No. 1236].

On January 26th, 2010, the Debtors and Douglas County entered into a stipulation which resolved this

objection in its entirety.

### ii. Internal Revenue Service

The Objection of the Internal Revenue Service (the "IRS") primarily relates to: (a) the

treatment of its priority tax claim under the Plan; (b) the third party non-debtor exculpation, limitation

of liability, injunction and release provisions; and (c) the setoff and recoupment provisions of the Plan.

[Docket No. 1246].

In an attempt to resolve this Objection, the Debtors have inserted the following clarifying

language into the Confirmation Order:

> Notwithstanding any provision to the contrary in the Plan, the Order
> confirming the Plan and any documents implementing the Plan, nothing
> shall: (1) affect the rights of the Internal Revenue Service ("IRS") to
> pursue to the extent allowed by non-bankruptcy law any non-debtors for
> any liabilities that may be related to any federal tax liabilities owed by
> the Debtors; (2) affect the ability of the Bureau of Customs and Border
> Protection ("Customs") to make demand on, be paid by or otherwise
> pursue any sureties that are jointly and severally liable with the debtors
> for any debt owed to Customs and furthermore, nothing shall release or
> discharge or expand any claims against non-debtor third parties or enjoin
> or restrain Customs from enforcing any action against non-debtor third
> parties that may arise as a result of the exercise of any Customs' police
> and regulatory power; or (3) affect the IRS' and Customs' rights or
> ability to assert setoff and recoupment or the Debtors', the Pre-Petition
> Term Agent's, the Pre-Petition Term Lenders', and/or the Committee's
> rights or ability to object to such setoff and recoupment. The Allowed
> Priority Tax Claim of the IRS in the amount of $11,118.50 ("IRS Claim")
> shall be paid by offsetting the IRS Claim against the refund of overpaid
> U.S. Corporation Income Taxes for the 2005 tax year owed to the
> Debtors by the IRS in the amount of $201,762.00 plus interest
> ("Refund"), and the balance of the Refund shall be paid to the Debtors
> within 10 business days of the Confirmation Hearing. To the extent the
> Allowed Customs Priority Tax Claims are not paid in full in cash on the
> Effective Date from Other Asset Proceeds or satisfied from any letters of
> credit or other security for such Allowed Claims, payments of the

Allowed Customs Priority Tax Claims will be paid in equal quarterly installments over a period not to exceed five years from the petition date and interest shall accrue on such claims from the Effective Date at the rate and method set forth in 26 U.S.C. Sections 6621 and 6622 solely from Other Asset Proceeds. To the extent the IRS or Customs has a valid, perfected oversecured claim, such claim shall continue to accrue interest at the rate and method set forth in 26 U.S.C. Sections 6621 and 6622. Further, the Debtors, the Reorganized Debtors and the Liquidating Trustee agree that they will timely file or cause to be filed all required federal tax returns, that the IRS shall not be bound by any characterization of any transaction or the valuation of any asset for tax purposes, and that they shall otherwise comply with the provisions of the Internal Revenue Code. The deadline for the IRS to file its administrative expense claims, if any, shall be 120 days from the date of filing with the IRS the last federal tax return which affects the post-petition period of the Debtors' bankruptcy case.

The Debtors are in the process of discussing this language with counsel for the IRS and are hopeful that the objection of the IRS will be resolved in advance of the Confirmation Hearing.

### iii. Texas Comptroller of Public Accounts

The Objection of the Texas Comptroller of Public Accounts primarily relates to the treatment of its claim for sales tax under the Plan. [Docket No. 1328]. Subsequent to the filing of the Objection, the Debtors paid the Texas Comptroller of Public Accounts the amounts owed to the Texas Comptroller of Public Accounts pursuant to the *Order Granting Motion Pursuant to 11 U.S.C. §§ 105(a), 363(b), 507(a) and 541(d), (I) Authorizing Payment of Certain Taxes and Fees and (II) Authorizing and Directing Banks and Financial Institutions to Honor and Process Related Checks and Transfers* entered on June 18, 2009 [Docket No. 59].

The Debtors have received written confirmation from counsel for the Texas Comptroller of Public Accounts indicating that such payment resolves this Objection, and the Texas Comptroller of Public Accounts has withdrawn the Objection [Docket No. 1433].

DB02:9373052.3                                                                 068417.1001

### iv. Pima County

The Objection of Pima County, Arizona, primarily relates to the treatment of its claim for pre-petition personal property taxes under the Plan. [Docket No. 1373]. To resolve this Objection, the Debtors agreed to insert the following clarifying language into the Confirmation Order:

> For purposes of clarification, Section 9.6 of the Plan is not intended to, and does not, limit the right of holders of Allowed General Secured Claims to receive post-Petition Date interest if they are oversecured.

The Debtors have received written confirmation from counsel for Pima County indicating that the inclusion of this language in the Confirmation Order resolves this Objection.

