# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EBHI HOLDINGS, INC., et al.,[1] | ) | Case No. 09-12099 (MFW) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | **Docket Ref. No. 1269** |
| | ) | |
| ------------------------------------------------ | ) | |

---

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING FIRST AMENDED JOINT PLAN OF LIQUIDATION OF EBHI HOLDINGS, INC., *ET AL.*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: EBHI Holdings, Inc. f/k/a Eddie Bauer Holdings, Inc., a Delaware corporation (2352); Amargosa, Inc. f/k/a Eddie Bauer, Inc., a Delaware corporation (9737); Gobi Fulfillment Services, Inc. f/k/a Eddie Bauer Fulfillment Services, Inc., a Delaware corporation (0882); Arabian Diversified Sales, LLC f/k/a Eddie Bauer Diversified Sales, LLC, a Delaware limited liability company (1567); Gibson Services, LLC f/k/a Eddie Bauer Services, LLC, an Ohio limited liability company (disregarded); Karakum International Development, LLC f/k/a Eddie Bauer International Development, LLC, a Delaware limited liability company (1571); Simpson Information Technology, LLC f/k/a Eddie Bauer Information Technology, LLC, a Delaware limited liability company (disregarded); Sandy Financial Services Acceptance Corporation f/k/a Financial Services Acceptance Corporation, a Delaware corporation (7532); and Sonoran Acceptance Corporation f/k/a Spiegel Acceptance Corporation, a Delaware corporation (7253). The mailing address for EBHI Holdings, Inc. is 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004.

# INTRODUCTION

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") having proposed the *First Amended Joint Plan of Liquidation of EBHI Holdings, Inc., et al.* dated January 26, 2010 [docket no. 1269], and as described herein (including all exhibits thereto, and as modified hereby, the "**Plan**");[2] the Court having entered its *Order (A) Approving the Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline and Other Dates, (C) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the Plan and for Filing Objections to the Plan and (D) Approving the Manner and Forms of Notice and Other Related Documents* dated January 28, 2010 [docket no. 1289] (the "**Disclosure Statement Order**"), by which the Court, among other things, approved the Debtors' *Disclosure Statement for the First Amended Joint Plan of Liquidation of EBHI Holdings, Inc., et al.* [docket no. 1270] (the "**Disclosure Statement**"), established procedures for the solicitation and tabulation of votes to accept or reject the Plan, scheduled a hearing on confirmation of the Plan and approved related notice procedures; Kurtzman Carson Consultants, LLC ("**KCC**"), the Debtors' notice, claims and solicitation agent in respect of the Plan, having filed the *Certification of Michael J. Paque with Respect to the Tabulation of Votes on the First Amended Joint Plan of Liquidation of EBHI Holdings, Inc., et al.* [docket no. 1435] (the "**Voting Affidavit**") on March 15, 2010; the Court having established in the Disclosure Statement Order March 18, 2010 at 3:00

---

[2] Unless otherwise specified, capitalized terms and phrases used herein have the meanings assigned to them in the Plan. The rules of interpretation set forth in Section I.C of the Plan shall apply to these Findings of Fact, Conclusions of Law and Order (this "**Confirmation Order**"). In addition, in accordance with Section I.A of the Plan, any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules (each as hereinafter defined), shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control. A copy of the Plan is attached hereto as Exhibit A and incorporated herein by reference.

p.m. Eastern Time as the date and time of the hearing pursuant to section 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "**Bankruptcy Code**"), to consider confirmation of the Plan (the "**Confirmation Hearing**"); affidavits of service of the solicitation materials with respect to the Plan having been executed by KCC with respect to the mailing of notice of the Confirmation Hearing and solicitation materials in respect of the Plan in accordance with the Disclosure Statement Order (collectively, the "**Affidavits of Service**") and having been filed with the Court on or about February 16, 2010; verification of publication of the *Notice of (A) Plan Confirmation Hearing, (B) Objection and Voting Deadlines and (C) Solicitation and Voting Procedures* (the "**Affidavit of Publication**") having been filed with the Court on February 10, 2010 with respect to the publication of notice of the Confirmation Hearing and certain related matters in the national edition of *USA Today* in accordance with the Disclosure Statement Order; the Court having reviewed the Plan, the Disclosure Statement, the Disclosure Statement Order, the Voting Affidavit, the Affidavits of Service, the Affidavit of Publication, and the other papers before the Court in connection with the confirmation of the Plan; the Court having heard the statements of counsel in support of and in opposition to confirmation at the Confirmation Hearing, as reflected in the record at the Confirmation Hearing; the Court having considered all testimony presented and evidence admitted at the Confirmation Hearing; the Court having taken judicial notice of the papers and pleadings on file in these Chapter 11 Cases; and the Court finding that (i) notice of the Confirmation Hearing and the opportunity of any party in interest to object to Confirmation was adequate and appropriate, in accordance with Bankruptcy Rule 2002(b) and the Disclosure Statement Order, as to all parties to be affected by the Plan and the transactions contemplated thereby and (ii) the legal and factual bases set forth in the applicable papers and at the Confirmation Hearing, and as set forth in this Confirmation Order,

establish just cause for the relief granted herein; the Court hereby makes the following Findings

of Fact, Conclusions of Law and Order:[3]

## I.  FINDINGS OF FACT.

### A.  JURISDICTION AND CORE PROCEEDING.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtors were and are

qualified to be debtors under section 109 of the Bankruptcy Code.

### B.  VENUE.

On June 17, 2009 (the "**Petition Date**"), the Debtors commenced their

reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy

Code. Venue in the District of Delaware of the Chapter 11 Cases was proper as of the Petition

Date and continues to be proper pursuant to 28 U.S.C. § 1408 and 1409.

### C.  COMPLIANCE WITH THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE.

#### 1.  Section 1129(a)(1) - Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.

The Plan complies with all applicable provisions of the Bankruptcy Code, as

required by section 1129(a)(l) of the Bankruptcy Code, including sections 1122 and 1123 of the

Bankruptcy Code.

##### a.  Sections 1122 and 1123(a)(1)-(4) - Classification and Treatment of Claims and Interests.

Pursuant to sections 1122(a) and 1123(a)(l) of the Bankruptcy Code, Article 3 of

the Plan designates Classes of Claims and Interests, other than for Administrative Expense

---

[3]  This Confirmation Order constitutes the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. Any finding of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

Claims and Priority Tax Claims.[4]  As required by section 1122(a), each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  The Plan contains seven Classes of Claims and Interests, designated as Classes 1 through 7.  Class 7 is further subclassified into two subclasses, designated as Class 7A and Class 7B.  Such classification is proper under section 1122(a) of the Bankruptcy Code because such Claims and Interests have differing rights among each other and against the Debtors' assets or differing interests in the Debtors.  Pursuant to section 1123(a)(2) of the Bankruptcy Code, Article 4 of the Plan specifies all Classes of Claims and Interests that are not Impaired under the Plan and specifies all Classes of Claims and Interests that are Impaired under the Plan.  Pursuant to section 1123(a)(3) of the Bankruptcy Code, Article 5 of the Plan specifies the treatment of all Claims and Interests under the Plan.  Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article 5 of the Plan also provides the same treatment for each Claim or Interest within a particular Class, unless the holder of a Claim or Interest agrees to less favorable treatment of its Claim or Interest.  The Plan therefore complies with sections 1122 and 1123(a)(1)-(4) of the Bankruptcy Code.

> **b.**  **Section 1123(a)(5) - Adequate Means for Implementation of the Plan.**

Article 7 and various other provisions of the Plan provide adequate means for the Plan's implementation.  Those provisions relate to, among other things: (i) the establishment of the Liquidating Trust; (ii) the cancellation of the Indenture; (iii) substantive consolidation of certain Claims against the Debtors for Plan purposes; (iv) the dissolution of the Debtors; and

---

[4]  Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not required to be classified.  Sections 2.1 and 2.4 describe the treatment under the Plan of Administrative Expense Claims and Priority Tax Claims, respectively.

(v) the closing of the Chapter 11 Cases. The Plan therefore complies with section 1123(a)(5) of the Bankruptcy Code.

