# EXHIBIT A

## Plan

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EBHI HOLDINGS, INC., <u>et al.</u>, [1] | ) | Case No. 09-12099 (MFW) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| ------------------------------------------------- | ) | |

## FIRST AMENDED JOINT PLAN OF LIQUIDATION OF EBHI HOLDINGS, INC., et al.

David S. Heller, Esq.
Josef S. Athanas, Esq.
LATHAM & WATKINS LLP
Suite 5800
233 South Wacker Drive
Chicago, Illinois 60606
(312) 876-7700

-and-

Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
YOUNG, CONWAY, STARGATT & TAYLOR LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

Attorneys for the Debtors and
Debtors-in-Possession

Dated: January 26, 2010

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: EBHI Holdings, Inc. f/k/a Eddie Bauer Holdings, Inc., a Delaware corporation (2352); Amargosa, Inc. f/k/a Eddie Bauer, Inc., a Delaware corporation (9737); Gobi Fulfillment Services, Inc. f/k/a Eddie Bauer Fulfillment Services, Inc., a Delaware corporation (0882); Arabian Diversified Sales, LLC f/k/a Eddie Bauer Diversified Sales, LLC, a Delaware limited liability company (1567); Gibson Services, LLC f/k/a Eddie Bauer Services, LLC, an Ohio limited liability company (disregarded); Karakum International Development, LLC f/k/a Eddie Bauer International Development, LLC, a Delaware limited liability company (1571); Simpson Information Technology, LLC f/k/a Eddie Bauer Information Technology, LLC, a Delaware limited liability company (disregarded); Sandy Financial Services Acceptance Corporation f/k/a Financial Services Acceptance Corporation, a Delaware corporation (7532); and Sonoran Acceptance Corporation f/k/a Spiegel Acceptance Corporation, a Delaware corporation (7253). The mailing address for EBHI Holdings, Inc. is 10401 N.E. 8th Street, Suite 500, Bellevue, WA 98004.

# TABLE OF CONTENTS

Page

ARTICLE 1 DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION ....................................................................... 2

A.     **Scope of Definitions** ........................................................................ 2

B.     **Definitions** .......................................................................................... 3

    1.1    363 Sale .................................................................................. 3
    1.2    Additional Deposit Account ............................................... 3
    1.3    Administrative Expense Claim ........................................... 3
    1.4    Administrative Expense Claims Bar Date .......................... 4
    1.5    Allowed [      ] Claim or Allowed [      ] Interest ................... 4
    1.6    Affiliate ................................................................................ 4
    1.7    Allowed Claim or Allowed Interest ................................... 4
    1.8    Asset Purchase Agreement .................................................. 5
    1.9    Assets .................................................................................... 5
    1.10   Available Cash ...................................................................... 5
    1.11   Bankruptcy Code .................................................................. 5
    1.12   Bankruptcy Court .................................................................. 6
    1.13   Bankruptcy Rules .................................................................. 6
    1.14   Bar Date ................................................................................ 6
    1.15   Bar Date for Governmental Unit Claims ............................ 6
    1.16   Beneficial Interest ................................................................ 6
    1.17   Beneficiary or Beneficiaries ............................................... 6
    1.18   Business Day .......................................................................... 6
    1.19   Carve Out .............................................................................. 6
    1.20   Carve-Out Escrow ................................................................ 6
    1.21   Cash ....................................................................................... 7
    1.22   Chapter 11 Cases .................................................................. 7
    1.23   Claim ..................................................................................... 7
    1.24   Class ...................................................................................... 7
    1.25   Committee Settlement Stipulation ...................................... 7
    1.26   Company ................................................................................ 7
    1.27   Confirmation ......................................................................... 7
    1.28   Confirmation Date ................................................................ 8
    1.29   Confirmation Hearing .......................................................... 8
    1.30   Confirmation Order .............................................................. 8
    1.31   Creditor ................................................................................. 8
    1.32   Creditor Releasees ............................................................... 8
    1.33   Creditors' Committee .......................................................... 9
    1.34   Cure Escrow Deposit Account ............................................ 9
    1.35   Debtor(s) ............................................................................... 9
    1.36   Debtor Releasees .................................................................. 9
    1.37   Deficiency Claims ................................................................ 9
    1.38   DIP Facility Order ................................................................ 10
    1.39   Disclosure Statement ........................................................... 10
    1.40   Disputed Claim or Disputed Interest .................................. 10

068417.1001

# TABLE OF CONTENTS
## (continued)

| | | |
|---|---|---|
| 1.41 | Disputed Claims Reserve | 10 |
| 1.42 | Distribution Record Date | 11 |
| 1.43 | EBHI | 11 |
| 1.44 | Effective Date | 11 |
| 1.45 | Effective Date Distribution | 11 |
| 1.46 | Entity | 11 |
| 1.47 | Estate | 11 |
| 1.48 | Face Amount | 12 |
| 1.49 | Federal Bankruptcy Rule(s) | 12 |
| 1.50 | Fee Order | 12 |
| 1.51 | File or Filed | 12 |
| 1.52 | Final Distribution | 12 |
| 1.53 | Final Distribution Date | 12 |
| 1.54 | Final Order | 12 |
| 1.55 | Final Tax Day | 13 |
| 1.56 | General Secured Claims | 13 |
| 1.57 | General Secured Claim Liens | 13 |
| 1.58 | General Unsecured Claims | 13 |
| 1.59 | Global Stipulations | 13 |
| 1.60 | Impaired | 13 |
| 1.61 | Indemnification Claims | 14 |
| 1.62 | Indenture | 14 |
| 1.63 | Indenture Trustee | 14 |
| 1.64 | Indenture Trustee's Expenses | 14 |
| 1.65 | Intercompany Claims | 14 |
| 1.66 | Interest | 14 |
| 1.67 | Interests Securities Claims | 15 |
| 1.68 | IRC | 15 |
| 1.69 | Lien | 15 |
| 1.70 | Liquidating Trust | 15 |
| 1.71 | Liquidating Trustee | 15 |
| 1.72 | Liquidating Trust Agreement | 15 |
| 1.73 | Liquidating Trust Committee | 16 |
| 1.74 | Litigation Claims | 16 |
| 1.75 | Noteholder Securities Claims | 16 |
| 1.76 | Other Assets | 16 |
| 1.77 | Other Assets Proceeds | 17 |
| 1.78 | Other Priority Claim | 17 |
| 1.79 | Other Unsecured Claims | 17 |
| 1.80 | Person | 18 |
| 1.81 | Petition Date | 18 |
| 1.82 | Plan | 18 |
| 1.83 | Possessory Lienholder Claims | 18 |
| 1.84 | Pre-Petition Term Agent | 18 |