### v. Travis County

The Objection of the Travis County Tax Assessor-Collector primarily relates to the treatment of its claim for pre-petition personal property taxes under the Plan. [Docket No. 1383]. To resolve this Objection, the Debtors agreed to insert the following clarifying language into the Confirmation Order:

> For purposes of clarification, Section 9.6 of the Plan is not intended to, and does not, limit the right of holders of Allowed General Secured Claims to receive post-Petition Date interest if they are oversecured.

The Debtors have received written confirmation from counsel for the Travis County Tax Assessor-Collector indicating that the inclusion of this language in the Confirmation Order resolves this Objection.

### vi. Katy Independent School District

The Objection of the Katy Independent School District primarily relates to the treatment of its claim for pre-petition *ad valorem* taxes under the Plan. [Docket No. 1399]. To resolve this Objection, the Debtors agreed to insert the following clarifying language into the Confirmation Order:

> For purposes of clarification, Section 9.6 of the Plan is not intended to, and does not, limit the right of holders of Allowed General Secured Claims to receive post-Petition Date interest if they are oversecured.

DB02:9373052.3

068417.1001

The Debtors have received written confirmation from counsel for the Katy Independent School District indicating that the inclusion of this language in the Confirmation Order resolves this Objection. Additionally, this Objection was withdrawn on March 11, 2010. Notice of Withdrawal of Objection of Katy Independent School District to Debtors' First Amended Joint Plan of Liquidation [Docket No. 1415].

### vii. United States Customs and Border Protection

The Objection of the United States' Customs and Border Protection ("Customs") primarily relates to: (a) the treatment of its priority prepetition claims under the Plan; (b) the third party non-debtor exculpation, limitation of liability, injunction and release provisions; and (c) the setoff and recoupment provisions of the Plan. [Docket No. 1400].

In an attempt to resolve this Objection, the Debtors have inserted the following clarifying language into the Confirmation Order:

> Notwithstanding any provision to the contrary in the Plan, the Order confirming the Plan and any documents implementing the Plan, nothing shall: (1) affect the rights of the Internal Revenue Service ("IRS") to pursue to the extent allowed by non-bankruptcy law any non-debtors for any liabilities that may be related to any federal tax liabilities owed by the Debtors; (2) affect the ability of the Bureau of Customs and Border Protection ("Customs") to make demand on, be paid by or otherwise pursue any sureties that are jointly and severally liable with the debtors for any debt owed to Customs and furthermore, nothing shall release or discharge or expand any claims against non-debtor third parties or enjoin or restrain Customs from enforcing any action against non-debtor third parties that may arise as a result of the exercise of any Customs' police and regulatory power; or (3) affect the IRS' and Customs' rights or ability to assert setoff and recoupment or the Debtors', the Pre-Petition Term Agent's, the Pre-Petition Term Lenders', and/or the Committee's rights or ability to object to such setoff and recoupment. The Allowed Priority Tax Claim of the IRS in the amount of $11,118.50 ("IRS Claim") shall be paid by offsetting the IRS Claim against the refund of overpaid U.S. Corporation Income Taxes for the 2005 tax year owed to the Debtors by the IRS in the amount of $201,762.00 plus interest ("Refund"), and the balance of the Refund shall be paid to the Debtors within 10 business days of the Confirmation Hearing. To the extent the Allowed Customs Priority Tax Claims are not paid in full in cash on the Effective Date from Other Asset Proceeds or satisfied from any letters of credit or other security for such Allowed Claims, payments of

the Allowed Customs Priority Tax Claims will be paid in equal quarterly installments over a period not to exceed five years from the petition date and interest shall accrue on such claims from the Effective Date at the rate and method set forth in 26 U.S.C. Sections 6621 and 6622 solely from Other Asset Proceeds. To the extent the IRS or Customs has a valid, perfected oversecured claim, such claim shall continue to accrue interest at the rate and method set forth in 26 U.S.C. Sections 6621 and 6622. Further, the Debtors, the Reorganized Debtors and the Liquidating Trustee agree that they will timely file or cause to be filed all required federal tax returns, that the IRS shall not be bound by any characterization of any transaction or the valuation of any asset for tax purposes, and that they shall otherwise comply with the provisions of the Internal Revenue Code. The deadline for the IRS to file its administrative expense claims, if any, shall be 120 days from the date of filing with the IRS the last federal tax return which affects the post-petition period of the Debtors' bankruptcy case.

The Debtors are in the process of discussing this language with counsel for Customs and are hopeful that the objection of Customs will be resolved in advance of the Confirmation Hearing.

## CONCLUSION

For the reasons set forth herein, the Debtors submit that the Plan fully satisfies all applicable requirements of the Bankruptcy Code and respectfully request that the Court confirm the Plan.

LATHAM & WATKINS LLP
David S. Heller, Esq.
Josef S. Athanas, Esq.
Suite 5800
233 South Wacker Drive
Chicago, Illinois 60606
(312) 876-7700

-and-

_____
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
YOUNG, CONWAY, STARGATT & TAYLOR LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

*Attorneys for the Debtors and
Debtors-in-Possession*

Dated: March 16, 2010