      **c.**      **Section 1123(a)(6) - Prohibition Against the Issuance of Nonvoting Equity Securities and Adequate Provisions for Voting Power of Classes of Securities.**

Because the Plan contemplates (i) the transfer of all of the Debtors' assets to the Liquidating Trust, (ii) the dissolution of the Debtors' corporate existences as soon as practicable after the Effective Date, (iii) the cancellation of the Indenture, and (iv) the issuance of no new securities, the Plan does not expressly provide for the inclusion in the charters of the Debtors a provision prohibiting the issuance of nonvoting equity securities. Nonetheless, because the Plan does not provide for the issuance of any securities, the issuance of nonvoting securities is impossible. Therefore, the Plan satisfies the requirement of section 1123(a)(6) of the Bankruptcy Code.

      **d.**      **Section 1123(a)(7) - Selection of Directors and Officers in a Manner Consistent with the Interest of Creditors and Equity Security Holders and Public Policy.**

As soon as practicable after the Effective Date, each of the Debtors will be dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; provided, however, that pursuant to section 1124(b) of the Bankruptcy Code, after the Effective Date the Liquidating Trustee shall be authorized to file each Debtor's final tax returns, and shall be authorized to file and shall file with the official public office for keeping corporate records in each Debtor's state of incorporation a certificate of dissolution or equivalent document. Such a certificate of dissolution may be executed by the Liquidating Trustee without need for any action or approval by the shareholders or Board of Directors of any Debtor. Following Confirmation and prior to the occurrence of the Effective Date, the then-current officers and directors of each of the

Debtors shall continue in their respective capacities and the Debtors shall execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan. On and after the Effective Date, all such officers and directors shall be deemed to have resigned. The Liquidating Trustee has ample liquidation experience and was chosen by the Creditors' Committee. The Liquidating Trust Committee that oversees the Liquidating Trustee will be comprised of members appointed by the Creditors' Committee. The Plan therefore complies with section 1123(a)(7) of the Bankruptcy Code, as appropriate for a liquidating plan, in a manner consistent with the interests of creditors and equity security holders and public policy.

> **e.** **Section 1123(b)(1)-(2) - Impairment of Claims and Interests and Assumption, Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases.**

In accordance with section 1123(b)(l) of the Bankruptcy Code, Article 4 of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests. In accordance with section 1123(b)(2) of the Bankruptcy Code, Article 6 of the Plan provides for the rejection of all executory contracts and unexpired leases of the Debtors as of the Effective Date, except for those executory contracts and unexpired leases that (a) are assumed pursuant to the Plan, (b) have been assumed, assumed and assigned or rejected pursuant to previous orders of the Bankruptcy Court, or (c) are the subject of a pending motion before the Bankruptcy Court with respect to the assumption or assumption and assignment or rejection of such executory contracts and unexpired leases. The Debtors specifically designated certain executory contracts or unexpired leases to be assumed in Exhibit 3 to the Plan and have not further amended Exhibit 3 to the Plan. The Plan is therefore consistent with sections 1123(b)(1)-(2) of the Bankruptcy Code.

**f.**     **Section 1123(b)(3) - Retention, Enforcement and Settlement of Claims held by the Debtors.**

Pursuant to section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided in the Plan or this Confirmation Order, after the transfer of the Assets to the Liquidating Trust pursuant to Section 7.2.3 of the Plan, the Liquidating Trustee (and to the extent retained by the Liquidating Trust to perform such work, any other Person) will have the right to enforce any and all causes of action against any Entity and rights of the Debtors that arose before or after the Petition Date, including but not limited to the rights and powers of a trustee and debtor-in-possession, against any Entity whatsoever, including but not limited to all avoidance powers granted to the Debtors under the Bankruptcy Code and all causes of action and remedies granted pursuant to sections 502, 506, 510, 541, 542, 543, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, but excluding Released Claims; provided, however, that, pursuant to Section 8.1 of the Plan as amended by this Order, the Pre-Petition Term Agent will have the right, on behalf of the Pre-Petition Term Lenders, to (i) enforce Liens on the Term Lender Assets or (ii) pursue any and all causes of action to preserve, recoup, or recover any Term Lender Assets, in each case against any Entity whatsoever (so long as it is not a Released Claim), including, but not limited to, exercising the rights and powers of a trustee and debtor-in-possession solely with respect to the Term Lender Assets and the Pre-Petition Term Agent shall be deemed to have standing with respect to the exercise of such rights and powers.

Unless otherwise ordered by the Court after notice and a hearing, from and after the Effective Date of the Plan, the Liquidating Trust, through the Liquidating Trustee, shall be the sole representative of the Debtors' Estates for all purposes, including, without limitation, investigating, settling, compromising, objecting to, and litigating in the Court or on appeal (or pursuant to a withdrawal of the reference of jurisdiction) objections to Claims, regardless of

7

whether such objections were filed by the Debtors or the Creditors' Committee, except as it may relate to the Pre-Petition Term Agent's rights to enforce Liens on the Term Lender Assets or pursue causes of action to preserve, recoup, or recover any Term Lender Assets, in which case the Pre-Petition Term Agent may pursue its rights pursuant to Section 8.1 of the Plan as amended by this Order. Objections to any Administrative Expense Claims, including Claims of all Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b) or 1103 for services rendered on or before the Effective Date (including any compensation requested by any Professional or any other Entity for making a substantial contribution in the Chapter 11 Cases) must be Filed and served on the claimant no later than ninety (90) days after the Administrative Expense Claims Bar Date, which date may be extended by application to the Bankruptcy Court. Objections to any Claim other than an Administrative Expense Claim must be Filed and served on the claimant no later than the later of (x) ninety (90) days after the date the Claim is Filed or (y) ninety (90) days after the Effective Date or such other date as may be ordered from time to time by the Court. No other deadlines by which objections to Claims must be Filed have been established in these Chapter 11 Cases. In light of the foregoing, the Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.

g.   **Section 1123(b)(4) – Sale of All or Substantially All of the Property of the Estate.**

Consistent with section 1123(b)(4) of the Bankruptcy Code, the Plan effectuates the distribution of the proceeds of the sale of all or substantially all property of the Estates under the Plan or previous sale orders of the Court. The Plan is therefore consistent with section 1123(b)(4) of the Bankruptcy Code.

**h.**      **Section 1123(b)(5) - Modification of the Rights of Holders of Claims.**

Article 5 of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of each Class of Claims, and therefore, the Plan is consistent with section 1123(b)(5) of the Bankruptcy Code.

**i.**      **Section 1123(b)(6) - Other Provisions Not Inconsistent with Applicable Provisions of the Bankruptcy Code; Substantive Consolidation.**

The Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code, including: (i) the provisions of Article 7 of the Plan regarding the means for implementing the Plan; (ii) the provisions of Article 6 of the Plan governing the assumption, assumption and assignment or rejection of executory contracts and unexpired leases; (iii) the provisions of Article 9 of the Plan governing distributions on account of Allowed Claims, particularly as to the timing and calculation of amounts to be distributed; (iv) the provisions of Section 7.1 of the Plan with respect to the substantive consolidation of the Debtors with respect to the treatment of all Claims and Interests except for General Secured Claims in Class 2; (v) the provisions of Section 11.4 of the Plan regarding the injunction with respect to claims and interests treated under the Plan; (vi) the provisions of Sections 11.5 and 11.6 of the Plan regarding the releases with respect to the Debtor Releasees and the Creditor Releasees; (vii) the provisions of Section 11.8 of the Plan regarding the limitation on future funding by the Pre-Petition Term Agent and the Pre-Petition Term Lenders; and (viii) the provisions of Article 12 of the Plan regarding retention of jurisdiction by the Court over certain matters after the Effective Date. The Plan is therefore consistent with section 1123(b)(6) of the Bankruptcy Code.

**j.    Section 1123(d) - Cure of Defaults.**

Section 6.3 of the Plan provides for the satisfaction of cure amounts associated with each Remaining Contract to be assumed pursuant to the Plan in accordance with section 365(b)(l) of the Bankruptcy Code.  The Plan is therefore in compliance with section 1123(d) of the Bankruptcy Code.

**2.    Section 1129(a)(2) - Compliance with Applicable Provisions of the Bankruptcy Code.**

The Debtors have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.  The Disclosure Statement and the procedures by which the ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted and in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018 and the Disclosure Statement Order. Consistent with Section 11.3 of the Plan, the Debtors and their respective members, officers, directors, shareholders, employees, representatives, advisors, attorneys, financial advisors, investment bankers, or agents, as applicable, have acted in "good faith," within the meaning of section 1125(e) of the Bankruptcy Code.  The Plan therefore complies with section 1129(a)(2) of the Bankruptcy Code.