DB02:9192781.1

068417.1001

# TABLE OF CONTENTS
## (continued)

| | | |
|---|---|---|
| 1.85 | Pre-Petition Term Credit Agreement | 18 |
| 1.86 | Pre-Petition Term Lenders | 18 |
| 1.87 | Pre-Petition Term Parties | 18 |
| 1.88 | Priority Tax Claim | 18 |
| 1.89 | Professional | 19 |
| 1.90 | Professional Claim | 19 |
| 1.91 | Pro Rata | 19 |
| 1.92 | Released Claims | 19 |
| 1.93 | Sale Order | 19 |
| 1.94 | Scheduled | 20 |
| 1.95 | Schedules | 20 |
| 1.96 | Section 506(c) Stipulation | 20 |
| 1.97 | Secured Claim | 20 |
| 1.98 | Security | 20 |
| 1.99 | Senior Notes | 21 |
| 1.100 | Senior Notes Claims | 21 |
| 1.101 | Subsequent Distribution Date | 21 |
| 1.102 | Supplemental Distribution | 21 |
| 1.103 | Taxes | 21 |
| 1.104 | Term Lender Adequate Protection Claim | 21 |
| 1.105 | Term Lender Assets | 21 |
| 1.106 | Term Lender Assets Proceeds | 22 |
| 1.107 | Term Lender Deficiency Claim | 22 |
| 1.108 | Term Lender Secured Claim | 22 |
| 1.109 | Trust Administrative Fund | 23 |
| 1.110 | Trust Estate or Trust Assets | 23 |
| 1.111 | Unimpaired | 23 |
| 1.112 | United States Trustee | 23 |
| 1.113 | Unsecured Claim | 23 |
| 1.114 | Working Capital Adjustment Escrow | 23 |
| C. | Rules of Interpretation | 23 |
| D. | **Computation of Time** | 26 |
| **ARTICLE 2 TREATMENT OF UNCLASSIFIED CLAIMS** | | 26 |
| 2.1 | Administrative Expense Claims | 26 |
| 2.2 | Statutory Fees | 26 |
| 2.3 | Professional Claims | 27 |
| 2.4 | Priority Tax Claims | 27 |
| 2.5 | Deadline for Filing Administrative Expense Claims | 28 |
| **ARTICLE 3 CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS** | | 29 |
| A. | **General** | 29 |
| B. | **Classification** | 30 |
| 3.1 | Class 1: Other Priority Claims | 30 |
| 3.2 | Class 2: General Secured Claims | 30 |

3.3     Class 3:  Term Lender Secured Claim ....................................................... 30
3.4     Class 4:  General Unsecured Claims........................................................ 31
3.5     Class 5:  Noteholder Securities Claims.................................................... 31
3.6     Class 6:  Intercompany Claims ................................................................ 31
3.7     Class 7A:  Interests .................................................................................. 31
3.8     Class 7B:  Interests Securities Claims ..................................................... 31

**ARTICLE 4 IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS
IMPAIRED AND NOT IMPAIRED BY THE PLAN ........................... 31**
4.1     Unimpaired Classes of Claims and Interests ........................................... 31
4.2     Impaired Classes of Claims and Interests ............................................... 31

**ARTICLE 5 PROVISIONS FOR THE TREATMENT OF CLAIMS AND
INTERESTS ............................................................................................ 31**
5.1     Class 1 (Other Priority Claims)............................................................... 31
5.2     Class 2 (General Secured Claims) ........................................................... 32
5.3     Class 3 (Term Lender Secured Claim)..................................................... 32
5.4     Class 4 (General Unsecured Claims) ....................................................... 33
5.5     Class 5 (Noteholder Securities Claims) ................................................... 33
5.6     Class 6 (Intercompany Claims)................................................................ 33
5.7     Class 7A (Interests)................................................................................. 34
5.8     Class 7B (Interests Securities Claims)..................................................... 34

**ARTICLE 6 TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES .................................................................................................. 34**
6.1     Assumption, Assignment and Rejection Pursuant to the Sale Order....... 34
6.2     Assumption and Assignment of Remaining Contracts ........................... 35
6.3     Cure Payments; Assurance of Performance............................................. 35
6.4     Objections To Assumption of Remaining Contracts ............................... 36
6.5     Rejection ................................................................................................. 37
6.6     Approval of Rejection; Rejection Damages Claims Bar Date................. 38

**ARTICLE 7 MEANS FOR EXECUTION AND IMPLEMENTATION OF THE
PLAN....................................................................................................... 38**
7.1     Substantive Consolidation of Claims against Debtors for Plan
Purposes Only ......................................................................................... 38
7.2     The Liquidating Trust. ............................................................................ 39
7.3     Continuation of Automatic Stay ............................................................. 40
7.4     Transfer of Equity Interests in Canadian Subsidiaries............................ 41
7.5     Cancellation of Senior Notes .................................................................. 41
7.6     Post-confirmation Operations ................................................................. 42
7.7     Post-confirmation Funding of Plan ......................................................... 42
7.8     Post-Effective Date Funding of Operations ............................................ 42
7.9     Dissolution of the Company .................................................................... 42
7.10    Closing of the Chapter 11 Cases ............................................................. 43
7.11    Post-Effective Date Litigation Claim Settlements and Asset Sales........ 43
7.12    Post-Effective Date Reporting ................................................................ 43

**ARTICLE 8 POSTCONFIRMATION LITIGATION ......................................... 44**

068417.1001

# TABLE OF CONTENTS
## (continued)

**Page**

| | | |
|---|---|---|
| 8.1 | Transfer and Enforcement of Causes in Action | 44 |
| 8.2 | Objections to Claims | 45 |

**ARTICLE 9 DISTRIBUTIONS** ........... 45

| | | |
|---|---|---|
| 9.1 | No Duplicate Distributions | 45 |
| 9.2 | Distributions by the Indenture Trustee | 45 |
| 9.3 | Record Date for Distributions to the Indenture Trustee | 46 |
| 9.4 | Delivery of Distributions in General | 46 |
| 9.5 | Cash Payments | 46 |
| 9.6 | Interest on Claims | 47 |
| 9.7 | No De Minimis Distributions | 47 |
| 9.8 | Face Amount | 47 |
| 9.9 | Undeliverable Distributions | 48 |
| 9.10 | Timing of Distributions | 48 |
| 9.11 | Final Distribution | 49 |
| 9.12 | Disputed Claims Reserves | 49 |
| 9.13 | Compliance with Tax Requirements | 49 |