**3.    Section 1129(a)(3) - Proposal of the Plan in Good Faith.**

The Debtors proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the formulation of the Plan.  Based on the Disclosure Statement and the evidence presented at the Confirmation Hearing, the Court finds and concludes that the Plan has been proposed with the legitimate and honest purpose of liquidating

the Debtors' estates and maximizing the returns available to creditors of the Debtors. Moreover, the Plan itself and the arms' length negotiations among the Debtors, the Creditors' Committee, the Pre-Petition Term Lenders and the Debtors' other constituencies leading to the Plan's formulation, as well as the overwhelming support of creditors for the Plan, provide independent evidence of the Debtors' good faith in proposing the Plan.

### 4. Section 1129(a)(4) - Bankruptcy Court Approval of Certain Payments as Reasonable.

Section 2.3 of the Plan provides that, on or prior to the Administrative Expense Claims Bar Date, each Professional shall File with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date. Within ten (10) days after entry of a Final Order with respect to its final fee application, the Liquidating Trustee shall pay the Allowed Claims of each Professional solely from Cash in the Carve-Out Escrow or from Other Assets Proceeds.

The Court will review the reasonableness of such applications under sections 328 and 330 of the Bankruptcy Code and any applicable case law. The Court has authorized periodic payment of the fees and expenses of Professionals incurred in connection with these Chapter 11 Cases. All such fees and expenses, however, remain subject to final review for reasonableness by the Court. Thus, the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

### 5. Section 1129(a)(5) - Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy.

Section 7.2 of the Plan provides that, on the Effective Date, the Debtors shall execute the Liquidating Trust Agreement. The Liquidating Trustee shall be Larry Waslow, a restructuring professional designated by the Creditors' Committee. The appointment of the

Liquidating Trustee is consistent with the interests of holders of Claims and Interests and with public policy. The Plan therefore complies with section 1129(a)(5) of the Bankruptcy Code.

### 6. Section 1129(a)(6) - Approval of Rate Changes.

After the Confirmation Date, the Debtors will not have any businesses involving the establishment of rates over which any regulatory commission has or will have jurisdiction. Therefore, the provisions of section 1129(a)(6) do not apply to the Plan.

### 7. Section 1129(a)(7) - Best Interests of Holders of Claims and Interests.

With respect to each Impaired Class of Claims or Interests of the Debtors, each holder of a Claim or Interest in such Impaired Class has either (a) accepted or is deemed to have accepted the Plan, or (b) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code on an individual or consolidated basis. The Plan therefore complies with section 1129(a)(7) of the Bankruptcy Code.

### 8. Section 1129(a)(8) - Acceptance of Plan by Impaired Class.

Pursuant to sections 1124 and 1126 of the Bankruptcy Code: (a) as indicated in Section 4.1 of the Plan, Classes 1 and 2 are not Impaired by the Plan; (b) pursuant to the Plan's terms, Classes 1 and 2 are deemed to have accepted the Plan; and (c) as indicated in the Voting Affidavit, the requisite number and amount of creditors and claims in each of Class 3 and Class 4 as required by section 1126(c) of the Bankruptcy Code voted to accept the Plan. Because the holders of Claims and Interests in Classes 5, 6, 7A and 7B will not receive or retain any property on account of such Claims or Interests, Classes 5, 6, 7A and 7B are deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code. Notwithstanding the lack of

compliance with section 1129(a)(8) of the Bankruptcy Code with respect to Classes 5, 6, 7A and 7B, the Plan is confirmable because, as described in <u>Section I.C.14</u> below, the Plan, as modified, satisfies the "cramdown" requirements of section 1129(b) of the Bankruptcy Code with respect to such Classes. Therefore, although the Plan does not meet the requirements of section 1129(a)(8) of the Bankruptcy Code, it can be confirmed under the provisions of section 1129(b) of the Bankruptcy Code.

**9. Section 1129(a)(9) – Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

a. Article 2 of the Plan provides for treatment of Administrative Expense Claims and Priority Tax Claims, subject to certain bar date provisions consistent with Bankruptcy Rules 3002 and 3003, in the manner required by section 1129(a)(9) of the Bankruptcy Code.

b. Except as set forth in Section I.C.9.c of this Confirmation Order, pursuant to Section 2.1 of the Plan, each holder of an Allowed Administrative Expense Claim will receive on account of such Allowed Administrative Expense Claim and in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Administrative Expense Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Expense Claim, or (b) such other treatment as to which the Debtors and the holder of such Allowed Administrative Expense Claim have agreed upon in writing.

c. Pursuant to Section 2.1 of the Plan, Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreement or course of dealing relating thereto and Professional Claims shall be paid in accordance with Section 2.3 of the Plan; <u>provided</u>;

*however*, that any payments made on account of an Allowed Administrative Expense Claim shall be made solely from Other Assets Proceeds.

d.      Under Section 2.4 of the Plan, each holder of an Allowed Priority Tax Claim, at the sole option of the Debtors, shall be entitled to receive on account of such Allowed Priority Tax Claim, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Tax Claim, (a) in accordance with Bankruptcy Code section 1129(a)(9)(C), equal Cash payments made on the Effective Date or as soon as practicable thereafter in recognition of the applicable claims reconciliation process set forth in the Plan and on the last Business Day of every three (3) month period following the Effective Date, over a period not exceeding six (6) years after the assessment of the tax on which such Claim is based, totaling the principal amount of such Claim plus simple interest on any outstanding balance, compounded annually from the Effective Date, calculated at the interest rate available on ninety (90) day United States Treasuries on the Effective Date; (b) such other treatment agreed to by the holder of such Allowed Priority Tax Claim and the Debtors on or prior to the date ninety (90) days after the Effective Date, provided such treatment is on more favorable terms to the Debtors, as the case may be, than the treatment set forth in subsection (a) hereof; or (c) payment in full, in Cash to all holders of Allowed Priority Tax Claims that have not agreed to less favorable terms made on the Effective Date or as soon thereafter as is practicable in recognition of the applicable claims reconciliation process set forth in the Plan; *provided, however*, that any payment made on account of an Allowed Priority Tax Claim shall be made solely from Other Assets Proceeds.

e.      Pursuant to Section 2.5.2 of the Plan, all requests for payment of Claims by a Governmental Unit (as defined in Bankruptcy Code section 101(27)) for Taxes (and for interest and/or penalties or other amounts related to such Taxes) for any tax year or period, all

or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be Filed on or before the later of: (a) sixty (60) days following the Effective Date; or (b) to the extent applicable, ninety (90) days following the filing of a tax return for such Taxes (if such Taxes are assessed based on a tax return) for such tax year or period with the applicable Governmental Unit. Any holder of a Claim for Taxes that is required to File a request for payment of such Taxes and other amounts due related to such Taxes and which does not File such a Claim by the applicable bar date shall be forever barred from asserting any such Claim against any of the Debtors or any non-Debtor member of the Debtors' consolidated tax group, the Estates, the Liquidating Trust, the Liquidating Trustee or any other Entity, or their respective property, whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date, and shall receive no distribution under the Plan or otherwise on account of such Claim.

f.    Pursuant to Section 5.1 of the Plan, each holder of an Allowed Other Priority Claim will receive on the Effective Date, or as soon thereafter as is reasonably practicable in recognition of the applicable claims reconciliation process set forth in the Plan, (a) Cash equal to the amount of such Allowed Other Priority Claim, or (b) such other treatment as to which the Debtors and the holder of such Allowed Other Priority Claim have agreed upon in writing; provided, however, that any payment made on account of an Allowed Other Priority Claim shall be made solely from Other Assets Proceeds.

g.    In light of the foregoing, the Plan complies with section 1129(a)(9) of the Bankruptcy Code.

**10.    Section 1129(a)(10) - Acceptance by At Least One Impaired Non-Insider Class.**

As indicated in the Voting Affidavit and as reflected in the record of the Confirmation Hearing, at least one non-insider Class of Claims or Interests that is Impaired under the Plan has voted to accept the Plan. Each of Class 3 and Class 4 are Impaired and have voted to accept the Plan. The Plan therefore complies with section 1129(a)(10) of the Bankruptcy Code.

**11.    Section 1129(a)(11) Feasibility of the Plan.**

Based on the testimony at the Confirmation Hearing regarding the value of the Debtors' Assets, including, without limitation, the Term Lender Assets and the Other Assets, the Plan sets forth means of payment of the Debtors' obligations under the Plan in accordance with the Bankruptcy Code and the Bankruptcy Rules and is feasible. As the Plan and the Liquidating Trust Agreement provide for the liquidation of all of the Debtors' remaining assets, confirmation cannot be followed by any liquidation in addition to that prescribed by the Plan or the Liquidating Trust Agreement, nor would confirmation be followed by the need for further financial reorganization. The Plan therefore complies with section 1129(a)(11) of the Bankruptcy Code.