**ARTICLE 10 CONDITIONS PRECEDENT** ........... 49

| | | |
|---|---|---|
| 10.1 | Conditions to Confirmation | 49 |
| 10.2 | Conditions to the Effective Date | 50 |
| 10.3 | Termination of Plan for Failure To Become Effective | 50 |
| 10.4 | Waiver of Conditions | 51 |
| 10.5 | Notice of Effective Date | 51 |

**ARTICLE 11 EFFECT OF CONFIRMATION** ........... 51

| | | |
|---|---|---|
| 11.1 | Jurisdiction of Court | 51 |
| 11.2 | Binding Effect | 52 |
| 11.3 | Exculpation | 52 |
| 11.4 | Injunction | 53 |
| 11.5 | Releases by Debtors | 54 |
| 11.6 | Releases by Holders of Claims and Interests | 55 |
| 11.7 | Limitation of Liability | 55 |
| 11.8 | Limitation on Future Funding | 56 |

**ARTICLE 12 RETENTION OF JURISDICTION** ........... 56

**ARTICLE 13 ACCEPTANCE OR REJECTION OF THE PLAN** ........... 58

| | | |
|---|---|---|
| 13.1 | Persons Entitled to Vote | 58 |
| 13.2 | Acceptance by Impaired Classes | 59 |
| 13.3 | Request for Non-Consensual Confirmation | 59 |

**ARTICLE 14 MISCELLANEOUS PROVISIONS** ........... 59

| | | |
|---|---|---|
| 14.1 | Modification of the Plan | 60 |
| 14.2 | Revocation of the Plan | 60 |
| 14.3 | Governing Law | 60 |
| 14.4 | No Admissions | 60 |
| 14.5 | Severability of Plan Provisions | 60 |
| 14.6 | Successors and Assigns | 61 |
| 14.7 | Exemption from Certain Transfer Taxes | 61 |

# TABLE OF CONTENTS
## (continued)

|  |  | **Page** |
|---|---|---|
| 14.8 | Preservation of Rights of Setoffs | 61 |
| 14.9 | Defenses with Respect to Unimpaired Claims | 62 |
| 14.10 | No Injunctive Relief | 62 |
| 14.11 | Saturday, Sunday or Legal Holiday | 62 |
| 14.12 | Entire Agreement | 62 |
| 14.13 | Dissolution of Creditors' Committee | 62 |
| 14.14 | Notices | 63 |

Exhibits

1. Debtors

2. Liquidating Trust Agreement

3. Assumed Executory Contracts

DB02:9192781.1

068417.1001

# INTRODUCTION

EBHI Holdings, Inc., a Delaware corporation ("EBHI") and its affiliates and subsidiaries listed on <u>Exhibit 1</u> hereto (collectively with EBHI, the "Debtors") propose this First Amended Joint Plan of Liquidation of EBHI Holdings, Inc., *et al.* (the "Plan") for the resolution and satisfaction of all Claims against and Interests in the Debtors. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. All capitalized terms not defined in this introduction have the meanings ascribed to them in Article 1 of this Plan. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtors' history, businesses, resolution of material disputes, significant asset sales, financial projections for the liquidation and distribution of the Debtors' remaining assets and a summary and analysis of the Plan and certain related matters.

This is a liquidating Plan pursuant to which all of the Debtors' assets are to be transferred to a liquidating trust (subject to existing Liens and encumbrances, to the extent specified in the Plan) which will liquidate the assets; as and when any funds are realized from the sale or disposition of the assets, such funds will be distributed to certain holders of Allowed Claims, whose claims against the Debtors will be exchanged for a beneficial interests in the Liquidating Trust.

The Plan is premised on the substantive consolidation of the Debtors with respect to the voting and treatment of all Claims and Interests other than General Secured Claims, as provided below. The Plan does not contemplate substantive consolidation of the Debtors with respect to General Secured Claims against the Debtors, which claims shall apply separately with respect to each Plan proposed by each Debtor. If the Plan cannot be confirmed as to some or all of the Debtors, in the Debtors' sole discretion, (a) the Plan may be revoked as to all of the Debtors, or (b) the Debtors may revoke the Plan as to any Debtor not satisfying the

cramdown requirements of Section 1129(b)(7) of the Bankruptcy Code (and any such Debtor's

Chapter 11 Case being converted to a chapter 7 liquidation, continued or dismissed in the

Debtors' sole discretion) and confirmed as to the remaining Debtors. A list of each Debtor who

is a proponent of the Plan contained herein and its corresponding Chapter 11 Case docket

number is attached hereto as Exhibit 1.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject

the Plan cannot be solicited from holders of claims and/or interests until such time as the

Disclosure Statement has been approved by the Bankruptcy Court. The Debtors urge all holders

of Claims entitled to vote on the Plan to read the Plan and the Disclosure Statement in their

entirety before voting to accept or reject the Plan. To the extent, if any, that the Disclosure

Statement is inconsistent with the Plan, the Plan will govern. No solicitation materials other than

the Disclosure Statement and any schedules and exhibits attached thereto or referenced therein,

or otherwise enclosed with the Disclosure Statement served by the Debtors on interested parties,

have been authorized by the Debtors or the Bankruptcy Court for use in soliciting acceptances of

the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the

Bankruptcy Code, Federal Bankruptcy Rule 3019 and Article 14 of this Plan, the Debtors

expressly reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its

substantial consummation.


## ARTICLE 1
## DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION

**A. Scope of Definitions.** For the purposes of this Plan, except as expressly provided or unless

the context otherwise requires, all capitalized terms not otherwise defined shall have the

meanings ascribed to them in Article 1 of this Plan. Any term used in this Plan that is not

defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, respectively. Whenever the context requires, capitalized terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**B. Definitions.** In addition to such other terms as are defined in other Sections of the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the meanings ascribed to them in this Article 1 of the Plan.

      **1.1**     **363 Sale** means the sale approved under the Sale Order and consummated on August 3, 2009.

      **1.2**     **Additional Deposit Account** shall mean the "Additional Deposit Account" established pursuant to the Section 506(c) Stipulation, which account was established for the purpose of paying for (i) tax and supplemental accounting support, (ii) banking, escrow and other miscellaneous expenses, (iii) consent payments required to be paid in connection with the 363 Sale, (iv) sales and use taxes, (v) real property taxes, personal property taxes and other employee benefit-related expenses, in which approximately $5,097,839.340 was deposited as of January 22, 2010.