**12.    Section 1129(a)(12) - Payment of Bankruptcy Fees.**

Section 2.2 of the Plan provides that, on or before the Effective Date, all fees due and payable pursuant to 28 U.S.C. § 1930, as determined by the Court at the Confirmation Hearing, shall be paid in full, in Cash, solely from Other Assets Proceeds. The Plan therefore complies with section 1129(a)(12) of the Bankruptcy Code.

### 13. Section 1129(a)(13) - Retiree Benefits.

The Debtors are not obligated to pay retiree benefits (as defined in section 1114(a) of the Bankruptcy Code) and thus are in compliance with section 1129(a)(13) of the Bankruptcy Code.

### 14. Section 1129(b) - Confirmation of the Plan Over the Non-Acceptance of Impaired Classes.

Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that Claims and Interests in Classes 5, 6, 7A and 7B are Impaired and are deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code. Nonetheless, the Plan meets the "cramdown" requirements for confirmation under § 1129(b) of the Bankruptcy Code. Other than the requirement in section 1129(a)(8) of the Bankruptcy Code with respect to Classes 5, 6, 7A and 7B, all of the requirements of section 1129(a) of the Bankruptcy Code have been met. The Plan does not discriminate unfairly and is fair and equitable with respect to Classes 5, 6, 7A and 7B. No holders of Claims and Interests junior to the Claims and Interests in Classes 5, 6, 7A and 7B will receive or retain any property on account of their Claims and Interests, and no holders of Claims or Interests senior to the Claims and Interests in Classes 5, 6, 7A and 7B are receiving more than full payment on account of the Claims and Interests in such Classes. The Plan therefore is fair and equitable and does not discriminate unfairly with respect to each of these Classes, and therefore complies with section 1129(b) of the Bankruptcy Code.

### 15. Section 1129(d) - Purpose of Plan.

The primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and there has been no

objection filed by any governmental unit asserting such avoidance. The Plan therefore complies with section 1129(d) of the Bankruptcy Code.

## 16. Modifications to the Plan.

To the extent the terms of this Confirmation Order may be construed to constitute modifications to the Plan (the "**Plan Modifications**"), such Plan Modifications do not materially or adversely affect or change the treatment of any Claim against or Interest in any Debtor. Accordingly, pursuant to Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the solicitation of acceptances or rejections under section 1126 of the Bankruptcy Code. Disclosure of the Plan Modifications on the record at the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of these Chapter 11 Cases. All references to the Plan in this Confirmation Order shall be to the Plan as so modified.

## 17. Good Faith Participation.

Based upon the record before the Court, the Debtors, the Creditors' Committee, the Pre-Petition Term Agent, the Pre-Petition Term Lenders, and their respective members, officers, directors, shareholders, employees, representatives, advisors, attorneys, financial advisors, investment bankers and agents have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Chapter 11 Cases, and the negotiation and pursuit of confirmation of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent set forth in Section III.H of this Confirmation Order, the exculpatory and injunctive provisions set forth in Article 11 of the Plan.

## II. CONCLUSIONS OF LAW.

### A. JURISDICTION AND VENUE.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code. Venue of the Chapter 11 Cases in the United States District Court for the District of Delaware was proper as of the Petition Date, pursuant to 28 U.S.C. § 1408, and continues to be proper.

### B. COMPLIANCE WITH SECTION 1129 OF THE BANKRUPTCY CODE.

As set forth in Section I.C above, the Plan complies in all respects with the applicable requirements of section 1129 of the Bankruptcy Code.

### C. APPROVAL OF EXCULPATION AND LIMITATION OF LIABILITY PROVIDED UNDER THE PLAN AND CERTAIN OTHER MATTERS.

1. Except as specifically set forth in Section III.H below, pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), those exculpations, releases, limitations of liability, waivers, and injunctions that are specifically set forth in the Plan, including in Article 11 of the Plan, (a) are approved as integral parts of the Plan; (b) are fair, equitable, reasonable and in the best interests of the Debtors and their respective Estates and the holders of Claims and Interests; (c) are approved as fair, equitable and reasonable, pursuant to, among other authorities, section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a); and (d) are effective and binding in accordance with their terms.

2. In approving the exculpations, releases, limitations of liability and injunctions as described above, the Court has considered: (a) whether an identity of interest between the Debtors and the releasees exists, such that a suit against the releasees is a suit against the Debtors or would deplete assets of the estates; (b) the substantial contribution of the

19

releasees since the Petition Date; (c) the essential nature of Sections 11.3 to 11.8 of the Plan and Section III.H below to the approval of the Plan; and (d) that a substantial majority of the creditors support the Plan. See In re Zenith Electronics Corp., 241 B.R. 92, 110 (Bankr. D. Del. 1999) (considering similar factors to determine if release of a third party should be allowed as part of a plan).

3.     In approving the exculpations, releases, limitations of liability and injunctions described above of and from such potential claims, as described above, the Court has also considered: (a) the balance of the likelihood of success of claims asserted by the Debtors or other claimants against the likelihood of success of the defenses or counterclaims possessed by the Debtors, other claimants or other potential defendants; (b) the complexity, cost and delay of litigation that would result in the absence of these settlements, compromises, releases, waivers, discharges and injunctions; (c) the acceptance of the Plan by an overwhelming majority of the holders of Claims, as set forth in the Voting Affidavit; and (d) that the Plan, which gives effect the other compromises, releases, waivers, discharges and injunctions set forth in the Plan, is the product of extensive arms' length negotiations among the Debtors, the Creditors' Committee and other parties in interest. See Protective Comm. Stockholders of TMT Trailer Ferry Inc. v. Anderson, 390 U.S. 414, 424 (1968) (citing factors such as those set forth above to be evaluated by courts in determining whether a settlement as a whole is fair and equitable); accord Myers v. Martin (In re Martin), 91 F.3d 389, 394 (3d Cir. 1996) (setting forth similar factors to be considered in evaluating the reasonableness of a settlement).

D.     **AGREEMENTS AND OTHER DOCUMENTS.**

The Debtors have disclosed all material facts relating to the various contracts, instruments, releases, indentures and other agreements or documents and plans to be entered into, executed and delivered, adopted or amended by them in connection with the Plan, including,

without limitation, the Liquidating Trust Agreement, attached as exhibits to the Plan (collectively, the "**Plan Documents**"). Pursuant to section 303 of the General Corporation Law of the State of Delaware and any comparable provision of the business corporation laws of any other state (collectively, the "**State Reorganization Effectuation Statutes**"), as applicable, no action of the Debtors' Boards of Directors or the Liquidating Trustee will be required to authorize the Debtors to enter into, execute and deliver, adopt or amend, as the case may be, the Plan Documents, and following the Effective Date, each of the Plan Documents will be a legal, valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with the respective terms thereof. Each of the Plan Documents also shall be enforceable against the Liquidating Trust and the Liquidating Trustee from and after the Effective Date.

E.    **ASSUMPTIONS, ASSUMPTIONS AND ASSIGNMENTS AND REJECTIONS OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

Each pre- or post-Confirmation assumption, assumption and assignment or rejection of an executory contract or unexpired lease pursuant to Article 6 of the Plan, including any pre- or post-Confirmation assumption, assumption and assignment or rejection effectuated as a result of any amendment to Article 6 to the Plan, shall be legal, valid and binding upon the applicable Debtor and all non-debtor parties to such executory contract or unexpired lease, all to the same extent as if such assumption, assumption and assignment or rejection had been effectuated pursuant to an appropriate authorizing order of the Court entered prior to the Confirmation Date under section 365 of the Bankruptcy Code.

## III.  ORDER.

ACCORDINGLY, THE COURT HEREBY ORDERS THAT:

### A.  CONFIRMATION OF THE PLAN.

The Plan is confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code; provided, however, that if there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.  All objections and other responses to, and statements and comments regarding, the Plan, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing are either (a) resolved or sustained on the terms set forth herein or (b) overruled.

The failure specifically to identify or refer to any particular provision of the Plan, the Liquidating Trust Agreement or any other agreement approved by this Confirmation Order in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan, the Liquidating Trust Agreement and all other agreements approved by this Confirmation Order are approved in their entirety.