      **1.3**     **Administrative Expense Claim** means any right to payment for any cost or expense of administration (including Professional Claims) of the Chapter 11 Cases asserted or arising under sections 503, 507(a)(1), or 507(b) of the Bankruptcy Code, including, any (i) actual and necessary cost or expense of preserving the Debtors' Estates or operating the business of the Debtors arising on or after the Petition Date, (ii) payment to be made under this Plan to cure a default on an executory contract or unexpired lease that is assumed pursuant to section

365 of the Bankruptcy Code, (iii) cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors in the ordinary course of business arising on or after the Petition Date, (iv) compensation or reimbursement of expenses of Professionals arising on or after the Petition Date, to the extent allowed by the Bankruptcy Court under section 330(a) or section 331 of the Bankruptcy Code, (v) Allowed Claims that are entitled to be treated as Administrative Expense Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c)(2)(A) of the Bankruptcy Code, and (vi) fees or charges assessed against the Debtors' Estates under section 1930 of title 28 of the United States Code.

      **1.4**     **Administrative Expense Claims Bar Date** means the first Business Day that is at least forty-five (45) days following the Effective Date.

      **1.5**     **Allowed [   ] Claim or Allowed [   ] Interest:** An Allowed Claim or Allowed Interest in the particular category or Class identified.

      **1.6**     **Affiliate** shall have the meaning as set forth in section 101(2) of the Bankruptcy Code.

      **1.7**     **Allowed Claim or Allowed Interest** means a Claim against or Interest in the Debtors or any portion thereof (a) that has been allowed by a Final Order, or (b) as to which, on or by the Effective Date, (i) no proof of Claim or Interest has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is Scheduled, other than a Claim or Interest that is Scheduled at zero, in an unknown amount, or as disputed, or (c) for which a proof of Claim or Interest in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court, or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the applicable periods of limitation fixed by the Plan, the Bankruptcy Code, or by

any order of the Bankruptcy Court sought pursuant to Section 8.2 of the Plan or otherwise entered by the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order, or (d) that is expressly allowed in a liquidated amount in the Plan.

**1.8** **Asset Purchase Agreement** means the Asset Purchase Agreement dated as of July 17, 2009 between the Debtors and Purchaser, as amended.

**1.9** **Assets** means all legal or equitable pre-petition and post-petition interests of the Debtors or, after the Effective Date, the Liquidating Trust, in any and all real or personal property of any nature, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, tax refunds, cash, deposit accounts, reserves, deposits, equity interests (including, without limitation, the equity interests in Tenere of Canada, Inc. and Yuma Customer Services, Inc.), contractual rights, intellectual property rights, claims, causes of actions, assumed executory contracts and unexpired leases, other general intangibles, Term Lender Assets, Other Assets and Litigation Claims, and the proceeds, products, offspring, rents or profits thereof.

**1.10** **Available Cash** means all Other Assets Proceeds available for distribution to Beneficiaries, other than the Pre-Petition Term Parties, under the Liquidating Trust Agreement less the amount of Other Assets Proceeds deposited in the Trust Administrative Fund and the Disputed Claims Reserve.

**1.11** **Bankruptcy Code** means title 11 of the United States Code, as in effect on the Petition Date and as thereafter amended, as applicable in the Chapter 11 Cases.

**1.12** **Bankruptcy Court** means the United States Bankruptcy Court for the District of Delaware or any other court of the United States having jurisdiction over the Chapter 11 Cases.

**1.13** **Bankruptcy Rules** means the Federal Bankruptcy Rules, the Local Rules of the Bankruptcy Court for the District of Delaware and the guidelines and requirements of the Office of the United States Trustee, as in effect on the Petition Date and as thereafter amended, as applicable from time to time in the Chapter 11 Cases.

**1.14** **Bar Date** means September 21, 2009, which was established by the Bankruptcy Court as the deadline for filing and serving all proofs of claims upon the Debtors.

**1.15** **Bar Date for Governmental Unit Claims** means December 14, 2009, which was established by the Bankruptcy Court as the deadline for Governmental Units to file and serve all proofs of claim upon the Debtors, including, without limitation, claims for Taxes.

**1.16** **Beneficial Interest** means the rights and interests of each of the Beneficiaries in the Trust Estate.

**1.17** **Beneficiary or Beneficiaries** means the holder(s) of an Allowed Claim as may be determined from time to time in accordance with the Plan and Liquidating Trust Agreement.

**1.18** **Business Day** means any day other than a Saturday, Sunday or a "legal holiday" (as such term is defined in Federal Bankruptcy Rule 9006(a)).

**1.19** **Carve Out** shall have the meaning set forth in the DIP Facility Order, as increased by the Section 506(c) Stipulation and the Committee Settlement Stipulation.

**1.20** **Carve-Out Escrow** means the escrow account established pursuant to the DIP Facility Order for the purpose of satisfying Professional Claims of the Professionals

employed by the Debtors and the Committee, in which approximately $5,133,277.66 was deposited as of January 22, 2010.

      **1.21**    **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently denominated in United States Dollars.

      **1.22**    **Chapter 11 Cases** means the chapter 11 cases of the Debtors pending before the Bankruptcy Court as set forth in <u>Exhibit 1</u> hereto and as being jointly administered with one another under the Case No. 09-12099 (MFW), and as to any Debtor individually, a Chapter 11 Case.

      **1.23**    **Claim** means a right of a Creditor against the Debtors, or any one of them, whether or not asserted or allowed, of the type described in Bankruptcy Code section 101(5), as construed by Bankruptcy Code section 102(2).

      **1.24**    **Class** means a group of Claims or Interests as classified in a particular class under the Plan pursuant to Bankruptcy Code section 1122.

      **1.25**    **Committee Settlement Stipulation** means the Stipulation by and among the Pre-Petition Term Agent, the Debtors and the Creditors' Committee dated as of September 23, 2009 approved by the Order Authorizing the Debtors to Enter Into Stipulation with the Committee and Wilmington Trust FSB, as Administrative Agent Resolving, Releasing and Settling Claims held by the Official Committee of Unsecured Creditors dated October 22, 2009 [Docket No. 904].

      **1.26**    **Company** means all of the debtors and debtors-in-possession collectively in the Chapter 11 Cases.

      **1.27**    **Confirmation** means entry of the Confirmation Order by the Bankruptcy Court.

**1.28**    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Federal Bankruptcy Rules 5003 and 9021.

**1.29**    **Confirmation Hearing** means the duly noticed hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to Bankruptcy Code section 1128, including any continuances thereof.

**1.30**    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129 in form and substance reasonably acceptable to the Debtors, the Creditors' Committee, and the Pre-Petition Term Agent, as directed by the requisite Pre-Petition Term Lenders.