### B.  EFFECTS OF CONFIRMATION.

#### 1.  Binding Nature of Plan Terms.

Notwithstanding any otherwise applicable law, from and after the entry of this Confirmation Order, the terms of the Plan and this Confirmation Order shall be deemed binding upon (i) the Debtors, (ii) any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan), (iii) any and all non-debtor parties to executory contracts and unexpired leases with any of the Debtors, and the compromises, releases, waivers, discharges and injunctions described in Section II.C above, and

(iv) the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

## 2. Dissolution of Debtors.

As soon as practicable after the Effective Date, each of the Debtors will be dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; provided, however, that pursuant to section 1142(b) of the Bankruptcy Code, after the Effective Date, the Liquidating Trustee shall be authorized to File each Debtor's final tax returns, and shall be authorized to File and shall File with the official public office for keeping corporate records in each Debtor's state of incorporation a certificate of dissolution or equivalent document. Such a certificate of dissolution may be executed by the Liquidating Trustee without need for any action or approval by the shareholders or Board of Directors of any Debtor.

## 3. The Liquidating Trust.

a. On the Effective Date, the Debtors, on their own behalf and on behalf of the Beneficiaries, shall execute the Liquidating Trust Agreement and take all steps necessary to establish the Liquidating Trust.

b. On the Effective Date, each of the Debtors shall transfer and assign all of its respective Assets to the Liquidating Trust free and clear of all Liens, Claims, interests and encumbrances. Title to all Assets contributed to the Liquidating Trust shall vest in the Liquidating Trust on the Effective Date following the transfer. All of the Term Lender Assets transferred to the Liquidating Trust shall be transferred subject to the Liens of the Pre-Petition Term Agent in favor of the Pre-Petition Term Lenders, and the Carve-Out Escrow shall be transferred subject to the Carve Out.

c.       On and after the Effective Date, the Liquidating Trustee shall succeed to all applicable privileges of the Debtors, including, *inter alia*, the attorney-client privilege, and the Liquidating Trustee shall be authorized to exercise or waive any such privilege; <u>provided</u>, <u>however</u>, that the Pre-Petition Term Agent shall succeed to all applicable privileges of the Debtors that relate solely to any and all causes of action to preserve, recoup, or recover any Term Lender Assets, and the Pre-Petition Term Agent shall be authorized to exercise or waive any such privilege.

d.       For all purposes under the Plan and the Plan Documents, the Liquidating Trust shall act through the Liquidating Trustee.

## 4.       Transfer of Equity Interests in Canadian Subsidiaries.

On the Effective Date, (i) the Debtors' equity interests in Tenere of Canada, Inc. and Yuma Customer Services and (ii) the Debtors' claims against such entities arising from any intercompany claims, loans, notes, transfers or other obligations shall be transferred by the Debtors to the Liquidating Trust, and continue to be subject to the Liens of the Pre-Petition Term Agent in favor of the Pre-Petition Term Lenders. The Liquidating Trustee (or his duly appointed successor) shall exercise his powers as the sole shareholder to appoint himself as the sole officer and director of Tenere of Canada, Inc. and Yuma Customer Services, Inc.

## 5.       Approval of Executory Contract and Unexpired Lease Provisions and Related Procedures.

The executory contract and unexpired lease provisions of Article 6 of the Plan are specifically approved. Any executory contracts and unexpired leases of the Debtors not assumed and assigned to the Purchaser or rejected prior to the Effective Date or with respect to the which the Debtors have not Filed a Notice of Assumption and Assignment prior to the Effective Date (the "**Remaining Contracts**") shall be rejected pursuant to Section 6.5 of the Plan unless

assumed or assumed and assigned pursuant to Section 6.2 of the Plan. Notwithstanding anything in Article 6 of the Plan to the contrary, to the extent the Debtors have Filed a Notice of Assumption and Assignment prior to the Effective Date with respect to an executory contract or unexpired lease to be assumed and assigned to the Purchaser, but the Bankruptcy Court has not yet entered an order approving such assumption and assignment and fixing the cure amount therefor, any cure amount not assumed by the Purchaser in connection with the 363 Sale shall be paid solely from the Cure Escrow Deposit Account in accordance with the Sale Order.

As of the Effective Date, the Debtors shall assume or assume and assign, as applicable, pursuant to Bankruptcy Code section 365, each of the Remaining Contracts of the Debtors that are identified in Exhibit 3 to the Plan that have not expired under their own terms prior to the Effective Date.

Any monetary defaults under each Remaining Contract to be assumed under the Plan shall be satisfied, pursuant to Bankruptcy Code section 365(b)(1), in either of the following ways: (a) by payment of the amount of such monetary default, in Cash and in full on the Effective Date solely from the Cure Escrow Deposit Account or from Other Assets Proceeds; or (b) by payment of the monetary default amount on such other terms as may be agreed to by the Debtors and the non-Debtor parties to such Remaining Contract solely from the Cure Escrow Deposit Account or from Other Assets Proceeds. In the event of a dispute regarding (i) the amount or timing of any cure payments, (ii) the ability of the Debtors on or prior to the Effective Date and the Liquidating Trustee after the Effective Date, or an assignee thereof to provide adequate assurance of future performance under the Remaining Contract to be assumed or assumed and assigned, as applicable, or (iii) any other matter pertaining to assumption or assumption and assignment of the Remaining Contract to be assumed, the Debtors prior to and

on the Effective Date and the Liquidating Trustee after the Effective Date shall pay all required cure amounts, first from the Cure Escrow Deposit Account, until exhausted, and then from Other Assets Proceeds, promptly following the entry of a Final Order resolving the dispute. To the extent that any funds released from the Cure Escrow Deposit Account have been, or are, paid to the Pre-Petition Term Agent, for the benefit of the Pre-Petition Term Lenders, such funds shall not be subject to any claims of the non-Debtor parties to Remaining Contracts that are subsequently assumed.

Except as otherwise expressly set forth herein, all objections, if any, relating to the assumption, assumption and assignment, or rejection of Remaining Contracts, including but not limited to objections as to adequate assurance of future performance and/or cure amounts, are overruled. Notice of the time fixed for filing objections to such assumption, assumption and assignment, or rejection was adequate, pursuant to the terms of the Disclosure Statement Order and in accordance with the precepts of due process.

Failure to assert arrearages, damages or objections in the manner described in the Disclosure Statement Order shall constitute consent to the proposed assumption, revestment, cure or assignment on the terms and conditions provided in the Plan and in this Confirmation Order, including an acknowledgement that the proposed assumption and/or assignment provides adequate assurance of future performance and that the amount identified for "cure" in Exhibit 3 to the Plan is the amount necessary to cover any and all outstanding defaults under the Remaining Contract to be assumed, as well as an acknowledgement and agreement that no other defaults exist under such Remaining Contract.

Except for those executory contracts and unexpired leases that (i) are assumed pursuant to the Plan, (ii) have been previously assumed, assumed and assigned or rejected

pursuant to previous orders of the Court, irrespective of whether such assumption or rejection has yet to occur on the Effective Date, or (iii) are the subject of a pending motion before the Court with respect to the assumption or assumption and assignment of such executory contracts and unexpired leases as of the Effective Date, all executory contracts and unexpired leases of the Debtors shall be rejected pursuant to section 365 of the Bankruptcy Code.

6. **Prosecution of Litigation Claims by the Liquidating Trust.**

On and after the Effective Date, the Creditors' Committee shall be dissolved. The Liquidating Trustee, as the legal representative of the Liquidating Trust, shall be authorized without further order to pursue and liquidate all Litigation Claims and, in connection therewith he shall be deemed substituted as the plaintiff and a party in interest in the place and stead of the Creditors' Committee or the Debtors pursuant to Fed. R. Civ. P. 25 and Bankruptcy Rules 7025 and 9014, in any and all actions, proceedings, contested matters, applications and motions; provided, however, that, pursuant to Section 8.1 of the Plan as amended by this Order, the Pre-Petition Term Agent will have the right, on behalf of the Pre-Petition Term Lenders, to (i) enforce Liens on the Term Lender Assets or (ii) pursue any and all causes of action to preserve, recoup, or recover any Term Lender Assets, in each case against any Entity whatsoever (so long as it is not a Released Claim), including, but not limited to, exercising the rights and powers of a trustee and debtor-in-possession solely with respect to the Term Lender Assets and the Pre-Petition Term Agent shall be deemed to have standing with respect to the exercise of such rights and powers.