**1.31**    **Creditor** means any Entity who holds a Claim against any of the Debtors.

**1.32**    **Creditor Releasees** means (i) the officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers or agents of the Debtors, in each case as of the Petition Date or that have become officers and/or directors thereafter; (ii) the Creditors' Committee solely with respect to each member's conduct in furtherance of its, his, or her duties as a member of the Creditors' Committee, and not with respect to the actions of such members as individual creditors, and its agents, attorneys and other professionals acting in conjunction with the Chapter 11 Cases; (iii) the Liquidating Trustee; (iv) the Pre-Petition Term Agent and its agents, attorneys and other professionals acting in conjunction with the Chapter 11 Cases; (v) the Pre-Petition Term Lenders; and (vi) the Indenture Trustee and its agents, attorneys and other professionals acting in conjunction with the Chapter 11 Cases.

**1.33** **Creditors' Committee** means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

**1.34** **Cure Escrow Deposit Account** shall have the meaning ascribed to it in the Committee Settlement Stipulation, which definition includes the various accounts established pursuant to the Sale Order for the payment of cure amounts with respect to assumed executory contracts and unexpired leases, in which approximately $3,403,936.34 was deposited in the aggregate as of January 22, 2010.

**1.35** **Debtor(s)** means, individually, EBHI, and each Debtor listed on <u>Exhibit 1</u> hereto, and collectively all of them, including in their capacity as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**1.36** **Debtor Releasees** means (i) the officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers or agents of the Debtors, in each case as of the Petition Date or that have become officers and/or directors thereafter; (ii) the Creditors' Committee solely with respect to each member's conduct in furtherance of its, his, or her duties as a member of the Creditors' Committee, and not with respect to the actions of such members as individual creditors, and its agents, attorneys and other professionals acting in conjunction with the Chapter 11 Cases; (iii) the Liquidating Trustee; (iv) the Pre-Petition Term Agent and its agents, attorneys and other professionals acting in conjunction with the Chapter 11 Cases; (v) the Pre-Petition Term Lenders; and (vi) the Indenture Trustee and its agents, attorneys and other professionals acting in conjunction with the Chapter 11 Cases.

**1.37** **Deficiency Claims** means with respect to any Claim secured by a Lien or security interest in any property of any Debtor having a value of less than the amount of such

Claim (after taking into account other Liens and security interests of higher priority in such property), the portion of such Claim equal to the difference between (a) the allowed amount of the Claim and (b) the allowed amount of the secured portion of such Claim (which allowed secured amount may be set pursuant to this Plan).

      **1.38   DIP Facility Order** means the Final Order Pursuant to 11 U.S.C. Sections 105, 361, 362, 363 and 364 and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (1) Authorizing Incurrence by the Debtors of Post-Petition Secured Indebtedness with Priority Over Certain Secured Indebtedness and with Administrative Superpriority, (2) Granting Liens, (3) Authorizing Use of Cash Collateral by the Debtors Pursuant to 11 U.S.C. Section 363 and Providing for Adequate Protection, and (4) Modifying the Automatic Stay dated July 7, 2009. [Docket No. 313].

      **1.39   Disclosure Statement** means that certain written disclosure statement that relates to this Plan as filed in the Chapter 11 Cases by the Debtors, including the schedules and exhibits attached thereto, as it may be amended, modified or supplemented from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

      **1.40   Disputed Claim or Disputed Interest** means a Claim or Interest, respectively, that the Debtors have Scheduled as "disputed," "contingent" or "unliquidated," or as to which a proof of Claim or Interest has been Filed or deemed Filed as contingent or as to which an objection has been or may be timely Filed by the Debtors or any other party in interest entitled to do so, which objection, if timely Filed, has not been withdrawn or has not been overruled or denied by a Final Order.

      **1.41   Disputed Claims Reserve** shall have the meaning set forth in Section 4.2 of the Liquidating Trust Agreement.

**1.42** **Distribution Record Date** means the record date for the purposes of making distributions under the Plan on account of Allowed Claims, which date shall be January 28, 2010 or such other date designated in the Confirmation Order.

**1.43** **EBHI** means EBHI Holdings, Inc., a Delaware corporation.

**1.44** **Effective Date** means the date selected by the Debtors that is (a) at least eleven (11) days following occurrence of the Confirmation Date; and (b) no more than five (5) Business Days following the first date on which no stay of the Confirmation Order is in effect and all conditions to the Effective Date set forth in Article 10 of the Plan have been satisfied or, if waivable, waived pursuant to Section 10.4 hereof.

**1.45** **Effective Date Distribution** means the distributions described in Section 9.10.3 hereof.

**1.46** **Entity** means an entity as defined in section 101(15) of the Bankruptcy Code.

**1.47** **Estate** means, with regard to each Debtor, the estate that was created by the commencement by such Debtor of its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all Assets and interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the Petition Date, or which such Estate acquired after the commencement of the Chapter 11 Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise. "Estates" has a correlative meaning.

**1.48     Face Amount** means (a) with respect to Disputed Claims, as defined in Section 9.8 hereof and (b) with respect to the Senior Notes Claims, the amount listed in the definition of such Claims.

**1.49     Federal Bankruptcy Rule(s)** means collectively, the Federal Rules of Bankruptcy Procedure, as in effect on the Petition Date and as thereafter amended, as applicable in the Chapter 11 Cases, and individually, a particular Federal Rule of Bankruptcy Procedure.

**1.50     Fee Order** means the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals dated July 6, 2009, authorizing the interim payment of Professional Claims [Docket No. 290].

**1.51     File or Filed** means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

**1.52     Final Distribution** means the distributions described in Section 9.11 hereof.

**1.53     Final Distribution Date** means the date upon which the Final Distribution is made.  The Final Distribution Date shall be a date determined by the Liquidating Trustee, (a) which is after the liquidation into Cash of all assets of the Liquidating Trust (other than those assets abandoned by the Liquidating Trust) and collection of other sums due or otherwise remitted or returned to the Estates, and (b) on or after which the Liquidating Trust makes a final distribution from the Disputed Claims Reserve.

**1.54     Final Order** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial,

12

reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or resulted in no modification of such order, provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

1.55 **Final Tax Day** means the last day in the taxable year of the Liquidating Trust which includes the Termination Date (as defined in the Liquidating Trust Agreement).

1.56 **General Secured Claims** means all Secured Claims against the Debtors other than the Allowed Term Lender Secured Claims.

1.57 **General Secured Claim Liens** means the valid, perfected and enforceable Liens relating to the Allowed General Secured Claims.

1.58 **General Unsecured Claims** means all Unsecured Claims against the Debtors other than the Term Lender Deficiency Claims, the Intercompany Claims, the Noteholder Securities Claims and the Interests Securities Claims.

1.59 **Global Stipulations** means the Section 506(c) Stipulation and the Committee Settlement Stipulation, collectively.