## C. CLAIMS, BAR DATES AND OTHER CLAIMS MATTERS.

### 1. Bar Dates for Administrative Expense Claims Other Than Tax Claims.

Other than with respect to (i) Administrative Expense Claims for which the Bankruptcy Court previously has established a bar date, and (ii) Tax Claims addressed in Section III.C.2 below, any and all requests for payment or proofs of Administrative Expense Claims, including Claims of all Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b) or 1103 for services rendered on or before the Effective Date (including any compensation requested by any Professional or any other Entity for making a substantial contribution in the Chapter 11 Cases), must be Filed and served on the Liquidating Trustee and its counsel no later than the Administrative Expense Claims Bar Date. Objections to any such Administrative Expense Claims must be Filed and served on the claimant no later than ninety (90) days after the Administrative Expense Claims Bar Date, which date may be extended by application to the Bankruptcy Court. The Liquidating Trustee shall use reasonable efforts to promptly and diligently pursue resolution of any and all disputed Administrative Expense Claims.

Holders of Administrative Expense Claims, including all Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b) or 1103 for services rendered on or before the Effective Date (including any compensation requested by any Professional or any other Entity for making a substantial contribution in the Chapter 11 Cases), that are required to File a request for payment or proof of such Claims and that do not File such requests or proofs of Claim on or before the Administrative Expense Claims Bar Date shall be forever barred from asserting such Claims

against any of the Debtors, their Estates, the Liquidating Trust, the Liquidating Trustee, any other Person or Entity, or any of their respective property.

## 2. Bar Dates for Tax Claims.

All requests for payment of Claims by a Governmental Unit (as defined in Bankruptcy Code section 101(27)) for Taxes (and for interest and/or penalties or other amounts related to such Taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be Filed on or before the later of: (a) sixty (60) days following the Effective Date; or (b) to the extent applicable, ninety (90) days following the filing of a tax return for such Taxes (if such Taxes are assessed based on a tax return) for such tax year or period with the applicable Governmental Unit. Any holder of a Claim for Taxes that is required to File a request for payment of such Taxes and other amounts due related to such Taxes and which does not File such a Claim by the applicable bar date shall be forever barred from asserting any such Claim against any of the Debtors or any non-Debtor member of the Debtors' consolidated tax group, the Estates, the Liquidating Trust, the Liquidating Trustee or any other Entity, or their respective property, whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date, and shall receive no distribution under the Plan or otherwise on account of such Claim; provided, however, that any payment made on account of such Claim shall be made solely from Other Assets Proceeds.

## 3. Bar Date for Rejection Damages Claims and Related Procedures.

If the rejection of an executory contract or unexpired lease pursuant to Section 6.5 of the Plan gives rise to a Claim for damages by the other party or parties to the executory contract or unexpired lease, such Claim must be Filed within thirty (30) days after the mailing of

notice of the entry of the Confirmation Order or such Claim shall receive no distribution under the Plan or otherwise on account of such Claim; provided, however, that any payment made on account of such Claim shall be made solely from Other Assets Proceeds.

### 4. Effect of Confirmation: 11 U.S.C. § 1141(d)(3).

The Plan cannot discharge the Debtors because: (i) the Plan provides for the liquidation of all or substantially all of the property of the Estates; (ii) the Debtors will not engage in business after the consummation of the Plan; and, (iii) the Debtors would be denied a discharge under 11 U.S.C. § 727(a) if these cases were cases under chapter 7 of the Bankruptcy Code. Accordingly, this Court is not required to either grant or deny a discharge to any of the Debtors.

### D. ACTIONS IN FURTHERANCE OF THE PLAN.

The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of the Debtors prior to and on the Effective Date and the Liquidating Trustee after the Effective Date to take any and all actions necessary or appropriate to implement, effectuate and consummate, among other things, the Plan, the Liquidating Trust Agreement, this Confirmation Order or the transactions contemplated thereby or hereby. In addition to the authority to execute and deliver, adopt or amend, as the case may be, the contracts, instruments, releases and other agreements specifically granted and approved in this Confirmation Order, the Debtors prior to and on the Effective Date and the Liquidating Trustee after the Effective Date are authorized and empowered, without further action in the Court, to take any and all such actions as they may determine are necessary or appropriate to implement, effectuate and consummate, among other things, the Plan, the Liquidating Trust Agreement, this Confirmation Order or the transactions contemplated thereby or hereby. Pursuant to section 1142 of the Bankruptcy Code, and the State Reorganization

Effectuation Statutes, no action of the Debtors' Boards of Directors or the Liquidating Trustee shall be required for any Debtor to enter into, execute and deliver, adopt or amend, as the case may be, any of the contracts, instruments, releases and other agreements or documents and plans to be entered into, executed and delivered, adopted or amended in connection with the Plan and, following the Effective Date, each of such contracts, instruments, releases and other agreements shall be a legal, valid and binding obligation of the applicable Debtor, enforceable against such Debtor and its successors (including the Liquidating Trust) in accordance with its terms subject only to bankruptcy, insolvency and other similar laws affecting creditors' rights generally and to general equitable principles. The Debtors prior to and on the Effective Date and the Liquidating Trustee after the Effective Date are authorized to execute, deliver, File or record such contracts, instruments, financing statements, releases mortgages, deeds, assignments, leases, applications, registration statements, reports or other agreements or documents and take such other actions as they may determine are necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, this Confirmation Order and the transactions contemplated thereby or hereby, all without further application to or order of the Court and whether or not such actions or documents are specifically referred to in the Plan, the Disclosure Statement, the Disclosure Statement Order, this Confirmation Order or the exhibits to any of the foregoing. The signature of any officer of any Debtor prior to or on the Effective Date and the Liquidating Trustee or his designee after the Effective Date on a document executed in accordance with this Section III.D shall be conclusive evidence of such Person's determination that such document and any related actions are necessary and appropriate to effectuate and/or further evidence the terms and conditions of the Plan, this Confirmation Order or the transactions contemplated thereby or hereby. Any officer of any Debtor prior to or on the Effective Date and the Liquidating Trustee

or his designee after the Effective Date are authorized to certify or attest to any of the foregoing actions. Pursuant to section 1142 of the Bankruptcy Code, to the extent that, under applicable nonbankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the stockholders or directors of any of the Debtors, this Confirmation Order shall constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors and stockholders of the appropriate Debtor. After the Effective Date, the Liquidating Trustee, on one hand, and the Pre-Petition Term Agent and Pre-Petition Term Lenders, on the other hand, shall cooperate in good faith with respect to the liquidation of the Term Lender Assets and the Other Assets.

### E.     INDEMNIFICATION.

The exculpations, injunctions, releases and limitations of liability contained in Article 11 of the Plan are approved to the extent set forth in Section III.H below, are incorporated herein to the extent approved, are so ordered and shall be immediately effective on the Effective Date of the Plan without further act or order.

### F.     RESOLUTION OF CERTAIN FORMAL AND INFORMAL OBJECTIONS TO CONFIRMATION.

Formal and informal objections to Confirmation are hereby resolved on the terms and subject to the conditions set forth below. The compromises and settlements contemplated by the resolution of such objections are fair, equitable and reasonable, are in the best interests of the Debtors, their respective Estates and Creditors and are expressly approved pursuant to Bankruptcy Rule 9019.

1.     For purposes of clarification, Section 9.6 of the Plan is not intended to, and does not, limit the right of holders of Allowed General Secured Claims to receive post-Petition Date interest if they are oversecured. Nothing herein alters the relative priority of any

secured claims on any collateral securing the rights of the holders of Allowed General Secured Claims, the Pre-Petition Term Agent, and the Pre-Petition Term Lenders.

2. The Debtors acknowledge that Travelers Casualty and Surety Company of America (the "**Surety Company**") asserts a General Secured Claim under the Plan to the extent of the value of its collateral or other rights, including, but not limited to, those of equitable subrogation, or otherwise; however, such acknowledgement does not constitute an admission by the Debtors of the validity or amount of any such claim. The Plan shall not and does not prejudice, impair, waive, limit or otherwise affect the respective rights, claims and defenses of the Surety Company regarding any bonds, indemnity agreements and the collateral, if any, that secures its claims; provided, however, that nothing contained herein or in the Plan shall impair the Debtors', Pre-Petition Term Agent's, or the Pre-Petition Term Lenders' ability to object to, or dispute any rights, claims and defenses asserted by the Surety Company against the bonds, indemnity agreements and he collateral, if any, that secures its claims. Except for the releases of the Releasees, the Plan does not release, compromise, or otherwise affect in any way, the Surety Company's rights against any indemnitor or third party, whether arising under contract, under statute or by way of assignment or subrogation, equitable or otherwise. The Plan reserves all of the Debtors', Pre-Petition Term Agent's, Pre-Petition Term Lenders' and Surety Company's rights and defenses (including by way of subrogation or any other surety rights or defenses available in law or equity) against any Entity or Person other than the Debtors and Releasees with respect to any claim arising under the bonds.