1.60 **Impaired** shall have the meaning ascribed to it in Bankruptcy Code section 1124 when used with reference to a Claim or an Interest.

**1.61   Indemnification Claims** means the obligations of the Debtors, or any one of them, pursuant to their certificates of incorporation or other charter documents, bylaws, applicable law, any employment agreement or other express agreement operational as of the Petition Date to indemnify any of their current and former officers and directors, on the terms and subject to the limitations described therein.

**1.62   Indenture** means the Indenture dated April 4, 2007 among Eddie Bauer Holdings, Inc. and the subsidiary guarantors party thereto and the Indenture Trustee, as amended and/or supplemented.

**1.63   Indenture Trustee** means The Bank of New York Mellon, in its capacity as indenture trustee under the Indenture, or any successor thereto.

**1.64   Indenture Trustee's Expenses** means the actual, reasonable and necessary fees and documented out-of-pocket expenses incurred after the Petition Date and through and including any final distribution by the Indenture Trustee. Such amounts shall include, without limitation, the actual, reasonable, necessary and documented out-of-pocket costs and expenses and reasonable fees and expenses of legal counsel to the Indenture Trustee.

**1.65   Intercompany Claims** means the Claims of a Debtor against any other Debtor, and shall exclude any claims of a Debtor against a non-Debtor Affiliate or a non-Debtor subsidiary.

**1.66   Interest** means, when used in the context of holding an equity security of the Debtors (and not used to denote (i) the compensation paid for the use of money for a specified time and usually denoted as a percentage rate of interest on a principal sum of money or (ii) a security interest in property), an interest or share in, or warrant, option, restricted stock unit or other right asserted against, the Company of the type described in the definition of

"equity security" in Bankruptcy Code section 101(16), and shall include all common stock and all warrants, options or other rights to purchase, subscribe to, or otherwise obtain common stock issued by the Company.

1.67 **Interests Securities Claims** means Claims, including unknown claims, demands, rights, liabilities and causes of action of any kind whatsoever, known or unknown, which have been or could be asserted in a direct, derivative or other capacity against any Debtor arising out of, relating to or in connection with (a) the purchase, sale or other decision or action made or taken, or declined, failed or refused to be made or taken, or otherwise foregone, concerning or relating to the Interests; (b) the purchase, ownership or sale of the Interests; and (c) any other claims arising out of, relating to or in connection with the Interests that would be subject to section 510(b) of the Bankruptcy Code.

1.68 **IRC** means the Internal Revenue Code of 1986, as amended from time to time.

1.69 **Lien** means a charge against, interest in or other encumbrance upon property to secure payment of a debt or performance of an obligation.

1.70 **Liquidating Trust** means the liquidating trust established pursuant to the Liquidating Trust Agreement further described in Section 7.2 hereof, which shall act through the Liquidating Trustee.

1.71 **Liquidating Trustee** means the Person appointed and serving from time to time as Liquidating Trustee under the Liquidating Trust Agreement, acting in his capacity as such on behalf of the Liquidating Trust.

1.72 **Liquidating Trust Agreement** means the Liquidating Trust Agreement dated as of the Effective Date among the Debtors and the Liquidating Trustee, a copy of which is

attached hereto as Exhibit 2 and incorporated herein by reference, and all supplements and amendments thereto.

1.73 **Liquidating Trust Committee** shall have the meaning set forth in Section 4.14 of the Liquidating Trust Agreement.

1.74 **Litigation Claims** means (a) all claims, rights and causes of action of the Debtors and their Estates of every kind or nature whatsoever, whether arising prior to, during or after the Debtors' Chapter 11 Cases (including, without limitation, all rights, claims and causes of action arising under sections 544 through 550 of the Bankruptcy Code, except for any Released Claims and claims by the Debtors against each other.

1.75 **Noteholder Securities Claims** means the Claims, including unknown claims, demands, rights, liabilities and causes of action of any kind whatsoever, known or unknown, which have been or could be asserted in a direct, derivative or other capacity against any Debtor and/or the Indenture Trustee arising out of, relating to or in connection with (a) the purchase, sale or other decision or action made or taken, or declared, failed or refused to be made or taken, or otherwise foregone, concerning or relating to the Senior Notes; (b) the purchase, ownership or sale of the Senior Notes; and (c) any other claims arising out of, relating to or in connection with the Senior Notes that would be subject to section 510(b) of the Bankruptcy Code. Noteholder Securities Claims do not include direct claims for payment for principal, interest fees and expenses due under the Senior Notes.

1.76 **Other Assets** are the Assets provided as consideration to the Debtors' estates pursuant Section 1 of the Committee Settlement Stipulation, which for ease of reference are identified below:

(a)     $6,000,000 of Cash proceeds of the 363 Sale.

(b)    the first $500,000 (or such lesser amount, which amount may be zero) remaining in the Cure Escrow Deposit Account after the beneficiaries of the Cure Escrow Deposit Account described in the Sale Order are paid pursuant to the terms and conditions as provided for in the Sale Order.

(c)    any amounts remaining in the Carve-Out Escrow after all fees and expenses of the Debtor's professionals and Committee's professionals and all United States Trustee fees are paid in full.

(d)    any amounts remaining in the Additional Deposit Account after the beneficiaries of the Additional Deposit Account are paid in full.

(e)    any refunds of any taxes received by the Debtors' Estates from and after the Petition Date.

(f)    any actual payment of refunds of any taxes received by Tenere of Canada, Inc. and Yuma Customer Services, Inc. from their proceeding before the Superior Court of Justice, Commercial List, for the Judicial District of Ontario, which are subsequently paid to the Debtors' Estates solely up to the amount of any such refunds actually received by such entities from and after the Petition Date, which, for purposes of clarity, does not include the realization on any offsets of tax refunds against tax claim amounts.

**1.77**     **Other Assets Proceeds** means the Cash proceeds of the Other Assets and any income or proceeds therefrom.

**1.78**     **Other Priority Claim** means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, of a Creditor to the extent such Claim is entitled to priority pursuant to Bankruptcy Code section 507(a).

**1.79**     **Other Unsecured Claims** means all General Unsecured Claims against the Debtors other than the Senior Notes Claims.

**1.80    Person** means an individual, a corporation, a limited liability company, a partnership, an association, a joint stock company, a joint venture, an unincorporated organization, or a governmental unit as defined in Bankruptcy Code section 101(41).

**1.81    Petition Date** means June 17, 2009.

**1.82    Plan** means this joint plan of liquidation of EBHI Holdings, Inc., et al., and all exhibits annexed hereto or referenced herein, as it may be amended, modified or supplemented from time to time in accordance with the provisions of the Plan or the Bankruptcy Code and Bankruptcy Rules.