3. For purposes of clarification, nothing provided for in this Confirmation Order, the Plan or Liquidating Trust Agreement shall modify, amend, supersede or otherwise alter any parties' rights or obligations arising under either the Section 506(c) Stipulation or the

Committee Settlement Stipulation; provided, however, that Section 1(f) of the Committee Settlement Stipulation shall be superseded in all respects by Section 1.76(f) of the Plan (*i.e.*, the definition of "Other Assets").

4.     Notwithstanding any provision to the contrary in the Plan, this Confirmation Order and any documents implementing the Plan, nothing shall: (1) affect the rights of the Internal Revenue Service ("**IRS**") to pursue to the extent allowed by nonbankruptcy law any non-Debtors for any liabilities that may be related to any federal tax liabilities owed by the Debtors; (2) affect the ability of the Bureau of Customs and Border Protection ("**Customs**") to make demand on, be paid by or otherwise pursue any sureties that are jointly and severally liable with the debtors for any debt owed to Customs and furthermore, nothing shall release or discharge any claims against non-Debtor third parties or enjoin or restrain Customs from enforcing any action against non-Debtor third parties that may arise as a result of the exercise of any Customs' police and regulatory power; or (3) affect the IRS' and Customs' rights or ability to assert setoff and recoupment or the Debtors', the Pre-Petition Term Agent's, the Pre-Petition Term Lenders', and/or the Creditors' Committee's rights or ability to object to such setoff and recoupment. The Allowed Priority Tax Claim of the IRS in the amount of approximately $11,118.50, plus interest accruing after the Effective Date at the rate and method set forth in 26 U.S.C. Sections 6621 and 6622, ("**IRS Claim**") shall be paid by offsetting the IRS Claim against the refund of overpaid U.S. Corporation Income Taxes for the 2005 tax year owed to the Debtors by the IRS in the amount of approximately $201,762.00 plus interest ("**Refund**"), and the balance of the Refund shall be paid to the Debtors as soon as reasonably practicable following the Confirmation Hearing, but in no event later than April 29, 2010.  To the extent the Allowed Customs Priority Tax Claims are not paid in full in cash on the Effective Date from Other Assets

Proceeds or satisfied from any letters of credit or other security for such Allowed Claims, payments of the Allowed Customs Priority Tax Claims will be paid in equal quarterly installments over a period not to exceed five years from the petition date and interest shall accrue on such claims from the Effective Date at the rate and method set forth in 26 U.S.C. sections 6621 and 6622 solely from setoff, recoupment, claims against sureties, or Other Assets Proceeds. To the extent the IRS or Customs has a valid, perfected secured claim, such claim shall accrue interest after the Effective Date at the rate and method set forth in 26 U.S.C. sections 6621 and 6622. Further, the Debtors, the Reorganized Debtors and the Liquidating Trustee agree that they will timely file or cause to be filed all required federal tax returns, that the IRS shall not be bound by any characterization of any transaction or the valuation of any asset for tax purposes, and that they shall otherwise comply with the provisions of the Internal Revenue Code. The deadline for the IRS to file its administrative expense claims, if any, shall be 120 days from the date of filing with the IRS of the last federal tax return which affects the postpetition period of the Debtors' Chapter 11 Cases.

5.      After the Effective Date, the Liquidating Trustee, upon the reasonable request of, and at the expense of, the Pre-Petition Term Agent, shall execute and deliver any documents and take any actions reasonably necessary to effectuate the rights or abilities of the Pre-Petition Term Agent granted pursuant to Section 8.1 of the Plan as amended by this Confirmation Order.

### G.      ADDITIONAL MODIFICATIONS TO THE PLAN.

#### 1.      Section 8.1.

Section 8.1 of the Plan is hereby amended and restated by deleting such Section in its entirety and replacing it with:

**Transfer and Enforcement of Causes of Action**. Pursuant to section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided in this Plan or the Confirmation Order, after transfer of the Assets to the Liquidating Trust pursuant to Section 7.2.3 hereof, the Liquidating Trustee (and to the extent retained by the Liquidating Trust to perform such work, any other Person) will have the right to enforce any and all causes of action against any Entity and rights of the Debtors that arose before or after the Petition Date, including but not limited to the rights and powers of a trustee and debtor-in-possession, against any Entity whatsoever, including but not limited to all avoidance powers granted to the Debtors under the Bankruptcy Code and all causes of action and remedies granted pursuant to sections 502, 506, 510, 541, 542, 543, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, but excluding Released Claims; provided, however, the Pre-Petition Term Agent will have the right, on behalf of the Pre-Petition Term Lenders, to (i) enforce Liens on the Term Lender Assets or (ii) pursue any and all causes of action to preserve, recoup, or recover any Term Lender Assets, in each case against any Entity whatsoever (so long as it is not a Released Claim), including but not limited to exercising the rights and powers of a trustee and debtor-in-possession solely with respect to the Term Lender Assets and the Pre-Petition Term Agent shall be deemed to have standing with respect to the exercise of such rights and powers.

2.     **Article 12.**

Article 12 of the Plan is hereby amended by (i) deleting the word "and" from the end of paragraph (q), (ii) changing the period to a semicolon at the end of paragraph (r), (iii) inserting the word "and" at the end of paragraph (r), and (iii) adding to the end of such Article 12:

(s)     Hear and determine matters relating to the Pre-Petition Term Agent's enforcement of Liens on the Term Lender Assets or pursuit of any and all causes of action to preserve, recoup, or recover any Term Lender Assets for the benefit of the Pre-Petition Term Lenders.

### H.    EXCULPATION, INJUNCTION, LIMITATION OF LIABILITY AND CONSOLIDATION OF UNSECURED CLAIMS.

#### 1.    Exculpation.

The exculpation set forth in Section 11.3 of the Plan is approved as to the Debtors, the Creditors' Committee (solely with respect to its conduct as a committee and not with respect to the actions of its members as individual creditors), the Pre-Petition Term Agent, the Pre-Petition Term Lenders, the Indenture Trustee and such parties' respective present members (with respect to members of the Creditors' Committee, solely with respect to each member's conduct in furtherance of its, his, or her duties as a member of the Creditors' Committee, and not with respect to the actions of such members as individual creditors), officers, directors, shareholders, employees, representatives, advisors, attorneys, financial advisors, investment bankers and agents and any of such parties' successors and assigns, with respect to any Claim, obligation, cause of action or liability to one another or to any holder of a Claim or an Interest, or any other party in interest, or any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence or willful misconduct, and such parties in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities (if any) under the Plan and this Confirmation Order.

Notwithstanding any other provision of the Plan or this Confirmation Order, neither any holder of a Claim or Interest, or other party in interest, nor any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against any Debtor or the Creditors' Committee (solely in its capacity as a committee, and not in each particular member's capacity as an individual creditor), the Pre-Petition Term Agent, the Pre-Petition Term Lenders, or any of such parties' respective present members (with respect to members of the Creditors' Committee, solely with respect to the capacity of each member in furtherance of its, his, or her duties as a member of the Creditors' Committee, and not in each particular member's capacity as an individual creditor), officers, directors, shareholders, employees, representatives, advisors, attorneys, financial advisors, investment bankers or agents or such parties' successors and assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for such Persons' gross negligence or willful misconduct.

## 2.    Injunction.

Except as otherwise specifically provided in the Plan or this Confirmation Order, all Entities who have held, hold or may hold claims, rights, causes of action, liabilities or any equity interests based upon any act or omission, transaction or other activity of any kind or nature related to the Debtors or the Chapter 11 Cases that occurred prior to the Effective Date, other than as expressly provided in the Plan or this Confirmation Order, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Interest and regardless of whether such Entity has voted to accept the Plan, and any successors, assigns or representatives of such

Entities shall be precluded and permanently enjoined on and after the Effective Date from (a) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any Claim, Interest or any other right or claim against the Debtors, or any assets of the Debtors which such Entities possessed or may possess prior to the Effective Date, (b) the creation, perfection or enforcement of any encumbrance of any kind with respect to any Claim, Interest or any other right or claim against the Debtors or any assets of the Debtors which they possessed or may possess prior to the Effective Date, and (c) the assertion of any Claims that are released hereby.