**1.83    Possessory Lienholder Claims** means all Claims held by Persons to the extent such Claims are deemed to be secured, through a possessory Lien, in property in which any Estate has an interest, but only to the extent of the value of the possessory lienholders' interest in the Estate's interest in such property as of the Effective Date.

**1.84    Pre-Petition Term Agent** means Wilmington Trust FSB, as successor by assignment to JPMorgan Chase Bank, N.A., as agent for the Pre-Petition Term Lenders under the Pre-Petition Term Credit Agreement.

**1.85    Pre-Petition Term Credit Agreement** means that certain Amended and Restated Term Loan Agreement dated April 4, 2007, as amended from time to time.

**1.86    Pre-Petition Term Lenders** means the "Lenders" as defined in the Pre-Petition Term Credit Agreement.

**1.87    Pre-Petition Term Parties** means the Pre-Petition Term Lenders and the Pre-Petition Term Agent.

**1.88    Priority Tax Claim** means any Claim entitled to priority pursuant to Bankruptcy Code section 507(a)(8).

**1.89    Professional** means a Person (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.90    Professional Claim** means a Claim of a Professional retained in the Chapter 11 Cases by the Debtors or the Creditors' Committee pursuant to a Final Order in accordance with sections 327 or 1103 of the Bankruptcy Code or otherwise, for compensation or reimbursement of actual and necessary costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date.

**1.91    Pro Rata** means proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the amount of the Allowed Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the Class in which the particular Allowed Claim is included to the amount of all Allowed Claims of that Class, but in any event the amount of consideration distributed on account of an Allowed Claim shall not exceed 100% of the amount of the Allowed Claim.

**1.92    Released Claims** means any claims, rights or causes of action of any of the Debtors or their Estates released pursuant to the Asset Purchase Agreement, the Sale Order, the Section 506(c) Stipulation, the Committee Settlement Stipulation, the Plan or the Confirmation Order.

**1.93    Sale Order** means the Order (A) Approving the Sale of the Debtors' Assets Free and Clear of all Liens, Claims, Encumbrances, and Interests; (B) Authorizing the

Assumption and Assignment of Certain Executory Contracts and Unexpired Leases;
(C) Establishing Rejection Procedures and Guidelines for Conducting Store Closing Sales; and
(D) Extending the Deadline to Assume or Reject Unexpired Leases of Nonresidential Real
Property Pursuant to 11 U.S.C. §365(D)(4). [Docket No. 508].

      **1.94**    **Scheduled** means as set forth on the Schedules.

      **1.95**    **Schedules** means the Schedules of Assets and Liabilities Filed by the
Debtors in accordance with Bankruptcy Code section 521 and Federal Bankruptcy Rule 1007, as
the same may be amended from time to time prior to the Effective Date in accordance with
Federal Bankruptcy Rule 1009.

      **1.96**    **Section 506(c) Stipulation** means the Stipulation by and Among Pre-
Petition Agent, and Debtors dated September 23, 2009 approved by the Final Order Authorizing
the Debtors to Enter Into Stipulation with Wilmington Trust FSB, as Administrative Agent
Resolving 506(c) Claims And Cash Collateral Issues dated September 23, 2009 [Docket No.
771].

      **1.97**    **Secured Claim** means any Claim of a Creditor, including principal,
interest and any other amounts, secured by a valid, perfected, and enforceable Lien on, security
interest in or charge that is not subject to avoidance under applicable bankruptcy or non-
bankruptcy law, against property of any of the Estates (or the proceeds of such property) or that
is subject to setoff under Bankruptcy Code section 553, to the extent of the value of such
Creditor's interest in that Estate's interest in such property or to the extent of the amount subject
to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a).

      **1.98**    **Security** means any instrument issued by, or interest in, the Company of
the type described in Bankruptcy Code section 101(49).

1.99    **Senior Notes** means the 5.25% Convertible Senior Notes due 2014 issued by Eddie Bauer Holdings, Inc., predecessor to Debtor EBHI under the Indenture.

1.100   **Senior Notes Claims** means the Unsecured Claims of the holders the Senior Notes under the Indenture, in the Face Amount of $75,842,187.50 outstanding as of the Petition Date.

1.101   **Subsequent Distribution Date** means the date(s) for the making of Supplemental Distributions in accordance with Section 9.10.2 hereof.

1.102   **Supplemental Distribution** shall be the distributions described in Section 9.10.2 hereof.

1.103   **Taxes** means all income, gaming, franchise, excise, sales, use, employment, withholding, property, payroll or other taxes, assessments, or governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local or foreign governmental authority on or from any of the Debtors.

1.104   **Term Lender Adequate Protection Claim** means any and all Claims of the Pre-Petition Term Parties for adequate protection, including, without limitation, adequate protection payments, under the DIP Facility Order or any other Order of the Bankruptcy Court.

1.105   **Term Lender Assets** means the Assets provided to the Pre-Petition Term Lenders and Pre-Petition Term Agent pursuant to Section 3 of the Committee Settlement Stipulation, which for ease of reference are identified below:

> (a)    all Cash of the Debtors that from time to time comes into the possession of the Debtors' Estates (whether from proceeds of the 363 Sale, causes of action, release of cash collateral supporting letters of credit, or

otherwise) other than (i) Cash used or to be used to fund the Carve-Out

Escrow, the Additional Deposit Account, and the Settlement Payment (as

defined in the 506(c) Stipulation) and (ii) the Other Assets.

(b)     any amounts remaining in the Working Capital Adjustment Escrow after

the beneficiaries of the Working Capital Adjustment Escrow described in

the Sale Order are paid pursuant to the terms and conditions as provided

for in the Sale Order.

(c)     any amounts remaining in the Cure Escrow Deposit Account after the

beneficiaries of the Cure Escrow Deposit Account described in the Sale

Order are paid pursuant to the terms and conditions as provided for in the

Sale Order and after the first $500,000 in excess of such amounts is

distributed to the Debtors from such Cure Escrow Deposit Account.

(d)     any amount distributed by Tenere of Canada, Inc. and Yuma Customer

Services, Inc. from their proceeding before the Superior Court of Justice,

Commercial List, for the Judicial District of Ontario on account of (i) the

Debtors' equity interests in such entities or (ii) the Debtors' claims against

such entities arising from any intercompany claims, loans, notes, transfers

or other obligations, except for the amounts included in Other Assets.

     **1.106**   **Term Lender Assets Proceeds** means the Cash proceeds of the Term

Lender Assets.

     **1.107**   **Term Lender Deficiency Claim** means the amount by which the Allowed

Term Lender Secured Claim exceeds the value of the Term Lender Assets, if any.