<h3 align="center">3.    Releases.</h3>

The releases by the Debtors and by each present and former holder of a Claim or Interest who voted in favor of the Plan, as set forth in Sections 11.5 and 11.6 of the Plan, are approved as to the Debtor Releasees and the Creditor Releasees with respect to any claims, demands, indebtedness, agreements, promises, debts, rights, causes of action, obligations, suits, judgments, damages or liabilities of any nature whatsoever (other than rights to enforce obligations of the Debtors or the Debtor Releasees, as applicable, under the Section 506(c) Stipulation, the Committee Settlement Stipulation, the orders of the Bankruptcy Court, the Plan and the securities, contracts, instruments, releases and other agreements and documents delivered in connection therewith), whether liquidated or unliquidated, suspected or claimed, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any matter, cause, thing, act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan against any of the Debtor Releasees or the Creditor Releasees, as applicable.

### 4. Limitation of Liability.

The limitation of liability set forth in Section 11.7 of the Plan is approved as to, and limits the liability of, the Debtors, the Liquidating Trustee, the Pre-Petition Term Agent, the Pre-Petition Term Lenders, the Creditors' Committee, the Indenture Trustee and such parties' respective members, officers, directors, employees, advisors, attorneys, professionals and agents to any holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan or any contract, instrument, release or other agreement or document created in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct.

Each Person who voted in favor of the Plan shall be deemed to have specifically consented to the releases and injunctions set forth in the Plan and in this Confirmation Order.

### 5. Limitation on Future Funding.

Except as expressly set forth in the Global Stipulations, under no circumstances shall the Pre-Petition Term Agent and the Pre-Petition Term Lenders be liable for any future funding or payments to the Debtors' Estates, including, without limitation, for the payment of any claims arising from any deficit of the Working Capital Adjustment Escrow, the Carve-Out Escrow, the Additional Deposit Account, or the Cure Escrow Deposit Account, to satisfy any obligations arising to the beneficiaries of such accounts. The Debtors' Estates shall be responsible for any anticipated or unanticipated deficits arising with respect to the foregoing, including any costs or claims associated with this liquidation of the Debtors, and none of the foregoing such claims shall be chargeable to, or the responsibility of, the Pre-Petition Term Agent or the Pre-Petition Term Lenders.

**6.** **Substantive Consolidation of Claims against Debtors.**

The Plan is premised on the substantive consolidation of all of the Debtors with respect to the treatment of all Claims and Interests except for the General Secured Claims in Class 2, on and after the Effective Date. The Plan does not contemplate substantive consolidation of the Debtors with respect to the Class 2 Claims, which shall be deemed to apply separately with respect to the Plan proposed by each Debtor. On the Effective Date, (a) all Class 6 Intercompany Claims will be eliminated (except to the extent such claims are by a Debtor against a non-Debtor Affiliate or a non-Debtor subsidiary); (b) all Assets and liabilities of the Debtors will be merged or treated as though they were merged (except to the extent they secure any Allowed General Secured Claim); (c) all guarantees of the Debtors of the obligations of any other Debtor and any joint or several liability of any of the Debtors shall be eliminated; and (d) each and every Claim or Interest (except for General Secured Claims) against any Debtor shall be deemed Filed against the consolidated Debtors and all Claims (except for General Secured Claims) Filed against more than one Debtor for the same liability shall be deemed one Claim against any obligation of the consolidated Debtors.

Effective upon and after the Effective Date, the Court hereby orders the substantive consolidation of the Debtors to the extent set forth in Article 7 of the Plan and this Confirmation Order.

**I.** **SUBSTANTIAL CONSUMMATION.**

The substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, is deemed to occur on the first date distributions are made in accordance with the terms of the Plan to holders of any Allowed Claims.

## J.   RETENTION OF JURISDICTION.

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date and the transfer of Assets to the Liquidating Trust, the Bankruptcy Court shall retain jurisdiction over the Liquidating Trust, the Trust Estate and the Liquidating Trustee.  The Court shall retain such jurisdiction over the Chapter 11 Cases after the Effective Date as is legally permissible, including jurisdiction to:

(a)    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of all Claims and Interests;

(b)    Hear and determine any and all causes of action against any Person and rights of the Debtors that arose before or after the Petition Date, including, but not limited to, the rights and powers of a trustee and debtor-in-possession, against any Person whatsoever, including, but not limited to, all avoidance powers granted to the Debtors under the Bankruptcy Code and all causes of action and remedies granted pursuant to sections 502, 506, 510, 541, 542, 543, 544, 545, 547 through 551 and 553 of the Bankruptcy Code;

(c)    Grant or deny any applications for allowance of compensation for professionals authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(d)    Resolve any matters relating to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any Debtor is a party or with respect to which any of the Debtors may be liable, including, without limitation, the determination of whether such contract is executory for the purposes of section 365 of the Bankruptcy Code, and hear, determine and, if necessary, liquidate any Claims arising therefrom;

(e)    Enter orders approving the Debtors' or the Liquidating Trust's post-Confirmation sale or other disposition of Assets;

(f)     Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and the Liquidating Trust Agreement;

(g)     Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving any Debtor that may be pending in the Chapter 11 Cases on the Effective Date;

(h)     Hear and determine matters concerning state, local or federal taxes in accordance with sections 346, 505 or 1146 of the Bankruptcy Code;

(i)     Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Liquidating Trust Agreement, the Plan and the Confirmation Order;

(j)     Hear and determine any matters concerning the enforcement of the provisions of Article 11 of the Plan and any other exculpations, limitations of liability or injunctions contemplated by the Plan;

(k)     Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Liquidating Trust Agreement, the Plan or the Confirmation Order;

(l)     Permit the Debtors, to the extent authorized pursuant to section 1127 of the Bankruptcy Code, to modify the Plan or any agreement or document created in connection with the Plan, or remedy any defect or omission or reconcile any inconsistency in the Plan or any agreement or document created in connection with the Plan;

(m)     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Liquidating Trust Agreement, the Plan or the Confirmation Order;

(n)     Enforce any injunctions entered in connection with or relating to the Plan or the Confirmation Order;

(o) Enter and enforce such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated, or distributions pursuant to the Liquidating Trust Agreement or the Plan are enjoined or stayed;

(p) Determine any other matters that may arise in connection with or relating to the Plan or any agreement or the Confirmation Order;

(q) Enter any orders in aid of prior orders of the Bankruptcy Court;

(r) Enter a final decree closing the Chapter 11 Cases; and

(s) Hear and determine matters relating to the Pre-Petition Term Agent's enforcement of Liens on the Term Lender Assets or pursuit of any and all causes of action to preserve, recoup, or recover any Term Lender Assets for the benefit of the Pre-Petition Term Lenders.

### K.    CONTINUATION OF AUTOMATIC STAY.

In furtherance of the implementation of the Plan, except as otherwise provided in the Plan, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect and apply to all creditors and Beneficiaries holding claims against the Debtors, the Estates, the Assets, the Liquidating Trustee, the Liquidating Trust and the Trust Assets until the Final Distribution Date.

### L.    EXEMPTION FROM CERTAIN TRANSFER TAXES.

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any Security or the making or delivery of any instrument of transfer under this Plan may not be taxed under any law imposing a stamp tax, use tax, sales tax or similar tax.

## M.    REVERSAL.

If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity or enforceability of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of such order.  Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan and all related documents or any amendments or modifications thereto.

## N.    NOTICE OF ENTRY OF CONFIRMATION ORDER.

1.    The Debtors are directed to serve a notice of the entry of this Confirmation Order and the establishment of bar dates for certain Claims hereunder, substantially in the form of Exhibit B attached hereto and incorporated herein by reference (the "**Confirmation Notice**"), on all parties that received notice of the Confirmation Hearing, no later than 15 Business Days after the Confirmation Date and such service shall be deemed to comply with the requirements of Bankruptcy Rules 2002(a)(7), 2002(f)(3) and (f)(7), 2002(l), 3002(c)(4) and 3020(c)(2).

2.    Pursuant to Bankruptcy Rule 9008, the Debtors are directed to publish the Confirmation Notice once in the national edition of *USA Today* no later than 15 Business Days after the Confirmation Date.

Dated: March 18, 2010
      Wilmington, Delaware


                                      MARY F. WALRATH
                                      UNITED STATES BANKRUPTCY JUDGE