     **1.108**   **Term Lender Secured Claim** means the claim of the Pre-Petition Term

Agent on behalf of the Pre-Petition Term Lenders, which is Allowed in the amount of

$202,933,053.85, plus post-petition interest and all out-of pocket fees and expenses of the Pre-

Petition Term Agent and the Pre-Petition Term Lenders (including, but not limited to, attorney

fees, audit fees, appraiser fees and financial advisor fees) as provided for in the Committee Settlement Stipulation.

**1.109 Trust Administrative Fund** shall have the meaning specified in Section 4.1 of the Liquidating Trust Agreement.

**1.110 Trust Estate or Trust Assets** means the Assets, including, without limitation, the Term Lender Assets and the Other Assets, all of which shall be irrevocably assigned, transferred and conveyed to the Liquidating Trust as of the Effective Date of the Plan, plus any and all net income earned on the foregoing.

**1.111 Unimpaired** means any Claim that is not Impaired.

**1.112 United States Trustee** means the United States Trustee appointed under section 581(a)(3) of title 28 of the United States Code to serve in the District of Delaware.

**1.113 Unsecured Claim** means any Claim against the Debtors, excluding Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Term Lender Secured Claims, Term Lender Adequate Protection Claims and General Secured Claims. Unsecured Claims shall include (a) any Indemnification Claims arising from or attributable to actions prior to the Petition Date but only to the extent not covered by applicable directors and/or officers' insurance coverage and (b) all Deficiency Claims.

**1.114 Working Capital Adjustment Escrow** shall have the meaning set forth in the Committee Settlement Stipulation, in which approximately $729,615.00 was deposited as of January 22, 2010.

## C. Rules of Interpretation

1.    In the event of an inconsistency:  (a) the provisions of the Plan shall control over the contents of the Disclosure Statement or the Liquidating Trust Agreement; and (b) the provisions of the Confirmation Order shall control over the contents of the Plan.

2. For the purposes of the Plan:

(a) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; provided, however, that any change to such form, terms or conditions that is material to a party to such document shall not be modified without such party's consent unless such document expressly provides otherwise;

(b) any reference in the Plan to an existing document, exhibit or schedule Filed or to be Filed means such document, exhibit or Plan schedule, as it may have been or may be amended, modified or supplemented as of the Effective Date;

(c) unless otherwise specified, all references in the Plan to "Sections," "Articles," "Exhibits" and "Plan Schedules" are references to Sections, Articles, Exhibits and Plan Schedules of or to the Plan;

(d) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part or to affect interpretations of the Plan; and

(f) the word "including" means "including without limitation."

3.     Whenever a distribution of property is required to be made on a particular date, the distribution shall be made on such date or as soon as reasonably practicable thereafter.

4.     All Exhibits to the Plan are incorporated into the Plan and shall be deemed to be included in the Plan, regardless of when they are Filed.

5.     Subject to the provisions of any contract, certificate, bylaws, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

6.     This Plan is the product of extensive discussions and negotiations between and among, inter alia, the Debtors, the Pre-Petition Term Agent, the Creditors' Committee and its members, and certain other creditors and constituencies.  Each of the foregoing was represented by counsel who either (a) participated in the formulation and documentation of or (b) was afforded the opportunity to review and provide comments on, the Plan, the Disclosure Statement, and the documents ancillary thereto.  Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "*contra proferentum*" shall not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, any of the Plan Exhibits, or any contract, instrument, release, indenture, or other agreement or document generated in connection herewith.

7.     The terms and conditions of the Section 506(c) Stipulation and the Committee Settlement Stipulation are fully incorporated herein by reference and nothing provided for in the Plan or Liquidating Trust Agreement shall modify, amend, supersede or otherwise alter any parties' rights or obligations arising under either the Section 506(c) Stipulation or the Committee

Settlement Stipulation; provided, however, that Section 1(f) of the Committee Stipulation shall be superseded in all respects by Section 1.76(f) of the Plan (Definition of "Other Assets").

**D. Computation of Time**. In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Federal Bankruptcy Rule 9006(a) shall apply.

## ARTICLE 2
## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1    Administrative Expense Claims.** Subject to the allowance procedures and deadlines provided herein, on the Effective Date or as soon thereafter as is practicable in recognition of the applicable claims resolution process set forth herein, the holder of an Allowed Administrative Expense Claim shall receive on account of the Allowed Administrative Expense Claim and in full satisfaction, settlement and release of and in exchange for such Allowed Administrative Expense Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Expense Claim, or (b) such other treatment as to which the Debtors and the holder of such Allowed Administrative Expense Claim have agreed upon in writing; provided, however, that Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreement or course of dealing relating thereto and Professional Claims shall be paid in accordance with Section 2.3; provided, further, that any payments made on account of an Allowed Administrative Expense Claim shall be made solely from Other Assets Proceeds.

**2.2    Statutory Fees.** On or before the Effective Date, all fees due and payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in full, in Cash, solely from Other Assets Proceeds.

2.3     **Professional Claims.**  On or prior to the Administrative Expense Claims Bar Date, each Professional shall File with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date.  Within ten (10) days after entry of a Final Order with respect to its final fee application, the Liquidating Trustee shall pay the Allowed Claims of each Professional solely from Cash in the Carve-Out Escrow or from Other Assets Proceeds.

2.4     **Priority Tax Claims.**  With respect to each Allowed Priority Tax Claim, at the sole option of the Debtors, the holder of an Allowed Priority Tax Claim shall be entitled to receive on account of such Allowed Priority Tax Claim, in full satisfaction, settlement and release of and in exchange for such Allowed Priority Tax Claim, (a) in accordance with Bankruptcy Code section 1129(a)(9)(C), equal Cash payments made on the Effective Date or as soon as practicable thereafter in recognition of the applicable claims reconciliation process set forth herein and on the last Business Day of every three (3) month period following the Effective Date, over a period not exceeding six (6) years after the assessment of the tax on which such Claim is based, totaling the principal amount of such Claim plus simple interest on any outstanding balance, compounded annually from the Effective Date, calculated at the interest rate available on ninety (90) day United States Treasuries on the Effective Date; (b) such other treatment agreed to by the holder of such Allowed Priority Tax Claim and the Debtors on or prior to the date ninety (90) days after the Effective Date, provided such treatment is on more favorable terms to the Debtors, as the case may be, than the treatment set forth in subsection (a) hereof; or (c) payment in full, in Cash to all holders of Allowed Priority Tax Claims that have not agreed to less favorable terms made on the Effective Date or as soon thereafter as is practicable in recognition of the applicable claims reconciliation process set forth herein;